Stephen C. Woodruff
Attorney and Counselor at Law
P. O. Box 500770
Saipan, MP 96950
Tel.:   +1 (670) 989-2797
Fax:   +1 (808) 356-1349
Email: scwlaw.spn@gmail.com

*In Pro Per*

FILED
Clerk
District Court

JAN 1 4 2016

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE STEPHEN C. WOODRUFF,  )<br>)<br>)<br>)<br>Respondent.                )<br>)<br>)<br>)<br>)<br>_____ ) | Case No. 1:13-MC-00061<br><br>**ANSWER TO ETHICAL COMPLAINT** |

COMES NOW, Respondent, Stephen C. Woodruff, and answers the Complaint for Ethical Violations (hereinafter "Complaint") filed herein, ECF No. 10, as follows:

1.      Paragraphs 1, 2, 3, 4, and 5 of the Complaint are admitted.

2.      Paragraph 6 of the Complaint assumes unspecified duties on the part of respondent. It also makes unspecified assumptions about causation, and appears to allege legal conclusions as to mixed questions of fact and law. Accordingly, paragraph 6 is too vague, ambiguous, and conclusory for Respondent to be able to frame an answer. As a consequence, Respondent lacks sufficient information to form an opinion as the truth or falsity of the allegation and on that basis denies paragraph 6 of the Complaint.

3.      Paragraphs 7, 8, 9, 10, 11, 12, and 13 of the Complaint are admitted.

4.      Paragraph 14 of the Complaint is denied. Murugesan did compensate respondent for various services over the more than four years that Murugesan was respondent's client, but Respondent took on the appeal with no agreement or expectation for compensation.

-1-

5.    Paragraphs 15, 16, and 17 of the Complaint are admitted.

6.    Paragraph 18 of the Complaint is admitted except that it must be noted that to the best of Respondent's recollection, the form was prepared contemporaneously with the Notice of Appeal, although not filed until later, and that the omission of the U.S. Court of Appeals case number was the consequence of it not being known at the time the form was prepared.

7.    Paragraphs 19, 20, 21, and 22 of the Complaint are admitted.

8.    Respondent has insufficient information to form an opinion as to the truth or falsity of paragraphs 24 and 25 of the Complaint and on that basis denies same.

9.    Paragraph 26 of the Complaint is admitted.

10.    Paragraph 27 of the Complaint intentionally misleads and therefore is denied. Paragraphs 24 and 25 of the Complaint allege actions by Murugesan that, if taken, surely were undertaken at Respondent's direction, thus contradicting paragraph 27.

11.    Paragraphs 28, 29, 30, 31, 32, 33, and 34 of the Complaint are admitted.

12.    Paragraph 35 of the Complaint assumes a duty of Respondent that he did not possess and therefore is denied. Paragraphs 30 and 31 of the Complaint alleged that the transcript was filed in the district court on February 19, 2010, and that the district court February 22, 2010, certified the record. Respondent accordingly reasonably believed that his email to the Clerk of the District Court had achieved its requested result.

13.    Paragraphs 36, 37, and 38 of the Complaint are admitted.

14.    Paragraph 39 of the Complaint assumes a duty with Respondent that he did not have. As plead by the Complaint, *see* Complaint ¶ 38, the Ninth Circuit had already removed Respondent as Murugesan's counsel on appeal. Accordingly, paragraph 39 of the Complaint is denied.

15.    Paragraphs 40, 41, 42, 43, 44, 45, and 46 of the Complaint are admitted.

-2-

16.    Paragraphs 47 and 48 of the Complaint state nothing but legal and factual conclusions and therefore do not require a response.  Accordingly, paragraphs 47 and 48 of the Complaint are denied.

17.    All allegations of the Complaint not specifically admitted are denied.

## DEFENSES AND AFFIRMATIVE DEFENSES

18.    Lack of subject matter jurisdiction.

19.    Failure to state a claim upon which relief may be granted.

20.    Failure to satisfy jurisdictional prerequisites.

21.    Laches.

22.    Unclean Hands.

23.    Multiplicity.

24.    Improper Purpose.

25.    Denial of due process of law.

## VERIFIED ALLEGATIONS IN SUPPORT
## OF DEFENSES AND AFFIRMATIVE DEFENSES

26.    Although this Court indubitably has regulatory jurisdiction over every attorney admitted to practice before it, that does not *ipso facto* establish subject matter jurisdiction relative to any and all alleged conduct whatsoever of such an attorney anywhere in world irrespective of existence of a meaningful nexus to such attorney's continued suitability for practice before this Court.  The conduct alleged in the Complaint possesses no substantial nexus to Respondent's continued suitability for practice before this Court but, rather, has a substantial nexus solely to the functioning of an independent jurisdiction, the Ninth Circuit Court of Appeals, whose interests are principally implicated and which is fully competent regulate and discipline attorneys practicing before it.

