F I L E D
Clerk
District Court

FEB 25 2016

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

In Re:                                    )    **DISCIPLINARY CASE: UNDER SEAL**
                                          )
STEPHEN C. WOODRUFF,                      )    1:13-MC-00061
                                          )
            Respondent.                   )    DECISION AND ORDER
                                          )    DENYING RESPONDENT'S
                                          )    MOTION TO DISMISS
                                          )
_____ )

## I.    INTRODUCTION

This matter came before the Court on February 11, 2016, for a hearing on Respondent's Motion to Dismiss ("MTD," ECF No. 19).[1] Respondent Stephen C. Woodruff, who is proceeding pro se, moves to dismiss for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. After reviewing the briefing papers[2] and considering the oral arguments of Respondent and of Prosecuting Counsel Rexford C. Kosack, the Court denied the MTD, for the reasons stated on the record and developed more fully in this Decision and Order.

## II.    DISCUSSION

a.    Lack of Subject Matter Jurisdiction

Respondent asserts that subject matter jurisdiction "requires establishment of a sufficient nexus between the conduct alleged and the attorney's continued fitness to practice before this Court," and that such a nexus is lacking because the alleged misconduct took place while the

---

[1] Respondent's Motion for Disclosure and Production (ECF No. 20), which also came on for a hearing that day, will be addressed in a separate order.

[2] MTD; Opposition to Motion to Dismiss, ECF No. 21; Respondent's Reply to Prosecutor's Opposition to Motion to Dismiss, ECF No. 27.

1

case was before the Ninth Circuit Court of Appeals. (MTD 2.) Further, he asserts that in the Complaint for Ethical Violations (ECF No. 10), the prosecutor has failed to plead with specificity "jurisdictional prerequisites" – in particular, that an investigator and disciplinary committee ("DC") were appointed pursuant to Rule 4 of the Local Disciplinary Rules ("LDR"), that the investigator submitted a report to the DC including documentary evidence and witness statements pursuant to LDR 5, and that the DC reviewed the report and recommended prosecution pursuant to LDR 6. (MTD 2–3.) He points out that for some civil claims, the district court lacks subject matter jurisdiction unless the claimant has first exhausted administrative remedies and pleaded administrative exhaustion in the complaint.

The prosecutor responds that (1) nothing in the Local Disciplinary Rules makes the procedural steps before the filing of a complaint a jurisdictional prerequisite, and (2) the Local Disciplinary Rules do not require satisfaction of those steps to be pled. He points out that unlike civil claims requiring administrative exhaustion (e.g., Title VII cases), no statute or rule requires exhaustion. (Opp'n MTD 4–6.)

In his Reply, Respondent asserts that in the Opposition the prosecutor does not respond to his first argument about a sufficient nexus and that, therefore, he has conceded it has merit. (Reply MTD 1.) He maintains that because the Local Disciplinary Rules make the steps previous to filing a complaint mandatory by using the word "shall," satisfaction of those steps must be jurisdictional. (*Id.* 2.)

District courts have inherent authority to suspend or disbar attorneys who appear before them. *In re Kramer,* 193 F.3d 1131, 1132 (9th Cir. 1999); *Matter of Jacobs,* 44 F.3d 84, 87 (2d Cir. 1994) ("A district court's authority to discipline attorneys admitted to appear before it is a well-recognized inherent power of the court."); *Adduano v. World Hockey Ass'n,* 824 F.2d 617

(8th Cir. 1987) ("It is generally recognized that a district court also has inherent authority to discipline attorneys practicing before it."). Attorneys in this Court's bar are subject to discipline by this Court even for misconduct that occurs in other jurisdictions. LDR 2 ("An attorney may be subject to disciplinary action . . . for any of the following causes occurring within *or outside* the District of the Northern Mariana Islands . . .") (emphasis added). Misconduct by an attorney in one jurisdiction may give rise to disciplinary action in any court in which the attorney appears. For example, "[a] federal court may . . . examine a state court disciplinary proceeding if the state court's order is offered as a basis for suspending or disbarring an attorney from practice before federal court." *MacKay v. Nesbett,* 412 F.2d 846, 846 (9th Cir. 1969) (describing reciprocal discipline). Similarly, states have "the power to discipline attorneys for misconduct regardless of the jurisdiction in which it occurs." *Canatella v. California,* 404 F.3d 1106, 1110 (9th Cir. 2005). This principle is recognized in the Model Rules of Professional Conduct ("MRCP"): "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs." MRPC 8.5(a). The MRPC have been adopted as rules governing the conduct of every member of this Court's bar. LR 1.5 ("Standards of Professional Conduct").

