Stephen C. Woodruff
Attorney and Counselor at Law
P. O. Box 500770
Saipan, MP 96950
Tel.:    +1 (670) 989-2797
Fax:    +1 (808) 356-1349
Email: scwlaw.spn@gmail.com

*In Pro Per*

FILED
Clerk
District Court

MAY 2 0 2016

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE STEPHEN C. WOODRUFF, ) | Case No. 1:13-MC-00061 |
| ) | |
| ) | |
| Respondent.    ) | **MOTION TO STAY PROCEEDINGS** |
| ) | |
| ) | |
| ) | |
| _____) | |

COMES NOW, Respondent, Stephen C. Woodruff, and moves the Judicial Panel for a stay of proceedings in this matter pending decision in the reciprocal discipline case currently before the Court as Miscellaneous Case No. 13-0004 and for other reasons.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The Ethical Complaint in this matter was filed on December 17, 2015, based on conduct that occurred nearly six years before in early 2010. The alleged misconduct was never brought to the attention of this Court or any other disciplinary authority until October 10, 2013, when the complaining party filed allegations against Respondent in an unrelated matter in this Court. This was nearly four years after the conduct in question.[1]

---

[1] The Commonwealth Supreme Court, in the case of *In re Martens*, 2007 MP 5, considering a question of procedural timeliness in the absence of a specific rule or statute addressing the time in which a petition could be filed, ruled that the equitable doctrine of laches governs. 2007 MP 5 ¶ 6.

-1-

Beginning in January of 2013, Respondent had come under attack in highly irregular disciplinary proceedings in CNMI courts. Those proceedings resulted in the opening of reciprocal discipline proceedings in this Court on February 12, 2013, *In re Woodruff*, 1:13-mc-00004. Answer ¶ 49. Those proceedings had to be stayed on account of lack of finality in the CNMI disciplinary proceedings. However, the proceedings were unsealed and received considerable publicity in the local media. It was during this period that the individual whose complaint provides the basis for this action, Subbaiah Murugesan,[2] elected to exploit the reciprocal discipline proceeding (1:13-mc-00004) for unknown purposes of his own by filing a complaint about Respondent therein. Despite the fact that Mr. Murugesan's complaint had no relevance whatsoever to the reciprocal discipline proceeding and thus should not have been accepted for filing in No. 1:13-mc-00004, it was accepted and filed, and was publicized in the local media.[3] Based on this questionable filing and attendant defamatory publicity, Chief Judge Manglona of this Court opened the instant disciplinary case effective October 10, 2013.

When the CNMI disciplinary action became final and the reciprocal discipline proceeding resumed, it became necessary for Chief Judge Manglona to recuse herself from that matter. Order of Self-Recusal, No. 1:13-mc-00004 (D. Nor. Mar. I., Dec. 14, 2015)(Dkt. # 74). Three days later, the Ethical Compliant herein was filed. Between the October 10, 2013 lodging of a complaint by Mr. Murugesan and the December 17, 2015 filing of the Ethical Complaint, the following events occurred.

---

[2] It is unclear whether the complaining party's surname actually is Murugesan or Subbaiah. Throughout his representation of Mr. Murugesan, Respondent understood him to be Mr. Subbaiah and referred to him always as "Subbaiah." Respondent first became aware of the existence of a question or confusion about this matter when he was assisting Mr. Murugesan in getting his passport renewed through the Indian Consulate in San Francisco. At that time, it appeared that not even the Indian government could state definitively which was his surname, Subbaiah or Murugesan. In this proceeding, Prosecuting Counsel has designated him with Murugesan as the surname.

[3] Mr. Murugesan was not a party and had no standing in that case.

On October 24, 2013, two weeks after the submission by Mr. Murugesan of his allegations against Respondent, the Court issued an Order Commencing Inquiry. ECF No. 2. Respondent has never been supplied with a copy of this order. On February 27, 2014, Respondent received a letter from the Investigating Attorney, Sean Frink, Esq.,[4] forwarding a copy of Mr. Murugesan's allegations against Respondent and demanding a "written response . . . on or before April 4, 2014." Respondent made a timely response. On December 8, 2014, a letter from Mr. Murugesan to Chief Judge Manglona was received by the Court. ECF No. 4. To the best of his knowledge, Respondent has never seen a copy of this letter.