27. As plead in paragraph 4 of the Complaint, MRPC 1.1 requires the "thoroughness and preparation reasonably necessary for the representation." The Complaint fails to plead any action taken by Respondent in furtherance of the representation that fell short of the standard of preparation required by the rule or was performed with any material absence of thoroughness.

28. As plead in paragraph 5 of the Complaint, MPRC 1.3 requires a lawyer to act "with reasonable diligence and promptness in representing a client." The Complaint fails to specify how and why Respondent actions were not reasonable under the circumstances communicated to the LDR 4(b) investigating attorney by Respondent.

29. The Local Disciplinary Rules establish certain jurisdictional prerequisites to filing an ethical complaint against a member of the Court's bar. Specifically, one or more of the members of the Court's Bar must be appointed to investigate the allegations of misconduct. LDR 4(b). Sean Frink, Esq. was appointed to fulfill this function, and Respondent cooperated fully with the investigation.

30. Also, three other members of the Court's Bar must be appointed to a Disciplinary Committee. LDR 4(b). The investigating attorney must submit his report to the Disciplinary Committee. LDR 5(a). The investigative report must include "copies of statements of witnesses, all documentary evidence relative to the complaint, and a summary of the findings of the investigation." LDR 5(b). Evidence and statements submitted by the attorney under investigation to the investigating attorney must also be attached to the investigation report. LDR 5(c).

31. The investigating attorney and the Disciplinary Committee are obligated to complete their work within a reasonable time. LDR 5(a), 6(b).

32. The Complaint does not allege satisfaction of these jurisdictional prerequisites.

33. The work of the investigating attorney and the Disciplinary Committee plainly was not completed within a reasonable time, given that the ethical complaint herein was not filed

until nearly two years after the investigation began (which itself was over four months after the Murugesan complaint came to the attention of the district court).

34.    Due process of law requires that the attorney under investigation be informed of the identity of the members of the Disciplinary Committee. This identification of the members of the Disciplinary Committee really ought to take place at the threshold of the investigation, to provide an opportunity to identify any possible conflicts of interest. Respondent was not apprised of the membership of the Disciplinary Committee, and when Respondent inquired on January 3, 2016, of the attorney prosecuting the complaint, the inquiry was ignored.

35.    Due process of law requires that the attorney under investigation be provided with a copy of the report of the investigating attorney to the Disciplinary Committee. Respondent has never been provided with a copy of this report. When Respondent, on January 3, 2016, pointed this out to the attorney prosecuting the complaint, said prosecuting attorney stonewalled, stating, "I am not aware of any rule that indicates you are entitled to a report of the Disciplinary Committee."

36.    Respondent had not asked for "a report of the Disciplinary Committee." Respondent had pointed out that he had "not been provided with a copy of the LDR 5 report," which is the "report of the investigation." LDR 5(b). Without a copy of the report, Respondent has incomplete information about the information gathered in the investigation and no ability to determine whether the report of the investigating attorney fairly presented to the Disciplinary Committee the results of the investigation and the information provided by Respondent, or even the thoroughness and reliability of the investigation. Without such information, Respondent is not able to properly prepare a defense and is thus deprived of due process of law.

37.    By alleging violations of both MRPC 1.1 (Competence) and MRPC 1.3 (Diligence) without identifying specific conduct making out a violation of each distinctly, the Complaint metamorphoses a potential single violation into two, contrary to due process of law.

Charges are impermissibly multiplicitous unless each requires proof of a fact the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The complaint fails to distinguish or plead such discrete facts with respect to MRPC 1.1 and MRPC 1.3.

38.   Respondent's attorney-client relationship with Murugesan began in 2007 or earlier. For years Respondent provided competent representation and counsel to Murugesan in various matters, often without compensation. As a consequence of Respondent's advice and representation, Murugesan had been able to continue to live and work in the CNMI for six years at the time Murugesan chose to attack Respondent.

39.   Respondent was under considerable duress in late 2009 and early 2010. At the end of 2009, Respondent had been a victim of spousal abuse for more than a decade. In late 2009, Respondent's spouse had, among other things, been trying by means of verbal abuse, violent outbursts, destruction of property, intimidation and humiliation to compel Respondent to abandon his clients and law practice and relocate the family to the states. Ultimately, Respondent was compelled, in November or December of 2009, to agree to a staged relocation plan in which his wife would relocate to Texas, followed shortly by the younger two children, then the eldest, with Respondent to travel back and forth for a time until the family was reunited permanently. This process began in January of 2010, with Respondent, his wife, and the two youngest children flying to Houston, Texas.[1]

40.   Respondent was off-island in the U.S. mainland for most of the first half of 2010. Respondent's mother passed away in Cincinnati, Ohio, on May 10, 2010. Respondent was in the CNMI from mid-March until May, and, during this period, discussed Murugesan's appeal in the Ninth Circuit with him. This information was communicated to investigating attorney Sean Frink on April 4, 2014.