This principal comports with the purposes of attorney discipline "to protect the public, the profession and the administration of justice[.]" *In re Wade,* 115 B.R. 222, 228 (B.A.P. 9th Cir. 1990). An attorney who is derelict in his duties to his clients in one jurisdiction is a danger to his clients anywhere he or she practices. An attorney who "has behaved in such a way that she is no longer worthy of the trust the courts and public must place in her representations, her conduct, and her character . . . is not suddenly rehabilitated when she crosses a State line." *Matter of Lebbos,* 672 N.E.2d 517, 519 (Mass. 1996). The same will be true when a lawyer

crosses the line from one federal jurisdiction to another. Lawyer conduct that demonstrates "an inability or unwillingness to comply with professional responsibilities . . . will typically be in violation of the lawyer code of all interested jurisdictions, and its blameworthiness does not depend on where the conduct occurred." Restatement (Third) of the Law Governing Lawyers § 5 cmt. h (Am. Law Inst. 2000). The relevant "nexus" is that a lawyer's misconduct in *any* court may reflect on his ability to diligently and competently represent the interests of his clients in *all* courts in which he or she practices.

Even if something like a territorial nexus were required to support subject matter jurisdiction, this matter has it. It concerns the alleged mishandling of an appeal of an order of summary judgment issued by this Court against Respondent's client. Respondent signed the notice of appeal and a docketing statement and filed them in this Court. The Ninth Circuit set a deadline for appellant to order a transcript from this Court's reporter. Respondent missed that deadline by two weeks. When the date by which the transcript was supposed to be prepared lapsed, Respondent did not check with the reporter on the status of the transcript. Respondent failed to file appellant's opening brief on time. Only after appellee moved to dismiss because of that failure did Respondent contact the Clerk of this Court to inquire about transcripts. When respondent also missed the deadline to respond to appellee's motion to dismiss, the Ninth Circuit dismissed Respondent's client's appeal. This history is set forth in detail in the opening pages of the Prosecuting Attorney's Opposition to the MTD, which implicitly responds to the claim of a lack of a nexus for jurisdiction. If the allegations are proved true, Respondent's misconduct caused the complainant (Respondent's client) to forfeit the valuable right of appeal of this Court's order, and leaves a party to an action in this Court embittered by his experience of the judicial process in which this Court played a vital role.

Respondent's contention that compliance with the LDR's grievance procedure must be pled to establish SMJ is meritless. Respondent has cited no case law on point in support. At least one state appeals court has rejected a similar argument, for sound reasons. In Texas, an attorney asserted that a state district court lacked subject matter jurisdiction to hear the disciplinary action because the grievance committee was not properly constituted. *Meachum v. Comm'n for Lawyer Discipline,* 36 S.W.3d 612, 613 (Tex. App. 2000). The Texas Court of Appeals noted that "nothing in the Texas Rules of Disciplinary Procedure require the commission to plead or prove a just cause finding in the district court." *Id*. at 614. It held that "[b]ecause the district court's authority to hear a disciplinary action is not derived from or dependent upon the grievance committee's just cause finding, we conclude there is no merit to [the attorney's] contention that the district court lacked subject matter jurisdiction." *Id*.

Respondent's analogy to the jurisdictional requirement of exhaustion of administrative remedies does not work. It rests on a false premise: that the procedural steps prior to filing a disciplinary complaint are "jurisdictional prerequisites." Exhaustion requirements are "*statutorily specified* jurisdictional prerequisite(s)[.]" *Montgomery v. Rumsfeld*, 572 F.2d 250, 252 (9th Cir. 1978) (quoting *Weinberger v. Salfi,* 422 U.S. 749, 766 (1975)) (emphasis added). For example, the case cited by Respondent, *McNeil v. United States,* 508 U.S. 106 (1993), involved the Federal Tort Claims Act, which commands that "[a]n action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . ." 28 U.S.C. § 2675(a). No such statute or rule prohibits the filing of a disciplinary complaint unless certain procedural steps have been followed, or requires the complaint to recite that those steps have been followed. The bright-line rule is that unless the legislature "clearly states that a threshold

limitation . . . shall count as jurisdictional, . . . courts should treat the restriction as nonjurisdictional in character. *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 502 (2006); *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 157 (2010) (finding that registration requirement of Copyright Act "is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction"). Just because certain steps must precede the filing of a disciplinary complaint under the local rules does not mean that failure to follow them has jurisdictional consequences.