On January 11, 2015, nine months after he had responded to Mr. Frink regarding the Murugesan complaint, Respondent again received a letter from Investigating Attorney Frink. This letter advised Respondent that he had reviewed Respondent's response and had supplied a copy to Mr. Murugesan for reply. The letter went on to inform Respondent that Mr. Murugesan had made a reply and supplied an undated copy of the reply to Respondent. Mr. Frink then demanded a surreply from Respondent not later than January 26, 2014, just two weeks hence. On January 16, 2015, the Court responded to Mr. Murugesan's letter. ECF No. 5. Respondent has never been supplied with a copy of this letter. On January 26, 2015, Respondent made timely surreply to the Murugesan reply.

On March 19, 2015, nearly two months later, Mr. Frink filed a report on his investigation with the Disciplinary Committee. *See* Decision and Order Granting in Part and Denying in Part Respondent's Renewed Motion for Disclosure and Production, ECF No. 40 at 8. On April 20, 2015, a "Disciplinary Committee Referral" was docketed.[5] ECF No. 8. It is not clear exactly

---

[4] Mr. Frink is a former associate in the law office of Prosecuting Counsel Rexford Kosack, Esq..

[5] This referral from the Disciplinary Committee to the Chief Judge was dated April 16, 2015. *See* Decision and Order Granting in Part and Denying in Part Respondent's Renewed Motion for Disclosure and Production, ECF No. 40 at 8.

what this document contains, as it has never been made available to Respondent. In an order signed April 21, 2015, and entered on the docket April 22, 2015, ECF No. 9, the Court appointed Rexford Kosack, Esq. to prosecute this matter against Respondent.[6] As previously noted, an Ethical Complaint against Respondent was filed eight months later, on December 17, 2015. ECF No. 10.

Respondent filed his Answer on January 14, 2016. ECF No. 14. A week later, on January 21, 2016, Respondent filed a motion to dismiss. ECF No. 19. On January 26, 2016, Respondent filed a motion for disclosure and production. ECF No. 20. A case management conference was held on January 28, 2016, and the matter was set for a merits hearing on March 16, 2016. ECF No. 25. A hearing was held on Respondent's motions on February 11, 2016. The Court issued a Decision and Order Denying Respondent's Motion to Dismiss two weeks later, on February 25, 2016. ECF No. 31. In that order, the Court indicated its intention of addressing the motion for disclosure and production in a separate order. ECF No. 31 at 1 n.1.

On March 8, 2016, a status conference was held in which Respondent's request for a continuance was heard and the merits hearing continued for two weeks to March 30, 2016. Minutes, ECF No. 32. Another status conference was held on March 23, 2016, and the merits hearing was further continued to May 23, 2016, in light notice from Prosecuting Counsel (during the course of a teleconference on March 21, 2015) regarding the scope of evidence he intended to seek to admit in the full course of the merits hearing. Minutes, ECF No. 34. Respondent filed his position on Prosecuting Counsel's proposed exhibits for the case in chief the same day. ECF No. 33.

---

[6] *Id.*

-4-

On March 29, 2016, the Court issued an Order on Procedures and Standards for Merits Hearing.  ECF No. 35.  On May 9, 2016, a status conference was held, which Respondent inadvertently failed to attend.  According to the minutes of the May 9, 2016 status conference:

> Attorney Kosack to provide the electronic version of the merits and disciplinary action materials by Wednesday, May 11, 2016.

Minutes, ECF No. 36.  As of the date of this motion, Respondent has not received an electronic version of the merits and disciplinary action materials.

On May 11, 2016, Respondent filed a notice responding to the Court's directive at the May 9, 2016 status conference, and raising several substantial issues, including objections to the evidence Prosecuting Counsel had produced as intended for use at the merits hearing as almost entirely overlapping with matters within the scope of the Commonwealth disciplinary proceedings and thus encompassed by the reciprocal discipline proceeding.  ECF No. 37.  That same day, the Court entered an order substituting Commonwealth Superior Court Associate Judge Teresa Kim-Tenorio for Chief Judge of the U.S. District Court for Guam Frances Tydinco-Gatewood on the Judicial Panel.

On May 13, 2016, Respondent filed his Renewed Motion for Disclosure and Production to Full Judicial Panel.  ECF No. 39.  The same day, Chief Judge Manglona denied hearing by the full Judicial Panel and ruled on the motion.  Decision and Order Granting in Part and Denying in Part Respondent's Renewed Motion for Disclosure and Production (D. Nor. Mar. I., May 13, 2016), ECF No. 40.