---

[1] Unsurprisingly, the results of this coerced plan were fairly disastrous.

41. On March 4, 2010, while Respondent was still in the mainland, the Ninth Circuit entered a dispositive order of the Clerk dismissing the appeal. After this order was entered, Respondent met with Murugesan, as noted in the previous paragraph, and painstakingly explained to him that Respondent did not believe it worthwhile to seek reinstatement and further pursue the case as the chances of ever recovering anything from L&T were extremely low, he was not and really had no ability to support the appeal, that Respondent simply could not support the appeal on his own, and that it would be unreasonable to ask Respondent to do so. In short, Respondent made it clear that he was withdrawing from further representation of Murugesan in the matter, which had already been closed by the Ninth Circuit.

42. On March 24, 2010, Murugesan, without Respondent's knowledge, filed a motion in the Ninth Circuit for reconsideration of the Clerk's dispositive order. To this day, it is unclear to Respondent how Murugesan did so. In any event, the Ninth Circuit Appellate Commissioner construed the motion as one for reinstatement and denied it without prejudice to filing a renewed motion within 45 days accompanied by the opening brief. The Appellate Commissioner also construed the motion as notice by Murugesan that he had begun proceeding *pro se* and explicitly recognized his *pro se* status. At this point, Respondent clearly was no longer counsel for Murugesan in the Ninth Circuit and had no continuing duties to Murugesan with respect to his appeal.

43. Murugesan apparently also filed another motion for reinstatement of the appeal on November 15, 2011, with the aid of the U.S. Department of Labor Ombudsman. Neither Murugesan nor anyone from the Ombudsman's office contacted Respondent prior to the filing of said motion.

44. Although Murugesan accused Respondent in papers filed with the Ninth Circuit of "mall practice," the Ninth Circuit did not deem the allegation substantial enough to pursue

with Respondent. Murugesan never made any other complaint with the CNMI Bar Association or a court until his October 10, 2013 filing in an unrelated matter.

45.    Respondent assisted Murugesan in a host of other matters over the years, particularly from late 2009 onward, almost entirely without compensation. As the handover to Federal immigration control in the CNMI approached, Respondent helped Murugesan to obtain an umbrella permit, thus securing his immigration status for the next two years (as Respondent had for the preceding two years in the CNMI arena).

46.    On multiple occasions during the years Respondent advised and assisted Murugesan, he came to Respondent with problems he was experiencing with his disability benefits from U.S. Social Security. Each time he did so, Respondent advised Murugesan as best he could – at no charge. This was almost always a difficult and frustrating process because Murugesan almost invariably was lacking documents essential to full understanding of the situation and recommendation of a specific course of action. Accordingly, Respondent was only able to give Murugesan general advice and guidance based on Respondent's knowledge of the law and procedure and the facts that did appear on the documents Murugesan had with him and Murugesan's recitation of his encounters with Social Security personnel.

47.    When Murugesan was having trouble renewing his Indian passport, Respondent and his staff assisted him in obtaining information, understanding instructions, and filling out forms, again free of charge. At the end of 2011, when Murugesan's umbrella permit was expiring and he faced a strict November 28, 2011 deadline for a CW-1 petition to be filed on his behalf if he were to maintain valid immigration status in the United States and the CNMI, Respondent found an employer willing to petition him for employment, and a timely petition was filed on his behalf.

48.    By the time Murugesan's appeal was dismissed by the Ninth Circuit, Respondent had become aware of facts of which he had not been aware at the time appeal was taken, which

facts made it plain that pursuit of the appeal was pointless. The critical issue in the appeal was not the merits of the summary judgment itself but Judge Munson's refusal to credit Respondent's declaration in the district court and allow Murugesan additional time to find an attorney who could help him properly defend against the summary judgment motion. What became known to Respondent only after the transcript finally was prepared and made available to Respondent was that Judge Munson actually had made a commitment to Murugesan to reopen the case and allow a showing that the summary judgment should be set aside in the event the Murugesan were to find counsel to assist him in the underlying case. This almost completely undermined the fundamental premises upon which appeal was taken and meant the only viable issue remaining in the appeal was the one nearly impossible to prosecute successfully: that grant of summary judgment was erroneous on the existing record.