The analogy to administrative exhaustion falls apart for other reasons as well. A plaintiff's filing of a complaint initiates a civil action in district court; the prosecuting attorney's filing of a complaint continues a disciplinary action that is already underway. Moreover, the doctrine of administrative exhaustion is grounded in the principle that the court should "not interfere with" the process of a separate entity (administrative agency) empowered to decide a matter until that entity "has completed its action[.]" *Jones v. United States,* 122 Fed. Cl. 490, 510 (Fed. Cl. 2015) (quoting *McKart v. United States,* 395 U.S. 185, 193–94 (1969)). Here, the entire action is within the district court from the start; the disciplinary committee is not a separate entity outside the court with independent authority to adjudicate a case.

It bears noting that Respondent has not alleged any procedural steps were skipped or improperly executed. But even if the disciplinary procedure was not followed exactly, the defect would have no effect on the Court's subject matter jurisdiction.

b.    Failure to State a Claim

Respondent asserts that the standard for pleading civil actions announced in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007), applies to disciplinary complaints. Under *Iqbal* and *Twombly,* "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S.

6

at 678 (quoting *Twombly,* 550 U.S. at 570). Respondent maintains that the disciplinary complaint fails to plausibly allege facts supporting claims that he violated Rules 1.1 (competence) and 1.3 (diligence) of the Model Rules of Professional Conduct. (MTD 3–4.) Furthermore, he asserts that the complaint fails to distinguish discrete facts supporting each claim, such that the claims are multiplicitous and violate his due process rights under *Blockberger v. United States,* 284 U.S. 299, 304 (1932).

In his Opposition, the prosecutor points to specific facts alleged in the complaint that show Respondent was not competent or diligent in his representation of his client on appeal to the Ninth Circuit. (Opp'n MTD 7–8.) He notes that competence requires "attention and preparation" (MRPC 1.1 cmt. 5) and that the complaint alleges Respondent failed to check with the court reporter as to the status of transcripts, failed to ask the Ninth Circuit for an extension of time to file his opening brief, and failed to take action to protect his client when the deadlines passed. As to diligence, he points to Respondent's procrastination in failing to meet the deadline for submission of his client's opening brief and failing to respond to the motion to dismiss – failures which Respondent has admitted. (*Id.* 8.) As to multiplicity, he asserts that this principal of criminal law, grounded in the Fifth Amendment, does not apply to this noncriminal matter; and that if it were to apply, it would come into play only in the punishment phase. (*Id.* 9.) Furthermore, the facts required to prove lack of competence under MRPC 1.1 and lack of diligence under MRPC 1.3, while related, are distinguishable, as lack of competence implicates a broader range of conduct than lack of diligence, which is proved only by missed deadlines. (*Id.* 10.)

In his Reply, Respondent asserts that the facts alleged in support of a charge of lack of competence really go only to lack of diligence, and that the competence charge, MRPC 1.1 (see

Errata), should therefore be dismissed. (Reply 3.) As to multiplicity, he asserts it applies because the question is one of fundamental fairness – a due process issue – and the disciplinary case is quasi-criminal. (*Id.*)

A motion to dismiss for failure to state a claim upon which relief can be granted is authorized in civil actions by Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). The Local Disciplinary Rules of this Court make the FRCP applicable to disciplinary matters only with respect to service of process. LDR 13; *see Standing Comm. on Discipline of the Cent. Dist. of Cal.,* 55 F.3d 1430, 1435 n.8 (9th Cir. 1995) (holding that civil discovery rule applied where local rules expressly made FRCP applicable to disciplinary proceedings).