At approximately 12:14 p.m. today, May 20, 2016, Prosecuting Counsel served Respondent with additional discovery, apparently consisting of additional evidence he intends to seek to introduce in this matter.  As of this writing, Respondent has not had any opportunity to review this discovery or prepare in any way to respond to it.

## II.

## LEGAL BASIS

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 680, 706 (1997). Although proceedings in this case are not governed by the Federal Rules of Civil Procedure, *see* ECF No. 31 at 8, those rules encourage district courts to schedule and manage their cases to, *inter alia*, "improve[e] the quality of the trial through more thorough preparation," and "facilitate[e] settlement." Fed. R. Civ. P. 16(a)(4) & (5). The Ninth Circuit has noted that "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," which proceedings may be "judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9 Cir. 2005), quoting *Leyva v. Certified Grocers of Calif.*, 5 th 93 F.2d 857, 863-64 (9th Cir. 1997). *See also* E*thicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).

## III.

## GROUNDS FOR STAY

Respondent has been diligent about cooperating with the investigation and defending against the Ethical Complaint filed herein. The same cannot be said of the complaining party in bringing his complaint (four years delay), or the investigating and prosecuting authorities. The investigation phase took 17 months. During the nine months between Respondent's first response to the Murgesan complaint and the investigating attorney's provision of a "reply" to that response and demand for a "surreply," Respondent reasonably believed the matter to have been closed. After the shock of the investigating attorney's demand nine months later for an additional response, and making the timely surreply on January 26, 2015, Respondent again

-6-

reasonably believed the matter to have been closed in his favor during the nearly 10 months between his surreply and being served with the Ethical Complaint on December 17, 2015. At a minimum, therefore, it cannot reasonably be contended that there is any prejudice to the prosecution from a stay in this matter until after Respondent's reciprocal discipline case has been adjudicated. Neither can Respondent's request for additional time to mount a defense be deemed unreasonable in light of the complaining party's four-year hiatus and the prosecution's 26 months to develop and prepare.

### A.    Respondent's Preliminary Review and Appellate Rights

Respondent maintains that the circumstances of this complaint do not warrant prosecution, and that his due process rights are being violated in hauling him into court forcing him to defend against the Ethical Complaint while questions remain about whether the procedural safeguards specified by the Local Disciplinary rules were satisfied. Respondent brought and renewed his motion for disclosure and production for the sole purpose of evaluating that question. Unfortunately, the Court, acting through the Chief Judge alone, has refused most of the relief requested.

Respondent's request for relief on this question was finally denied only seven days ago. The rules of appellate procedure allow 30 days to take an appeal. Respondent should be afforded the time necessary to evaluate whether or not to take an interlocutory appeal under the collateral order doctrine and seek a stay pending appeal. The question of the propriety of forcing Respondent to defend without first determining the legitimacy in the first instance of hauling him before the Court to answer to the charges is jurisdictionally identical to the question of hauling a state to answer before a court in the face of a claim of entitlement to sovereign immunity. *Cf. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993).

Under the doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. at 546, 69 S. Ct., at 122, an order is unappealable if it is "tentative, informal or incomplete," and even if "fully consummated," is unappealable if it is "but [a] step[] towards final judgment in which [it] will merge." *Puerto Rico Aqueduct and Sewer Authority*, 506 U.S. at 142, 113 S. Ct. at 687. The Court's Decision and Order Granting in Part and Denying in Part Respondent's Renewed Motion for Disclosure and Production, ECF No. 40, is neither "tentative, informal or incomplete' nor "but [a] step[] towards [a] final judgment in which it will merge." Instead, it "fall[s] in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

The claim of right determined is Respondent's entitlement, pursuant to LDR 4, 6 and 7 to have the complaint against him "tested" and "retested," *see* ECF No. 31 at 8-9, as appropriate for prosecution, by an impartial disciplinary committee composed of members of the district court bar. Obviously, Respondent is denied that right if the disciplinary committee is tainted by bias or prejudice or conflict of interest on the part of even one member. And Respondent has no ability to assure himself of the impartiality of the disciplinary committee, and, critically, no opportunity to challenge its impartiality, if the identity of the members of the disciplinary committee is kept secret from him.