49. Beginning in January of 2013, Respondent came under attack in highly irregular disciplinary proceedings in CNMI courts. Those proceedings resulted in the opening of reciprocal discipline proceedings in this Court on February 12, 2013, *In re Woodruff*, 1:13-mc-00004. While originally sealed, those proceedings were subsequently unsealed on or about March 21, 2013, and thereafter publicized in the local media.

50. This disciplinary matter began when Murugesan was somehow allowed on October 10, 2013, to publically file seven pages of scurrilous allegations against Respondent in the wholly unrelated matter, 1:13-mc-00004. The scurrilous allegations were then reported in the local media, damaging Respondent's reputation. Murugesan apparently was prompted to this course of action by press accounts of an October 8, 2013 order to show cause directed to Respondent in 1:13-mc-00004.

51. After Respondent objected in open court, the Murugesan filing was stricken from the record in 1:13-mc-00004 on October 11, 2013. This case was thereafter opened.

52.    More than four months later, on February 27, 2014, investigating attorney Sean Frink wrote to Respondent demanding a written response to the Murugesan complaint "on or before April 4, 2014." Respondent made timely response on April 4, 2014.

53.    Ten months later, on January 11, 2015, Respondent received another letter from investigating attorney Sean Frink. This letter forwarded a copy of a "one page typewritten reply (with a six page attachment)" that, according to Mr. Frink, constituted Murugesan's reply to Respondent's response of April 4, 2014. The "reply" was unsigned and undated. Mr. Frink demanded a "sur-reply" on or before January 26, 2015 – two weeks later. Mr. Frink's letter went on to state, "I intend to make a recommendation to the Disciplinary Committee regarding what course of action is appropriate immediately after receiving your sur-reply." The letter concluded in part, "I look forward to continuing to work with you to address this complaint fairly and efficiently."

54.    Respondent timely submitted a 64-page sur-reply, inclusive of nine exhibits, on January 26, 2015. An additional one-page supplement to the sur-reply was submitted the same day. The sur-reply explicitly objected that Respondent had first been asked to respond to alleged professional misconduct in the district court and that this had now shifted to alleged professional misconduct in the Ninth Circuit Court of Appeals. Citing *In re Ruffalo*, 390 U.S. 544, 550-52 (1968), Respondent maintained that such shifting of allegations in the course of the investigation violates due process of law.

55.    Until served with the Ethical Complaint nearly eleven months later, Respondent heard nothing further from the investigating attorney, the Disciplinary Committee, the Court or anyone else after he submitted his sur-reply to the investigating attorney. Respondent reasonably believed the matter had been closed in his favor.

56.    There has been nothing fair or efficient about the handling of this matter by those charged with responsibility for it under the Local Disciplinary Rules.

57.   On December 9, 2015, the Supreme Court of the Commonwealth of the Northern Mariana Islands issued a decision in Respondent's CNMI disciplinary proceedings, *In re Woodruff*, 2015 MP 11.  Respondent since has petitioned that court for rehearing.  On December 14, 2015, the Chief Judge of this Court recused herself from further involvement in the reciprocal discipline proceedings, *In re Woodruff*, 1:13-mc-00004.  Three days later, on December 17, 2015, the ethical complaint herein was filed.

58.   Like the unfair proceedings against Respondent in Commonwealth Courts, the progress of this matter demonstrates a tenacious determination to go after Respondent, not fairness or efficiency.

59.   Respondent acknowledges that Murugesan's appeal was not handled as well as it should have been.  Nevertheless, Respondent's actions were reasonable under the circumstances and any deficiencies in his performance did not rise to the level of an ethical violation.

## PRAYER

Respondent respectfully prays the Court to:

1.   Dismiss the complaint for absence of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

2.   Enter judgment in Respondent's favor.

3.   Order disclosure to Respondent of the identity of the members of the LDR 4(b) Disciplinary Committee.

4.   Order disclosure to Respondent of the report required by LDR 5.

5.   Provide a reasonable time for Respondent to obtain discovery from Murugesan Sabbaiah and others prior to trial on the Ethical Complaint.

6.   Convene a three-judge Judicial Panel as required by LDR 7(b).

7.   Grant Respondent such other and further relief as may be necessary or just.

-11-

Dated this 14th day of January, 2016.

Respectfully submitted,

STEPHEN C. WOODRUFF
Respondent

## **VERIFICATION**

I, Stephen C. Woodruff, declare and state, under penalty of perjury under the laws of the United States of America, that all statements of fact in the foregoing Answer are based on my personal knowledge unless otherwise indicated and are true and correct to the best of my knowledge and belief.

Executed this 14th day of January, 2016, on the Island of Saipan, Commonwealth of the Northern Mariana Islands.

STEPHEN C. WOODRUFF

-12-