It is far from obvious that the Court should entertain a motion to dismiss a prosecuting attorney's disciplinary complaint on this ground.[3]  A motion to dismiss for failure to state a claim "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A disciplinary complaint, unlike a civil complaint, has already been tested. The initial complaint is referred to a member of the Court's bar for investigation. LDR 4(b). After giving the respondent attorney an opportunity to submit evidence and statements, the investigator prepares a report for a three-member disciplinary committee composed of members of the Court's bar. LDR 5, 6(a). Based on the report, the disciplinary committee determines whether the matter warrants further consideration and so informs the Chief Judge. LDR 7. If prosecution is recommended, the Chief Judge appoints a prosecuting attorney, who prepares a formal disciplinary complaint. LDR 8. Thus, by the time a formal complaint is filed, the sufficiency of

---

[3] In contrast, a motion to dismiss for lack of subject matter jurisdiction is not purely a creature of the FRCP. Subject matter jurisdiction is the constitutional and statutory bedrock of a court's power to adjudicate a case; consequently, defects in subject matter jurisdiction may be raised at any time by any party, including the court itself. *United States v. Cotton,* 535 U.S. 625, 630 (2002); *Gushi Bros. Co. v. Bank of Guam,* 28 F.3d 1535, 1538 (9th Cir. 1994).

the claims of misconduct have been tested by the investigator and retested by the committee members, all of whom are attorneys in the Court's bar. There is no need to subject them to a further round of sufficiency testing. Therefore, the Court is inclined to deny the motion to dismiss for failure to state a claim as not authorized by the LDR and as unnecessary to give Respondent fair notice of the charges and a reasonable opportunity to be heard – the fundamental due process rights accorded attorneys facing discipline. *In re Corrinet,* 645 F.3d 1141, 1145 (9th Cir. 2011).

Even so, the Court has considered the sufficiency of the claims in the disciplinary complaint and finds them well supported by the alleged facts. It is entirely plausible that an attorney whose inaction cost his client the opportunity to be heard on appeal has displayed a lack of competence and diligence. Respondent has admitted that the deadline for submitting appellant's opening brief passed without his filing one (Compl. ¶ 22, Answer ¶ 7); that in the three months following the deadline he did not contact the Ninth Circuit (Compl. ¶ 28, Answer ¶ 11); and that he failed to file a response to appellee's motion to dismiss or to request an extension (Compl. ¶ 33–34; Answer ¶ 11). Lack of competence and lack of diligence could well account for those lapses. Respondent objects that the complaint "fails to specify how and why Respondent['s] actions were not reasonable under the circumstances communicated to the LDR 4(b) investigating attorney by Respondent." (MTD 4.) Reasonable excuse sounds like a defense, and Respondent will have the opportunity to present it at the merits hearing. But it is hardly the prosecuting attorney's duty to address it in the complaint.

Respondent's final objection to the complaint is that it is multiplicitous. His theory seems to be that even if the Court finds that one of the claims has been stated, the two claims are indistinguishable and one of them must be dismissed.

The rule against multiplicity derives from the constitutional protection against double jeopardy in criminal matters. Because that protection does not extend to attorney discipline cases, the objection has no merit.

The Fifth Amendment's Double Jeopardy Clause prohibits successive prosecutions as well as successive punishments for the same criminal offense. *United States v. Dixon,* 509 U.S. 688, 695–96 (1993). The Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishment for the same offense." *Hudson v. United States,* 522 U.S. 93, 99 (1997) (original emphasis). This prohibition is sometimes referred to as the rule against multiplicity. "An indictment may not charge a single offense in several counts without offending the rule against multiplicity." *United States v. UCO Oil Co.,* 546 F.2d 833, 835 (9th Cir. 1976). The test for whether charges are multiplicitous is to determine whether each charge "requires proof of an additional fact which the other does not." *Blockberger,* 284 U.S. at 304.