The role of the Disciplinary Committee under the local disciplinary rules is critical and central. Appointment of an investigating attorney and the Disciplinary Committee is the first duty of the Court upon receiving a complaint about an attorney:

> Upon receipt of a complaint alleging violation of these Rules, the Chief Judge shall designate one or more members of this Court's Bar, as necessary, to investigate the allegations of misconduct, and a three-member Disciplinary Committee, comprised of attorneys who are members of this Court's Bar.

-8-

LDR 4(b). Once appointed, the discretion and responsibility of the Disciplinary Committee is considerable. The Disciplinary Committee is empowered to "take such action pursuant to these Rules as it deems appropriate." LDR 6(b). It is required to submit the matter for prosecution only if it "determines a formal hearing is necessary." LDR 6(c). These functions cannot possibly be performed consistent with due process where the respondent attorney is denied the opportunity to evaluate possible bias, prejudice, and conflict of interest on the part of any of the persons serving on the Disciplinary Committee. Moreover, conformance with court rules is not discretionary. *Hollingsworth v. Perry,* 558 U.S. 183, 184, 191, 130 S. Ct. 705, 706, 710, 175 L. Ed. 2d 657 (2010)(per curiam)("Courts enforce the requirement of procedural regularity on others, and must follow those requirements themselves.").

### B.    Respondent's Right to Representation by Counsel

There is no question that Respondent has a right be represented by counsel in this matter if he chooses to exercise that right and an attorney is ready and willing to represent him. Respondent has been consulting with Joe Hill, Esq. regarding this matter. However, Mr. Hill is unable to enter an appearance and represent Respondent on May 23, 2016, due to pre-existing obligations to other clients. If a stay is granted, however, it is likely that Mr. Hill subsequently would be able to fit representation of Respondent in this matter into his schedule.

### C.    Possible Need for Recusal of Judicial Panel Members

Designated Judge Robert C. Naraja participated in disciplinary proceedings against Respondent in the Commonwealth courts. His impartiality in this matter therefore reasonably could be questioned. This is particularly true if there is overlap between this case and the matters considered in the Superior Court, as Prosecuting Counsel has indicated his intention to cause material related to the same client complaints as were involved in the Superior Court to be introduced as purported aggravating factors in this case.

Chief Judge Manglona's husband, Commonwealth Supreme Court Associate Justice John Manglona, likewise participated in disciplinary proceedings against Respondent in the Commonwealth Superior Court – to an even greater extent than Designated Judge Naraja. Thus, Chief Judge Manglona's impartiality in this matter therefore also reasonably could be questioned. Again, this is particularly true if, as here, there is overlap between this case and the matters considered in the Commonwealth courts, given Prosecuting Counsel's indication of his intent to cause material related to the same client complaints as were involved in the Superior Court to be introduced as purported aggravating factors in this case. That Chief Judge Manglona did not personally participate in the Commonwealth proceedings should not make a difference analytically because (1) her husband clearly formed an opinion relative to Respondent's fitness to practice law that would be directly controverted by a decision favorable to respondent herein, and (2) Respondent moved, unsuccessfully, in the Commonwealth Supreme Court for recusal of Associate Justice Manglona in part on account of manifest bias displayed against Respondent in a previous matter. The existence of such a bias against Respondent by the husband of Chief Judge Manglona is an objectively reasonable basis to question the ability of Chief Judge Manglona to be strictly impartial in these proceedings.

A judge's opinion of an attorney is wrongful or inappropriate where "it is undeserved, or . . . rests upon knowledge that the subject ought not to possess ... or because it is excessive in degree." *Liteky v. United States*, 510 U.S. 540, 550, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). There would appear to be significant risk of "knowledge that the subject ought not to possess" influencing the opinions of both Judge Naraja and Judge Manglona in this matter as a result of the proceedings against Respondent in Commonwealth Courts. Decision in this matter must be based exclusively upon the evidence admitted herein if the result is to conform with due process.

Respondent has previously made known to the Court his concerns about possible need for one or more members of the Judicial Panel to recuse themselves. Respondent has been reluctant

to make a formal motion for recusal or disqualification (evaluation of need for recusal, after all, lies, in the first instance, with the judge in question), particularly without the assistance of counsel in evaluating and bringing the motion. Respondent's concerns nonetheless remain and have been made known to the Court.