This is a disciplinary case, not a criminal one. "The nature of a disciplinary proceeding is neither civil nor criminal, but an investigation into the conduct of the lawyer-respondent." *Standing Comm. on Discipline of the U.S. Dist. Court for the Southern Dist. of Cal. v. Ross,* 735 F.2d 1168, 1170 (9th Cir. 1970). The fact that disciplinary proceedings have been characterized as "of a quasi-criminal nature[,]" *In re Ruffalo,* 390 U.S. 544, 551 (1968), "does not require courts to employ the procedures of the criminal law in disbarment matters." *Matter of Palmisano,* 70 F.3d 483, 486 (7th Cir. 1995); *accord In re Smith,* 123 F. Supp. 2d 351, 354 (N.D. Tex. 2000). That does not conclude the analysis, however. To determine whether a particular punishment is criminal or civil, one looks to (1) whether the legislature "indicated either expressly or impliedly a preference for one label or the other" and (2) "whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly

intended as a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 99. The factors relevant to the second prong are "(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned." *Id.* at 99–100 (citation and internal quotation marks omitted).

Attorney discipline is not criminal in nature. A court's authority to sanction lawyers who practice before it does not emanate from legislation but, as noted earlier, is inherent. The disciplinary scheme set forth in the LDR is not primarily punitive in purpose or effect. Disbarment has been regarded not as a punishment, but as a remedy "for the protection of the public in order to strip a man of the implied representation by courts that a man who is allowed to hold himself out to practice before them is in 'good standing' so to do." *Theard v. United States,* 354 U.S. 278, 281 (1957). A finding of scienter – an intent to deceive or defraud – is not necessary; a lawyer who is merely neglectful of her duties may be subject to discipline. Indeed, the complaint against Respondent does not allege any malign intent. Respondent's alleged conduct is not criminal. If an attorney displays a serious lack of preparation and dedication to the pursuit of his clients' legitimate goals, disbarment is not an excessive response in order to protect the public and vindicate public confidence in the judicial system.

Other courts that have considered whether the Double Jeopardy Clause applies to attorney discipline have reached this same conclusion. They have observed that if disbarment were a criminal sanction, no state could disbar an attorney merely for having sustained a felony

conviction; "the state would be compelled to have in its midst an uncensored attorney who is a convicted criminal." *Office of the Disciplinary Counsel v. Campbell,* 345 A.2d 616, 621 (Pa. 1975); *also People v. Marmon,* 903 P.2d 651, 655 (Colo. 1995) ("A contrary conclusion would lead to the absurd result that lawyers convicted of criminal offenses could never be disciplined."). They have emphasized the remedial nature of attorney discipline, *Matter of Caranchini,* 160 F.3d 420, 424 (8th Cir. 1998), and that the primary purpose is not to punish but "to compel the attorney to deal fairly and honestly with his client, and to determine whether he has, by his conduct, proved himself unfit to be entrusted with the duties and responsibilities of the office of attorney." *In re Ries,* 37 A.2d 417, 419 (N.J. 1944). *See also Hudson,* 522 U.S. at 95–96 (holding that occupational debarment of bankers was not criminal punishment subject to Double Jeopardy Clause).

At oral argument, Respondent pointed out that the *Blockberger* opinion does not explicitly mention the Fifth Amendment or the Double Jeopardy Clause, and he inferred therefrom that the *Blockberger* test should be applied to any two claims, even if they are not criminal. This is a frivolous argument. *Blockberger* involved a challenge to multiple criminal convictions for which consecutive sentences were imposed. *Blockberger,* 284 U.S. at 301. The cases on which it relies for the heart of its analysis, *Gavieres v. United States*, 220 U.S. 338 (1911), and *Albrecht v. United States*, 273 U.S. 1 (1927), are expressly double jeopardy cases. Nothing in *Blockberger* or the case law that elaborates on it suggests that the test applies if the punishment is not criminal. *Blockberger* describes a test, not a right. The test applies only if the right attaches, and attorney discipline matters do not involve the right against double jeopardy.[4]

---

[4] Because the Double Jeopardy Clause is not implicated in this attorney discipline proceeding, the Court does not reach the prosecuting attorney's alternative arguments.

### III.    CONCLUSION

The Court's inherent authority to discipline the members of its bar does not disappear when the alleged misconduct occurs in another jurisdiction; nor does failure of the prosecuting attorney to set forth facts showing compliance with procedural prerequisites affect the Court's subject matter jurisdiction. The disciplinary complaint against Respondent adequately states claims of attorney misconduct and does not place Respondent in double jeopardy. For these reasons, Respondent's Motion to Dismiss is DENIED.

SO ORDERED this 25th day of February, 2016.

_____
RAMONA V. MANGLONA
Chief Judge

13