### D.    Concern About Composition of Judicial Panel

Local Disciplinary Rule 7(b) requires convocation of a three-judge Judicial Panel to hear any attorney disciplinary matter in which the "Disciplinary Committee determines that the matter warrants further consideration." LDR 7(b). By its terms, the rule plainly requires appointment of the Judicial Panel before the matter proceeds further: "[T}he Committee shall so inform the Chief Judge, who will then appoint to hear the matter a three-judge Judicial Panel[.]" *Id.* However, in this case, the Judicial Panel was not appointed until January 28, 2016 – two weeks *after* Respondent filed his Answer. *See* ECF No. 14 (Answer to Ethical Complaint) and ECF No. 24 (Order Appointing Judicial Panel). The rule further provides that three-judge Judicial "shall, *unless circumstances dictate otherwise*, consist of the Chief Judge and two judges designated to sit in this Court." LDR 7(b)(emphasis added).

Obviously, three judges are required for a reason. While the rule itself does not specify this reason, the history of three-judge courts in the Federal system can provide some illumination. Three-judge courts were first created in 1903 when Congress perceived a need for a "court of special dignity" to hear certain kinds of cases. *See* Expediting Act of Feb. 11, 1903, ch. 544, § 1, 32 Stat. 823. As the use of three-judge courts expanded, the rationale became more clearly expressed as a safeguard against imprudent exercise of the federal judicial power. During the Senate debates in 1908, Senator Bacon remarked that the purpose of the legislation was "to throw additional safeguards around the enormous powers claimed for the subordinate Federal Courts," adding that if such powers are to be exercised "at least let it be done on notice and not hastily, and let there be the judgment of three judges to decide such questions. and not permit

such dangerous power to one [judge]." 42 CONG. REC. 4853 (1908). Respondent respectfully submits that this attorney discipline case is one that especially counsels prudence and foreswearance of haste.

The high goals of a three-judge Judicial Panel can only be achieved if the panel reflects a diversity of perspectives rooted in varying backgrounds, training, and experience. Respondent respectfully submits that the Judicial Panel, as currently constituted, lacks sufficient diversity to fulfill this important function. All three judges are of Northern Marianas Descent, all three were born and raised in the Northern Mariana Islands, and all three came to the judiciary through CNMI government service. Additionally, all three have interacted with Respondent and gained a familiarity with his legal practice and community activism over a period of many years. While this is not necessarily bad – and could even cut in Respondent's favor – it does make judicial objectivity more difficult. While Chief Judge of the United States District Court for Guam, Hon. Frances Tydingco-Gatewood, sat on the panel, this was not a concern. However, it has become one since Commonwealth Superior Court Associate Judge Teresa Kim-Tenorio has been substituted for Judge Tydingco-Gatewood. ECF No. 38.

**E.    Disposition of Reciprocal Discipline Case Could Moot this Matter**

Finally, it is significant that if reciprocal discipline is imposed in Miscellaneous Case No. 13-0004, this matter could effectively be mooted. This case should not be used in an attempt to end run the reciprocal discipline case. Neither should judicial resources be expended on this case when disposition of another case could address and remedy all concerns raised in this case. Accordingly, this case should be stayed until disposition of the reciprocal discipline case. A stay of proceedings in this case is the "most efficient" for this Court's docket "and the fairest course for the parties." *Lockyer, supra.*

## F.    A Stay Could Promote Settlement

Respondent has attempted to discuss settlement of this matter with Prosecuting Counsel. Unfortunately, Prosecuting Counsel has refused to entertain any agreement that includes the appropriate discipline for any agreed violation.  Respondent believes this refusal to inconsistent with the professional responsibilities of a prosecutor, but has been hampered in pursuing settlement further by his lack of counsel to push the issue and negotiate on his behalf.  A stay would provide additional time both to resolve the problem of lack of counsel and to pursue settlement.

## IV.

## CONCLUSION

WHEREFORE, the Judicial Panel should enter an order staying proceedings in this case until disposition of the question of reciprocal discipline before the Court in Miscellaneous Case No. 13-0004, for such time as may be necessary for Respondent to obtain counsel, or, at a minimum, for a period of time sufficient to permit Respondent to take an appeal from the Court's May 13, 2016 Decision and Order Granting in Part and Denying in Part Respondent's Renewed Motion for Disclosure and Production, ECF No. 40, and to seek a stay pending appeal.  Fair and due consideration of Respondent's foregoing concerns requires a stay.

Dated this 20th day of May, 2016.

Respectfully submitted,

STEPHEN C. WOODRUFF
Respondent

-13-