Rexford C. Kosack
Law Offices of Rexford C. Kosack
Second Floor, Bank of Hawaii Building
P.O. Box 500410
Saipan, MP  96950
Tel:  (670) 322-8800
Fax:  (670) 322-7800

**Prosecuting Counsel**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE THE MATTER OF<br><br>STEPHEN C. WOODRUFF,<br><br>Respondent. | MISC. CASE NO. 13-00061<br><br>FILED UNDER SEAL<br><br>**DISPOSITION MEMORANDUM:<br>FACTORS IN AGGRAVATION**<br><br>**Hearing Date:  June 15, 2016 at 3:30 p.m.** |

### *Introduction*

Stephen C. Woodruff ("Woodruff") agreed to represent his client, Murugesan Sabaiah, in appealing a summary judgment of the District Court to the Ninth Circuit of the U.S. Court of Appeals.  He took payment from Mr. Sabaiah, entered a notice of appeal, and ordered a transcript. But, after that, he failed to ensure the transcript was filed, failed to file an Opening Brief, and failed to file an Opposition Memorandum to a motion to dismiss the appeal.  Mr. Sabaiah's appeal was dismissed for a failure to prosecute.  Mr. Sabaiah never had his day in court.

This panel found Woodruff violated Rule 1.1 (Competency) and Rule 1.3 (Diligence) of the Model Rules of Professional Conduct.  The question that now arises is whether Woodruff has failed other clients by failing to meet the professional standards of conduct or whether this is the

DISPOSITION MEMORANDUM - 1

only incident of misconduct in his past.

An investigation of incidents involving Woodruff is a daunting task. This report is by no means exhaustive. But, the cases reported point to serious problems in his performance as an attorney. It shows a practice of routinely agreeing to take on matters where he has failed to do the work, of filing complaints or appeals without any further work, of failing to file opposing memoranda and causing his client's case to be lost, and of failing to appear in court -- in one case, on the day of trial. He has been fined numerous times, been repeatedly lectured in written orders and decisions, had complaints dismissed, had appeals dismissed, and been ordered to tell his clients that he has violated his duties to them. In numerous cases, the client is left without relief for its complaint, left waiting for an immigration document never applied for, left with a dismissal with prejudice for a lawsuit never really commenced, or, as in this case, left losing an appeal without ever having filed a brief.

It is possible, one supposes, to explain these incidents away by neglect, an obvious failure of calendaring, and a horrible lack of memory. But, at some point, repeated negligence rises above neglect and becomes, at the least, reckless conduct. It is apparent that Woodruff wants to explain away his failures as those of an overcommitted attorney – too committed to the low income client to say "no," and too many commitments to too many clients. But, his conduct towards his clients suggests just the opposite. It suggests he is not committed to them. He goes to great lengths to avoid them after he has taken on their cases and taken their money. He cannot be reached by phone, and he does not return phone calls. Clients have had to camp out in the waiting area of his office just to get a status report on their case. Whether they stay for one afternoon per week at his office, or three days per week at his office, the result is the same – he refuses to see them. In one case, he even told his client that if she did not leave he would call the police. Yet, all she wanted

DISPOSITION MEMORANDUM - 2

was to know the status of her case.

The most plausible explanation for such evasive conduct is that Woodruff had nothing positive to tell his client. He had not yet done the work. The application had not been sent in, or the brief had not been written. He had been paid, but he had not performed. Attorneys do occasionally fall behind in performing their tasks. When called for an update, the honest attorney will admit the work has not been done and will promise to have the work done by a specific date. The dishonest approach is to evade the client or lie to the client. In at least three cases, Woodruff did not just evade his client, but told the client he had filed an appeal when, in fact, he had not done so.

In addition to concluding that there is dishonesty in such a pattern of evasive (and, at times, deceitful) behavior, one has to deal with the fact that – once the late work has been pointed out – Woodruff has not in these cases immediately cured the problem. When a client calls or visits to check on the status of his or her immigration application, and it has not been done, it is not enough to simply admit one's failure. The second step would be to perform the work that the attorney committed to perform – file the late application, draft the overdue memo and file it, or draft the overdue brief and file it. In the case at bar, Woodruff had been paid to handle Mr. Sabaiah's appeal, the Ninth Circuit provided at least three additional chances to file Mr. Sabaiah's Opening Brief, yet Woodruff never got the work done. This is a second form of dishonesty.

It is an unpleasant task to have to state that an attorney is dishonest; however, that is exactly what is called for in the task at hand. What was the failure in this case? What was the failure in the other cases collected here? Certainly, it is not a failure in intellectual abilities or in the knowledge of the law. It is a failure in organization and, ultimately, in moral character. It is the latter flaw that most strongly argues an unfitness to practice law. Attorneys make errors. But,

DISPOSITION MEMORANDUM - 3

when they do, they admit their errors instead of hiding from them, and they try to cure them. Because, in the end, clients come to an attorney seeking help – and, once an attorney takes on a matter, he or she has committed to provide that help.

The histories of the present case and those collected in this Memorandum are evidence that Woodruff does not understand the importance of an attorney's commitment to help. By not properly calendaring client deadlines, not meeting those deadlines, not keeping his clients informed, evading his clients' inquiries (or telling them that he did work he did not do), and then never actually performing the work he was hired to do, his loyalty to his clients is apparently not very strong. This is a defect of character, not training. And, it obviously will not be cured by a private reprimand or a public censure (certainly that has already happened in written orders and decisions). This leaves the only tenable discipline a lengthy suspension from the practice of law or disbarment. LDR 3.[1]

## I.

## EXPLANATION OF THE TIMELINES

There are two Timelines attached. The smaller Timeline is of the events in the Woodruff discipline in the Superior and Supreme Courts [marked in **GREEN**] and the nine disciplinary complaints that his disbarment was based upon [marked in **RED**]. This small Timeline is an easy way to get acquainted with what has already occurred in the Commonwealth courts. The longer Timeline adds in other disciplinary complaints that have been received by the CNMI Bar Association [marked in **BLUE**] and cases in which courts have questioned Woodruff about his

---

[1] This Memorandum exceeds 25 pages; however, it is not in support or in opposition of a motion. LR 7.1d governing page limits expressly applies to motions.

DISPOSITION MEMORANDUM - 4

handling of a case [marked in **ORANGE**].

The long Timeline covers a ten year period of Woodruff's practice (December 2005 to December 2015). It has 67 different entries. The boxes above the gray bar which is the timeline contain either complaints or court sanctions.

The Timeline is over sixteen feet long. This is a result of the great number of entries plotted on it. What this demonstrates is that Mr. Sabaiah's case is not an isolated incident of misconduct. Instead, it is fairly swallowed up by incidents before and after it. The Sabaiah case, when compared to the nine cases in red that Woodruff's disbarment was based upon, is not unique. When one considers the cases where Woodruff's conduct or failure to act (which, more often than not, was the case) resulted in sanctions by courts, such as dismissal, it is apparent that any of those cases could have resulted in disciplinary action.

During the trial of this complaint, Woodruff suggested that his failure to properly handle Mr. Sabaiah's appeal was due to his heavy workload due to the imminent federalization of the immigration process.[2] The Timeline shows that the misconduct did not occur only in 2009-2010, but it has occurred throughout the ten year period. It only ended early in 2013 because Woodruff was suspended by the CNMI Supreme Court on February 1, 2013.

Here is a bit more detail on the coloring system for the Timeline:

- The Timeline uses six (6) different colors for the boxes used for the entries.

- The **GREEN** banner boxes represent the Commonwealth Supreme Court's suspension of Woodruff, the Superior Court's disbarment of Woodruff, and the Supreme Court's review

---

[2] The Consolidated Natural Resources Act of 2008 (CNRA) applied much of the U.S. immigration law to the CNMI with the transition beginning on November 28, 2009.

DISPOSITION MEMORANDUM - 5

and vote to affirm his disbarment.

- The **GREEN** boxes (where the entire box is green) show the difficulties the Superior Court experienced in having Woodruff comply with the Disbarment Order, which culminated in a three-day jail term for civil contempt.

- The **RED** banner boxes represent the nine cases brought on disciplinary complaints. These complaints were consolidated into a single case in the Superior Court. These cases were the basis of Woodruff's disbarment. The red boxes have lines to the Timeline that show approximately when the representation began and ended.

- The **BLUE** banner boxes represent other disciplinary complaints received from the CNMI Bar Disciplinary Committee. Only one of these, YU, QUAN, has been investigated. It has been filed as a separate disciplinary case. The other nine complaints were handled by the Bar after Woodruff had been disbarred on June 7, 2013. The Disciplinary Committee determined it had no further jurisdiction due to Woodruff's disbarment and sent "no action" letters to the complainants to explain that Woodruff had been disbarred. Thus, these nine complaints have never been acted upon.

- The **ORANGE** banner boxes with **GRAY** text show twenty-four (24) times in the District Court, Ninth Circuit, and the Supreme Court where Woodruff's conduct was either sanctioned or called into question. Where sanctions were imposed, the box appears above the timeline.

- The **PURPLE** banner boxes come solely out of the Murugesan Sabaiah case. They are placed on the Timeline to show where, in time, the case the panel heard fits into the larger context of Woodruff's history of misconduct.

- The two Timelines follow this Memorandum.

DISPOSITION MEMORANDUM - 6

- Next are the court orders, complaints, investigative reports, and Bar notice letters for the entries that are reported. They are placed in the order in which each matter is discussed in the Memorandum. The discussion proceeds by color (green, red, blue, orange, and solid green), and the documents are divided into sections by color.

In the next four sections, I will provide a brief overview of the entries on the Timeline, and explain the history of the disciplinary action in the Commonwealth courts.

## II.

### THE COMMONWEALTH COURTS SUSPENDED, THEN DISBARRED WOODRUFF

This case cannot be properly resolved without considering the history of the disciplinary proceedings in the Commonwealth courts. It is understood that this is not a reciprocal action, but certainly Woodruff's conduct reviewed by the Commonwealth courts should likewise be considered by the District Court. The fact that one court system has relied on this conduct to take action does not immunize Woodruff from this Court relying on the same cases to give it a full picture of how Woodruff practices law.

The progress of the disciplinary action in the Commonwealth courts is shown on the short Timeline in **GREEN** boxes. It is also included on the longer Timeline in **GREEN** boxes.

A.      The CNMI Bar Disciplinary Committee Takes Action to Protect the Public

What is extraordinary about the Commonwealth court case is that it began when the CNMI Bar Disciplinary Committee determined that it had to go directly to the Commonwealth Supreme Court to file a motion to seek the immediate suspension of Woodruff while cases filed against him in the Superior Court could go through the prosecution process. Chairman Timothy H. Bellas informed the Court that he determined that 31.25% of all complaints filed against attorneys between the years 2008-2012 had been filed against Woodruff. The Committee, by a unanimous

DISPOSITION MEMORANDUM - 7

vote of all its members, decided to seek an interim suspension by going directly to the Commonwealth Supreme Court.

On January 10, 2013, the Disciplinary Committee filed an *Application for Interim Suspension of Attorney from the Practice of Law.*[3]

On January 22, 2013, six disciplinary complaints were filed in a consolidated action in the Commonwealth Superior Court. *In re the Matter of Stephen C. Woodruff,* Civil Action No. 13-0017.

B.      The Supreme Court Orders the Interim Suspension of Woodruff

On February 1, 2013, the Commonwealth Supreme Court temporarily suspended Woodruff pending the resolution of the disciplinary matters referred to the Superior Court for prosecution. *In Re Disciplinary Proceedings of Stephen C. Woodruff,* Supreme Court No. 2013-SLD-0001-ADA, 2013 MP 1.

C.      Woodruff Defaults in Answering the First Amended Disciplinary Complaint

The pending complaint was amended on February 19, 2013 to add three additional disciplinary actions. *First Amended Complaint.* This complaint, which was the basis of the disbarment, has been referred to as the "Nine Cases."

Woodruff had actively opposed his interim suspension in the Supreme Court. On January 15, 2013, he filed an *Opposition to Application for Interim Suspension of Attorney from the Practice of law and Request for Continuance.*

Woodruff's Answer was due on March 5, 2013. He failed to file an Answer. An Entry of

---

[3] Where document titles are in italics, the document is attached to this Memorandum.

DISPOSITION MEMORANDUM - 8

Default was entered on March 6, 2013.

D.      Judge Wiseman Disbars Woodruff Based on Numerous Violations in Each Case

On May 15, 2013, a hearing for a Default Judgment was conducted before Associate Judge David A. Wiseman with Woodruff attending and participating. On June 7, 2013, an order was issued in the case. *Disciplinary Action: Disbarment.*

In each of the nine cases, Woodruff was found in violation of the Model Rules.

> **The Court finds Mr. Woodruff's conduct and the numerous violations totally inconsistent with the standard of competent and diligent representation of his clients. Indeed, the Court finds Mr. Woodruff violated MRPC 1.1, 1.3, 1.4 and 8.4(a)(c) and (d) nine times each, MRPC 1.5 four times each, MRPC 3.1, 3.2, and 3.3 once each, and MRPC 8.1 once, for a total of forty-four violations of the MRPC.**

Order, p. 17 (emphasis in original).

The period of representation in these nine cases ranges from 2007 to 2012. Judge Wiseman found that the number of violations "is a record high [for the CNMI] and even in other jurisdictions is considered an extreme high." *Id.* He then looked at Woodruff's conduct in other cases for relevant aggravating or mitigating factors. He noted:

> **In the U.S. District Court for the Northern Mariana Islands there are a total of twenty-five different types of adverse actions taken on Mr. Woodruff for his incompetence and non-diligence, including his failure to appear for a trial in District Court, resulting in dismissal with prejudice. Specifically, there are five money sanctions by U.S. District Court for the Northern Mariana Islands for failing to appear as ordered by the Court, eleven Orders to Show Cause why he should not be sanctioned for failure to comply with rules, for failure to prosecute, for failure to timely serve complaints, and for miscellaneous other violations of court rules and orders, and six court dismissals of cases because of failure to prosecute, in some cases three and four years after filing of complaint.**
> **The Ninth Circuit Court of Appeals in three different cases, as detailed below, dismissed each of the cases for failing to file an opening brief.**
> **The Commonwealth Supreme Court dismissed two appeals for untimely filings. This same Court during the proceedings of interim suspension had to threaten him with contempt of Court as he was not in compliance with their orders. The Commonwealth Supreme Court also noted**

DISPOSITION MEMORANDUM - 9

**eleven disciplinary pending complaints although this Court is proceeding on only nine of them.**

Order, pp. 18019 (emphasis in original).

All of the cases cited by Judge Wiseman are included herein and are plotted on the Timeline.

Judge Wiseman disbarred Woodruff. He required the costs for prosecution to be paid by Woodruff. He required notices to clients, a list of current and pending clients, repayment to them of unearned retainer fees, and reimbursement of seven of the nine clients in the Nine Cases. Order, pp. 27-28.

E.    The Commonwealth Supreme Court Affirms the Disbarment Order

Woodruff appealed the default judgment, the denial of his motion for reconsideration, and his disbarment order to the Commonwealth Supreme Court. The Supreme Court affirmed the orders of the trial court on December 9, 2015. *In re the Matter of Stephen C. Woodruff,* 2015 MP 11.

Woodruff has indicated in this proceeding that he has applied for a writ of certiorari to the United States Supreme Court for review of the Commonwealth Supreme Court's decision.

Local District Rule 16 (Reciprocal Discipline) provides that the "Chief Judge shall impose the identical discipline" as imposed by another court upon receiving notice of disciplinary action elsewhere. LDR 16(c). This is done only after notice and a hearing. This action is taken only after a "final adjudication in another jurisdiction that an attorney has been guilty of misconduct." LDR 16(d). Thus, the Commonwealth Supreme Court decision, which could potentially be subject to review on certiorari, has not resulted in reciprocal discipline in this Court.

DISPOSITION MEMORANDUM - 10

## III.

## THE NINE CASES SHOW THAT WOODRUFF HAS A PATTERN OF

## NEGLECT OF HIS WORK AND ABUSE OF HIS CLIENTS

The Superior Court based its disciplinary action on nine cases. The cases are indicated in both timelines in **RED** boxes with the period of representation shown on the Timeline. Attached are the client complaints, letter to Woodruff from the Disciplinary Committee, and investigative report (when available). Here is a brief summary of each.

**Warfle:** On January 23, 2007, Woodruff was paid $600 to obtain a resident alien card for Mrs. Warfle. Mr. and Mrs. Warfle were unable to contact Woodruff over the next nine months to find out the status of her application. The Warfles were contacted by USCIS and learned that the documents had been filed after seven months. The forms were deficient and needed to be updated. The check sent by Woodruff could not be cashed, so a money order had to be sent. The Warfles were notified that their interview was set for a date for when Mr. Warfle would be off island. Woodruff said he would reschedule the interview. He failed to do so and did not tell them. The application was rejected for failure to attend the interview. The process took 18 months and, in the end, resulted in a rejection because Woodruff failed to reschedule the interview and inform the Warfles that the interview was still on.

**Baing:** In September 2007, Woodruff was hired to appeal a Labor case. He filed a handwritten appeal that said additional documents would be submitted. Woodruff never submitted the documents. He did no further work on the appeal. The client was unable to get a status report for ten months, so filed a complaint. Woodruff maintains he filed the appeal only so Baing could remain in the CNMI while his appeal was pending.

DISPOSITION MEMORANDUM - 11

**Feliciano:** Feliciano paid Woodruff $300 to sue his employer, Eastern Hope Corporation in District Court. Woodruff failed to appear at the settlement conference on October 27, 2008 and was ordered to pay $175 to defendant's counsel. The matter was set for trial on December 1, 2008. Woodruff and his client did not appear for trial. The case was dismissed with prejudice. Judge Munson, in a blistering order, wrote: "As in almost all of his other lawsuits in this court, Mr. Woodruff has, in this matter, missed deadlines and conferences, almost always due to 'unforeseen emergencies' of a personal or professional nature." He added: "The court is left with the unmistakable impression that Mr. Woodruff has never given his client the level of representation required to practice law in this court and, put simply, that he was not prepared to proceed to trial today." Woodruff was ordered to notify his client in writing that the client may have a cause of action against Woodruff for "failure to meet minimum professional standards in client representation, and that Mr. Feliciano should seek the opinion of another attorney."

Woodruff appealed Judge Munson's dismissal to the Ninth Circuit. He failed, however, to file an Opening Brief. The appeal was dismissed for failure to prosecute on October 6, 2009 – just one month before the due date of the Opening Brief in this case.

**Cambronero:** In 2008, Cambronero hired Woodruff to represent him in *Cambronero v. RJCL Corporation* in the District Court. When the defense sought summary judgment on all claims, Woodruff filed a response stating that the motion was well taken as to the federal claims but requesting that the Commonwealth claims be dismissed without prejudice. He stated no grounds for opposition to summary judgment on the Commonwealth claims. He did not attend the summary judgment motion hearing. The Court treated the entire motion as unopposed and granted summary judgment on all claims to defendants and awarded defendants their costs.

DISPOSITION MEMORANDUM - 12

In a 2008 Labor case against the same corporation, the other party filed a motion to dismiss. It was stipulated that Woodruff could respond up to April 14, 2009. He failed to file a response. Labor dismissed Cambronero's case with prejudice.

**Ellis:**  In July 2008, Esperanza Ellis paid Woodruff $400 in fees to obtain Immediate Relative status for her. Woodruff never acted on the application. On August 25, 2009, Ms. Ellis paid Woodruff $3,000 to obtain U.S. resident alien status for her and to handle a paternity action. Woodruff never filed the paternity action. Five months later, Woodruff had her sign the application form. After that, Ellis tried to get a status report from Woodruff. She started by calling him once per week, but then went to his office once each week, waiting for up to three hours to see him. On October 2, 2011 (22 months after signing the forms), Woodruff threatened to call the police if Ellis continued to visit his office. She discovered that the form had not been mailed to USCIS until 16 months after she had signed it. As of January 2012, two years after signing her application form at Woodruff's office, Ellis still had no status report on her application.

**Reyes:**  At the end of 2009, Ana E. Reyes paid Woodruff $2,510 to handle her application for a U.S. resident alien immigration status. She was first requested by Woodruff's office to supply documentation six months later in June 2010. By January 2011, she had heard nothing from Woodruff. At his office, she was shown two USCIS receipts, but was provided no information. She called ten times but could not speak to Woodruff. She never got a return call. She began visiting his office three times each week to get a status report. She waited as long as five hours. She never got an update on her application. She filed a complaint on November 15, 2011.

**Kim:**  In July 2009, Kim Chang Sook paid Woodruff $1,000 to handle an immigration matter for her son and to possibly set aside an adoption decree. In January 2010, she filed a disciplinary complaint because she was never able to learn if Woodruff did any work for her.

DISPOSITION MEMORANDUM - 13

**Lee:** Ms. Jihyun Lee, in July 2011, hired Woodruff to apply for E2-C status for herself and her three children. She paid him $1,500 for this work. Woodruff never did the work. The application was never submitted. After seven months, Lee filed a disciplinary complaint on January 27, 2012.

**Garde:** Emily Garde was represented by Woodruff in her divorce beginning on November 25, 2008. She paid Woodruff $1,200 to handle her case. On May 26, 2011, Associate Judge Inos verbally granted a divorce at a hearing. Judge Inos did not issue a written order. Woodruff did not submit a proposed order. Garde, after one month, began to check up on the status of getting her divorce decree. Woodruff told Garde to stop calling and going to his office. He told her that the decree was with the court; but, she contacted the court and found that Woodruff had not submitted a proposed decree. In September 2011, she filed a disciplinary complaint. By January 2012, she still had not received her divorce decree.

## IV.

## ANOTHER TEN COMPLAINTS AGAINST WOODRUFF HAVE BEEN RECEIVED BY THE DISCIPLINARY COMMITTEE

The CNMI Bar Disciplinary Committee has continued to receive complaints from clients about Woodruff's handling of their matters. Here are ten cases that were addressed by the Disciplinary Committee after the disbarment of Woodruff. These cases are posted to the Timeline in **BLUE**. A brief description of each complaint follows.

**Yu, Qun:** This complaint (dated March 16, 2012) was referred by Judge Wiseman on November 14, 2012. Mr. Yu is a sentenced inmate at DOC. He wrote letters of complaint to both Judge Wiseman and Judge Govendo. An investigation of his complaints by the Disciplinary Committee revealed that Woodruff had promised to file an appeal for Yu, but never filed the appeal.

DISPOSITION MEMORANDUM - 14

The matter was referred to the Superior Court for prosecution on March 18, 2013 and was subsequently filed (as explained later). It is Superior Court Civil Case No. 13-0205.

**Quitano:** Fernando Quitano filed a complaint against Woodruff arising out of his handling of two appointed cases. Quitano had a 2007 case and a 2009 case pending at the same time. He received a combined offer for both cases of 15 years. He told Woodruff he wanted to plead to the 2009 case, but go to trial on the 2007 case. Woodruff told him that trial was too expensive for him. Quitano told him he thought representation was free. Woodruff told him he had been taking court appointed cases for 10 years without ever getting paid. Woodruff encouraged Quitano to take the 2009 case to trial as identity could not be proved. Quitano told him he wanted to plead guilty on that case. On a later visit, Woodruff presented him with a global plea agreement for 14 years. Quitano was angered as he had instructed Woodruff to take the 2007 case to trial. Quitano told Woodruff that the judge would not accept the plea agreement as he would remember Quitano and want to sentence him to a longer term of imprisonment. As it turned out, Quitano was right and the judge rejected the plea agreement. Quitano asked Woodruff what would happen if he were to lose at trial, Woodruff would say that he could appeal but it would cost $2,000. When Quitano said his understanding was that appointed counsel worked for free, he was told they would discuss it later. Woodruff tried the case. Identification was established. Quitano was convicted. The Disciplinary Committee received a complaint from Quitano and sent him a "no action" letter as Woodruff had already been disbarred.

**Cepeda:** Frank Cepeda hired Woodruff to petition for alien relative status and employment authorization for his wife, Zhe Liu Cepeda, with Homeland Security and to file an appeal with the Immigration Board. Woodruff was paid $3,222 in attorney fees and over $1,000 in application fees in March 2011. They repeatedly asked for proof that Woodruff had filed the documents. He

DISPOSITION MEMORANDUM - 15

would tell them that he believed he might have received some response, but needed time to check on it. By November 15, 2012, the clients had seen no proof that anything had been filed. After Cepeda filed a complaint with the Bar, it appears that Woodruff may have sent in the petition after 1 ½ years. Cepeda was not pleased, "It is too late for Mr. Woodruff to cover his piss poor performance as a lawyer. We want action taken against him for wasting our time, our money, and possibly jeopardizing my wife's chances to obtain a green card." On August 20, 2013, the Disciplinary Committee sent Cepeda a letter that Woodruff had been disbarred and there was nothing further the Bar could do.

**Bashar:** Mohammad Abul Bashar married Janya Lynn Taitano and was prosecuted by the CNMI for marriage fraud. He was represented by Edward Arriola, who advised him to plead *nolo contendere*, pay a $2,000 fine, and he would not have immigration problems. Removal proceedings were commenced against him. Woodruff represented him in the removal case. He was removed due to his conviction for marriage fraud. Woodruff filed an appeal of the removal with Immigration on January 20, 2012. He never filed an Opening Brief. The appeal was dismissed on May 31, 2013 for a failure to prosecute. Bashar filed a complaint on June 18, 2013. As Woodruff had been disbarred, he received a letter from the Bar stating that there was nothing further it could do.

**Aguon:** Rumei Haung Aguon married George Aldan Aguon on December 15, 2010. On September 13, 2011, she was ordered removed to China. On October 6, 2011, she hired Woodruff to appeal the removal. She paid him an initial amount of $2,750 in attorney fees. On October 11, 2011, Woodruff filed an appeal with the Board of Immigration Appeals. Woodruff failed to file an Opening Brief. On February 14, 2014, the appeal was dismissed for failure to file the brief. The Board notified Aguon that Woodruff had been suspended from practicing law before the

DISPOSITION MEMORANDUM - 16

Board and the Immigration Court as of March 20, 2013. She filed a complaint with the Bar on April 1, 2014. On April 30, the Bar replied that since Woodruff had been disbarred there was nothing further it could do.

**Camacho:** Anthony Raymond Mendiola Camacho was defended in a kidnap/molestation trial by Woodruff as appointed counsel. It appears that Woodruff did not meet with Camacho prior to trial to prepare. He claimed that Woodruff received all discovery on the day of jury selection without objection. Woodruff never discussed the merits of an offer by the government with Camacho. At times, Woodruff slept during the trial. He never made objections. On the third day of trial, he told Camacho to plead guilty but failed to inform him that there was a minimum mandatory sentence that applied to his case. He was sentenced to 23.5 years. On August 20, 2013, the Bar sent Camacho a letter that no action was possible since Woodruff had been disbarred.

**Bonifacio & Ramirez:** Edwina Bonifacio and Dominador Ramirez hired Woodruff on October 24, 2012 to represent them in immigration removal hearings. The agreed on price was $3,000, and they paid $900 of this amount. On December 3, 2012, Woodruff appeared with them in court and they were permitted to voluntarily depart the U.S. if they each posted $500 bonds and departed prior to February 4, 2013. Woodruff agreed to file an appeal of the removal determination. The deadline was January 3, 2012. When the clients visited Woodruff, he assured them that the appeal was done and he would give them a copy later. The two clients did not voluntarily depart, since their case was on appeal. On February 5, 2013, they were notified that they would be removed. When they told ICE that they had a pending appeal, they were told to present a copy. They asked Woodruff for a copy. He got mad, shouted, and said it was "bullshit" that ICE wanted a copy of the appeal. He did not give them a copy. On February 6, 2013, they saw Woodruff and asked what they should do when they met with ICE that day. He told them he had filed the appeal.

DISPOSITION MEMORANDUM - 17

As it turns out, Bonifacio and Ramirez never saw evidence of an appeal, they lost their $1,000 bond money, and they were set to be removed by ICE. Bonifacio and Ramirez filed a complaint with the Bar and they were sent a letter stating that since Woodruff had already been disbarred there was nothing further the Bar could do.

**Kuang:** Qing Kuang paid Woodruff $880 to process his employment authorization document on December 24, 2012. Woodruff issued receipts for the fee. He never did the work. On January 8, 2015, Mr. Kuang (or Mr. Qing) sent a complaint to the Bar and the Supreme Court. This matter is pending action by the Bar.

**Ma:** Ma Shu Kai paid Woodruff $1,150 on January 2, 2013 as a payment of fees to handle an appeal with the Department of Homeland Security (DHS). DHS returned a check on January 15, 2013 that had been issued by Woodruff showing a date of 2014. By April 2013, Ma still had no information as to whether the appeal had been filed. On April 30, 2014, the Bar sent Ma a letter stating that Woodruff had been disbarred and there was nothing further that could be done by the Bar.

**Sound:** Alfonsis and Esther Sound hired Woodruff to represent them before CUC. Woodruff failed to file a reply with the hearing officer, and a ruling was issued against them. They were disconnected and were ordered to pay $54,000 plus reconnection fees. They felt that their case was never heard. They were issued a letter on August 20, 2013 that no further action could be taken by the Bar because Woodruff had already been disbarred.

In summary, these ten cases were acted on after Woodruff had been suspended or disbarred. Only one of these was investigated by the Bar Disciplinary Committee. That case, the complaint by Yu, Qun, has been filed with the Commonwealth Superior Court. The other nine cases will not be acted on due to Woodruff's disbarment in the Commonwealth courts.

DISPOSITION MEMORANDUM - 18

**V.**

**WOODRUFF HAS BEEN SANCTIONED REPEATEDLY BY THE COURTS**

The final group of cases to be posted to the Timeline are cases where Woodruff's conduct has been called into question by the courts, and where he has been sanctioned either by a fine or by the dismissal of his client's claim or appeal. These cases are in **ORANGE** boxes with **GRAY** background.

**Prematilaka v. Camacho (Dist. Ct.):** Dismissal of complaint with prejudice "because of plaintiff's repeated failures to promptly pursue any of the remedies available to him . . . ." *Order of Dismissal with Prejudice,* August 10, 2006 (Munson, J.).

**Aguon v. Aguon (Supreme Ct.):** Dismissal of appeal by Commonwealth Supreme Court for failure to file record or transcript or to seek additional time. "Counsel is further advised that Com. R. App. P. 42(c) allows for additional sanctions to be imposed for failure to prosecute an appeal and that the Court will consider those in the future against any counsel who fail to timely cause the record on appeal to be timely filed." *Order of Dismissal for Failure to Prosecute,* February 13, 2007, 2007 MP 2.

**Agcaoili v. L&T International Corp. (Dist. Ct.):** Court granted *ex parte* motion to file third amended complaint late, but warned:

> In the court's last order, it noted plaintiff's counsel's ever-growing history of late filings, accompanied by unsatisfactory explanations. Once again, counsel has missed a deadline, and once again it's due to his "preoccupation" with other matters, his "inadvertence," and his failure to properly read, understand, and comply with an order of the court, which order included a specific due date and time. Compounding these failures was counsel's decision not to obey the local rules and call opposing counsel for a stipulation prior to filing this *ex parte* motion, despite the court's instruction to him in its last order that he first seek such a stipulation in situations such as this.
>
> The court will grant the motion, with an admonition to plaintiff's counsel that the court expects its orders to be read, its local rules to be complied with, and deadlines to be observed.

DISPOSITION MEMORANDUM - 19

*Order Granting Plaintiff's Counsel's Ex Parte Motion to File Late,* September 19, 2007 (Munson, J.)

**Md. Masum v. Island Security Services (Dist. Ct.):** On October 10, 2007, Woodruff failed to appear as counsel to plaintiffs at settlement conference. Ordered to pay $225 to opposing counsel. *Order Sanctioning Plaintiffs' Counsel,* October 10, 2007 (Munson, J.).

**Alcaraz v. Hansoll Textile, Ltd. (Dist. Ct.):** Order for plaintiffs to show cause why the lawsuit should not be dismissed for failure to serve within 120 days. *Order to Show Cause Why Lawsuit Should Not Be Dismissed for Failure to Prosecute,* August 22, 2008 (Munson, J.).

**Soriano v. Jung A Enterprises (Dist. Ct.):** On January 23, 2008, Woodruff failed to appear as counsel for plaintiff at a settlement conference. Ordered to pay $50 to opposing counsel. *Order Imposing Monetary Sanctions on Plaintiff's Counsel and Defendant Jung A Enterprises' Counsel,* January 23, 2008 (Munson, J.).

**Soriano v. Jung A Enterprises (Dist. Ct.):** On April 9, 2008, Woodruff failed to appear as counsel for plaintiff at a status conference. Ordered to pay $100 to opposing counsel. *Order Sanctioning Plaintiff's Counsel for Failure to Appear; Granting Jung A's Counsel's Motion to Withdraw; and, Other Matters,* April 9, 2008 (Munson, J.).

**Africa v. Commonwealth Garment Manufacturing, Inc. (Dist. Ct.):** Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to serve defendant within 120 days. *Order to Show Cause Why Lawsuit Should Not Be Dismissed for Failure to Prosecute,* August 22, 2008 (Munson, J.).

**Garcia v. Poong-In Saipan, Inc. (Dist. Ct.):** Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to serve defendant within 120 days. *Order to Show*

DISPOSITION MEMORANDUM - 20

*Cause Why Lawsuit Should Not Be Dismissed for Failure to Prosecute*, August 22, 2008 (Munson, J.).

**Lacbayo v. Watabe Wedding (Dist. Ct.):** Order for plaintiffs to show cause why the lawsuit should not be dismissed for failure to serve defendant within 120 days. *Order to Show Cause Why Lawsuit Should Not Be Dismissed for Failure to Prosecute*, August 22, 2008 (Munson, J.).

**Africa v. Commonwealth Garment Manufacturing, Inc. (Dist. Ct.):** Dismissal of complaint with prejudice for failure to serve defendant, even though plaintiffs were given an additional thirty days to accomplish service. *Order of Dismissal with Prejudice*, October 7, 2008 (Munson, J.).

**Feliciano v. Eastern Hope Corporation (Dist. Ct.):** On October 27, 2008, Woodruff failed to appear as counsel for plaintiff at settlement conference. Ordered to pay $175 to opposing counsel. *Order Sanctioning Plaintiff's Counsel, Stephen C. Woodruff*, October 27, 2008 (Munson, J.).

**Feliciano v. Eastern Hope Corporation (Dist. Ct.):** Motion for reconsideration of dismissal of lawsuit (see Nine Cases, <u>supra</u>.) denied. "The Local Rules have not provided for motions for reconsideration for several years." The Court noted: "Plaintiff's counsel has submitted a statement from his physician, in accordance with the court's order. [Footnote] The court finds it insufficient, given the history of this lawsuit." The footnote states: "Plaintiff's counsel has not complied with the court's order that he notify his client of a possible malpractice claim against him. That portion of the order is stayed for thirty days from the date of the judgment entered this date." *Order Denying Motion for Reconsideration*, December 19, 2008 (Munson, J.). The thirty day stay may have been due to Woodruff's intention to appeal the order. He appealed

DISPOSITION MEMORANDUM - 21

the order to the Ninth Circuit, as noted earlier, and it was dismissed on October 6, 2009 by the Ninth Circuit for failure to file an Opening Brief.

**Alcaraz v. Hansoll Textile, Ltd. (Dist. Ct.):**  On February 13, 2009, Woodruff failed to appear as counsel for plaintiff at status conference.  Ordered to pay $225 to opposing counsel. *Order Sanctioning Counsel for Failure to Appear at Status Conference and Re-Setting Status Conference,* February 13, 2009 (Munson, J.).

**Santos v. Winners Corporation (Dist. Ct.):**  Dismissal of complaint without prejudice for failure to serve defendant. *Order of Dismissal without Prejudice for Failure to Serve,* March 27, 2009 (Munson, J.).

**Garcia v. Poong-In Saipan, Inc. (Dist. Ct.):**  Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to serve defendant for more than six months. *Order to Show Cause,* May 20, 2011 (Marshall, J.).

**Pariyar v. Hong Kong Entertainment (Overseas) Inv., Ltd. (Ninth Cir.):**  Woodruff failed to file Opening Brief for appellant, so appeal dismissed.  "Counsel for appellant is directed to notify immediately his/her client in writing regarding this dismissal." *Order,* May 27, 2011 (Clerk of Court).

**Garcia v. Poong-In Saipan, Inc. (Dist. Ct.):**  Plaintiff failed to explain why service of process should be deemed effected in this case.  Dismissed without prejudice. *Order Dismissing Case without Prejudice,* June 20, 2011 (Tydingco-Gatewood, J.).

**Quitugua v. Micronesian Resort, Inc. (Dist. Ct.):**  Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to take any action for more than six months. *Order to Show Cause,* July 6, 2011 (Tydingco-Gatewood, J.).

DISPOSITION MEMORANDUM - 22

**Legaspi v. Neo Fashion, Inc. (Dist. Ct.):** Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to take any action for three years. *Order to Show Cause,* December 30, 2011 (Manglona, J.).

**Legaspi v. Neo Fashion, Inc. (Dist. Ct.):** Woodruff failed to file a motion or other response to the OSC, so matter dismissed without prejudice for lack of prosecution. *Order of Dismissal,* January 18, 2012 (Manglona, J.).

**Cada v. World Corporation (Dist. Ct.):** Woodruff failed to file an Opposition Memorandum to a Motion to Dismiss on behalf of plaintiff, thus case dismissed without prejudice. The Court wrote:

> In the past two years, Plaintiff's counsel of record frequently has missed deadlines or filed incomplete pleadings in cases before this court and the Ninth Circuit Court of Appeals. In so doing, he has caused the courts and opposing parties needlessly to expend resources on litigation that he initiated and then neglected.

*Order of Dismissal without Prejudice,* December 21, 2012 (Manglona, J.), p. 2.

**Sadim v. Sam Kwang Saipan Corp., et al. (Dist. Ct.):** Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to take any action for three years. *Order to Show Cause,* February 27, 2013 (Manglona, J.).

**Choi v. Jung A. Enterprises, et al. (Dist. Ct.):** Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to take any action for almost four years. *Order to Show Cause,* February 27, 2013 (Manglona, J.).

**Acunin v. Sam Kwang Saipan Corp, et al. (Dist. Ct.):** Order for plaintiff to show cause why the lawsuit should not be dismissed for failure to take any action for four years. *Order to Show Cause,* February 27, 2013 (Manglona, J.).

DISPOSITION MEMORANDUM - 23

**VI.**

**WOODRUFF HAS BEEN HELD IN CONTEMPT OF COURT AND**

**HAS BEEN SENTENCED TO JAIL FOR FAILURE TO COMPLY**

**WITH THE DISBARMENT ORDER OF THE SUPERIOR COURT**

After the Commonwealth Superior Court entered the Disbarment Order on June 7, 2013, the Court found that it was difficult to get Woodruff to comply with its order. This resulted in several hearings and orders. These are detailed near the end of the Timeline in **SOLID GREEN** boxes.

**Order Re: Contempt (October 2, 2013)**

When it appeared that Woodruff had not complied with the Court's order after the passage of three months, an OSC hearing was held before Associate Judge Wiseman. The result was that Woodruff was held in civil contempt.

In the Disbarment Order, Woodruff had been ordered to submit a list of current and pending clients to the Court within thirty days of the order. As of September 27, 2013, no list had been submitted.

The Disbarment Order also required compliance with Rule 15 of the Commonwealth Disciplinary Rules and Procedures. Rule 15(a) requires prompt notification by registered or certified mail all clients in pending matters of the attorney's disbarment, his or her inability to continue to act as the client's attorney, and the desirability of promptly substituting another attorney in his or her place. This had not been done by September 27, 2013. (Woodruff maintained he had no clients to notify.)

Rule 15(d) requires the disbarred attorney to file an affidavit within ten days of the disbarment that shows how the attorney complied with the order and the rules and that the attorney

DISPOSITION MEMORANDUM - 24

has notified all other jurisdictions where the attorney is admitted. Woodruff had not filed an affidavit by September 27, 2013, which was eighty days after its due date.

Finally, Woodruff was required to pay for the costs of the prosecution, to pay any unearned retainer fees back to clients, and to reimburse clients as detailed in the Disbarment Order. He had not done this. Woodruff argued that he orders of payment were not final orders.

Woodruff argued that he had requested a stay from the Commonwealth Supreme Court, but he could not show that the Supreme Court had granted him a stay.

On October 2, 2013 the Superior Court held Woodruff in civil contempt of Court for noncompliance with the Disbarment Order of June 7, 2013. Woodruff was ordered to serve a five (5) day jail sentence, all suspended, subject to the condition that he comply with the Disbarment Order by October 8, 2013. Finally, he was ordered to pay the cost of Disciplinary Counsel's time in preparing for and attending the OSC hearing.

## Woodruff Sent to Jail (December 2, 2013)

On November 21, 2013, the Court held a hearing to require Woodruff to explain his failure to file an affidavit that complied with Rule 15(d). The Court found:

> Respondent has consistently throughout the proceeding in this matter refused to comply with the court orders regarding his disbarment and rule 15 mandates, by utilizing rhetorical positions and arguments that set forth frivolous arguments such as the non-existent automatic stay, which he extensively argued at the October hearing and subsequent submissions.
> In addition, he has placed the blame for everything he is encountering with these and other ethical problems and proceedings by challenging the court's jurisdiction, blaming his clients, the Disciplinary Committee and its chairman, the Disciplinary Counsel, this court, the Supreme Court, the United States District Court for the Northern Mariana Islands, the United States Board of Immigration Appeals, and the Hawaii State Bar Association.

*Order Partially Revoking Suspended Sentence,* December 2, 2013 (Wiseman, J.), p. 2.

DISPOSITION MEMORANDUM - 25

When Woodruff filed a Rule 15 affidavit which did not comply with the rule, the Court issued an order giving Woodruff until November 26, 2013 to comply with the order. On November 26, Woodruff filed a supplemental affidavit. It did not comply with the rule. Even though the affidavit claims there are no unearned fees due to clients, Mr. Cepeda testified that he paid Woodruff $3,120 for his wife's I-I-30 application, which was not done and his wife is now in the removal process. "Respondent essentially jeopardized any chance Mrs. Cepeda had for remaining in the CNMI with her family." *Id.* at 5. Mr. Nakamura (a matter which is not included in our records) testified he paid Woodruff $200 to complete a CW-1 application for him, which had not been filed with USCIS. Further, even though the affidavit stated Woodruff had no clients, he submitted a list of clients which he claimed are in the "federal fora." *Id.* Woodruff had also not notified other courts of his disbarment. Because of Woodruff's "significant misrepresentations to the court" the Court revoked the suspension of three days of the sentence. *Id.*

> The court finds this action to be necessary based on the testimony . . . , the refusal of Respondent to accept any responsibility for the harm caused to former clients by his inactions and actions, and the record in this case. The court is very concerned about potential ongoing prejudice and injury to the rights of Respondent's former clients and finds it ~~so disheartening~~ very disturbing that Respondent expresses no remorse or acceptance of any responsibility for the harm he has caused to many and listens to their testimony in his state of indifference.

*Id.* at 5, ll. 23-24, and 6, ll. 1-6 (as amended by *Amendment to Order*, December 3, 2013).

Woodruff was ordered to report to the DOC on December 5, 2013 to serve a three-day sentence. *Id.* at 7. According to the Saipan Tribune, he reported on a Thursday morning and was to be released on Saturday.

DISPOSITION MEMORANDUM - 26

**Audit of Woodruff's Records to Look for Clients with Pending Matters**

On February 12, 2014, an audit of Woodruff's records was ordered to look for clients who still may have pending matters to be addressed. This was to locate clients that may not have been informed or noticed by Woodruff of the disbarment and may suffer prejudice as a result.

**New Disciplinary Case Filed Against Woodruff**

A new case was filed against Woodruff by Disciplinary Counsel. Civil Action No. 13-0205. This complaint is not available to the undersigned; however, the Disciplinary Case number is 2012-03 which corresponds with the complaint of Yu, Qun (described above).

Woodruff moved to dismiss it on several grounds: " (1) he is already subject to an Order of Disbarment so there is no further relief that may be granted; (2) the Court lacks subject matter jurisdiction due to being unable to further discipline Respondent; (3) the Disciplinary Committee failed to follow certain procedures in filing the complaint, which violates Respondent's due process rights; and (4) multiple members of the Disciplinary Committee and the subsequent investigation have 'profound' conflicts of interest and biases against Respondent." *Order Denying Respondent's Motion to Dismiss*, February 27, 2014 (Wiseman, J.), p. 1. The grounds were found to be baseless. In particular, since the Disbarment Order is still on appeal, it is not yet final, and the Court retains jurisdiction to address other disciplinary complaints. The motion to dismiss was denied.

The present status of this case is unknown.

**Disciplinary Counsel Disqualified by Commonwealth Supreme Court**

On August 26, 2014, the Supreme Court determined that Thomas E. Clifford, the Disciplinary Counsel who handled the Woodruff discipline in the Superior Court, should be disqualified and the appeal would be prosecuted by a new Disciplinary Counsel. Clifford

DISPOSITION MEMORANDUM - 27

represented the Warfles in a small-claim lawsuit brought against Woodruff on a pro bono basis. It was held that a prosecuting attorney must be disinterested from the start of the appointment through the close of the representation. Representation of the Warfles meant that Clifford was not disinterested. While this required that he be disqualified, it did not require a reversal since there was no prejudice to Woodruff. *In re the Matter of Stephen C. Woodruff,* 2014 MP 9. The appeal continued with George L. Hasselback as Disciplinary Counsel.

**Disbarment Order Affirmed by Commonwealth Supreme Court**

On December 9, 2015, the Commonwealth Supreme Court affirmed the Disbarment Order. *In re Woodruff,* 2013 MP 1.

**Clients Are Repaid Fees by Court Order**

On March 9, 2016, a number of housekeeping matters were resolved following the ruling of the Supreme Court. Attorney fees were granted to the former Disciplinary Counsel. Clients were ordered to be reimbursed their fees as stated in the Disbarment Order as follows: Warfle ($600); Baing ($50); Feliciano ($300); Cambronero ($100); Garde ($300); Reyes ($500); Nakamura ($200); and Cepeda ($3,000). *Order re: Distribution of Monies Per Disciplinary Orders,* March 9, 2016 (Wiseman, J.).

**CONCLUSION**

Clearly, the case of Mr. Sabaiah is not the first time that Woodruff's conduct as an attorney has been looked at and found to be lacking by a court. The task of gathering the materials on Woodruff's past history is overwhelming. Undoubtedly, there is a significant chance that one or more cases or complaints have been omitted from this overview.

It is tempting to try to quantify what is contained in these records. That is, in fact, exactly what Associate Judge Wiseman did in his review of the record. He counted the number of actions

DISPOSITION MEMORANDUM - 28

per court (25 in the District Court, 3 in the Ninth Circuit, and 2 in the Commonwealth Supreme Court). *Disciplinary Action: Disbarment,* pp.18-19. He counted the number of times each rule had been violated in the Nine Cases (9 violations of MRPC 1.1, 9 violations of MRPC 1.3, 9 violations of MRPC 1.4, 4 violations of MRPC 1.5, one violation of MRPC 3.1, one violation of MRPC 3.2, one violation of MRPC 8.1, and 9 violations of MRPC 8.4). *Id.* at 25.

The Timeline uses a different approach. It shows how pervasive such misconduct was in Woodruff's practice over a ten-year period. Between December 2005 and December 2015, Woodruff was either sanctioned, had a case dismissed, had a complaint filed against him, or made an obvious error (as in this matter) forty-one (41) times. This averages out to four times per year, or once every three months – for ten years.

Courts have tried various strategies to get Woodruff to straighten out in the past. He has been fined, chastised on the record, had his client's case dismissed, and been told to inform his clients that he had mishandled their case and that they should have the matter reviewed by another attorney. Yet, the record shows no change in his behavior. Even with a greatly reduced caseload as a result of his disbarment, Woodruff failed to appear at the status conference in this case (and then brought up matters by motion on the eve of trial that should have been resolved at the status conference he missed).

This is not properly a case for private reprimand or public censure. He has suffered both repeatedly without any effect. The issue is whether such a measure is likely to change his conduct so that the public – his future clients – will be protected. The answer is clearly "no." The only means left to protect the public is to prevent Woodruff from representing clients. This can only be accomplished by a suspension or a disbarment.

DISPOSITION MEMORANDUM - 29

Sadly, Woodruff's conduct in this case – failing to order a transcript on time, failing to file an Opening Brief (despite numerous reminders and "second chances"), failing to reply to a Motion to Dismiss, and then abandoning his client as soon as the case was dismissed – shows an absolute disregard for the cause of his client, a complete lack of empathy. In thirty-three other cases cited in this memo, the same lack of concern is apparent. In case after case, one wants to ask – could he not learn how to use a calendar? Could he not motivate himself to take remedial action after he missed a deadline? Doesn't he see it is better to act late than never? The fact that the answer to each of these questions is apparently "no" indicates that Woodruff should no longer be practicing law.

Dated: May 31, 2016

Respectfully submitted,

Rexford C. Kosack
Prosecuting Counsel

DISPOSITION MEMORANDUM - 30

# IN THE SUPREME COURT
## OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

**In Re the Matter of**

## STEPHEN C. WOODRUFF

## APPLICATION FOR INTERIM SUSPENSION
## OF ATTORNEY FROM THE PRACTICE OF LAW

**TIMOTHY H. BELLAS, LLC**
**Chairman, CNMI Disciplinary Committee**
**Cactus Street & Botones Ave.**
**P.O. BOX 502845**
**Saipan, MP 96950**
**Phone: 323-2115**
**Fax: 323-2116**

Filing Under Seal Requested.

1

Timothy H. Bellas, on behalf of the Disciplinary Committee of the CNMI Bar Association ("DC") hereby moves this court for an Order to Show Cause to be issued to Stephen C. Woodruff, an attorney admitted to practice law before this court, as to why he should not be suspended from said practice of law pending the final adjudication of the several disciplinary matters now pending before the DC and the CNMI Superior Court.

## I.    JURISDICTION

Public Law 10-26, Section 2, specifically states that:

> Regulation of conduct in and before the courts, however, falls within the inherent authority of the judiciary. Thus, regulation of admission to and conduct of the practice of law involves an overlap between legislative and judicial powers and should, for the most part, be left to the sound judgment of the supreme court.

Thus, the conduct of the practice of law is committed to the sound judgment of this court.

## II.    BASIS FOR ORDER TO SHOW CAUSE

The DC motions this court for an Order to Show Cause ("OSC") because the number of ethical complaints, the repetitive violation of the same ethical rules and the need to protect members of the public from further harm demand the interim relief requested. However, due to the nature of relief requested, the DC also believes that due process dictates and therefore requests, that the attorney in question be afforded an opportunity to show good cause why the relief requested should not be granted.

The most recent history of ethical complaints filed against Mr. Woodruff are as follows:

1.    2008-08[1] ---------------------------------------- referred to Superior Court for prosecution;

2.    2008-12 ---------------------------------------- referred to Superior Court for prosecution;

3.    2009-01 ---------------------------------------- referred to Superior Court for prosecution;

4.    2009-05 ---------------------------------------- referred to Superior Court for prosecution;

---

[1]    These are internal DC case #s.

2

5. 2010-03 -------------------------------------- referred to Superior Court for prosecution;

6. 2011-12 -------------------------------------- referred to Superior Court for prosecution;

7. 2011-13 -------------------------------------- referred to Superior Court for prosecution;

8. 2011-14 -------------------------------------- referred to Superior Court for prosecution;

9. 2012-01 -------------------------------------- referred to Superior Court for prosecution;

10. 2012-03 -------------------------------------- pending in DC for investigation;

11. 2012-08 -------------------------------------- pending in DC for investigation;

These complaints are based on similar facts, which essentially involve the violation of ethical obligations which attorneys owe to their clients. See Rule 1.1, Rule 1.3, Rule 1.4(a)(3) and Rule 3.2 of the ABA Model Rules of Professional Responsibility. These rules involve the failure to adequately represent the client due to lack of preparation, failure to diligently pursue the client's case, failure to properly apprise the client of the status of his case and failure to expedite the litigation consistent with the interests of the client, respectively.

These violations have resulted in severe and in many cases irreparable damage to the clients of Mr. Woodruff. For example in DC case 2009-01, the more germane facts found by the DC investigation are that Mr. Woodruff filed a labor action in US District Court, against his client's former employer for employment related claims. While the case was pending before the court, Mr. Woodruff failed to appear for a regularly scheduled proceeding. As a result, Chief Judge Alex R. Munson, sanctioned Mr. Woodruff. (See a true and correct copy of the "Order Sanctioning Plaintiff's Counsel, Stephen C. Woodruff" attached hereto as Exhibit A and incorporated herein by this reference.) Some time later, on the date set for trial, the opposing party, its lawyer and the client all appeared before the court, ready to go to trial, but Mr. Woodruff failed to appear. As a result, Judge Munson dismissed the client's case with prejudice

3

and ordered Mr. Woodruff to notify his client in writing that the client may have a cause of action against Woodruff "...for failure to meet minimum professional standards in client representation..." (See a true and correct copy of the "Order Dismissing Lawsuit With Prejudice" attached hereto as Exhibit B and incorporated herein by this reference.)  Mr. Woodruff, thereafter filed an appeal of Judge Munson's dismissal to the Ninth Circuit Court of Appeals, however, he failed to diligently pursue that as well and the appeal was dismissed by the Ninth Circuit Court of Appeals. (See a true and correct copy of the "Order" entered on October 6, 2009 dismissing the appeal for failure of Woodruff to file the Opening brief attached hereto as Exhibit C and incorporated herein by this reference.) On January 26, 2009 the client filed this complaint pointing out that he not only lost his ability to pursue his claims against his former employer but Woodruff never returned the costs of the case that Feliciano had paid to Woodruff. (A true and correct copy of this Complaint is attached hereto as Exhibit D and fully incorporated herein by this reference.)

In DC 2009-05, the Complainant, Mr. Cambronero, filed a complaint stating that his attorney, Mr. Woodruff, missed a critical deadline of April 14, 2009 resulting in his CNMI Labor case being dismissed with prejudice because of this missed deadline. In a companion case filed by Mr. Woodruff in US District Court on behalf of Mr. Cambronero, the court granted summary judgment because Woodruff conceded that the Defendants motion should be granted. (True and correct copies of the Mr. Cambronero's complaint, the Labor Hearing Officer's Order dismissing the Labor case and the Order of the District Court judge granting summary judgment, are attached hereto as Exhibit E and fully incorporated herein by this reference.)

In DC case 2010-03, the client again complains that Mr. Woodruff took on two matters for the client but failed to perform either one and refused to apprise the client of the status of the

.

4

matter or to set an appointment to meet with the client. (A true and correct copy of the client's complaint is attached as Exhibit F and fully incorporated herein by this reference.)

In DC cases 2011-13 and 2011-14, the complainants were interviewed by the undersigned in connection with the filing of their complaint. The Complainant in DC 2011-13, Ms. Ana Reyes, related that after her matter was pending for a considerable amount of time without getting any status of her matter, she began calling Woodruff's office to get the status of her matter. After more than 10 unsuccessful telephone attempts to reach Mr. Woodruff because he was "busy", she started going his office three (3) times a week. When she would arrive she was told by the secretary that the attorney was with a client. Ms. Reyes stated that on several occasions she waited from 1:00 p.m. until 6:00 p.m. to see Mr. Woodruff and during those five (5) hour periods no other client ever came out of his office. At the time she made her complaint Ms. Reyes said "If I'm not at work, I'm at his office." and "In fact, after I leave here, I'm going to his office." (A true and correct copy of the investigative report is attached hereto as Exhibit G and fully incorporated herein by this reference.)

In DC 2011-14, the complainant, Ms. Esperanza Ellis, related similar facts as Ms. Reyes, she paid Mr. Woodruff $3,000 to undertake applying for a green card and a paternity action. The Attorney not only failed to keep the client updated as to the status of her matter but when she also began going to his office in order to get a response on her cases, on October 2011, she was threatened with being removed by the police if she did not stop coming to his office. The paternity action was never filed. (A true and correct copy of the investigative report is attached hereto as Exhibit H and fully incorporated herein by this reference.)

In DC 2012-03, the complainant, Yu Qun, a criminal defendant was represented by Mr. Woodruff. Mr. Yu was charged with serious criminal offenses for which he was convicted by a

jury, on April 29th, 2011. As a result, Mr. Yu was sentenced to substantial total incarceration of 28 years. (A true and correct copy of the Sentencing Order is attached hereto as Exhibit I and fully incorporated herein by this reference.) Mr. Yu alleges that Mr. Woodruff was unprepared during trial and allowed unreliable evidence to be introduced against him. (A true and correct copy of the first complaint by Mr. Yu is attached hereto as Exhibit J and fully incorporated herein by this reference.) In addition, Mr. Yu sent a letter to Superior Court Judge Govendo in which he alleges that Mr. Woodruff misrepresented to his client that an appeal from his conviction had been timely filed. While the DC has not as yet completed its investigation as to the adequacy of the representation at trial, there is a letter from Judge Wiseman, the sentencing judge, to whom Mr. Yu's complaint was referred, indicating that he verified with the Clerk of the Supreme Court that Mr. Woodruff has never filed an appeal of Mr. Yu's case.

Mr. YU also states that Mr. Woodruff ignored numerous requests to confer with his client. According to Mr. Yu, Woodruff conveyed thru an interpreter that he had nothing to talk to the client about. (True and correct copies of Mr. Yu's supplemental complaint and Judge Wiseman's letter are attached hereto as Exhibit K and fully incorporated herein by this reference.)

These complaints, when viewed in their totality, evidence a consistent and persistent pattern of failure to keep his clients advised of the status of their matters and a failure to diligently represent his clients resulting in substantial prejudice to the clients and their cases. Even more egregious, is Mr. Woodruff's attempt to evade the contacts and inquiries of his clients with false statements and even the threat of police intervention because of his inability to admit that he has failed to zealously pursue the filing or completion of their cases.

///

<u>Failure to Respond to DC.</u>

The failure to respond to professional commitments is also evidenced by Mr. Woodruff's failure to respond to most of the complaints filed by his clients with the DC. For example, in DC 2012-04, the investigator, Mr. Adam Harwicke, in the "Section I. Background" of the investigative report outlines that he sent a letter to Mr. Woodruff on June 4, 2012 but no response was received at the time the report was prepared which was October 11, 2012. (A true and correct copy of this report is attached hereto as Exhibit L and incorporated herein by this reference.) In both cases, 2011-13 and 2011-14, the investigator outlines the notice given to Mr. Woodruff and his failure to make any response:

> On December 2, 2011, Notice was sent to Mr. Woodruff ("Attorney") about the filing of the Complaint, via registered mail.
>
> On December 12, 2011, based on the notes from my interview of Ms. Reyes, a letter was sent to Mr. Woodruff advising him of the specific factual allegations and the Rules that were implicated by those factual allegations. The letter specified that Attorney should provide any response to the investigation by December 30th, 2011, or the investigation would be concluded based on the only information available to me.
>
> No response or request for an extension of time was received from Attorney until the date of this Report.

The failure to respond to numerous inquiries from a disciplinary authority, is yet another example of the total lack of concern by this attorney for his clients as well as the ethical standards which govern the profession of which he is a member and supposed to uphold.

III. <u>LEGAL STANDARDS APPLICABLE TO INTERIM SUSPENSION.</u>

A.  *Failure to Cooperate With Investigations Additional Ground for Temporary Suspension.*

The lack of any response to the several complaints that have been investigated by the DC against this attorney, provides additional justification for the remedy of interim suspension, as

requested by the DC.

> It was held by the court in *Re Spiegelman* (1986, 1st Dept) 116 App Div 2d 346, 501 NYS2d 345, that an attorney who failed to co-operate with a disciplinary committee investigating charges of professional misconduct against him was subject to temporary suspension pending determination of the charges.

80 A.L.R.4th 136 (Originally published in 1990)

Mr. Woodruff has not only failed to cooperate or provide any mitigating explanation for his unprofessional conduct, he has utterly ignored with impunity, the majority of the numerous disciplinary complaints which have been lodged against him by his clients and resulted in the investigations listed above. Even with the threat of personal sanctions or censure, Mr. Woodruff cannot respond in a professional manner to the complaints of his clients. Unfortunately, the failure to respond to the numerous ethical complaints is consistent with the lack of diligence with which he has handled the cases of his clients and are the subjects of the above complaints.

B.    *Legal Standard For Imposition of Temporary Suspension.*

While we tread in uncharted waters in this jurisdiction, other courts have used the standards applicable to a preliminary injunction to determine whether there is sufficient cause to suspend an attorney pending the final adjudication of ethical complaints.

> We therefore have applied to this case the standards governing the issuance of preliminary injunctions, adapted to the context of a professional disciplinary proceeding. Thus we have taken into account (1) whether the attorney is causing irreparable public harm by misappropriating client funds to his own use, or by other means, (2) whether there is a substantial likelihood, based on all the available evidence, including affidavits, that a significant sanction will be imposed on the attorney at the conclusion of any pending disciplinary proceedings, (3) whether the balance of injuries, as between attorney and clients, favors a temporary suspension, and (4) whether the public interest would be served by a temporary suspension.

*In re Malvin*, 466 A.2d 1220, 1223 (D.C. 1983)

8

In weighing these factors the DC respectfully submits that the frequency and the severity of the consequences which are contained in these complaints weigh heavily in favor of this temporary suspension. The factors outlined by the *Malvin* court, weigh heavily in favor of granting the relief requested to protect the public from the further unprofessional and systematic misconduct of the attorney in question.

Under the first factor of *Malvin*, it is apparent that the failure of Mr. Woodruff to exercise due diligence in the representation of his clients has resulted in severe detriment to them. In DC case 2009-01, the client's case was dismissed with prejudice because of his failure to appear and thereafter the appeal of that dismissal was also dismissed for failure of Woodruff to diligently prosecute the appeal. Again, in 2009-05 the client's labor case was also dismissed because Woodruff missed the filing deadline and summary judgment was entered because he failed to effectively oppose the motion for summary judgment. In 2012-03, it is alleged that Woodruff not only missed the filing deadline for an appeal and also misrepresented to the client that the appeal had actually been filed. Resulting in the client being unable to have his 28 year sentence of incarceration reviewed on appeal. The severity of the harm to the clients in these three complaints alone is sufficient to justify the interim suspension requested. Under factor #2, the DC has investigated the majority of the matters cited above and it has already found that the factual allegations justify recommending disciplinary prosecution. When the number of complaints involved and severity of the misconduct alleged, are taken into consideration it is reasonable to suggest that substantial sanctions will be imposed on the attorney in question once the complaints are completely adjudicated.

Under factor # 3, the DC has demonstrated that the nature of the injuries inflicted on the clients are not only severe but there is the continuing danger, not based on mere speculation, but

9

on the complaints which continue to be filed against this attorney. To demonstrate more graphically, this attorney has the dubious distinction of being cited by two different federal judges for his unprofessional conduct, causing the judges to use descriptions such as his failure "... to meet minimum professional standards in client representation...) *Supra* and more recently, Judge Manglona dismissed a clients' case with prejudice and suggested that the clients' remedy may be a "malpratice" action against their attorney. (A true and correct copy of the Order Dismissing Amended Complaint With Prejudice, entered on November 16, 2012, is attached hereto as Exhibit K and fully incorporated herein by this reference.) The Chief Judge also ordered Woodruff to serve a copy of her dismissal Order on each of his clients. The Order also contains an excerpt from the Amended Complaint drafted by Mr. Woodruff and filed on the very last moment before the deadline was to expire. It is a further graphic example of the lack due diligence displayed by this attorney in pursuing the legal matters entrusted to him by his clients.

Under factor #4, the DC submits that this is the most compelling factor in favor of the temporary suspension prayed for. As the cases below explain, the primary purpose of this remedy is to protect the public from the type of systematic misconduct as alleged in this Application:

> ... the public must be protected from the systematic misconduct of attorneys. His conduct must be evaluated in light of the primary purpose of disciplinary proceedings, which is not punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession." *In Re Stout*, 75 N.J. 321, 325, 382 A.2d 630 (1978)

*Matter of Getchius*, 88 N.J. 269, 276, 440 A.2d 1341, 1344 (1982)

In conjunction with the protection of the public, there is the strong public policy favoring preservation of the public trust and confidence in the system of justice under which all members of this bar association and even the judiciary form component parts.

10

> Discipline does not have as its primary object punishment of the offender. Its basic purpose is protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession. (Internal citation omitted) We must also see to it that public confidence in the trustworthiness of the bar as a whole is not diminished.

*Matter of Stout*, 75 N.J. 321, 325, 382 A.2d 630, 632 (1978)

The public cannot have confidence in a system that tolerates the type of misconduct described in this Application. As each new complaint against this attorney is filed, the reputation of all those who are part of the system is tarnished.

IV.   CONCLUSION.

The DC considered this matter in two separate monthly meetings and on the second occasion, which was on December 12, 2012, the members, with all five (5) members present and by unanimous vote, recommended the filing this Application based on the facts and circumstances described herein.

V.   RELIEF REQUESTED.

The DC respectfully recommends that:

A.   An Order to Show Cause directed to Stephen C. Woodruff, affording him a period of 30 days to show cause why he should not be temporarily suspended from the practice of the law in the CNMI Courts, pending the resolution of the ethical complaints listed in this Application;

B.   Upon setting such hearing for the OSC, that notice to the DC be provided in order for a representative of said body to appear and be heard in support of this Application;

C.   Upon entry of such suspension, Mr. Woodruff be given Fifteen (15) days to notify all of his clients of said suspension, in writing;

D.   Upon expiration of the Fifteen (15) day period for notice to his clients, that he shall submit a declaration under penalty of perjury to the court listing the name of each

11

client so notified, a copy of the written notification provided to each client and when and how such notification to each client was made;

E.     If said attorney fails to timely comply with the notice requirements stated in the preceding paragraphs C and D, or if the attorney fails to respond to this matter, then the DC shall be authorized to publish a notice to the public advising of his temporary suspension;

F.     If the DC is required to notify Mr. Woodruff's clients of the interim suspension, then all the costs of such notice shall be taxed to Mr. Woodruff;

G.     Such further sanctions as the Court deems appropriate, after any hearing held pursuant to the Order to Show Cause hearing in this matter.

Respectfully submitted this ___rd day Of January, 2013.


By:_____
        Timothy H. Bellas, On Behalf of the
        CNMI Disciplinary Committee

12

Thomas E. Clifford, F0210
Attorney at Law
2nd Floor, Alexander Building, San Jose
P.O. Box 506514
Saipan, MP  96950
Tel. (670)235-8846
Fax (670)235-8848

Attorney appointed to prosecute disciplinary action

## IN THE SUPERIOR COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE MATTER OF:

STEPHEN C. WOODRUFF,

Respondent.

CIVIL ACTION No. 13-0017
DISCIPLINARY CASES:
   1) 2008-008;
   2) 2008-012;
   3) 2009-005;
   4) 2011-012;
   5) 2011-013;
   and
   6) 2011-014

**SUBMITTED UNDER SEAL**
(Strictly confidential pursuant to
Disciplinary Rule 7(f))

**COMPLAINT**

## I.
## JURISDICTION AND PARTIES

1. This Court has jurisdiction over this matter pursuant to 1 CMC § 3401 and the

*Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the*

*Commonwealth,* which rules were duly promulgated by the Commonwealth Supreme

Court, and which rules lawfully govern the professional conduct of lawyers practicing

Page 1 of 15 pages

before the Commonwealth courts.

2. Respondent Stephen C. Woodruff ("Mr. Woodruff") was at all times relevant to the conduct made the basis of this complaint an attorney licensed to practice law before the Courts of the Commonwealth of the Northern Mariana Islands.

## II.
## DISCIPLINARY CHARGES

3. This single Complaint is brought with respect to six separate disciplinary complaints against Mr. Woodruff because all six matters involve a common pattern of failing to competently and diligently represent clients, as well as the failure to keep clients reasonably informed of the status of their matters.

### 2008-08

4. On or about January 23, 2007, Kenneth and Wantapha Warfle retained Mr. Woodruff to represent them in the process of obtaining a resident alien card for Wantapha. The Warfles gave Mr. Woodruff a $165 processing fee, and an additional $600 in attorney's fees. The attorney's fees were paid in the form of a check that cleared on or about January 25, 2007.

5. During the period of March to September 2007 the Warfles repeatedly and unsuccessfully attempted to contact Mr. Woodruff regarding the status of their application.

6. On or about September 18, 2007, the Warfles received notice from USCIS that various application documents had been received, but only as of July 2007.

Page 2 of 15 pages

7. In December 2007, the Warfles received notice from USCIS that their application was deficient in that additional, current financial information was required. Mr. Warfle provided this information.

8. On or about February 11, 2008, the Warfles received notice from USCIS that the check dated January 23, 2007 could not be cashed, and so a money order was sent in via express mail.

9. In March 2008, the Warfles received notice that the application had been rejected for non-payment.

10. On or about May 9, 2008, the Warfles received notice from USCIS that their interview was scheduled to take place while Mr. Warfle would be away on work (he is a chief engineer in the U.S. maritime industry) and/or for medical treatment (spine surgery in Indonesia). Mrs. Warfle then met with Mr. Woodruff to move the appointment, and Mr. Woodruff assured Mr. Warfle via Mrs. Warfle's cellular telephone during that meeting that Mr. Woodruff would contact the Guam office of USCIS to reschedule the interview.

11. On or about May 12, 2008, Clyde Gordon spoke with Mr. Woodruff and Mr. Woodruff assured Mr. Gordon that Mr. Woodruff had rescheduled the interview.

12. In June 2008, the Warfles received notice that their application had been denied for failure to attend the interview.

13. Mr. Woodruff also failed to be reasonably responsive to client inquires and to keep his clients reasonably informed of the status of their application.

Page 3 of 15 pages

14. In sum, eighteen months into the process, the Warfles' application for a resident alien card was not only *not* processed in a timely, diligent and competent fashion, but the application was denied.

15. The Warfles filed a complaint with the CNMI Bar Association Disciplinary Committee ("DC").

16. The DC determined that Mr. Woodruff had violated the Model Rules of Professional Conduct ("MRPC"), and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

17. The Superior Court then appointed this attorney to prosecute the matter.

18. Mr. Woodruff's conduct as set forth above in Paragraphs 4 through 14 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that the application should not have taken so long to process, nor should it have still been in a 'denied' status after eighteen months.

19. Mr. Woodruff's conduct as set forth above in Paragraphs 4 through 14 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to be reasonably responsive to client inquires and to keep his clients reasonably informed of the status of their application.

**2008-012**

20. Sometime in late 2007, Ambrosio V. Baing ("Mr. Baing") retained Mr. Woodruff to represent him in an appeal from a Labor case, Labor Case No. 07-236.

21. At most, Mr. Woodruff filed a hand written appeal that indicated that additional

Page 4 of 15 pages

documents would be submitted. However, no such additional documents were ever submitted, and Mr. Woodruff never took any further actions in the appeal.

22. Mr. Baing repeatedly attempted to communicate with Mr. Woodruff during the period from December 2007 through September 2008, and was largely unsuccessful in being able to communicate with Mr. Woodruff directly or in obtaining any meaningful response regarding the status of his appeal.

23. Mr. Woodruff subsequently admitted to the DC investigating attorney that he had not filed anything beyond the initial handwritten filing, and that the true purpose of the appeal was so that Mr. Baing could remain in the CNMI during the pendency of his appeal.

24. Mr. Baing filed a complaint with the DC.

25. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

26. The Superior Court then appointed this attorney to prosecute the matter.

27. Mr. Woodruff's conduct as set forth above in Paragraphs 20 through 23 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that the appeal, if properly undertaken in the first place, should have been pursued with appropriate factual and legal positions submitted and then argued, and then otherwise competently and diligently pursued until a decision was obtained.

28. Mr. Woodruff's conduct as set forth above in Paragraphs 20 through 23 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to be reasonably responsive to

Page 5 of 15 pages

client inquires and to keep his client reasonably informed of the status of his appeal.

29. Mr. Woodruff's conduct as set forth above in Paragraphs 20 through 23 also violated MRPC 3.1, Meritorious Claims and Contentions, and 3.3, Candor Toward the Tribunal, in that the appeal should never have been filed in the first place since the true purpose of the appeal was merely to prolong the ability of Mr. Baing to remain in the CNMI, and as such, the appeal was an abuse of process and also a lack of candor toward the tribunal, the Labor hearing office.

**2009-005**

30. Mr. Woodruff represented Honorio G. Cambronero ("Mr. Cambronero") in *Honorio G. Cambronero v. RJCL Corporation, et al.*; United States District Court for the Northern Mariana Islands Civil Action No. 08-0033 (the "Federal case")

31. The defendants in the Federal case moved for summary judgment. Mr. Woodruff filed a response in which he conceded that the motion was well taken as to the federal causes of action, but he requested that the Commonwealth law claims be dismissed without prejudice. Mr. Woodruff did not, however, file any substantive opposition in support of the Commonwealth claims, nor did he attend the hearing on the motion.

32. As a result, the court in the Federal case deemed the entire motion for summary judgment unopposed, granted the motion in its entirety, entered judgment in favor of the defendants and awarded them costs.

33. Mr. Woodruff also represented Mr. Cambronero in *In the Matter of Honorio G. Cambronero v. RJCL Corporation*; CNMI Labor Case No. 08-117 (the "Labor case").

Page 6 of 15 pages

34. The parties in the Labor case stipulated that Mr. Cambronero's response to RJCL Corporation's motion to dismiss could be filed not later than April 14, 2009.

35. Mr. Woodruff failed to file any response by April 14, 2009.

36. On April 24, 2009, RJCL Corporation noted that there was still no response and again moved to dismiss.

37. On April 27, 2009 the hearing officer dismissed the Labor case with prejudice because Mr. Woodruff had still not filed any response to RJCL Corporation's motion to dismiss.

38. Mr. Woodruff failed to communicate with Mr. Cambronero regarding his handling of the Federal case or the Labor case, and he never explained why he took, or failed to take, the actions that he did.

39. As a result, Mr. Cambronero filed a complaint with the DC

40. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

41. The Superior Court then appointed this attorney to prosecute the matter.

42. Mr. Woodruff's conduct as set forth above in Paragraphs 30 through 38 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligent prosecute both the Federal case and the Labor case.

43. Mr. Woodruff's conduct as set forth above in Paragraphs 30 through 38 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the two cases.

**2011-012**

44. Mr. Woodruff represented Emily Santos Garde ("Ms. Garde") in her divorce. The representation began sometime on 2008. Ms Garde paid Mr. Woodruff $1,200 to handle the case.

45. On or about May 26, 2011, Associate Judge Inos held a hearing in the case and verbally granted the divorce.

46. The divorce should have been completed within months, but instead lasted for years due to the lack of diligence by Mr. Woodruff.

47. Then, following the May 2011 hearing, Mr. Woodruff failed to submit a proposed divorce decree and/or failed to follow up with the Court to obtain, within any reasonable timeframe, the duly entered, written decree of divorce.

48. Beginning about one month following the May 2011 hearing, Ms. Garde followed up repeatedly in an effort to obtain her decree of divorce. Mr. Woodruff told Ms. Garde her to stop calling and going to his office because the proposed decree was with the court.

49. Ms. Garde contacted the court and was informed that the proposed decree had not been submitted by Woodruff.

50. Through the course of the representation, Ms. Garde became increasingly frustrated with the lack of communications from Mr. Woodruff, and the lack of progress on her case.

51. In September 2011, Ms. Garde filed a complaint with the DC.

52. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the

matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The

DC's investigating attorney's report is dated January 21, 2012, and that attorney notes

that as of the date of that report, Ms. Garde still did not have a copy of her divorce

decree.

53. The Superior Court then appointed this attorney to prosecute the matter.

54. Mr. Woodruff's conduct as set forth above in Paragraphs 44 through 50 was a

violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently

and diligently litigate the divorce to its completion.

55. Mr. Woodruff's conduct as set forth above in Paragraphs 44 through 50 also violated

MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably

informed of the status of her case, and specifically the status of obtaining a duly entered,

written decree of divorce following the hearing.

### 2011-013

56. Mr. Woodruff was retained by Ana E. Reyes ("Ms. Reyes") in 2009 to represent her

in connection with her application for U.S. resident alien immigration status. Ms. Reyes

paid Mr. Woodruff a total of $2,510 in the last three months of 2009 to provide this legal

service.

57. Ms. Reyes was contacted by Mr. Woodruff's office in June 2010 regarding Ms.

Reyes providing certain documentation in support of her application. Ms. Reyes

provided that documentation to Mr. Woodruff's office within several weeks following the

request.

58. Ms. Reyes heard nothing further from Mr. Woodruff or his office, and so in January 2011 she went to Mr. Woodruff's office to inquire about the status of her application. She was shown two receipts from USCIS, but was given no other information regarding the status of her application.

59. Ms. Reyes subsequently called at least ten times to Mr. Woodruff's office but was never able to speak to Mr. Woodruff, nor did she ever receive a return call, nor did she otherwise receive any communication from anyone on Mr. Woodruff's behalf with any form of meaningful information regarding the status of her application.

60. Ms. Reyes then began going to Mr. Woodruff's office approximately three times a week in an effort to speak with him or obtain some kind of meaningful update on the status of her application. She would sometimes wait for as long a five hours, but was never able to get any meaningful update.

61. On or about November 15, 2011, Ms. Reyes filed a complaint with the DC.

62. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 27, 2012, and that attorney notes that as of the date of that report, Mr. Woodruff had not responded to his inquiries to Mr. Woodruff.

63. The Superior Court then appointed this attorney to prosecute the matter.

64. Mr. Woodruff's conduct as set forth above in Paragraphs 56 through 60 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently

Page 10 of 15 pages

and diligent pursue the application to its completion, whether a denial or an approval.

65. Mr. Woodruff's conduct as set forth above in Paragraphs 56 through 60 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of her application, and in fact, appears to have actively avoided providing her any update.

66. Given the years that have passed and the lack of any information regarding the status of the application, and based on information and belief, there is reason to allege that Ms. Reyes' funds that were paid to Mr. Woodruff may not have been held in trust in violation of MRPC 1.15(a) (this counsel will request at the scheduling conference that the Court direct an appropriate accounting, which will either support this particular claim or else result in its dismissal).

**2011-014**

67. Mr. Woodruff was retained by Esperanza Ellis ("Ms. Ellis") in 2008 to obtain Immediate Relative status for her under the then applicable CNMI Immigration laws. Ms. Ellis paid Mr. Woodruff $400 in attorney's fees and $50 for the processing cost.

68. Mr. Woodruff never processed the application.

69. Months later, in or about December 2008, Ms. Ellis went to CNMI Immigration and learned that no application had ever been submitted. She then paid the fee herself and obtained an Immediate Relative identification card.

70. Mr. Woodruff was again retained by Ms. Ellis on or about August 25, 2009 to represent her in applying for U.S. resident alien immigration status and in a paternity

Page 11 of 15 pages

action. Ms. Ellis paid Mr. Woodruff a one-time flat fee of $3,000 to cover his fees and the costs in connection with both matters. Mr. Woodruff told Ms. Ellis that $900 was for fees and the balance of the $3,000 was for costs, and that the processing of the resident alien application would take three months.

71. Mr. Woodruff never filed the paternity action.

72. With respect to the resident alien application, Ms. Ellis was not asked at the 2009 meeting to sign any forms.

73. Ms. Ellis followed up with Mr. Woodruff's office in November 2009 and was told she had to go to Pacific Medical Center ("PMC") for an examination. She paid an additional $400 to PMC for this examination.

74. Five months after the retention, in January 2010, Ms. Ellis was asked to return to Mr. Woodruff's office to sign the U.S. Immigration application forms.

75. Over the ensuing months and on into 2011, Ms. Ellis attempted repeatedly and unsuccessfully to determine the status of her application. She first telephoned Mr. Woodruff once a week and when that was ineffective she began going to Mr. Woodruff's office once a week and waiting for up to three hours a visit in an unsuccessful effort to obtain a meaningful status report on her application.

76. On or about October 2, 2011, Mr. Woodruff threatened to call the police if Ms. Ellis continued to come to his office. On this date, Mr. Woodruff showed Ms. Ellis a receipt from the U.S. Post Office, and he told her that her application had been mailed to the USCIS Chicago office.

77. Ms. Ellis used the tracking number on the receipt to determine that the corresponding envelope had been mailed on April 14, 2011 and received on April 26, 2011.

78. Mr. Woodruff subsequently resubmitted the applications after learning that they had been sent to the wrong processing center, and his request for a fee waiver was denied due to a lack of diligence in processing the application in the first place.

79. At no time throughout the representation did Mr. Woodruff ever provide Ms. Ellis copies of the papers that had been submitted to USCIS, nor did he ever keep her reasonably informed of the status of her application.

80. On or about November 15, 2011, Ms. Ellis filed a complaint with the DC.

81. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 27, 2012, and that attorney notes that as of the date of that report, Ms. Ellis still not been informed of the status of her application.

82. The Superior Court then appointed this attorney to prosecute the matter.

83. Mr. Woodruff's conduct as set forth above in Paragraphs 67 through 79 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently do anything regarding the paternity case, and he failed to competently and diligently handle the resident alien application.

84. Mr. Woodruff's conduct as set forth above in Paragraphs 67 through 79 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably

Page 13 of 15 pages

informed of the status of her matters.

85. Given the years that have passed and the failure to file the paternity action as well as the lack of any information regarding the status of the application, and based on information and belief, there is reason to allege that Ms. Ellis' funds that were paid to Mr. Woodruff may not have been held in trust in violation of MRPC 1.15(a) (this counsel will request at the scheduling conference that the Court direct an appropriate accounting, which will either support this particular claim or else result in its dismissal).

**MRPC 8.4**

86. Based on the factual allegations underlying the six Disciplinary Cases set forth above, Mr. Woodruff also violated MRPC 8.4(a), (c) and (d) in that the conduct above violated other Rules (8.4(a)), involved deceit and misrepresentations to his clients (8.4(c)) and given the series of violations, taken as a whole, has had a prejudicial effect on the administration of justice (8.4(d)).

### III.
### PRAYER FOR RELIEF

87. Wherefore, Mr. Woodruff should be disciplined as the Commonwealth Superior Court and/or the Commonwealth Supreme Court determine is

/

/

/

/

Page 14 of 15 pages

appropriate under the facts and the applicable law.

Respectfully submitted this 22nd day of January, 2013.

_____
Thomas E. Clifford, F0210
Appointed Counsel

IN THE
**SUPREME COURT**
OF THE
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

**IN RE DISCIPLINARY PROCEEDINGS OF STEPHEN C. WOODRUFF,**
Respondent.

**SUPREME COURT NO. 2013-SLD-0001-ADA**

**OPINION**

**Cite as: 2013 MP 1**

Decided February 1, 2013

Timothy H. Bellas, Saipan, MP, for Petitioner CNMI Bar Disciplinary Committee
Stephen     C.     Woodruff,     Saipan,     MP,     Respondent,     Pro     Se

BEFORE: ALEXANDRO C. CASTRO, Chief Justice; JOHN A. MANGLONA, Associate Justice; ROBERT C. NARAJA, Justice Pro Tem.

CASTRO, C.J.:

The CNMI Bar Association Disciplinary Committee ("Disciplinary Committee") requests an interim suspension of attorney Stephen C. Woodruff ("Woodruff") pending the resolution of eleven ethical complaints against him. Woodruff, in contrast, claims: (1) the Disciplinary Committee needed to serve him physically with the motion for interim suspension, rather than through File & ServeXpress; (2) due process requires more than nineteen days notice prior to a hearing; and (3) this Court does not have the authority to issue an interim suspension because the disciplinary rules and procedures do not expressly provide for interim suspensions. For the reasons stated below, Woodruff is temporarily suspended, effective immediately, pending the resolution of the disciplinary matters referred to the Superior Court for prosecution. It is further ordered that Woodruff: (1) provide this Court a complete list of his active clients, in chronological order based on nearest deadline, no later than February 6, 2013; (2) provide his current clients a copy of this opinion no later than February 19, 2013; and (3) file a proof of service of the client notifications with this Court no later than February 22, 2013.

## I. Factual and Procedural Background

On January 4, 2013, the Disciplinary Committee filed an application with this Court (but did not serve Woodruff with a copy) requesting an Order to Show Cause against Woodruff, an attorney admitted in the Commonwealth, regarding why he should not be suspended from practicing law until the resolution of several disciplinary matters currently pending before the Disciplinary Committee and the Superior Court. In support, the Disciplinary Committee alleges Woodruff has had eleven ethical complaints filed with the CNMI Bar against him in the last five years: nine currently before the Superior Court for prosecution and two still before the Disciplinary Committee. Disciplinary Committee Application for Interim Suspension of Attorney from the Practice of Law at 2-3 ("Application"). The Disciplinary Committee alleges this pattern of misconduct violates Woodruff's duties of competence, diligence, communication, and expediting litigation under Rules 1.1, 1.3, 1.4(a)(3), and 3.2, respectively, of the ABA Model Rules of Professional Responsibility.

For example, one complaint asserts Woodruff filed a labor action in United States District Court, but did not appear at scheduled proceedings. The federal court dismissed the case with prejudice and ordered Woodruff to inform his client in writing that the client "may have a cause of action . . . for failure to meet minimum professional standards in client representation." *Feliciano v. Eastern Hope Corp.*, Civ. No. 08-0001 (D. N. Mar. I. Dec. 1, 2008) (Order Dismissing Lawsuit with Prejudice at 3). Woodruff, however, downplayed the District Court's ruling at the Order to Show Cause hearing ("OSC Hearing")

before this Court. He called the notification a normal part of orders in the federal district court for the Northern Mariana Islands when an attorney misses a proceeding and, in any event, when the client filed a malpractice suit against him, Woodruff won. Following the District Court's dismissal with prejudice, Woodruff appealed to the Ninth Circuit Court of Appeals, which dismissed the appeal because Woodruff failed to file an opening brief. *Feliciano v. Eastern Hope Corp.*, Civ. No. 09-15167 (9th Cir. Oct. 6, 2009) (Order at 1).

¶ 4         A client in another labor case filed a complaint with the CNMI Bar alleging Woodruff missed a critical deadline in the client's case, which resulted in dismissal with prejudice. *Cambronero v RJCL Corp.*, No. 08-117 (NMI Dep't of Labor April 27, 2009) (Order Dismissing Case at 1) (noting Cambronero, through his lawyer Woodruff, failed to oppose the motion to dismiss). At the OSC Hearing, Woodruff claimed the judge changed dates without providing Woodruff notice. Likewise, in the client's companion case in United States District Court, that court granted summary judgment against Woodruff's client because Woodruff conceded the court should grant defendant summary judgment. *Cambronero v. RJCL Corp.*, Civ. No. 08-0033 (D. N. Mar. I. Mar. 6, 2009) (Order Granting Defendant's Motion for Summary Judgment as to All Claims and Taking All Matters, Including Trial, Off-Calendar at 2).

¶ 5         In addition, a complaint filed with the CNMI Bar by a criminal defendant client of Woodruff made three allegations. First, the client claimed Woodruff was unprepared at trial and allowed the government to introduce unreliable evidence against him. A court subsequently sentenced the client to twenty-eight years in prison. *Commonwealth v. Qun Yu*, Crim. No. 10-0154 (NMI Super. Ct. July 20, 2011) (Sentence and Commitment Order at 5). At the OSC Hearing, Woodruff characterized the trial as well-litigated by both sides. Second, the complaint alleged Woodruff misrepresented he had filed an appeal, when he had not. Woodruff, in contrast, disagrees, stating during the OSC Hearing that he filed a renewal of motion for judgment as a matter of law, which the judge has not responded to despite sentencing over a year ago. According to Woodruff, the motion tolls the period he has to make an appeal. And, third, the complaint asserted Woodruff ignored numerous requests to talk to his client. Woodruff, in contrast, claims he has visited this client on a number of occasions, including recently.

¶ 6         Like the previous client, another client filed a complaint with the CNMI Bar claiming Woodruff avoided communicating with her. In that case, after waiting for an undisclosed period of time, the client allegedly called Woodruff's office to get an update on her case but did not receive one. Following more than ten unsuccessful telephone attempts, she alleges she began visiting Woodruff's office three times a week. During those visits, a secretary would tell her Woodruff was with a client, but she waited from 1:00 p.m. to 6:00 p.m. on several occasions without seeing another client leave Woodruff's office. At the OSC Hearing, Woodruff countered that in spite of the complaint the woman has continued to use him as her attorney.

¶ 7        Similarly, in a paternity action, a client filed a complaint alleging Woodruff not only failed to keep her updated on her case, but also threatened to have the police remove her from his office if she continued coming there to seek updates. Woodruff, according to the complaint, never filed the client's paternity action.

¶ 8        In light of the Disciplinary Committee's allegations, on January 4, 2013, we granted its emergency application for an order to show cause why Woodruff should not be suspended. We served Woodruff in person at the courthouse on the same day with an order, which gave him ten days to respond in writing and set a hearing for January 16, 2013. At 3:10 a.m. the day after his response was due, Woodruff filed a response concurrently opposing the Disciplinary Committee's application and seeking a continuance. Despite being untimely under NMI Rule for Electronic Filing and Service 6.2 and non-compliant with NMI Supreme Court Rule 31-1, governing requests for a continuance, we nonetheless granted Woodruff a one-week continuance. The Disciplinary Committee then filed a Supplemental Investigative Report, including four exhibits, the day before the hearing without permission.[1] At 1:39 a.m. on the day of the hearing, in turn, Woodruff filed a renewed request for a continuance, which both rebutted the Disciplinary Committee's supplemental filing and asked for another extension. We ignored the request both as untimely and because it failed to follow NMI Supreme Court Rule 31-1. Woodruff then filed supporting documents thirty-eight minutes prior to his hearing. This opinion follows that hearing, which took place on January 23, 2013, nineteen days after we issued the Order to Show Cause.

## II. Jurisdiction

¶ 9        We have inherent jurisdiction to regulate attorney conduct. NMI CONST. art. IV, § 3 ("The supreme court shall have all inherent powers . . . necessary to the complete exercise of its duties."); PL 10-26 §§ 1-2 (affirming the Supreme Court's duty to govern the practice of law in the Commonwealth); NMI R. DIS. 1 ("Any attorney . . . who practices law in the Commonwealth of the Northern Mariana Islands is subject to the disciplinary jurisdiction of the Courts of the Commonwealth . . . .").

## III. Analysis

### A. Sufficiency of Service

¶ 10       Before reaching the suspension question, we first look at the Disciplinary Committee's failure to serve Woodruff. At the OSC Hearing, the Disciplinary Committee claimed no rule required them to serve

---

[1]        For actions outside the normal appellate briefing process, petitioners may not file a reply brief unless requested or ordered by the Court. *See* NMI SUP. CT. R. 21-1 (original actions "must conform, so far as is practicable, to the [writ] procedures prescribed in Rule 21(a) and (b)"); NMI SUP. CT. R. 21(b)(2) (limiting responses to "all persons directed to respond" by the Court). Similarly, unless ordered to do so by the Court, parties may not file a reply brief, which the Disciplinary Committee's Supplemental Investigative Report appears to be, within three days of oral argument. NMI SUP. CT. R. 31(a)(1). Because we did not order the Disciplinary Committee to submit a reply brief and they neither asked for permission nor filed it at a proper time, we will not consider it for purposes of this application.

Woodruff. Woodruff, in contrast, criticized the Disciplinary Committee's failure to serve him, but did not challenge this Court's jurisdiction. Opposition to Application for Interim Suspension of Attorney from the Practice of Law and Request for Continuance at 2 ("Opposition").

¶ 11     At the outset, we note this action is procedurally unique because while we have issued interim suspensions before, which we will discuss further below, the emergency nature and lack of standards for seeking an interim suspension meant all parties had to make their best judgment without the benefit of guidance. Nonetheless, the Disciplinary Committee should have served Woodruff. NMI Rule of Discipline 9(c) requires service on respondent attorneys. Likewise, NMI Supreme Court Rule 21-1, which governs original actions before this Court, obliges the moving party to "fil[e] a petition with the Clerk with proof of service on the respondents." Both rules require service, which comports with other court rules placing the burden of service on the movant. *E.g.*, NMI R. CIV. P. 4(c)(1); NMI R. CRIM. P. 4(d)(1), 4(d)(3). As a result, we hold that the Disciplinary Committee must serve the opposing party and provide us with proof of service before filing an application for interim suspension in the future.

¶ 12     Despite the Disciplinary Committee's defective service, we nonetheless find it remedied in the narrow circumstances of this case because: (1) we served Woodruff on the same day as the Disciplinary Committee filed its application; (2) Woodruff appeared at the OSC Hearing, where we allowed him to argue well beyond our usual time limits; and (3) this is the first time we have articulated the precise contours of the rule regarding interim attorney suspensions. Notably, because of the first two factors, Woodruff had the same notice and *more* opportunity to be heard than he would have had if the Disciplinary Committee had properly served him.

*B. Interim Suspension*

¶ 13     Finding the Disciplinary Committee's deficient service cured here, we turn to the application to suspend Woodruff pending the outcome of disciplinary proceedings before the Superior Court and the Disciplinary Committee. The Disciplinary Committee seeks to suspend Woodruff in the interim for three reasons: (1) the number of complaints filed against Woodruff; (2) the repetitive nature of the complaints, suggesting Woodruff has not learned from past mistakes; and (3) the need to protect the public from further harm.

¶ 14     Woodruff counters that "the number of complaints is actually quite small – likely around one percent – in relation to the number of clients I have served over the period covered by the complaints." Opposition at 4. He also objects to the repetitive nature allegation, stating: "to the best of my present recollection, this is the first time in [the Disciplinary Committee's] dealing with me that the DC or anyone associated with it has ever articulated any specific Rule of Professional Conduct it is thought I may have violated." *Id.* Finally, Woodruff argues that an interim suspension "would be disastrous to my clients and . . . harmful to the public, especially to the economically, politically, and socially disadvantaged

elements of the public and particularly to aliens" because he is "the only attorney qualified, capable, and willing to handle their type of case for a fee they can afford (or on a pro bono publico basis)." *Id.* at 6.

¶ 15 We have the authority and jurisdiction to regulate attorney conduct. NMI CONST. art. IV, § 3 ("The supreme court shall have all inherent powers . . . necessary to the complete exercise of its duties."); PL 10-26 §§ 1-2; NMI R. DIS. 1. That includes suspending attorneys for, among other things, violating the ABA Model Rules of Professional Conduct. NMI R. DIS. 2(a), 3(a); *Saipan Lau Lau Dev., Inc. v. Superior Court*, 2001 MP 2 ¶ 37 ("A court has the well-established inherent authority to suspend or disbar attorneys on its own initiative.") (citing *In re MacKay*, 416 P.2d 823, 837 (Alaska 1964)). When necessary to guard the administration of justice, maintain the dignity of the courts and the profession, or protect the public, we may also issue an interim suspension pending the resolution of disciplinary proceedings. *See Tenorio v. Superior Court*, 1 NMI 112, 127 (1990) (stating we have "the inherent authority to impose sanctions . . . not specifically addressed by rule"); *cf.* NMI R. JUD. DIS. P. 32 (setting out the standard for issuing an interim suspension of a judicial officer). For instance, we have suspended attorneys in the interim for inappropriate statements and behavior in briefs and oral argument, *Saipan Lau Lau Dev., Inc.*, 2001 MP 2 ¶¶ 1, 10, 39, and for serious inaccuracies in a government attorney application pertinent to an attorney's fitness to practice law in the Commonwealth. *In re Dollison*, SUPDA No. 2000-001 (NMI Sup. Ct. June 27, 2000) (Opinion at 5-7). Finally, we may consider an attorney's cumulative conduct when considering what sanction to impose. NMI R. DIS. 3(b).

¶ 16 While we have the authority to suspend an attorney, including before a hearing, we have not established a test for deciding when to issue an interim suspension. Other jurisdictions, however, have applied a standard similar to the standard governing issuance of preliminary injunctions. *In re Malvin*, 466 A.2d 1220, 1223 (D.C. 1983); *People v. Varallo*, 913 P.2d 1, 5-6 (Colo. 1996); *In re Ellis*, 680 N.E.2d 1154, 1157, 1160 (Mass. 1997); *In re Trujillo*, 24 P.3d 972, 979 (Utah 2001). We find their reasoning persuasive and, therefore, adopt it here. Thus, in evaluating whether to issue an interim suspension, we consider whether the CNMI Bar has shown: (1) the public will suffer irreparable harm if the attorney continues practicing law prior to the resolution of disciplinary proceedings; (2) a substantial likelihood exists, based on all the evidence available, of clear and convincing evidence showing attorney misconduct; (3) the balance of hardships, as between attorney and clients, favors interim suspension; and (4) an interim suspension would serve the public interest. Like preliminary injunctions, we balance these factors and weigh whether, in light of the evidence, an interim suspension is warranted. *See In re Malvin*, 466 A.2d at 1223 (requiring courts to consider each factor in analyzing whether an interim suspension is warranted).

¶ 17 Applying these principles, we find an interim suspension warranted and suspend Woodruff, effective immediately, pending the resolution of attorney disciplinary proceedings against him. First, the

public will suffer irreparable harm if Woodruff continues practicing law prior to resolution of the disciplinary proceedings. Woodruff has eleven complaints against him alleging conduct ranging from lying about filing a criminal appeal to having several cases dismissed with prejudice due to lack of diligence. If true, these complaints suggest Woodruff routinely fails to follow through regarding cases he takes. Woodruff's clients, in turn, permanently lose their claims. We decline to risk a similar fate for current and future clients.

¶ 18    Second, a substantial likelihood exists, based on all the evidence available, of clear and convincing evidence showing attorney misconduct. Clients have filed at least eleven complaints in the last five years against Woodruff. In many instances, court rulings and statements reinforce the credibility of these allegations. For instance, the United States District Court ordered Woodruff to notify his client in writing that the client "may have a cause of action . . . for failure to meet minimum professional standards in client representation." *Feliciano v. Eastern Hope Corp.*, Civ. No. 08-0001 (D. N. Mar. I. Dec. 1, 2008) (Order Dismissing Lawsuit with Prejudice at 3). Similarly, the Ninth Circuit Court of Appeals dismissed Woodruff's appeal in the same case because he failed to file an opening brief. *Feliciano v. Eastern Hope Corp.*, Civ. No. 09-15167 (9th Cir. Oct. 6, 2009) (Order at 1). Woodruff allegedly missed a critical deadline in another case, resulting in dismissal with prejudice. Taken together, the eleven complaints, as well as the court orders and statements related to them, demonstrate a substantial likelihood the Disciplinary Committee will show by clear and convincing evidence Woodruff engaged in misconduct violating, at a minimum, his duties of diligence and expediting litigation under Rules 1.3 and 3.2, respectively, of the ABA Model Rules of Professional Responsibility.

¶ 19    Third, the balance of hardships, as between attorney and clients, favors interim suspension. An interim suspension, on the one hand, would temporarily prevent Woodruff from practicing law, the source of his livelihood.[2] On the other hand, based on the allegations, permitting Woodruff to continue practicing law pending resolution of the disciplinary proceedings against him would seriously threaten his current clients' claims and run the risk of subjecting future clients to similar problems. Current and future clients, according to these allegations, would be better served by hiring a new attorney and seeking continuances with the courts adjudicating any pending matters.

¶ 20    We also note Woodruff's behavior in this matter buttresses the credibility of the Disciplinary Committee's allegations. Woodruff waited six days before accessing File & ServeXpress to review the Application. He then proceeded to file his response late. Even after we put him on notice about timely

---

[2]    Because a temporary suspension obstructs an attorney from making a living prior to a full resolution of disciplinary proceedings, we emphasize interim suspensions are an "extreme measure" available only in egregious cases. *In re Malvin*, 466 A.2d at 1223.

filing responses, he filed his second response late as well. And then he filed his calendar *less than an hour* before his hearing.

¶ 21      Clients at a minimum deserve attorneys who meet deadlines and proactively respond to court orders. Woodruff did neither in response to an application for interim suspension. If the threat of suspending his ability to practice law did not motivate Woodruff to make an effort to meet clearly defined deadlines, we have serious concerns about how he handles his client's matters. As a result, on balance, we conclude the risk to current and future clients who entrust important issues to Woodruff outweighs the significant hardship an interim suspension would impose on him.

¶ 22      Fourth, an interim suspension would serve the public interest. Even if the allegations turn out to be false, Woodruff's behavior has nonetheless led to nearly a dozen complaints in recent years. Each instance harms the CNMI Bar's reputation, which diminishes the public's faith in the legal system. Faith in the competence, diligence, and equity of the legal system is an essential public interest we must zealously guard.

¶ 23      Because the weight of the evidence favors suspension, we hold an interim suspension is warranted.[3]

### C. Expedited Disciplinary Process

¶ 24      While we issue an interim suspension in this case, we are mindful that an interim suspension denies suspended attorneys the ability to practice their livelihood prior to a full evidentiary hearing. In light of that concern, we direct the Disciplinary Committee to take all reasonable steps to expedite resolution of the disciplinary proceedings against Woodruff and expect the Superior Court resolve the nine disciplinary complaints against Woodruff already referred to it by the Disciplinary Committee within sixty days of this opinion.

### IV. Conclusion

¶ 25      For the foregoing reasons, Woodruff is temporarily suspended, effective immediately, pending the resolution of the disciplinary matters referred to the Superior Court for prosecution. It is further ordered that Woodruff: (1) provide this Court a complete list of his active clients, in chronological order based on nearest deadline, no later than February 6, 2013; (2) provide his current clients a copy of this opinion no later than February 19, 2013; and (3) file a proof of service of the client notifications with this Court no later than February 22, 2013. Failure to timely comply with these orders will lead to further sanctions.

---

[3]    If circumstances substantially change, Woodruff may file a motion with this Court seeking rescission of the interim suspension. That motion should explain how circumstances have substantially changed and why an interim suspension is no longer warranted under the standard expressed in paragraph 16, above.

SO ORDERED this 1st day of February, 2013.


/s/_____
ALEXANDRO C. CASTRO
Chief Justice



/s/_____
JOHN A. MANGLONA
Associate Justice



/s/_____
ROBERT C. NARAJA
Justice Pro Tem



Thomas E. Clifford, F0210
Attorney at Law
2nd Floor, Alexander Building, San Jose
P.O. Box 506514
Saipan, MP 96950
Tel. (670)235-8846
Fax (670)235-8848

Attorney appointed to prosecute disciplinary action

## IN THE SUPERIOR COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE THE MATTER OF:<br><br>STEPHEN C. WOODRUFF,<br><br>Respondent. | CIVIL ACTION No. 13- 00l7<br>DISCIPLINARY CASES:<br>1) 2008-008; 2) 2008-012; 3) 2009-001;<br>4) 2009-005; 5) 2011-012; 6) 2011-013;<br>7) 2011-014; 8) 2012-001; 9) 2012-004<br><br>__SUBMITTED UNDER SEAL__<br>(Strictly confidential pursuant to<br>Disciplinary Rule 7(f))<br><br>FIRST AMENDED COMPLAINT[1] |

## I.
## JURISDICTION AND PARTIES

1. This Court has jurisdiction over this matter pursuant to 1 CMC § 3401 and the

*Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the*

*Commonwealth*, which rules were duly promulgated by the Commonwealth Supreme

---

[1] This First Amended Complaint adds three new disciplinary cases that counsel was recently appointed to prosecute: a) 2009-01; b) 2012-001; and c) 2012-004. This amendment is filed pursuant to Com. R. Civ. P. 15(a) as a matter of course because no responsive pleading has been served, and the response to this amended complaint is due 10 days after service of the amended complaint because that period is longer than the time remaining for response to the original complaint, which is 20 days from the February 4, 2013 service of the summons and complaint.

Page 1 of 18 pages

Court, and which rules lawfully govern the professional conduct of lawyers practicing before the Commonwealth courts.

2. Respondent Stephen C. Woodruff ("Mr. Woodruff") was at all times relevant to the conduct made the basis of this complaint an attorney licensed to practice law before the Courts of the Commonwealth of the Northern Mariana Islands.

## II.
## DISCIPLINARY CHARGES

3. This single First Amended Complaint is brought with respect to nine separate disciplinary complaints against Mr. Woodruff because all nine matters involve a common pattern of failing to competently and diligently represent clients, as well as the failure to keep clients reasonably informed of the status of their matters.

**2008-08**

4. On or about January 23, 2007, Kenneth and Wantapha Warfle retained Mr. Woodruff to represent them in the process of obtaining a resident alien card for Wantapha. The Warfles gave Mr. Woodruff a $165 processing fee, and an additional $600 in attorney's fees. The attorney's fees were paid in the form of a check that cleared on or about January 25, 2007.

5. During the period of March to September 2007 the Warfles repeatedly and unsuccessfully attempted to contact Mr. Woodruff regarding the status of their application.

6. On or about September 18, 2007, the Warfles received notice from USCIS that various

Page 2 of 18 pages

application documents had been received, but only as of July 2007.

7. In December 2007, the Warfles received notice from USCIS that their application was deficient in that additional, current financial information was required. Mr. Warfle provided this information.

8. On or about February 11, 2008, the Warfles received notice from USCIS that the check dated January 23, 2007 could not be cashed, and so a money order was sent in via express mail.

9. In March 2008, the Warfles received notice that the application had been rejected for non-payment.

10. On or about May 9, 2008, the Warfles received notice from USCIS that their interview was scheduled to take place while Mr. Warfle would be away on work (he is a chief engineer in the U.S. maritime industry) and/or for medical treatment (spine surgery in Indonesia). Mrs. Warfle then met with Mr. Woodruff to move the appointment, and Mr. Woodruff assured Mr. Warfle via Mrs. Warfle's cellular telephone during that meeting that Mr. Woodruff would contact the Guam office of USCIS to reschedule the interview.

11. On or about May 12, 2008, Clyde Gordon spoke with Mr. Woodruff and Mr. Woodruff assured Mr. Gordon that Mr. Woodruff had rescheduled the interview.

12. In June 2008, the Warfles received notice that their application had been denied for failure to attend the interview.

13. Mr. Woodruff also failed to be reasonably responsive to client inquires and to keep

his clients reasonably informed of the status of their application.

14. In sum, eighteen months into the process, the Warfles' application for a resident alien card was not only *not* processed in a timely, diligent and competent fashion, but the application was denied.

15. The Warfles filed a complaint with the CNMI Bar Association Disciplinary Committee ("DC").

16. The DC determined that Mr. Woodruff had violated the Model Rules of Professional Conduct ("MRPC"), and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

17. The Superior Court then appointed this attorney to prosecute the matter.

18. Mr. Woodruff's conduct as set forth above in Paragraphs 4 through 14 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that the application should not have taken so long to process, nor should it have still been in a 'denied' status after eighteen months.

19. Mr. Woodruff's conduct as set forth above in Paragraphs 4 through 14 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to be reasonably responsive to client inquires and to keep his clients reasonably informed of the status of their application.

## 2008-012

20. Sometime in late 2007, Ambrosio V. Baing ("Mr. Baing") retained Mr. Woodruff to represent him in an appeal from a Labor case, Labor Case No. 07-236.

Page 4 of 18 pages

21. At most, Mr. Woodruff filed a hand written appeal that indicated that additional documents would be submitted. However, no such additional documents were ever submitted, and Mr. Woodruff never took any further actions in the appeal.

22. Mr. Baing repeatedly attempted to communicate with Mr. Woodruff during the period from December 2007 through September 2008, and was largely unsuccessful in being able to communicate with Mr. Woodruff directly or in obtaining any meaningful response regarding the status of his appeal.

23. Mr. Woodruff subsequently admitted to the DC investigating attorney that he had not filed anything beyond the initial handwritten filing, and that the true purpose of the appeal was so that Mr. Baing could remain in the CNMI during the pendency of his appeal.

24. Mr. Baing filed a complaint with the DC.

25. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

26. The Superior Court then appointed this attorney to prosecute the matter.

27. Mr. Woodruff's conduct as set forth above in Paragraphs 20 through 23 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that the appeal, if properly undertaken in the first place, should have been pursued with appropriate factual and legal positions submitted and then argued, and then otherwise competently and diligently pursued until a decision was obtained.

28. Mr. Woodruff's conduct as set forth above in Paragraphs 20 through 23 also violated

MRPC 1.4, Communications, in that Mr. Woodruff failed to be reasonably responsive to client inquires and to keep his client reasonably informed of the status of his appeal.

29. Mr. Woodruff's conduct as set forth above in Paragraphs 20 through 23 also violated MRPC 3.1, Meritorious Claims and Contentions, and 3.3, Candor Toward the Tribunal, in that the appeal should never have been filed in the first place since the true purpose of the appeal was merely to prolong the ability of Mr. Baing to remain in the CNMI, and as such, the appeal was an abuse of process and also a lack of candor toward the tribunal, the Labor hearing office.

**2009-005**

30. Mr. Woodruff represented Honorio G. Cambronero ("Mr. Cambronero") in *Honorio G. Cambronero v. RJCL Corporation, et al.*; United States District Court for the Northern Mariana Islands Civil Action No. 08-0033 (the "Federal case")

31. The defendants in the Federal case moved for summary judgment. Mr. Woodruff filed a response in which he conceded that the motion was well taken as to the federal causes of action, but he requested that the Commonwealth law claims be dismissed without prejudice. Mr. Woodruff did not, however, file any substantive opposition in support of the Commonwealth claims, nor did he attend the hearing on the motion.

32. As a result, the court in the Federal case deemed the entire motion for summary judgment unopposed, granted the motion in its entirety, entered judgment in favor of the defendants and awarded them costs.

33. Mr. Woodruff also represented Mr. Cambronero in *In the Matter of Honorio G.*

Page 6 of 18 pages

*Cambronero v. RJCL Corporation*; CNMI Labor Case No. 08-117 (the "Labor case").

34. The parties in the Labor case stipulated that Mr. Cambronero's response to RJCL Corporation's motion to dismiss could be filed not later than April 14, 2009.

35. Mr. Woodruff failed to file any response by April 14, 2009.

36. On April 24, 2009, RJCL Corporation noted that there was still no response and again moved to dismiss.

37. On April 27, 2009 the hearing officer dismissed the Labor case with prejudice because Mr. Woodruff had still not filed any response to RJCL Corporation's motion to dismiss.

38. Mr. Woodruff failed to communicate with Mr. Cambronero regarding his handling of the Federal case or the Labor case, and he never explained why he took, or failed to take, the actions that he did.

39. As a result, Mr. Cambronero filed a complaint with the DC

40. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

41. The Superior Court then appointed this attorney to prosecute the matter.

42. Mr. Woodruff's conduct as set forth above in Paragraphs 30 through 38 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligent prosecute both the Federal case and the Labor case.

43. Mr. Woodruff's conduct as set forth above in Paragraphs 30 through 38 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably

Page 7 of 18 pages

informed of the status of the two cases.

## 2011-012

44. Mr. Woodruff represented Emily Santos Garde ("Ms. Garde") in her divorce. The representation began sometime on 2008. Ms Garde paid Mr. Woodruff $1,200 to handle the case.

45. On or about May 26, 2011, Associate Judge Inos held a hearing in the case and verbally granted the divorce.

46. The divorce should have been completed within months, but instead lasted for years due to the lack of diligence by Mr. Woodruff.

47. Then, following the May 2011 hearing, Mr. Woodruff failed to submit a proposed divorce decree and/or failed to follow up with the Court to obtain, within any reasonable timeframe, the duly entered, written decree of divorce.

48. Beginning about one month following the May 2011 hearing, Ms. Garde followed up repeatedly in an effort to obtain her decree of divorce. Mr. Woodruff told Ms. Garde her to stop calling and going to his office because the proposed decree was with the court.

49. Ms. Garde contacted the court and was informed that the proposed decree had not been submitted by Woodruff.

50. Through the course of the representation, Ms. Garde became increasingly frustrated with the lack of communications from Mr. Woodruff, and the lack of progress on her case.

51. In September 2011, Ms. Garde filed a complaint with the DC.

Page 8 of 18 pages

52. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 21, 2012, and that attorney notes that as of the date of that report, Ms. Garde still did not have a copy of her divorce decree.

53. The Superior Court then appointed this attorney to prosecute the matter.

54. Mr. Woodruff's conduct as set forth above in Paragraphs 44 through 50 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently litigate the divorce to its completion.

55. Mr. Woodruff's conduct as set forth above in Paragraphs 44 through 50 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of her case, and specifically the status of obtaining a duly entered, written decree of divorce following the hearing.

**2011-013**

56. Mr. Woodruff was retained by Ana E. Reyes ("Ms. Reyes") in 2009 to represent her in connection with her application for U.S. resident alien immigration status. Ms. Reyes paid Mr. Woodruff a total of $2,510 in the last three months of 2009 to provide this legal service.

57. Ms. Reyes was contacted by Mr. Woodruff's office in June 2010 regarding Ms. Reyes providing certain documentation in support of her application. Ms. Reyes provided that documentation to Mr. Woodruff's office within several weeks following the

Page 9 of 18 pages

· request.

58. Ms. Reyes heard nothing further from Mr. Woodruff or his office, and so in January 2011 she went to Mr. Woodruff's office to inquire about the status of her application. She was shown two receipts from USCIS, but was given no other information regarding the status of her application.

59. Ms. Reyes subsequently called at least ten times to Mr. Woodruff's office but was never able to speak to Mr. Woodruff, nor did she ever receive a return call, nor did she otherwise receive any communication from anyone on Mr. Woodruff's behalf with any form of meaningful information regarding the status of her application.

60. Ms. Reyes then began going to Mr. Woodruff's office approximately three times a week in an effort to speak with him or obtain some kind of meaningful update on the status of her application. She would sometimes wait for as long a five hours, but was never able to get any meaningful update.

61. On or about November 15, 2011, Ms. Reyes filed a complaint with the DC.

62. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 27, 2012, and that attorney notes that as of the date of that report, Mr. Woodruff had not responded to his inquiries to Mr. Woodruff.

63. The Superior Court then appointed this attorney to prosecute the matter.

64. Mr. Woodruff's conduct as set forth above in Paragraphs 56 through 60 was a

violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligent pursue the application to its completion, whether a denial or an approval.

65.  Mr. Woodruff's conduct as set forth above in Paragraphs 56 through 60 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of her application, and in fact, appears to have actively avoided providing her any update.

66.  Given the years that have passed and the lack of any information regarding the status of the application, and based on information and belief, there is reason to allege that Ms. Reyes' funds that were paid to Mr. Woodruff may not have been held in trust in violation of MRPC 1.15(a) (this counsel will request at the scheduling conference that the Court direct an appropriate accounting, which will either support this particular claim or else result in its dismissal).

**2011-014**

67.  Mr. Woodruff was retained by Esperanza Ellis ("Ms. Ellis") in 2008 to obtain Immediate Relative status for her under the then applicable CNMI Immigration laws. Ms. Ellis paid Mr. Woodruff $400 in attorney's fees and $50 for the processing cost.

68.  Mr. Woodruff never processed the application.

69.  Months later, in or about December 2008, Ms. Ellis went to CNMI Immigration and learned that no application had ever been submitted.  She then paid the fee herself and obtained an Immediate Relative identification card.

70.  Mr. Woodruff was again retained by Ms. Ellis on or about August 25, 2009 to

Page 11 of 18 pages

represent her in applying for U.S. resident alien immigration status and in a paternity action. Ms. Ellis paid Mr. Woodruff a one-time flat fee of $3,000 to cover his fees and the costs in connection with both matters. Mr. Woodruff told Ms. Ellis that $900 was for fees and the balance of the $3,000 was for costs, and that the processing of the resident alien application would take three months.

71. Mr. Woodruff never filed the paternity action.

72. With respect to the resident alien application, Ms. Ellis was not asked at the 2009 meeting to sign any forms.

73. Ms. Ellis followed up with Mr. Woodruff's office in November 2009 and was told she had to go to Pacific Medical Center ("PMC") for an examination. She paid an additional $400 to PMC for this examination.

74. Five months after the retention, in January 2010, Ms. Ellis was asked to return to Mr. Woodruff's office to sign the U.S. Immigration application forms.

75. Over the ensuing months and on into 2011, Ms. Ellis attempted repeatedly and unsuccessfully to determine the status of her application. She first telephoned Mr. Woodruff once a week and when that was ineffective she began going to Mr. Woodruff's office once a week and waiting for up to three hours a visit in an unsuccessful effort to obtain a meaningful status report on her application.

76. On or about October 2, 2011, Mr. Woodruff threatened to call the police if Ms. Ellis continued to come to his office. On this date, Mr. Woodruff showed Ms. Ellis a receipt from the U.S. Post Office, and he told her that her application had been mailed to the

Page 12 of 18 pages

USCIS Chicago office.

77. Ms. Ellis used the tracking number on the receipt to determine that the corresponding envelope had been mailed on April 14, 2011 and received on April 26, 2011.

78. Mr. Woodruff subsequently resubmitted the applications after learning that they had been sent to the wrong processing center, and his request for a fee waiver was denied due to a lack of diligence in processing the application in the first place.

79. At no time throughout the representation did Mr. Woodruff ever provide Ms. Ellis copies of the papers that had been submitted to USCIS, nor did he ever keep her reasonably informed of the status of her application.

80. On or about November 15, 2011, Ms. Ellis filed a complaint with the DC.

81. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 27, 2012, and that attorney notes that as of the date of that report, Ms. Ellis still not been informed of the status of her application.

82. The Superior Court then appointed this attorney to prosecute the matter.

83. Mr. Woodruff's conduct as set forth above in Paragraphs 67 through 79 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently do anything regarding the paternity case, and he failed to competently and diligently handle the resident alien application.

84. Mr. Woodruff's conduct as set forth above in Paragraphs 67 through 79 also violated

MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of her matters.

85. Given the years that have passed and the failure to file the paternity action as well as the lack of any information regarding the status of the application, and based on information and belief, there is reason to allege that Ms. Ellis' funds that were paid to Mr. Woodruff may not have been held in trust in violation of MRPC 1.15(a) (this counsel will request at the scheduling conference that the Court direct an appropriate accounting, which will either support this particular claim or else result in its dismissal).

**2009-001**

86. Mr. Woodruff represented Invictus T. Feliciano ("Mr. Feliciano") in *Invictus T. Feliciano v. Eastern Hope Corporation*; United States District Court for the Northern Mariana Islands Civil Action No. 08-0001.

87. The Court, Chief Judge Alex R. Munson presiding, dismissed the lawsuit with prejudice when Mr. Woodruff and his client failed to appear for the trial on the date scheduled.

88. The Court also noted that Mr. Woodruff had previously been sanctioned for failing to appear for a Court ordered settlement conference, and the Court noted in its order that as "in almost all of his other lawsuits in this court, Mr. Woodruff has, in this matter, missed deadlines and conferences..."

89. As a result, Mr. Feliciano recovered nothing from his employer, the defendant in the lawsuit, and at the time of his complaint against Mr. Wodruff, Mr. Feliciano had not

Page 14 of 18 pages

recovered the $300 that he paid Mr. Woodruff to represent him in the lawsuit.

90. On or about January 26, 2009 Mr. Felicano filed a complaint with the DC.

91. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

92. The Superior Court then appointed this attorney to prosecute the matter.

93. Mr. Woodruff's conduct as set forth above in Paragraphs 86 through 89 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently represent Mr. Feliciano in the lawsuit.

94. Mr. Woodruff's conduct as set forth above in Paragraphs 86 through 89 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the lawsuit.

### 2012-001

95. In or about July 2011, Ms. Jihyun Lee ("Ms. Lee") retained Mr. Woodruff to apply for E2-C status for herself and her three dependent children.

96. Ms. Lee paid Mr. Woodruff $1,500 to provide these legal services.

97. Mr. Woodruff failed to complete the work that he was paid to perform.

98. On information and belief, Mr. Woodruff never completed the application, and he never submitted to application to the United States Citizenship and Immigration Service ("USCIS").

99. After waiting seven months without any update from Mr. Woodruff, Ms. Lee submitted a complaint to USCIS, which forwarded the complaint to the Commonwealth

Page 15 of 18 pages

of the Northern Mariana Islands Bar Association.

100. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

101. The Superior Court then appointed this attorney to prosecute the matter.

102. Mr. Woodruff's conduct as set forth above in Paragraphs 95 through 99 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently handle the immigration work that agreed to perform.

103. Mr. Woodruff's conduct as set forth above in Paragraphs 95 through 99 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the matter.

104. Based on information and belief, Mr. Woodruff's conduct as set forth above also violated MRPC 1.5, Fees, in that he charged and collected a fee for an immigration matter and then did not do the work, which makes his fee unreasonable.

**2012-004**

105. On or about July 22, 2009, Ms. Kim, Chang Sook ("Ms. Kim") retained Mr. Woodruff to assist her with an immigration matter relating to her son, and the possible setting aside of an adoption decree.

106. Ms. Kim paid Mr. Woodruff a fixed fee of $1,000 to perform this work.

107. Ms. Kim was never able to determine what work Mr. Woodruff did, if any, because he never again communicated with her regarding the work that he was retained to do.

108. On or about January 31, 2010, Ms. Kim submitted a complaint to the

Page 16 of 18 pages

Commonwealth of the Northern Mariana Islands Bar Association.

109. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

110. The Superior Court then appointed this attorney to prosecute the matter.

111. Mr. Woodruff's conduct as set forth above in Paragraphs 105 through 107 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently handle the immigration work that agreed to perform.

112. Mr. Woodruff's conduct as set forth above in Paragraphs 105 through 107 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the matter.

113. Based on information and belief, Mr. Woodruff's conduct as set forth above also violated MRPC 1.5, Fees, in that he charged and collected a fee and then did not do the work, which makes his fee unreasonable.

**MRPC 8.4**

114. Based on the factual allegations underlying the nine Disciplinary Cases set forth above, Mr. Woodruff also violated MRPC 8.4(a), (c) and (d) in that the conduct above violated other Rules (8.4(a)), involved deceit and misrepresentations to his clients (8.4(c)) and given the series of violations, taken as a whole, has had a prejudicial effect on the administration of justice (8.4(d)).

## III.
## PRAYER FOR RELIEF

115. Wherefore, Mr. Woodruff should be disciplined as the Commonwealth

Superior Court and/or the Commonwealth Supreme Court determine is

appropriate under the facts and the applicable law.

Respectfully submitted this 19th day of February, 2013.

Thomas E. Clifford, F0210
Appointed Counsel

Page 18 of 18 pages

E-FILED
CNMI SUPREME COURT
E-filed: Jan 15 2013 03:10AM
Clerk Review: Jan 15 2013 08:19AM
Filing ID: 48903472
Case No.: 2013-SLD-0001-ADA
Deanna M Manglona



IN THE
**SUPREME COURT**
OF THE
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

IN RE DISCIPLINARY PROCEEDINGS OF STEPHEN C. WOODRUFF,

Respondent

Supreme Court No. 2013-SCC-0001-ADA

OPPOSITION TO APPLICATION FOR INTERIM SUSPENSION
OF ATTORNEY FROM THE PRACTICE OF LAW
AND REQUEST FOR CONTINUANCE

On January 4, 2013, as I was leaving the Superior Court following two full days of evidentiary hearing in a contested adoption, I was served by court marshals with a brown manila envelope. Inside was a single document: the Supreme Court's two-page[1] Order to Show Cause, entered at 4:25 p.m. that day. The order was based on an application filed by Timothy H. Bellas, Esq., purportedly on behalf of the CNMI Disciplinary Committee ("DC"). The envelope did not contain a copy of the application itself, and at

---

[1] The second page was solely a signature page.

no time before or since have I been served with a copy of the application by any means. If the matter served were a complaint in a civil case, service would be utterly defective, and the Court would be without jurisdiction to proceed.

One might be inclined to write this off to an oversight except that it is actually symptomatic of my frustrating experience with the DC under the tenure of Mr. Bellas. I can and will explicate this point in detail if I am actually given a reasonable amount of time to respond to this extraordinary and irregular action by Mr. Bellas.

As I was never served with the application detailing the purported grounds for the "extraordinary step" requested by Mr. Bellas, I only became aware of the alleged substantive basis on January 10, 2013, when I followed the link in Lexis-Nexis email service on me of the filing of the proof of service of the Order to Show Cause on Mr. Bellas, then selected "View Case History" and took the time (and incurred the expense) to download each and every document filed by Mr. Bellas.

Astonishingly (or it would be astonishing if I did not have numerous previous comparable experiences dealing with the DC under Mr. Bellas), the exhibits filed by Mr. Bellas included many documents I had never seen before and of which I have had no prior notice, including complaints by

2

individuals who have long been and continue to be my clients and whom I have well served.

I have learned that some complaints are inevitable when one serves as many clients, and the type of clients, as I do.  My commitment as an attorney has been stated for many years on my website as follows:

> To provide high quality and affordable legal services to a broad segment of the population, with emphasis on the needs of individuals, business, the community, and the public interest.

In the more than 12 years I have been in private practice, I have never advertised, never even had a sign on the front of any of the buildings in which I have held office, yet I have more clients come to me from word of mouth and a plain regular-type listing in the Yellow Pages than I can accommodate.  The reason for this is the quality of services I provide, the results I obtain, my accessibility, my clear explanations of legal matters to my clients, and my commitment to access to justice for the economically disadvantaged, the politically powerless, and those with unpopular causes.  It also biases some against me.

The application filed by Mr. Bellas argues that the Disciplinary Rules should be disregarded and I should be suspended from the practice of law on grounds that "the number of complaints, the repetitive violation of the same ethical rules and the need to protect members of the public from further

3

harm" demand this extraordinary action. This is not a fair or accurate statement of the situation. It is also unprecedented, without legal foundation, and contrary to due process of law.

First, to the best of my present recollection, this is the first time in its dealings with me that the DC or anyone associated with it has ever articulated any specific Rule of Professional Conduct it is thought I may have violated. This, of course, makes it quite difficult to respond meaningfully to a complaint on legal grounds, limiting the respondent to discussion of questions of fact divorced from the applicable standard.

Second, the number of complaints is actually quite small – likely only around one percent – in relation to the number of clients I have served over the period covered by the complaints (especially if the difficult circumstances under which I serve them are also taken into account).

None of the foregoing is intended to suggest that I think I have made no mistakes in the course of practicing law, or that there is nothing that I could have done better. That is not the issue, my position, or my defense. Any deficiencies in my performance as an attorney, however, do not descend – singly or cumulatively – to the level of professional misconduct, and certainly not an ethical violation that would warrant suspension.

4

Third, the Disciplinary Rules define the process that is due. They cannot be circumvented simply because Mr. Bellas finds it convenient to his aims to ask the Supreme Court to shortcut the process. Moreover, even before the instant extraordinary and irregular action, the DC has in multiple respects disregarded the Disciplinary Rules in its handling of complaints against me.

In no instance has the DC provided me with a copy of the recommendation of the investigator and afforded me an opportunity to respond or to appear before the DC as a whole. Neither have I ever been provided with a copy of the recommendation or any concrete statement of the charges when a complaint has been referred by the DC to the judiciary for prosecution. In at least one instance, a complaint I had never seen was referred to the judiciary for prosecution. I have never been given a copy of any report to the Presiding Judge by the DC concerning a complaint against me. Members with bias or conflict of interest (including Mr. Bellas himself) apparently also have participated in the decision-making process on complaints against me.

Fourth, seeking "interim suspension," as Mr. Bellas does here, undercuts due consideration of the range of possible discipline mandated by Disciplinary Rule 3.

5

Finally, and most importantly, far from protecting the public from harm, suspending me from practice, especially abruptly as Mr. Bellas wants, would be disastrous to my clients and far from protecting the public would actually be harmful to the public, especially to the economically, politically, and socially disadvantaged elements of the public and particularly to aliens. I have a very large number of clients and open cases. For many, I am the only attorney qualified, capable, and willing to handle their type of case for a fee they can afford (or on a pro bono publico basis).

I have a great deal further to say and present to the Court in opposition to the application and with respect to the specific matters cited by Mr. Bellas – if I will be afforded a genuinely reasonable period of time to do so. Tomorrow I have an all day hearing in the United States District Court in the litigation concerning the Northern Mariana Islands Retirement Fund (a matter in which Mr. Bellas aspires to be appointed receiver and apparently perceives me as a threat). Last week I had removal hearings in Immigration Court every morning Tuesday through Friday all morning. Today – ostensibly a mostly "open" day – was consumed from 7:30 a.m. to 8:30 p.m. by a series of "must do" tasks, from communications and meetings preparatory to tomorrow's hearing, to arraignment in a criminal case to which I was appointed the same day I was served with the order in this

6

proceeding, and in which a preliminary hearing was conducted last Monday, to consultations with immigration clients, to helping Ms. Esperanza Ellis (whose complaint I knew nothing about until January 10, 2013 reviewing the filings by Mr. Bellas and whom I have served continuously in various matters since 2009) deal with an emergency and crisis she is facing.

WHEREFORE, Respondent requests that the hearing herein be continued for two weeks to January 30, 2012, and that he be given an additional two weeks to further oppose the application filed by Mr. Bellas.

Dated this 14th day of January, 2013.

Respectfully submitted,

/s/_____
STEPHEN C. WOODRUFF
Respondent

7

## DECLARATION OF STEPHEN C. WOODRUFF

I, Stephen C. Woodruff, declare and state, under penalty of perjury, as follows:

1. I am the respondent in the above-captioned matter.

2. I have personal knowledge of the facts discussed in the foregoing Opposition to Interim Suspension of Attorney from the Practice of Law and Request for Continuance.

3. All of the factual matter stated in the foregoing Opposition and Request for Continuance is true and correct to the best of my knowledge and recollection. Where statements constitute expressions of opinion, such opinions are formed based on personal observation and experience and reasonable inferences drawn therefrom.

4. I wish to file further argument and exhibits with the Supreme Court in this matter and request two weeks continuance to enable me to do so.

I, Stephen C. Woodruff, declare and state under penalty of perjury under the laws of the Commonwealth of the Northern Mariana Islands that the statements contained herein are true and correct to the best of my knowledge and belief.

8

Executed this 14th day of January, 2013, on Saipan, Commonwealth of the Northern Mariana Islands.

/s/ _____
STEPHEN C. WOODRUFF
Respondent

FOR PUBLICATION

CL⸱          ⸱URT
SU⸱          ⸱RT

⸱⸱⸱ ⸱⸱⸱ -7 ⸱⸱ 3⸱ 06

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE MATTER OF:                    )    CIVIL CASE NO. 13-0017
                                        )    Disciplinary Cases
                                        )    1) 2008-008; 2) 2008-12; 3) 2009-001; 4) 2009-
STEPHEN C. WOODRUFF,                    )    05; 5) 2011-012; 6) 2011-013; 7) 2011-014; 8)
                                        )    2012-001; 9) 2012-004
                                        )
          Respondent.                   )
                                        )    DISCIPLINARY ACTION: DISBARMENT
                                        )
                                        )
                                        )

## I. INTRODUCTION

**THIS MATTER** came on for a hearing for a Default Judgment on May 15, 2013, at 2:30 p.m. in Courtroom 223A, pursuant to Thomas E. Clifford ("Disciplinary Counsel")'s motion for default judgment on each of the nine cases cited above. Respondent Stephen C. Woodruff ("Mr. Woodruff") was duly served with the complaint but failed to respond, which resulted in an Entry of Default being entered on March 6, 2013.

The hearing was sealed and Thomas E. Clifford appeared as the attorney appointed to prosecute this matter. Mr. Woodruff was given a courtesy notice and did appear.[1] After taking into account oral and written arguments, the Court finds Mr. Woodruff in violation of Model Rules of Professional Conduct ("MRPC") 1.1, 1.3, 1.4, 1.5, 3.1, 3.2, 3.3, 8.1, and 8.4 for the following reasons.

## II. PROCEDURAL BACKGROUND

A First Amended Complaint in this matter was served on February 19, 2013, with a footnote indicating that

---

[1] Said notice is not required for a defaulting party pursuant to the Rules of Civil Procedure and the Disciplinary Rules of Procedures; however, notwithstanding Respondent's default, he was noticed with all hearings as a courtesy.

By the order of the court, Judge David A Wiseman

the response was due on March 5, 2013.[2] Disciplinary Counsel did this to clarify any possible confusion with the answer due date of the original Complaint and the subsequent First Amended Complaint.

An Entry of Default was entered on March 6, 2013, and two days later Mr. Woodruff e-mailed Disciplinary Counsel inquiring when the answer was due.

The Court scheduled a hearing on the Default Judgment on March 14, 2013. Upon entry to the courtroom, the Clerk handed the judge an envelope which contained Mr. Woodruff's filed motion, asking the Court to set aside the entry of default.

The Court, notwithstanding the improprieties with Mr. Woodruff's motion, and over the objection of Disciplinary Counsel, deferred the scheduled default judgment hearing and allowed Mr. Woodruff to argue his motion. The Court denied said motion in its order of April 4, 2013, and reset the default judgment hearing for May 8, 2013, which for good cause was rescheduled to May 14, 2013.

On April 18, 2013, Respondent filed a motion for reconsideration on the order denying the motion for reconsideration and requested additional time to brief the points he stated in his two page motion. Disciplinary Counsel opposed the motion, and the Court, in a written Order issued April 24, 2013, denied the motion on the basis that it was untimely, did not have a memorandum of law supporting the motion, and lacked the requisite grounds for a motion for reconsideration to succeed.

## III. LEGAL STANDARDS AND CONCLUSIONS OF LAW

Professional responsibility is the basic requirement for all attorneys, trial assistants and other officers and administrators of the court in order to maintain the highest possible level of morality in the judicial system. *In re the Matter Villanueva*, 1 CR 952, 956 (Dist. Ct. App. Div. 1984).

The Commonwealth courts have the inherent power and duty to regulate the practice of law, both in and out of court pursuant to the Commonwealth Disciplinary Rules and Procedures. 1 CMC § 3403; NMI Disc. R. 1; *Matsunaga v. Matsunaga*, 2001 MP 11 ¶ 19. The standard of proof for establishing allegations of attorney

---

[2] This First Amended Complaint adds three additional disciplinary cases Disciplinary Counsel was recently appointed to prosecute: a) 2009-001; b) 2012-001; and c) 2012-004.

2

misconduct is clear and convincing evidence. NMI Disc. R. 9(g); *In re Disciplinary Proceedings of Rhodes*, 2002 MP 2 ¶ 3; *Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)*, 2001 MP 2 ¶ 30.

The purpose of a disciplinary action against an attorney is not to punish the attorney, but rather to guard the administration of justice, maintain the dignity of the court and the integrity of the profession, and to protect the public. *Saipan Lau Lau Dev., Inc.*, 2001 MP 2 ¶ 38. In determining the appropriate sanction, the court considers the nature of the misconduct, the cumulative weight of the violations, and the harm to the public and the profession. *Id.* The Court has set forth disciplinary rules and procedures for persons practicing law in the Courts of the CNMI, and like most States, has adopted the MRPC of the American Bar Association.[3]

As stated in the Preamble to the MRPC, "[t]he legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar." MODEL RULES OF PROF'L CONDUCT Preamble (2012). This view of the professional relationship places the burden on lawyers to observe the ethical requirements that are set out in the MRPC and makes it essential that lawyers themselves maintain the integrity of the profession.

MRPC 1.1, Competence, requires a lawyer to provide competent representation to his client, which necessitates "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MODEL RULES OF PROF'L CONDUCT R. 1.1. Competence requires adequate preparation. *See id.* at cmt. 5. "Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of *Rule 1.1*." *Att'y Griev. Comm'n v. Guida*, 391 Md. 33, 54 (2006). MRPC 1.1 is violated when "an attorney fails to act or acts in an untimely manner, resulting in harm to his or her client." *Att'y Griev. Comm'n*

---

[3]The Court would like to note that the purpose of a disciplinary proceeding is not punitive in nature, but instead is to inquire into the fitness of the lawyer to continue in his/her capacity for the protection of the public, the courts, and the legal profession. In addition to the duties owed to clients, the lawyer also owes a duty to the general public. Members of the public are entitled to be able to trust lawyers to protect their property, liberty, and their lives. The community expects lawyers to exhibit the highest standard of honesty and integrity, and lawyers have a duty not to engage in conduct involving dishonesty, fraud, or interference with the administration of justice. Lawyers also owe duties to the legal system. Lawyers are Officers of the Court, and must abide by the rules of substance and procedure which shape the administration of justice.

3

*v. Brown*, 426 Md. 298, 315 (2012); *see, e.g. Att'y Griev. Comm'n v. De La Paz*, 418 Md. 534, 553-54 (2011) (failure to appear at a hearing was a violation of MRPC 1.1); *Guida*, 391 Md. at 54 (failure to take action, including filing a petition, was a violation of MRPC 1.1). In all nine matters below, Mr. Woodruff failed to take action in a timely manner, which resulted in harm to his clients, including failing to timely file responses, failure to file anything at all, and failing to appear at a trial. Mr. Woodruff, therefore, violated MRPC 1.1 in all nine matters below.

MRPC 1.3, Diligence, requires a lawyer to "act with reasonable diligence and promptness in representing a client." MODEL RULES OF PROF'L CONDUCT R. 1.3. An attorney's failure "to take fundamental steps in furthering a client's matter qualifies as neglect and inattentiveness to a client's interest, and thereby is a violation of [MRPC] 1.3." *Att'y Griev. Comm'n v. Gisriel*, 409 Md. 331, 371 (2009) (failure to file a response and failure to attend a court hearing constituted a violation of MRPC 1.3). In all nine matters below, Mr. Woodruff failed to take any steps in furthering his clients' cases, including failing to file timely responses, failing to file anything at all, and failing to appear at a trial. Mr. Woodruff, therefore, violated MRPC 1.3 in all nine matters.

MRPC 1.4, Communication, requires a lawyer to promptly communicate with his client, to keep his client reasonably informed about the matter, and to comply with a client's reasonable request for information. *See* MODEL RULES OF PROF'L CONDUCT R. 1.4. "It is beyond cavil that an attorney violates [MRPC] 1.4 when he or she ignores client requests for information and communicates nothing to the client regarding the status of the case." *Att'y Griev. Comm'n v. Garrett*, 427 Md. 209, 225 (2012). In all nine matters below, Mr. Woodruff either ignored client requests for status updates or totally failed to communicate with his clients, thereby violating MRPC 1.4 in all nine instances.

MRPC 1.5, Fees, prohibits a lawyer from collecting an unreasonable fee. *See* MODEL RULES OF PROF'L CONDUCT R. 1.5. "[A]n otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it." *Garrett*, 427 Md. at 225. Mr. Woodruff collected a sum of money for a fee in four of the matters below in which he failed to take any meaningful steps in pursuit of his clients' objectives. Thus, Mr. Woodruff violated MRPC 1.5 in connection with four of the matters.

MRPC 3.1, Meritorious Claims and Contentions, prohibits a lawyer from bringing an action unless there is a basis in law and fact for doing so that is not frivolous. *See* MODEL RULES OF PROF'L CONDUCT R. 3.1. In one of

4

the matters below, Mr. Woodruff admitted he brought an appeal not for the purpose of appealing the case, but to enable his client to remain in the Commonwealth of the Northern Mariana Islands, which was a consequence of filing the appeal. Thus, Mr. Woodruff violated MRPC 3.1 in connection with one of the matters.

MRPC 3.2, Expediting Litigation, mandates a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client." MODEL RULES OF PROF'L CONDUCT R. 3.2; *see, e.g. Garrett*, 427 Md. at 226 (finding failure to appear for a scheduling conference and a hearing constituted a failure to take reasonable steps to expedite litigation). In one of the matters below, Mr. Woodruff failed to appear at a trial, which resulted in the lawsuit being dismissed with prejudice. Thus, Mr. Woodruff, violated MRPC 3.2 in connection with one of the matters.

MRPC 3.3, Candor Toward the Tribunal, prohibits a lawyer from knowingly making a false statement of law or fact to a tribunal. *See* MODEL RULES OF PROF'L CONDUCT R. 3.3. In one of the matters below, Mr. Woodruff admitted he filed an appeal for a client for the sole and improper purpose of enabling his client to remain in the Commonwealth of the Northern Mariana Islands by filing an appeal. Therefore, Mr. Woodruff violated MRPC 3.3 in connection with one of the matters.

MRPC 8.1, Bar Admission and Disciplinary Matters, makes it a violation for a lawyer to knowingly fail to respond to a lawful demand for information from a disciplinary authority. *See* MODEL RULES OF PROF'L CONDUCT R. 8.1. Mr. Woodruff failed to respond to requests for information from the CNMI Bar Association Disciplinary Committee ("DC") in connection with one of the matters below. Mr. Woodruff, therefore, violated MRPC 8.1 in at least one instance.

Finally, MRPC 8.4(a)(c) and (d) prohibit misconduct by a lawyer. *See* MODEL RULES OF PROF'L CONDUCT R. 8.4. Subsection (a) defines misconduct as a violation, or an attempt to violate, any of the MRPC. *Id.* Subsection (c) defines misconduct as "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* Subsection (d) defines misconduct as "engag[ing] in conduct that is prejudicial to the administration of justice." *Id.* Conduct that reflects negatively on the legal profession and sets a bad example for the public at large is prejudicial to the administration of justice. *See Garrett*, 427 Md. at 227. Mr. Woodruff violated MRPC 8.4(a) in all nine

5

matters, having violated numerous rules of professional conduct in connection with each representation. Mr. Woodruff also violated MRPC 8.4(c) in connection with one of the matters when he misrepresented the purpose of an appeal to a tribunal. Finally, Mr. Woodruff violated MRPC 8.4(d) in all nine matters when he acted in a way that reflected negatively on the legal profession and set a bad example for the public at large.

## IV. FACTUAL FINDINGS

In view of the default in this matter, the Court finds the following facts to be admitted as true pursuant to Rule 9(c) of the Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth:

1. This Court has jurisdiction over this matter pursuant to 1 CMC § 3401 and the Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth, which rules were duly promulgated by the Commonwealth Supreme Court, and which rules lawfully govern the professional conduct of lawyers practicing before the Commonwealth courts.

2. Mr. Woodruff was at all times relevant to the conduct made the basis of this complaint an attorney licensed to practice law before the Courts of the Commonwealth of the Northern Mariana Islands.

3. This single First Amended Complaint is brought with respect to, and includes, nine separate disciplinary complaints against Mr. Woodruff because all nine matters involve a common pattern of failing to competently and diligently represent clients, as well as the failure to keep clients reasonably informed of the status of their matters.

**A. CIVIL ACTION NO. 2008-008**

4. On or about January 23, 2007, Kenneth and Wantapha Warfle retained Mr. Woodruff to represent them in the process of obtaining a resident alien card for Wantapha. The Warfles gave Mr. Woodruff a $165.00 processing fee, and an additional $600.00 in attorney's fees. The attorney's fees were paid in the form of a check that cleared on or about January 25, 2007.

5. During the period of March to September 2007, the Warfles repeatedly and unsuccessfully attempted to contact Mr. Woodruff regarding the status of their application.

6. On or about September 18, 2007, the Warfles received notice from the United States Citizenship and Immigration Service ("USCIS") that various application documents had been received, but only as of July 2007.

6

7. In December 2007, the Warfles received notice from USCIS that their application was deficient in that additional, current financial information was required. Mr. Warfle provided this information.

8. On or about February 11, 2008, the Warfles received notice from USCIS that the check dated January 23, 2007 could not be cashed, and so a money order was sent via express mail.

9. In March 2008, the Warfles received notice that the application had been rejected for non-payment.

10. On or about May 9, 2008, the Warfles received notice from USCIS that their interview was scheduled to take place while Mr. Warfle would be away on work (he is a chief engineer in the U.S. maritime industry) and/or for medical treatment (spine surgery in Indonesia). Mrs. Warfle then met with Mr. Woodruff to move the appointment, and Mr. Woodruff assured Mr. Warfle via Mrs. Warfle's cellular telephone during that meeting that Mr. Woodruff would contact the Guam office of USCIS to reschedule the interview.

11. On or about May 12, 2008, Clyde Gordon spoke with Mr. Woodruff and Mr. Woodruff assured Mr. Gordon that Mr. Woodruff had rescheduled the interview.

12. In June 2008, the Warfles received notice that their application had been denied for failure to attend the interview.

13. Mr. Woodruff also failed to be reasonably responsive to the Warfles' inquiries and to keep his clients reasonably informed of the status of their application.

14. In sum, eighteen months into the process, the Warfles' application for a resident alien card was not only not processed in a timely, diligent and competent fashion, but the application was denied.

15. The Warfles filed a complaint with the DC.

16. The DC determined that Mr. Woodruff had violated the Model Rules of Professional Conduct ("MRPC"), and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

17. Mr. Woodruff's conduct as set forth above in Paragraphs 4 through 14 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that the application should not have taken so long to process, nor should it have still been in a "denied" status after eighteen months. Although the clients paid Mr. Woodruff for the application and interview in February 2008, in March 2008, the clients were informed by USCIS that their application was rejected

7

for nonpayment.

18. Mr. Woodruff's conduct as set forth above in Paragraphs 4 through 14 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to be reasonably responsive to client inquiries and to keep his clients reasonably informed of the status of their application notwithstanding the clients' persistent attempts to contact Mr. Woodruff. This was over an approximate seven month period. The clients were also not informed of an interview with USCIS and their application was denied for failure to attend the interview.

**B. CIVIL ACTION NO. 2008-012**

19. Sometime in late 2007, Ambrosio V. Baing ("Mr. Baing") retained Mr. Woodruff to represent him in an appeal from a Labor case, Labor Case No. 07-236.

20. At most, Mr. Woodruff filed a hand written appeal that indicated that additional documents would be submitted. However, no such additional documents were ever submitted, and Mr. Woodruff never took any further actions in the appeal.

21. Mr. Baing repeatedly attempted to communicate with Mr. Woodruff during the period from December 2007 through September 2008, and was largely unsuccessful in being able to communicate with Mr. Woodruff directly or in obtaining any meaningful response regarding the status of his appeal.

22. Mr. Woodruff subsequently admitted to the DC investigating attorney that he had not filed anything beyond the initial handwritten filing, and that the true purpose of the appeal was so that Mr. Baing could remain in the CNMI during the pendency of his appeal.

23. Mr. Baing filed a complaint with the DC.

24. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

25. Mr. Woodruff's conduct as set forth above in Paragraphs 19 through 22 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that the appeal, if properly undertaken in the first place, should have been pursued with appropriate factual and legal positions submitted and then argued, and then otherwise competently and diligently pursued until a decision was obtained.

26.  Mr. Woodruff's conduct as set forth above in Paragraphs 19 through 22 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to be reasonably responsive to client inquiries and to keep his client reasonably informed of the status of his appeal despite repeated attempts by the client to contact Mr. Woodruff over an approximate eight to nine month period.

27. Mr. Woodruff's conduct as set forth above in Paragraphs 20 through 23 also violated MRPC 3.1, Meritorious Claims and Contentions, and 3.3, Candor Toward the Tribunal, in that the appeal should never have been filed in the first place since Mr. Woodruff knew that the true purpose of the appeal was improper in that it was merely to prolong the ability of Mr. Baing to remain in the CNMI, and as such, the appeal was an abuse of process and also a lack of candor toward the tribunal, the Labor hearing office.

**C.  CIVIL ACTION NO. 2009-001**

28.  Mr. Woodruff represented Invictus T. Feliciano ("Mr. Feliciano") in Invictus T. Feliciano v. Eastern Hope Corporation; U.S. District Court for the Northern Mariana Islands, Civil Action No. 08-0001.

29. The court, Chief Judge Alex R. Munson presiding, dismissed the lawsuit with prejudice when Mr. Woodruff and his client failed to appear for the trial on the date scheduled.

30. As a result, Mr. Feliciano recovered nothing from his employer, the defendant in the lawsuit, and at the time of his complaint against Mr. Woodruff, Mr. Feliciano had not recovered the $300.00 he paid Mr. Woodruff to represent him in the lawsuit.

31. On or about January 26, 2009, Mr. Feliciano filed a complaint with the DC.

32. The DC determined Mr. Woodruff had violated the MRPC, and referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

33.  Mr. Woodruff's conduct as set forth above in paragraphs 28 through 30 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently represent Mr. Feliciano in the lawsuit.

34. Mr. Woodruff's conduct as set forth above in paragraphs 28 through 30 violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the lawsuit.

35.  Mr. Woodruff's conduct as set forth above in paragraphs 28 through 30 was also a violation of MRPC 3.2,

9

Expediting Litigation, in that Mr. Woodruff failed to appear at the scheduled trial.

**D. CIVIL ACTION NO. 2009-005**

36. Mr. Woodruff represented Honorio G. Cambronero ("Mr. Cambronero") in Honorio G. Cambronero v. RJCL Corporation, et al.; U.S. District Court for the Northern Mariana Islands, Civil Action No. 08-0033 (the "Federal case").

37. The defendants in the Federal case moved for summary judgment. Mr. Woodruff filed a response in which he conceded that the motion was well taken as to the federal causes of action, but he requested that the Commonwealth law claims be dismissed without prejudice. Mr. Woodruff did not, however, file any substantive opposition in support of the Commonwealth claims, nor did he attend the hearing on the motion.

38. As a result, the court in the Federal case deemed the entire motion for summary judgment unopposed, granted the motion in its entirety, entered judgment in favor of the defendants, and awarded them costs.

39. Mr. Woodruff also represented Mr. Cambronero in In the Matter of Honorio G. Cambronero v. RJCL Corporation; CNMI Labor Case No. 08-117 (the "Labor case").

40. The parties in the Labor case stipulated that Mr. Cambronero's response to RJCL Corporation's motion to dismiss could be filed not later than April 14, 2009.

41. Mr. Woodruff failed to file any response by April 14, 2009.

42. On April 24, 2009, RJCL Corporation noted that there was still no response and again moved to dismiss.

43. On April 27, 2009, the hearing officer dismissed the Labor case with prejudice because Mr. Woodruff had still not filed any response to RJCL Corporation's motion to dismiss.

44. Mr. Woodruff failed to communicate with Mr. Cambronero regarding his handling of the Federal case or the Labor case, and he never explained why he took, or failed to take, the actions that he did.

45. As a result, Mr. Cambronero filed a complaint with the DC.

46. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

47. Mr. Woodruff's conduct as set forth above in Paragraphs 36 through 44 was a violation of MRPC 1.1,

10

Competence, and 1.3, Diligence, in that he failed to competently and diligently prosecute both the Federal case and the Labor case. Indeed, the client's labor case was dismissed with prejudice as a result of Mr. Woodruff's not prosecuting the case competently and diligently. In this matter, there was one client who had one case at the U.S. District Court of the Northern Mariana Islands and one case at the Department of Labor that Respondent was supposed to handle for him and he did not do so competently nor diligently resulting in a loss of both matters for the client.

48. Mr. Woodruff's conduct as set forth above in Paragraphs 36 through 44 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the two cases.

**E. CIVIL ACTION NO. 2011-012**

49. Mr. Woodruff represented Emily Santos Garde ("Ms. Garde") in her divorce. The representation began sometime in 2008. Ms. Garde paid Mr. Woodruff $1,200.00 to handle the case.

50. On or about May 26, 2011, Associate Judge Inos held a hearing in the case and verbally granted the divorce.

51. The divorce should have been completed within months, but instead lasted for years due to the lack of diligence by Mr. Woodruff.

52. Then, following the May 2011 hearing, Mr. Woodruff failed to submit a proposed divorce decree and/or failed to follow up with the court to obtain, within any reasonable time frame, the duly entered written decree of divorce.

53. Beginning about one month following the May 2011 hearing, Ms. Garde followed up repeatedly in an effort to obtain her decree of divorce. Mr. Woodruff told Ms. Garde to stop calling and going to his office because the proposed decree was with the court.

54. Ms. Garde contacted the court and was informed that the proposed decree had not been submitted by Mr. Woodruff.

55. Through the course of the representation, Ms. Garde became increasingly frustrated with the lack of communication from Mr. Woodruff and the lack of progress on her case.

56. In September 2011, Ms. Garde filed a complaint with the DC.

57. The DC determined Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court

11

for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 21, 2012, which notes that as of the date of the report, Ms. Garde still did not have a copy of her divorce decree.

58. Mr. Woodruff's conduct as set forth above in Paragraphs 49 through 55 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently litigate the divorce to its completion.

59. Mr. Woodruff's conduct as set forth above in Paragraphs 49 through 55 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of her case. Specifically, Mr. Woodruff failed to inform Ms. Garde of the status of obtaining the written decree of divorce following the hearing, notwithstanding the client repeatedly trying to follow up on the matter.

**F.  CIVIL ACTION NO. 2011-013**

60. Ana E. Reyes ("Ms. Reyes") retained Mr. Woodruff in 2009 to represent her in connection with her application for U.S. resident alien immigration status. Ms. Reyes paid Mr. Woodruff a total of $2,510.00 in the last three months of 2009 to provide this legal service.

61. Mr. Woodruff's office contacted Ms. Reyes in June 2010 to request she provide certain documentation in support of her application. Ms. Reyes provided that documentation to Mr. Woodruff's office within several weeks following the request.

62. Ms. Reyes heard nothing further from Mr. Woodruff or his office, and so in January 2011 she went to Mr. Woodruff's office to inquire about the status of her application. She was shown two receipts from USCIS, but was given no other information regarding the status of her application.

63. Ms. Reyes subsequently called Mr. Woodruff's office at least ten times but was never able to speak to Mr. Woodruff, nor did she ever receive a return call, nor did she otherwise receive any communication from anyone on Mr. Woodruff's behalf with any form of meaningful information regarding the status of her application.

64. Ms. Reyes then began going to Mr. Woodruff's office approximately three times a week in an effort to speak with him or obtain some kind of meaningful update on the status of her application. She would sometimes wait for as long as five hours, but was never able to get any meaningful update.

65. On or about November 15, 2011, Ms. Reyes filed a complaint with the DC.

12

66. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 27, 2012, and that attorney notes that as of the date of that report, Mr. Woodruff had not responded to his inquiries.

67. Mr. Woodruff's conduct as set forth above in Paragraphs 60 through 64 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligent pursue the application to its completion, whether a denial or an approval.

68. Mr. Woodruff's conduct as set forth above in Paragraphs 60 through 64 violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of her application, and in fact, appears to have actively avoided providing her any update.

69. Mr. Woodruff's conduct as set forth above in Paragraphs 60 through 64 violated MRPC 1.5, Fees, in that Mr. Woodruff charged and collected a fee for an immigration matter and then did not do the work, which makes his fee unreasonable.

70. Mr. Woodruff's conduct as set forth in Paragraph 66 also violated MRPC 8.1, Bar Admission and Disciplinary Matters, in that he failed to respond to requests for information from the DC.

**G.  CIVIL ACTION NO. 2011-014**

71. Esperanza Ellis ("Ms. Ellis") retained Mr. Woodruff in 2008 to obtain Immediate Relative status for her under the then applicable CNMI Immigration laws. Ms. Ellis paid Mr. Woodruff $400.00 in attorney's fees and $50.00 for the processing cost.

72. Mr. Woodruff never processed the application.

73. Months later, in or about December 2008, Ms. Ellis went to CNMI Immigration and learned that no application had ever been submitted. She then paid the fee herself and obtained an Immediate Relative identification card.

74. Ms. Ellis again retained Mr. Woodruff on or about August 25, 2009, to represent her in applying for U.S. resident alien immigration status and in a paternity action. Ms. Ellis paid Mr. Woodruff a one-time flat fee of $3,000.00 to cover his fees and the costs in connection with both matters. Mr. Woodruff told Ms. Ellis that $900.00 was for fees and the balance of the $3,000.00 was for costs, and that the processing of the resident alien application would take

13

three months.

75. Mr. Woodruff never filed the paternity action.

76. With respect to the resident alien application, Ms. Ellis was not asked at the 2009 meeting to sign any forms.

77. Ms. Ellis followed up with Mr. Woodruff's office in November 2009 and was told she had to go to Pacific Medical Center for an examination. She paid an additional $400.00 to Pacific Medical Center for this examination.

78. Five months after the paid retainer, in January 2010, Mr. Woodruff's office asked Ms. Ellis to come to the office to sign the U.S. Immigration application forms. Over the ensuing months and on into 2011, Ms. Ellis attempted repeatedly and unsuccessfully to determine the status of her application. She first telephoned Mr. Woodruff once a week and when that was ineffective she began going to Mr. Woodruff's office once a week and waiting for up to three hours a visit in an unsuccessful effort to obtain a meaningful status report on her application.

79. On or about October 2, 2011, Mr. Woodruff threatened to call the police if Ms. Ellis continued to come to his office. On this date, Mr. Woodruff showed Ms. Ellis a receipt from the U.S. Post Office, and he told her that her application had been mailed to the USCIS Chicago office.

80. Ms. Ellis used the tracking number on the receipt to determine that the corresponding envelope had been mailed on April 14, 2011, and received on April 26, 2011.

81. Mr. Woodruff subsequently resubmitted the applications after learning that they had been sent to the wrong processing center, and his request for a fee waiver was denied due to a lack of diligence in processing the application in the first place.

82. At no time throughout the representation did Mr. Woodruff ever provide Ms. Ellis copies of the papers that had been submitted to USCIS, nor did he ever keep her reasonably informed of the status of her application.

83. On or about November 15, 2011, Ms. Ellis filed a complaint with the DC.

84. The DC determined that Mr. Woodruff had violated the MRPC, and they referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff. The DC's investigating attorney's report is dated January 27, 2012, and that attorney notes that as of the date of that report, Ms. Ellis still not been informed of the status of her application.

14

85. Mr. Woodruff's conduct as set forth above in Paragraphs 71 through 82 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently do anything regarding the paternity case, and he failed to competently and diligently handle the resident alien application.

86. Mr. Woodruff's conduct as set forth above in Paragraphs 71 through 82 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of her matters, and threatened to take aggressive action by calling the police if she came to his office in order to find out the status of her application.

87. Mr. Woodruff's conduct as set forth above in Paragraphs 71 through 82 violated MRPC 1.5, Fees, in that Mr. Woodruff charged and collected a fee for the first immigration matter and for the paternity action and then did not do the work, which makes his fee unreasonable.

**H. CIVIL ACTION NO. 2012-001**

88. In or about July 2011, Ms. Jihyun Lee ("Ms. Lee") retained Mr. Woodruff to apply for E2-C status for herself and her three dependent children.

89. Ms. Lee paid Mr. Woodruff $1,500.00 to provide these legal services.

90. Mr. Woodruff failed to complete the work that he was paid to perform.

91. On information and belief, Mr. Woodruff never completed the application, and he never submitted an application to the United States Citizenship and Immigration Service ("USCIS") for Ms. Lee.

92. After waiting seven months without any update from Mr. Woodruff, Ms. Lee submitted a complaint to USCIS, which forwarded the complaint to the Commonwealth of the Northern Mariana Islands Bar Association.

93. The DC determined Mr. Woodruff had violated the MRPC, and referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

94. Mr. Woodruff's conduct as set forth above in Paragraphs 88 through 91 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently handle the immigration work that he agreed to perform.

95. Mr. Woodruff's conduct as set forth above in Paragraphs 88 through 91 also violated MRPC 1.4,

15

Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the matter.

96. Mr. Woodruff's conduct as set forth above in Paragraphs 88-91 also violated MRPC 1.5, Fees, in that he charged and collected a fee for an immigration matter and then did not do the work, which makes his fee unreasonable.

**I. CIVIL ACTION NO. 2012-004**

97. On or about July 22, 2009, Ms. Kim, Chang Sook ("Ms. Kim") retained Mr. Woodruff to assist her with an immigration matter relating to her son, and the possible setting aside of an adoption decree.

98. Ms. Kim paid Mr. Woodruff a fixed fee of $1,000.00 to perform this work.

99. Ms. Kim was never able to determine what work Mr. Woodruff did, if any, because he never again communicated with her regarding the work that he was retained to do.

100. On or about January 31, 2010, Ms. Kim submitted a complaint to the Commonwealth of the Northern Mariana Islands Bar Association.

101. The DC determined Mr. Woodruff had violated the MRPC, and referred the matter to the Superior Court for disciplinary proceedings against Mr. Woodruff.

102. Mr. Woodruff's conduct as set forth above in Paragraphs 97 through 99 was a violation of MRPC 1.1, Competence, and 1.3, Diligence, in that he failed to competently and diligently handle the immigration work that he agreed to perform.

103. Mr. Woodruff's conduct as set forth above in Paragraphs 97 through 99 also violated MRPC 1.4, Communications, in that Mr. Woodruff failed to keep his client reasonably informed of the status of the matter.

104. Mr. Woodruff's conduct as set forth above in Paragraphs 97 through 99 also violated MRPC 1.5, Fees, in that he charged and collected a fee and then did not do the work, which makes his fee unreasonable.

**J. MRPC 8.1, BAR ADMISSION AND DISCIPLINARY MATTERS**

105. As of the date of the Complaint filed in this matter, Mr. Woodruff has failed to respond to inquiries for information regarding one of the above cases from the investigating attorney for the Commonwealth of the Northern Mariana Islands Bar Association. Such failure is in violation of MRPC 8.1, in that Mr. Woodruff knowingly failed to respond to a lawful demand for information from a disciplinary authority.

16

## K. MRPC 8.4, MISCONDUCT

103. Based on the factual allegations underlying the nine disciplinary cases set forth above, Mr. Woodruff also violated MRPC 8.4(a), (c) and (d) in that the conduct above violated other Rules (8.4(a)), involved deceit and misrepresentations to his clients (8.4(c)) and given the series of violations, taken as a whole, has had a prejudicial effect on the administration of justice (8.4(d)).

## V. DISCUSSION

A court must be extremely diligent in protecting and upholding the integrity and decorum of the judicial system. The public's confidence in the judicial system depends upon it. A main factor in pursuing this constant diligence is to regulate the attorneys who practice law before a court and to assure that attorneys do not engage in conduct that disparages the administration of justice. The Court finds the foregoing facts in each of the nine complaints stated above to be found by clear and convincing evidence since they are deemed admitted by Mr. Woodruff pursuant to Rule 9(c) of the Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth.

Accordingly, the Court must make an initial determination what the appropriate sanction should be for Mr. Woodruff's misconduct. Disciplinary Counsel recommends disbarment, or, in the alternative, indefinite suspension.

**The Court finds Mr. Woodruff's conduct and the numerous violations totally inconsistent with the standard of competent and diligent representation of his clients. Indeed, the Court finds Mr. Woodruff violated MRPC 1.1, 1.3, 1.4, and 8.4(a)(c) and (d) nine times each, MRPC 1.5 four times each, MRPC 3.1, 3.2, and 3.3 once each, and MRPC 8.1 once, for a total of forty-four violations of the MRPC.**

Such numerous and significant violations according to a review of court disciplinary matters in this jurisdiction is a record high and even in other jurisdictions is considered an extreme high. Such violations should be sanctioned in a way that reasonably assures a strong deterrence and message for members of this bar that nothing even remotely close to this number and type of violations over a period of approximately six or more years will or can be tolerated to any degree in this jurisdiction.

**Mr. Woodruff has a history of failing to appear as ordered, of failing to observe rules of court, of**

17

missing deadlines, of receiving attorney's fees and application fees and then filing the applications late, in the wrong place, or not at all, of not communicating with clients to keep them reasonably informed of the status of their matters between them, of taking aggressive action toward one of his clients by threatening to call the police if she kept appearing at his office to inquire as to the status of her legal matter, of misrepresenting facts to clients such as the divorce decree for Ms. Garde, not showing up for a trial and having the case dismissed with prejudice, and miscellaneous other professional shortcomings as detailed above.

Attorneys found to be in violation of the MRPC should be disciplined appropriately by way of this Court imposing a disciplinary result that will assure the public's confidence in the judiciary's regulation of the attorneys practicing in the CNMI.

Accordingly, the Court makes an initial determination that the appropriate sanction is at the very least suspension of Mr. Woodruff for a term of years along with several conditions for readmission. The Court now considers any relevant aggravating or mitigating factors. The Court has not been presented with any mitigating factors.[4] The Court does, however, find aggravating factors that should alter this initial determination, which are considered substantial and indicate a callous and gross indifference and disrespect for the judiciary, the general public, and the clients Mr. Woodruff agreed to represent. The Court at this time finds it proper and necessary to take judicial notice of other courts, that had to take adverse action against Mr. Woodruff for his reproachable indifference in handling court cases and clients.

In the U.S. District Court for the Northern Mariana Islands there are a total of twenty-five different types of adverse actions taken on Mr. Woodruff for his incompetence and non-diligence, including his failure to appear for a trial in District Court, resulting in dismissal with prejudice. Specifically, there are five money sanctions by U.S. District Court for the Northern Mariana Islands for failing to appear as ordered by the

---

[4]Mr. Woodruff presented the Court with two declarations by two of the complainants in the above matters, purportedly as a meritorious defense that the charges lacked merit. Although the Court notes both complainants indicated in their declarations that they did not want to see the charges against Mr. Woodruff pursued, because the Court finds the charges were indeed meritorious, it declines to consider the declarations as mitigating factors. One declaration was filed on March 14, 2013 and the other on May 15, 2013.

18

Court, eleven Orders to Show Cause why he should not be sanctioned for failure to comply with rules, for failure to prosecute, for failure to timely serve complaints, and for miscellaneous other violations of court rules and orders, and six court dismissals of cases because of failure to prosecute, in some cases three and four years after filing of complaint.

The Ninth Circuit of Appeals in three different cases, as detailed below, dismissed each of the cases for failure to file an opening brief.

The Commonwealth Supreme Court dismissed two appeals for untimely filings. This same Court during the proceedings of interim suspension had to threaten him with contempt of Court as he was not in compliance with their orders. The Commonwealth Supreme Court also noted eleven disciplinary pending complaints although this Court is proceeding on only nine of them.

The following list is from the U.S. District Court for the Northern Mariana Islands, the Ninth Circuit Court of Appeals, and the Commonwealth Supreme Court.

A. IN THE U.S. DISTRICT COURT FOR THE NORTHERN MARIANA ISLANDS

1. Mr. Woodruff was sanctioned $225.00 for failing to appear at the appointed time for a scheduling conference.[5]

2. Mr. Woodruff was sanctioned $100.00 for failing to appear at an ordered status conference.[6]

3. Mr. Woodruff was sanctioned $50.00 for failing to appear at a settlement conference.[7]

4. Mr. Woodruff was sanctioned $175.00 for failing to appear at a settlement conference.[8]

---

[5] *See Md. Masum, et. al. v. Island Security Services, et. al.*, Civ. No. 07-0010 (U.S. Dist. Ct. NMI Oct. 10, 2007) (Order Sanctioning Plaintiff's Counsel).

[6] *See Soriano v. Jung A Enterprises, et. al*, Civ. No. 07-007 (U.S. Dist. Ct. NMI Apr. 9, 2008) (Order Sanctioning Plaintiff's Counsel for Failure to Appear; Granting Jung A's Motion to Withdrawn; and, Other Matters).

[7] *See Soriano v. Jung A Enterprises, et. al.*, Civ. No. 07-007 (U.S. Dist. Ct. NMI Jan. 23, 2008) (Order Imposing Monetary Sanctions on Plaintiff's Counsel and Defendant Jung A Enterprises' Counsel).

[8] *See Feliciano v. Eastern Hope Corp.*, Civ. No. 08-0001 (U.S. Dist. Ct. NMI Oct. 27, 2008) (Order Sanctioning Plaintiff's Counsel, Stephen C. Woodruff).

19

5. Mr. Woodruff was sanctioned $225.00 for failing to appear at a status conference.[9]

6. In one of the nine cases listed above, the Court in dismissing the case with prejudice, directed Mr. Woodruff to notify his client that his client may have a cause of action against him for failure to meet minimum professional standards.[10] Over a week's time prior to the trial, Mr. Woodruff contacted the court informally on several occasions in futile attempts to continue the trial because he was busy with other matters. *See id.* Finally, the night before the trial, Mr. Woodruff filed a notice that he would be unable to appear for trial because of medical reasons, and referenced an attached doctor's slip, which was not actually provided. *See id.* The court noted:

> As in almost all of his other lawsuits in this court, Mr. Woodruff has, in this matter, missed deadlines and conferences, almost always due to "unforeseen emergencies" of a personal or professional nature. (Citations omitted)....The court is left with the unmistakable impression that Mr. Woodruff has never given his client the level of representation required to practice law in this court and, put simply, that he was not prepared to proceed to trial today.

*Id.* at 2-3.

7. The court granted Mr. Woodruff's ex parte motion for leave to file a third amended complaint late, but admonished Mr. Woodruff that it expected "its orders to be read, its local rules to be complied with, and deadlines to be observed."[11] The court also noted again Mr. Woodruff's "ever-growing history of late filings, accompanied by unsatisfactory explanations," declaring:

> Once again, counsel has missed a deadline, and once again it's due to his "preoccupation" with other matters, his "inadvertence," and his failure to properly read, understand, and comply with an order of the court, which order included a specific time and date. Compounding these failures was counsel's decision not to obey the local rules and call opposing counsel for a stipulation prior to filing this ex parte motion, despite the court's instruction to him in its last order the he first seek such a stipulation in situations such as this.

*Id.*

8. Defendants were ordered to show cause why they should not be sanctioned for failure to comply with discovery

---

[9] *See Alcaraz v. Hansoll Textile, Ltd., et. al.,* Civ. No. 08-0003 (U.S. Dist. Ct. NMI Feb. 13, 2009) (Order Sanctioning Counsel for Failure to Appear Status Conference and Re-Setting Status Conference).

[10] *See Feliciano v. Eastern Hope Corp.,* Civ. No. 08-0001 (NMI Dist. Ct. Dec. 1, 2008) (Order Dismissing Lawsuit with Prejudice).

[11] *Agcaoili v. L&T Int'l Corp., et al.,* Civ. No. 06-0045 (U.S. Dist. Ct. NMI Sept. 19, 2007) (Order Granting Plaintiff's Counsel's Ex Parte Motion to File Late at 1-2).

20

rules by providing discovery.[12]

9. The Court granted the defendants' motion to dismiss without prejudice as Mr. Woodruff failed to timely file an opposition to the motion to dismiss, resulting in Mr. Woodruff's failure to file being deemed an admission.[13] The court noted:

> In the past two years, Plaintiff's Counsel of record frequently has missed deadlines or filed incomplete pleadings in cases before this court and the Ninth Circuit Court of Appeals. In so doing, he has caused the courts and opposing parties needlessly to expend resources on litigation that he initiated and then neglected.

*Id.* at 2.

10. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed for failure to serve within 120 days or otherwise prosecute, as service still had not been effected seven months after the lawsuit was filed.[14]

11. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed for failure to serve within 120 days or otherwise prosecute, as service had still not been effected seven months after the lawsuit was filed.[15]

12. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed for failure to prosecute, as the matter had been pending for more than six months without any action taken by the parties during that period of time.[16]

13. The court dismissed a case without prejudice because the plaintiff failed to explain why service of process should have been deemed effected.[17]

---

[12] *See Orencia v. Hakshon Kang, et. al.*, Civ. No. 09-0002 (U.S. Dist. Ct. NMI May 2, 2009) (Order to Show Cause Why Sanctions Should Not be Imposed for Failure to Provide Discovery).

[13] *See Cada v. World Corp., et. al.*, Civ. No. 12-00023 (U.S. Dist. Ct. NMI Dec. 21, 2012) (Order of Dismissal without Prejudice).

[14] *See Alcaraz v. Hansoll Textile, Ltd., et. al.*, Civ. No. 08-0003 (U.S. Dist. Ct. NMI Aug. 22, 2008) (Order to Show Cause Why Lawsuit Should Not be Dismissed for Failure to Prosecute).

[15] *See Garcia v. Poong-In Saipan, Inc.*, Civ. No. 08-0017 (U.S. Dist. Ct. NMI Aug. 22, 2008) (Order to Show Cause Why Lawsuit Should Not be Dismissed for Failure to Prosecute).

[16] *See Garcia v. Poong-In Saipan, Inc.*, Civ. No. 08-0017 (U.S. Dist. Ct. NMI May 20, 2011) (Order Dismissing Case without Prejudice).

[17] *See Garcia v. Poong-In Saipan, Inc.*, Civ. No. 08-0017 (U.S. Dist. Ct. NMI June 20, 2011) (Order to Show Cause).

·21

14. The Court dismissed a matter without prejudice for failure to serve and because no action had taken place, and plaintiff failed to show good cause for failure to service or to request additional time to effect service.[18]

15. The court dismissed a lawsuit with prejudice because service had not been effected for seven months since the lawsuit was filed, even though the plaintiffs were given an additional thirty days to accomplish service.[19]

16. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed for failure to serve within 120 days or otherwise prosecute, as service had still not been effected five months after the lawsuit was filed.[20]

17. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed for failure to serve within 120 days or otherwise prosecute, as service had still not been effected five months after the lawsuit was filed.[21]

18. Plaintiff was ordered to show cause why the lawsuit should not be dismissed for lack of prosecution given that the case had been pending for more than six months without any action taken by the parties during that period of time.[22]

19. Plaintiff was ordered to show cause why the lawsuit should not be dismissed for lack of prosecution given that the case had been pending for three years without any action taken by the parties since the lawsuit was filed.[23]

20. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed with prejudice for lack of prosecution given that the case had been pending for four years without any activity on the docket since the complaint

---

[18] *See Santos v. Winners Corp.*, Civ. No. 08-0023 (U.S. Dist. Ct. NMI Mar. 27, 2009) (Order Dismissing without Prejudice for Failure to Serve).

[19] *See Africa v. Commonwealth Garment Manufacturing, Inc.*, Civ. No. 08-0014 (U.S. Dist. Ct. NMI Oct. 7, 2008) (Order of Dismissal with Prejudice).

[20] *See Lacbayo v. Wedding*, Civ. No. 08-0013 (U.S. Dist. Ct. NMI Aug. 22, 2008) (Order to Show Cause Why Lawsuit Should Not be Dismissed for Failure to Prosecute).

[21] *See Africa v. Commonwealth Garment Manufacturing, Inc.*, Civ. No. 08-0014 (U.S. Dist. Ct. NMI Aug. 22, 2008) (Order to Show Cause Why Lawsuit Should Not be Dismissed for Failure to Prosecute).

[22] *See Quitugua v. Micronesian Resort, Inc.*, Civ. No. 10-00011 (U.S. Dist. Ct. NMI July 6, 2011) (Order to Show Cause).

[23] *See Legaspi v. Neo Fashion, Inc.*, Civ. No. 08-00053 (U.S. Dist. Ct. NMI Dec. 30, 2011) (Order to Show Cause).

22

was filed.[24]

21. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed with prejudice for lack of prosecution given that the case had been pending for almost four years without any activity on the docket since the complaint was filed.[25]

22. Plaintiffs were ordered to show cause why their lawsuit should not be dismissed with prejudice for lack of prosecution given that the case had been pending for three years without any activity on the docket since the complaint was filed.[26]

23. The Court dismissed a matter with prejudice for failure to prosecute because of the plaintiff's repeated failures to promptly pursue the matter, noting that the original complaint was not timely filed, "consistent with plaintiff's pattern of inaction in the present matter."[27]

24. The Court dismissed a matter without prejudice for lack of prosecution because the plaintiff failed to respond to a previously issued order to show cause why the case, which had been pending for three years, should not be dismissed for lack of prosecution.[28]

25. The court denied the plaintiff's motion for reconsideration, and declined to grant relief from its final order, finding Mr. Woodruff's submitted statement from his physician was insufficient given the history of the lawsuit.[29]

---

[24] See Acunin, et. al. v. Sam Kwang Saipan Corp., et. al., Civ. No. 08-00040 (U.S. Dist. Ct. NMI Feb. 27, 2013) (Order to Show Cause).

[25] Choi, Byung Joon v. Jung A. Enterprises, et. al., Civ. No. 08-00041 (U.S. Dist. Ct. NMI Feb. 26, 2013) (Order to Show Cause).

[26] See Sadim v. Sam Kwang Saipan Corp., et. al., Civ. No. 09-00037 (U.S. Dist. Ct. NMI Feb. 26, 2013) (Order to Show Cause).

[27] Prematilaka v. Camacho, et. al., Civ. No. 05-0045 (U.S. Dist. Ct. NMI Aug. 10, 2006) (Order of Dismissal with Prejudice at 1-2).

[28] See Legaspi v. Neo Fashion, Inc., Civ. No. 08-00053 (U.S. Dist. Ct. NMI Jan. 18, 2012) (Order of Dismissal).

[29] See Feliciano v. Eastern Hope Corp., Civ. No. 08-0001 (NMI Dist. Ct. Dec. 19, 2008) (Order Denying Motion for Reconsideration).

23

## B. U.S. COURT OF APPEALS FOR THE NINTH CIRCUIT

26. The U.S. Court of Appeals for the Ninth Circuit dismissed an appeal because of Mr. Woodruff's failure to file the opening brief.[30]

27. The U.S. Court of Appeals for the Ninth Circuit dismissed an appeal for failure to prosecute because of Mr. Woodruff's failure to file the opening brief.[31]

29. The U.S. Court of Appeals for the Ninth Circuit dismissed an appeal for failure to perfect the appeal because of Mr. Woodruff's failure to file the opening brief.[32]

## C. COMMONWEALTH SUPREME COURT

30. The Supreme Court of the Commonwealth of the Northern Mariana Islands dismissed an appeal for failure to prosecute because Mr. Woodruff failed to timely certify and file with the Clerk of the Supreme Court the record and transcript of proceedings and no request for extension of time had been made.[33]

31. The Supreme Court of the Commonwealth of the Northern Mariana Islands dismissed an appeal for failure to prosecute because Mr. Woodruff failed to timely prepare and file the transcript of the proceedings below.[34]

32. The Supreme Court of the Northern Mariana Islands issued an interim suspension on Mr. Woodruff, finding in part that the public would suffer irreparable harm if he continued practicing law prior to resolution of the pending disciplinary proceedings. The Court noted Mr. Woodruff had eleven complaints against him for alleged conduct ranging from lying about filing a criminal appeal to allegations of a lack of diligence due to having several cases dismissed with prejudice. The Court also noted that even in response to the application for interim suspension, Mr.

---

[30] *See Feliciano v. Eastern Hope Corp.*, No. 09-15167, 2009 U.S. App. LEXIS 29778 (9th Cir. Oct. 6, 2009).

[31] *Murugesan v. L & T Group of Companies, Ltd.*, Civ. No. 09-16342 (U.S. Ct. of App. 9th Cir. Mar. 4, 2010) (Order).

[32] *Pariyar v. Hong Kong Entertainment (Overseas) Investment, Ltd.*, Civ. No. 10-15449, (U.S. Ct. of App. 9th Cir. May 27, 2011) (Order).

[33] *See Aguon v. Aguon*, 2007 MP 2.

[34] *County of Orange v. Bahillo*, Civ. No. 06-0033 (NMI Sup. Ct. Oct. 17, 2007) (Order Dismissing Appeal).

24

Woodruff filed his first response late. He then filed his second response late as well, even after the Court put him on notice about untimely filing responses.[35]

33. The Supreme Court of the Northern Mariana Islands, in connection with Mr. Woodruff's interim suspension, ordered him to provide the Court a list of his clients and warned him that failure to timely comply would lead to further sanctions. Mr. Woodruff failed to timely file and the Court directed him, under penalty of civil contempt, to timely file at a later date. The Court ordered that if he failed to timely comply, he would automatically be found in contempt of court and sentenced to thirty days in jail, of which twenty-seven days would be suspended.[36]

## VI. CONCLUSION

The Court finds its appropriate to summarize some of the general factors that determine its decision below:

- ▸ nine violations of MRPC 1.1

- ▸ nine violations of MRPC 1.3

- ▸ nine violations of MRPC 1.4

- ▸ four violations of MRPC 1.5

- ▸ one violation of MRPC 3.1

- ▸ one violation of MRPC 3.2

- ▸ one violation of MRPC 8.1

- ▸ nine violations of MRPC 8.4

The violations in the instant cases, again, total forty-four violations of the MRPC. The Court also notes the following aggravating factors as detailed herein:

- ▸ Twenty-five different types of adverse actions and/or sanctions taken against Mr. Woodruff in the U.S. District Court for the Northern Mariana Islands for Mr. Woodruff's incompetence and non-diligence;

---

[35] *In re Disciplinary Pleadings of Stephen C. Woodruff,* 2013 MP 1.

[36] *See In re Disciplinary Proceedings of Stephen C. Woodruff,* No. 2013-SLD-0001-ADA (NMI Sup. Ct. Mar. 11, 2013) (Contempt Order).

25

> ▸ Three dismissals of cases for failure to file an opening brief in the Ninth Circuit of Appeals;

> ▸ Two dismissals of appeals for failure to timely file by the Commonwealth Supreme Court; and

The Court reiterates Mr. Woodruff's history and pattern of failing to appear as ordered, of failing to observe rules of court, of missing deadlines, of receiving attorney's fees and application fees and then filing the application late, in the wrong place, or not at all, of not communicating with clients to keep them reasonably informed of the status of their matters between them, of taking aggressive action toward at least one client who kept inquiring about her legal matter, of misrepresenting facts to clients such as the divorce decree for Ms. Garde, of not showing up for a trial and having the case dismissed with prejudice, and miscellaneous other professional shortcomings.

The Court finds the foregoing list of cases constitute aggravating factors, which it considers to be conduct indicating a gross indifference and disrespect for the judiciary, the legal profession, the general public, and the many clients Mr. Woodruff agreed to represent. The above establishes a pattern spanning over at least the last six or more years, in three different courts, and in front of multiple judges, who have all found Mr. Woodruff fell below the minimum standard of competence and diligence required regarding timeliness and the professional prosecution of cases and client matters.

In view of the foregoing aggravating factors, the Court believes Mr. Woodruff's misconduct has resulted in serious injuries to the legal profession, his clients, the public, and the legal system in general through a continued disparagement of the administration of justice and such conduct cannot be allowed to continue.

Standard 4.41 of the American Bar Association's Standards for Imposing Lawyer Sanctions (2005), counsels: Disbarment is generally appropriate when:

> (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or (b) a lawyer fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS, STANDARD 4.41 (2005).

Mr. Woodruff in each of the nine cases in this action clearly falls deeply into categories (b) and (c) provided above, by failing to perform services for his clients, causing serious or potentially serious injury, and by engaging in a pattern of neglect regarding client matters, causing serious or potentially serious injuries to his clients.

26

Case law from other jurisdictions is replete with instances of disbarment for similar and even for far less egregious conduct. *See, e.g., Garrett,* 427 Md. at 228-29 (disbarment appropriate where, in nine different cases, the attorney committed multiple violations of MRPC 1.1, 1.2(a), 1.3, 1.4, 1.5(a), 1.15(a) and (d), 1.16 (d), 3.2, 8.1, and 8.4(a), (c), and (d)); *Gadda v. Ashcroft,* 377 F.3d 934 (9th Cir. 2004) (disbarment appropriate based on an attorney's alleged acts of misconduct including failing to appear at court conferences, failing to keep clients apprised of the proceedings and providing ineffective assistance of counsel); *Att'y Griev. Comm'n v. Hodgson,* 396 Md. 1, 643-44 (2006) (disbarment appropriate for violations of MRPC 1.3, 1.4(a), 1.4(b), 8.1(b), and 8.4(d)).

The Court therefore finds that its initial determination of suspension for a period of years would undermine the appropriate standards of the practice of law in the CNMI that need to be maintained. Therefore, it is this Court's opinion that the appropriate discipline in view of the foregoing findings and factors detailed herein is disbarment of Mr. Woodruff for his forty-four violations of the MRPC in this case as well as his history of other adverse actions.

**IT IS HEREBY ORDERED:**

1. Mr. Woodruff is forthwith disbarred from the Commonwealth Northern Marianas Bar.

2. Mr. Woodruff shall pay any costs for the prosecution of this matter. This amount shall be paid to the Court.

3. Mr. Woodruff shall comply with all provisions of Rule 15 of the NMI Disciplinary Rules, which includes, among other things, notices to clients and others and certifications to the Court.

4. Mr. Woodruff shall submit a list of current and pending clients to the Commonwealth Superior Court within thirty days of the date of this order, and shall pay to any and all clients the sum of any unearned retainer fees.

5. The Court adopts some of the Disciplinary Counsel's recommendations as to reimbursement for the clients involved in the disciplinary cases above:

   a. Action 2008-008: Kenneth and Wantapha Warfle shall be refunded $600.00 in attorney's fees.

   b. Action 2008-012: Ambrosio v. Baing shall be refunded $50.00 in attorney's fees, plus $1,000.00 in liquidated damages.

   c. Action No. 2009-001: Invictus T. Feliciano shall be refunded $300.00 in attorney's fees.

27

d. Action 2009-005: Honorio G. Cambronero shall be refunded $100.00 in attorney's fees[37] for the labor case that was dismissed with prejudice due to Mr. Woodruff's misconduct.

e. Action 2011-012: Emily Santos Garde shall be refunded $300.00 of the $1,200.00 in attorney's fees.

f. Action No. 2011-013: Ana E. Reyes shall be refunded $500.00 of the $2,510.00 in attorney's fees.

g. Action No. 2011-014: Esperanza Ellis shall not be compensated due to her signed declaration indicating she did not want to see Mr. Woodruff pursued.

h. Action No. 2012-001: Jihyun Lee shall not be compensated due to her signed declaration indicating she did not want to see Mr. Woodruff pursued.

5. Disciplinary Counsel in this matter shall submit his attorney's fees and costs of prosecution within fifteen days of this Order.

**SO ORDERED** this 7th day of June, 2013.

/ s /
_____
David A. Wiseman, Associate Judge

---

[37]Although the Disciplinary Counsel recommended $10,000.00 as potential damages for Mr. Cambronero's heart surgery, the Court decided not to include this payment.

28

IN THE
SUPREME COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE MATTER OF STEPHEN C. WOODRUFF,
*Respondent-Appellant.*

Supreme Court No. 2013-SCC-0030-CIV

Superior Court No. 13-0017

**OPINION**

**Cite as: 2015 MP 11**

Decided December 9, 2015

Stephen C. Woodruff, Saipan, MP, Respondent-Appellant.

George L. Hasselback, Disciplinary Counsel, Office of the Public Auditor, Saipan, MP.

*In re Woodruff*, 2015 MP 11

BEFORE: ALEXANDRO C. CASTRO, Chief Justice; JOHN A. MANGLONA, Associate Justice; HERBERT D. SOLL, Justice Pro Tem.

CASTRO, C.J.:

¶ 1    Respondent Stephen C. Woodruff ("Woodruff") appeals the trial court orders entering default against him on April 4, 2013; denying reconsideration on April 24, 2013; and disbarring him on June 7, 2013. Two issues are now properly before this Court: (1) whether the trial court erred by entering default pursuant to the Rules of Civil Procedure, and (2) whether the trial court erred by denying Woodruff's motion to set aside entry of default.[1] For the reasons discussed below, we conclude the trial court neither erred by entering default nor refusing to set aside the entry of default; therefore, we AFFIRM the orders of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    Nine complaints were submitted against Woodruff relating to his professional conduct as an attorney between 2008 and 2012. Woodruff's clients alleged he failed to adequately communicate with them and did not complete work for which he was paid. Consequently, disciplinary counsel applied for an interim suspension of his bar license on January 4, 2013. *In re Woodruff*, 2013 MP 1 ¶ 2. On February 1, 2013, this Court suspended Woodruff from the practice of law. *Id.* ¶ 25.

¶ 3    Disciplinary counsel filed a complaint in the Superior Court against Woodruff on January 22, 2013, alleging violations of the NMI Rules of Attorney Discipline and Procedures ("Disciplinary Rules"). The complaint was served upon Woodruff on February 4th. An amended complaint was subsequently filed and served upon Woodruff on February 19th. The amended complaint included a footnote indicating the due date for Woodruff's response—March 5th.[2] When Woodruff did not respond by March 5th, disciplinary counsel filed for an entry of default. The court entered default on March 6th.

¶ 4    The hearing for default judgment was scheduled for March 14, 2013. Immediately before the hearing, Woodruff moved to set aside the entry of default. *In re Woodruff*, No. 13-0017 (Super. Ct. Mar. 14, 2013) (Notice and

---

[1]    Woodruff submitted a fifty-six page opening brief in violation of this Court's thirty-five page limit for opening briefs. NMI SUP. CT. R. 32(a)(7). As a consequence of Woodruff's failure to follow court rules, we struck pages 36–56 of Woodruff's brief. *In re Woodruff*, No. 2013-SCC-0030-CIV (NMI Sup. Ct. Oct. 14, 2014) (Order ¶ 9). Although Woodruff raised six issues on appeal, only the first issue was addressed within the portion of the brief that remained. Consequently, only the first issue, which we have divided into two sub-issues, is properly before us.

[2]    The Amended Complaint indicated the response was due ten days after service of the amended complaint, which was made on February 19, 2013. Excluding intermediate Saturdays, Sundays, and legal holidays, the tenth day following service was March 5, 2015. *See* NMI R. CIV. P. 6(a).

*In re Woodruff*, 2015 MP 11

Motion to Set Aside Default) [hereinafter Motion to Set Aside Default]. In his motion, Woodruff asserted he did not record the date of service of the first amended complaint, and he "never became mentally clear on when [his] response was due." *Id.* at 3. Furthermore, he claims he emailed disciplinary counsel on March 8th, "regarding the date of service of the [amended complaint] and requested [to] agree on a reasonable date . . . to answer or otherwise respond." *Id.* The court denied Woodruff's motion. Woodruff then moved for reconsideration, which the court also denied.

¶ 5    After holding a default judgment hearing, the court ordered Woodruff disbarred. In the disbarment order, the court found Woodruff failed to meet his professional obligations with regard to nine separate clients.

¶ 6    Woodruff now appeals the disbarment order, order denying reconsideration, and order denying motion to set aside default.

## II. JURISDICTION

¶ 7    We have jurisdiction over final judgments and orders issued by the Superior Court. NMI CONST. art. IV, § 3. The Superior Court entered the disbarment order on June 7, 2013. Woodruff timely appealed the Superior Court's final judgment. Accordingly, we have jurisdiction.

## III. STANDARDS OF REVIEW

¶ 8    Woodruff raises two issues on appeal. First, he argues the trial court erred by entering default pursuant to the timeline provided by the Rules of Civil Procedure. We review the court's entry of default for abuse of discretion. *See Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir. 1986). Second, Woodruff asserts the court erroneously denied his motion to set aside entry of default. The trial court's denial of a motion to set aside entry of default is reviewed for abuse of discretion. *Roberto v. De Leon Guerrero,* 4 NMI 295, 296 (1995).

## IV. DISCUSSION

¶ 9    Woodruff argues the court improperly entered default because it erroneously applied the Rules of Civil Procedure to establish the deadline for his response to the amended complaint. Additionally, he contends the court erred by refusing to set aside entry of default. We address each argument in turn.

### A. Entry of Default

¶ 10    Woodruff argues the trial court erred by applying Rule of Civil Procedure 15(a) in the context of a disciplinary action. The Disciplinary Rules mandate that disciplinary hearings "shall be conducted in accordance with the procedures contained in this Rule and the Rules of Evidence and Rules of Civil Procedure[ ] where applicable." NMI R. ATT'Y DISC. & P. 9(e). Because the Disciplinary Rules are silent with regard to the filing of amended complaints, the trial court applied Rule of Civil Procedure 15(a), which requires that a response to an amended pleading must be filed within ten days of service or the remainder of the time to respond to the original pleading, whichever is longer. NMI R. CIV. P 15(a). Here, disciplinary counsel filed a complaint on January

22nd and an amended complaint on February 19th. Woodruff did not respond by March 5th, and the trial court entered default the following day.

¶ 11    Woodruff claims he should have been allowed twenty days to respond to the first amended complaint rather than the ten days permitted under the Rules of Civil Procedure. He asserts the trial court erred by applying Rule of Civil Procedure 15(a) because under Disciplinary Rule 9(e), the Rules of Civil Procedure are only applicable to disciplinary hearings—not pleadings. Instead, Woodruff contends that an amended complaint renders the original complaint a nullity, and he was therefore entitled to a full twenty days to respond. Furthermore, he asserts use of the Rules of Civil Procedure is limited to those situations "where applicable," NMI R. ATT'Y DISC. & P. 9(e), which means the rules are not applicable in certain instances. Woodruff contends that attorney discipline cases are "quasi-criminal," and he is therefore entitled to lenity in construing the Disciplinary Rules.

¶ 12    Woodruff did not raise this issue in either his motion to set aside entry of default or his motion to reconsider. Instead, he argued that he failed to record the date of service and was unclear on when his response was due. We generally do not review issues raised for the first time on appeal. *Bolalin v. Guam Publications*, 4 NMI 176, 181 (1994). However, three narrow exceptions to this rule exist: "(1) a new theory or issue arises because of a change in the law while the appeal was pending; (2) the issue is only one of law not relying on any factual record; or (3) plain error occurred and an injustice might otherwise result . . . ." *Camacho v. Northern Marianas Retirement Fund*, 1 NMI 362, 372 (1990) (citing *Brown v. Civil Service Commission*, 818 F.2d 706 (9th Cir. 1987)). If any of these three exceptions apply, this Court may review the issue.

¶ 13    The issue is whether Rule of Civil Procedure 15(a), regarding amended complaints, applies in attorney disciplinary proceedings. This is purely a legal issue and does not rely upon the factual record—determining where the Rules of Civil Procedure apply in attorney disciplinary proceedings is strictly a matter of interpreting the Disciplinary Rules. Additionally, there is no indication disciplinary counsel would not have tried this case differently had Woodruff raised this issue at trial. *See, e.g.*, *Brown*, 818 F.2d at 710 ("[T]his exception necessarily applies only when the [opposing party] 'would not be prejudiced and would not have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue.'" (quoting *United States v. Gabriel*, 625 F.2d 830, 832 (9th Cir. 1980))). Accordingly, we address Woodruff's argument for the first time on appeal.

¶ 14    We must therefore determine whether Rule of Civil Procedure 15(a) applies within the context of a disciplinary action conducted under the Disciplinary Rules. The Disciplinary Rules provide that the disciplinary "hearing shall be conducted in accordance with the procedures contained in this Rule and the Rules of Evidence and Rules of Civil Procedure[ ] where applicable." NMI R. ATT'Y DISC. & P. 9(e).

*In re Woodruff,* 2015 MP 11

¶ 15    The Disciplinary Rules explicitly provide for the application of the Rules of Civil Procedure in two specific instances. First, the rules provide that hearings "shall be conducted in accordance with the procedures contained in [Disciplinary Rule 9] and the Rules of Evidence and the Rules of Civil Procedure[ ] where applicable." NMI R. ATT'Y DISC. & P. 9(e). Second, "[s]ervice of any other papers or notices required by these rules shall be made in accordance with the Rules of Civil Procedure of the Superior Court." NMI R. ATT'Y DISC. & P. 12(b). The Disciplinary Rules do not explicitly provide for the application of the Rules of Civil Procedure with regard to amended pleadings.

¶ 16    Disciplinary Rule 9—entitled "Disciplinary Hearing"—sets forth the procedure applied to disciplinary proceedings. While the procedures detailed in Rule 9 are extensive, they are not fully comprehensive. For instance, Rule 9(c) provides that a respondent attorney shall have twenty days to answer a complaint. NMI R. ATT'Y DISC. & P. 9(c). If the complaint is unanswered, the charges are deemed admitted. *Id.* However, the Disciplinary Rules do not specify the method for computation of time, nor do they provide for the procedural steps following default. Furthermore, Rule 9 does not explicitly provide for motions to set aside entry of default or reconsideration, both of which Woodruff filed in the underlying disciplinary action. In light of these procedural gaps in the Disciplinary Rules, we deem it appropriate to refer to the Rules of Civil Procedure.

¶ 17    Furthermore, applying Rule of Civil Procedure 15(a) for setting the deadline to respond to an amended complaint will facilitate the speedy resolution of disciplinary actions. The Disciplinary Rules provide several deadlines to expedite proceedings. For example, the disciplinary hearing must be held within 90 days of the filing of the complaint. NMI R. ATT'Y DISC. & P. 9(d). And after the conclusion of the hearing, the judge's decision is due within twenty days. NMI R. ATT'Y DISC. & P. 9(i). We think it would be contrary to the underlying intent of the Disciplinary Rules to require disciplinary counsel to re-file a new complaint, thereby triggering a full twenty day response period, rather than allowing counsel to file an amended complaint subject to the shorter response timeline under the Rules of Civil Procedure.

¶ 18    Last, we find unpersuasive Woodruff's assertion that he is entitled to lenity. "The 'rule of lenity' requires the court to interpret any ambiguity so as to provide for the more lenient of any two possible sentencing schemes." *Commonwealth v. Manglona,* 1997 MP 28 ¶ 5 (citing *United States v. Hoyt,* 879 F.2d 505, 512 (9th Cir. 1989)). It "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States,* 447 U.S. 381, 387 (1980) (superseded by statute). While attorney disciplinary proceedings may be quasi-criminal in nature, Woodruff offers no authority supporting the proposition that the rule of lenity is applicable outside of criminal prosecutions. Furthermore, Woodruff offers no legal argument supporting his conclusion that the rule of lenity should

*In re Woodruff*, 2015 MP 11

apply to resolve ambiguities regarding the procedural aspects of attorney discipline.

¶ 19    Accordingly, we conclude the trial court did not abuse its discretion by entering default pursuant to Rule of Civil Procedure 15(a).

### B. Motion to Set Aside Entry of Default

¶ 20    Woodruff further argues that the trial court abused its discretion by refusing to set aside entry of default. The trial court may set aside entry of default upon a showing of good cause, and "if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." NMI R. CIV. P. 55(c).[3] Whether good cause exists is a matter of discretion left to the trial court. *Roberto*, 4 NMI at 297. Grounds for setting aside an entry of default often parallels the grounds for setting aside a default judgment under Rule 60(b). *Id.* "The underlying concern is 'whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Id.* "[D]efault judgments are generally disfavored," and cases should be decided on the merits, if possible. *Pena v. Seguros J. Commercial, S.A.* 770 F.2d 811, 814 (9th Cir. 1985).

¶ 21    In analyzing whether relief from entries of default and default judgments should be granted, we have looked toward the Ninth Circuit's interpretation of Federal Rules of Civil Procedure for guidance.[4] Under the Ninth Circuit's standard, courts consider three factors: "(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default

---

[3]    Grounds for setting aside a default judgment include:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

NMI R. CIV. P. 60(b).

[4]    We have previously looked toward the Ninth Circuit's interpretation of the Federal Rule for guidance. See *Roberto*, 4 NMI 295 (citing *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, (9th Cir. 1986), *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984), *Pena v. Seguros J. Commercial, S.A.* 770 F.2d 811 (9th Cir. 1985), and *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988)). In *Roberto*, this Court made reference to two alternative standards for setting aside entry of default, but did not clearly identify what those standards were. *Roberto*, 4 NMI at 297. Moreover, the Court did not explicitly adopt a particular test. *Id.*

*In re Woodruff*, 2015 MP 11

judgment would prejudice the other party." *United States v. Signed Personal Check No. 730*, 615 F.3d 1085, 1091 (9th Cir. 2010) (internal quotation marks omitted), *see also Roberto*, 4 NMI at 297. While it is clear that the party seeking to set aside entry of default bears the burden of satisfying this test, it is unclear whether the party must also establish every factor.[5] *Roberto*, 4 NMI at 297. Nevertheless, the existence of a meritorious defense is a prerequisite to setting aside entry of default. *Id.*

### 1. Culpable Conduct

¶ 22    A party's conduct is culpable when "he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). An intentional failure to answer does not include all acts traditionally thought of as intentional; rather, courts have found an intentional failure to answer akin to an act of bad faith:

> [W]hat we have meant is something more like, in the words of a recent Second Circuit opinion addressing the same issue, "willful, deliberate, or evidence of bad faith." Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not "intentional" under our default cases, and is therefore not *necessarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable.

*TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697–98 (9th Cir. 2001) (internal citations omitted). But when the defendant is an attorney, who is presumably aware of the consequences of default, failure to respond upon receipt of actual or constructive notice may constitute culpable conduct. *Id.* at 699 (citing *Direct Mail Specialists*, 840 F.2d at 690).

¶ 23    In his motion to set aside the entry of default, Woodruff claims his possible failure to timely respond "was the result of mistake, inadvertence, excusable neglect, or other good cause . . . ." Motion to Set Aside Default at 3. He claims he was unsure of his response deadline, stating: "[a]t the time of service of the [First Amended Complaint], I failed to record the date of service. As a result, I never became mentally clear on when my response was due." *Id.* On appeal, he asserts that there is no reason to deem his conduct culpable.

---

[5]    In *Roberto*, this Court indicated its understanding that all three of the factors needed to be shown under one articulation of the test. This view is supported by several federal court opinions. *See, e.g., Pena*, 770 F.2d at 815 (concluding defendant was not entitled to relief after concluding only that default was the result of culpable conduct); *Alan Neuman Productions, Inc.* 862 F.2d, at 1392 (affirming denial to set aside default where defendant's conduct was culpable). This Court rested its decision on the lack of a meritorious defense. *Roberto*, 4 NMI at 297. Thus, it is not clear if prejudice or culpability are similarly dispositive factors.

*In re Woodruff*, 2015 MP 11

¶ 24    Woodruff admitted his failure to respond was due to his own inattention. We also note that the basis for the disciplinary action involved multiple complaints that Woodruff failed to diligently pursue legal matters, including repeated allegations of his failure to adequately communicate with clients and to timely complete work. Moreover, in the instant appeal, Woodruff failed to timely file his appendix and filed a nonconforming opening brief despite being granted two extensions of time. If he were a layperson, his conduct in the underlying disciplinary action might not rise to the level of an act that is willful, deliberate, or in bad faith that would qualify as intentional. But because Woodruff is an attorney, who is expected to appreciate the legal consequence of default, we conclude his failure to respond was due to his culpable conduct.

### 2. Meritorious Defense

¶ 25    "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *TCI Group*, 244 F.3d at 700. The defendant need only "allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default." *Signed Personal Check No. 730*, 615 F.3d at 1094.

¶ 26    Here, Woodruff claims that a declaration of one his complaining clients, Ellis, provides a defense to one of the nine complaints against him. He also contends that he had not received notice of another two of the complaints prior to the interim suspension proceedings. Additionally, Woodruff asserts Superior Court rulings relating to his representation of Feliciano and Cambronero show meritorious defenses to two other complaints because they are preclusive of disciplinary action. Last, he argues that he "had further identified other defenses that applied generally to all nine complaints, in particular the failure of the Disciplinary Committee to process the complaints against him in the manner required by law." Opening Br. at 30.

¶ 27    Even assuming the Ellis declaration and allegedly deficient notice provide defenses to three of the complaints, Woodruff does not demonstrate the existence of a meritorious defense to the disciplinary action as a whole. Woodruff does not offer legal authority for the proposition that the Superior Court judgments in the Feliciano and Cambronero matters are preclusive of disciplinary action. Furthermore, his conclusory assertion that he has "identified other defenses" that apply to all nine complaints is unavailing because there is no factual support for his claim. To the extent that he asserts Disciplinary Counsel failed to prosecute the complaints in a timely manner, such allegations do not constitute a defense to the underlying disciplinary action. *See* NMI R. ATT'Y DISC. & P. 9(d). Consequently, we conclude Woodruff has not alleged facts sufficient to constitute a meritorious defense to the underlying disciplinary action.

### 3. Prejudice

¶ 28    To show prejudice to the non-defaulting party, "the setting aside of a judgment must result in greater harm than simply delaying resolution of the

*In re Woodruff*, 2015 MP 11

case." *TCI Group*, 244 F.3d at 701. Rather, establishing prejudice requires a showing that setting aside default will hinder the plaintiff's ability to pursue the claim. *Falk*, 739 F.2d at 463. For example, prejudice may exist where delay can lead to loss of evidence or other difficulties with discovery. *TCI Group*, 244 F.3d at 701 (citing *Thompson v. American Home Assurance*, 95 F.3d 429, 433–34 (6th Cir. 1996)). On the other hand, requiring a plaintiff to litigate the merits of a case does not, by itself, constitute prejudice. *Id.* In the absence of default, the plaintiff would have to litigate the merits of the case; thus, "[a] default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim." *Id.* Thus, "vacating the default judgment" does not prejudice the non-defaulting party because it "merely restores the parties to an even footing in the litigation." *Id.*

¶ 29    Here, setting aside entry of default would have resulted in additional proceedings and additional costs to be borne by the bar association and the Commonwealth. But delay and cost do not properly constitute prejudice. Furthermore, there would be no additional risk of harm to the public because Woodruff continues to be subject to an interim suspension. *In re Woodruff*, 2013 MP 1 ¶ 25. Thus, no prejudice would have resulted from the setting aside of the entry of default.

## V. CONCLUSION

¶ 30    Woodruff does not show good cause sufficient to set aside entry of default. He fails to carry his burden of demonstrating that default was not the result of his own culpable conduct and that there was a meritorious defense. We therefore conclude the trial court did not abuse its discretion by refusing to set aside entry of default. We also conclude the trial court did not err by entering default pursuant to the Rules of Civil Procedure. Accordingly, we AFFIRM the entry of default and the default judgment order disbarring Woodruff from the practice of law.

SO ORDERED this 9th day of December, 2015.

/s/ _____
ALEXANDRO C. CASTRO
Chief Justice

/s/ _____
JOHN A. MANGLONA
Associate Justice

*In re Woodruff*, 2015 MP 11

SOLL, J.P.T., dissenting:

¶ 31    Although I agree with the majority that the trial court followed the proper procedure when it entered default and refused to set aside entry of default, I would exercise the Supreme Court's inherent authority to regulate attorney conduct and reverse and remand for further proceedings.

¶ 32    The Supreme Court has "the inherent authority and jurisdiction to regulate the conduct of attorneys practicing before [it.]" *In re Roy*, 2007 MP 28 ¶ 7. When an attorney discipline case is appealed, the Court "may affirm, reverse, or modify the decision of the Superior Court, or remand the matter for further hearing in the Superior Court." NMI R. ATT'Y DISC. & P. 9(k). This decision is based on "the nature of the misconduct, the cumulative weight of the violations, and the harm to the public and the profession." *In re Yana & Atalig*, 2014 MP 1 ¶ 38 (quoting *In re Roy*, 2007 MP 28 ¶ 7) (internal quotation marks omitted). Thus, the Supreme Court may modify attorney discipline after evaluating the aggravating and mitigating circumstances of the particular case. As an example, the Court modified the suspension order in *In re Yana & Atalig* based upon "the flagrant nature of the conduct, the immense weight of the violations, and the considerable harm to the public and the profession," and ordered disbarment. 2014 MP 1 ¶¶ 38, 46.

¶ 33    Disbarment is a drastic remedy that deprives attorneys of their livelihood. It "is not a punishment, but rather a necessary measure to protect the public, which has a right to expect that the court will be vigilant in withholding and withdrawing an attorney's certificate of qualification and character upon which the public relies." *Saipan Lau Lau Dev. v. Sup. Ct*, 2001 MP 2 ¶ 38 (citing *Oklahoma Bar Ass'n v. Woodard*, 362 P.2d 960, 963–64 (Okla. 1960)). Here, Woodruff has lost his livelihood based upon unproven allegations as a consequence of his default. Assuming the truth of the allegations, which generally regard an inattention to his legal practice, Woodruff may be deserving of an opportunity to rehabilitate himself. I am further concerned that Woodruff's default resulted from the application of relatively ambiguous Disciplinary Rules. In light of these considerations, I would exercise the Court's inherent authority to regulate attorney conduct and remand so that a disciplinary hearing could be held.

DATED this 9th day of December, 2015.

/s/ _____
HERBERT D. SOLL
Justice Pro Tem

# *Disciplinary Committee*

## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Michael W. Dotts
*Member*
Lillian A. Tenorio
*Member*
Jane Mack
*Secretary/Member*
Robert T. Torres
*Member*

Telephone: (670) 323-2115
Facsimile:   (670) 323-2116
Email: thbellas@pticom.com

P.O. Box 505032
Saipan, MP 96950

August 1st, 2008

CONFIDENTIAL COMMUNICATION
VIA REGISTERED MAIL

Stephen C. Woodruff, Esq.
Attorney At Law
P.O. Box 500770
Saipan, MP 96950

Subject:   Complaint Filed With The Disciplinary Committee of the CNMI Bar Association.
(Case no. 2008-08)

Dear Mr. Woodruff:

This letter will serve as your initial Notice that a complaint has been filed against you with the Disciplinary Committee of the CNMI Bar Association (DC). The DC's role is to investigate such complaints and make a determination whether further action in the form of a prosecution in the CNMI Superior Court is warranted by the facts of your case.

The DC will be soon be assigning one of its members to investigate this matter and he/she will contact you directly and give you the details of the complaint against you. The investigator is also the appropriate person for you to contact in the event that you wish to submit any evidence or statements in your defense.

Sincerely,

Timothy H. Bellas
Chairman

cc: File

Marina Heights Bldg., Suite 203          P.O. Box 502845          Saipan, MP 96950

**DISCIPLINARY COMMITTEE REPORT**
**CASE NO. 2008-08**
**COMPLAINANT: KENNETH R. WARFLE**
**ATTORNEY: STEPHEN C. WOODRUFF**

**Summary:** Discussed are Rule 1.3 and Rule 1.4 of the ABA Model Rules of Professional Conduct.[1] Both Rules were violated by the attorney.

**Facts:** On July 30, 2008, the Disciplinary Committee (DC) received a complaint against attorney Stephen C. Woodruff (attorney) by Kenneth G. Warfle (complainant). The DC member assigned to gather facts and provide a report to the DC is Janet King (investigator).

On January 23, 2007. the complainant paid the attorney $600.00 and retained him to concurrently file[2] Forms I-130[3] and I-485[4]. The complainant alleges he filled out (completed) and signed both Forms I-130 and I-485, and provided the checks with the appropriate filing fees.

In September, 2007, the complainant, whose job takes him off island often, returned to Saipan and discovered that the receipt of the I-130 showed a receipt date of July, 2007. He alleged that this is evidence that the attorney sent out the documents in July, 2007, which is six months after he provided the completed documents to the attorney.

In December, 2007, the complainant received a notice that his petition was deficient. The RFE asked him to update his financial information. The complainant complied with the RFE and submitted the requested documents.

On February 11, 2008, the complainant received a letter that his check (dated January 23, 2007) was returned (NSF) on January 30, 2008. On that day, February 11, 2008, he sent another check. The due date, however, was February 13, 2008, according to the letter.

---

[1] The Commonwealth Supreme Court Disciplinary Rules and Procedures Rule 2 provides that "[t]he Model Rules of Professional Conduct adopted by the American Bar Association are applicable in the Commonwealth of the Northern Mariana Islands. The ABA Model Rules of Professional Conduct are found here:
*http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct.html.*

[2] Concurrent filing is when an immigrant petition and the adjustment application (application for a green card, Form I-485, Application to Register Permanent Residence or Adjust Status) are filed at the same time and mailed together with all the required filing fees and supporting documentation to the same filing location. This type of filing is allowed when immediate relatives of U.S. citizens are living in the United States (the CNMI). It *may* be a speedier process, because USCIS will generally consider the adjustment application at the same time instead of a two-step process of filing the I-485 with the I-797 to show that the I-130 is filed (pending or approved).

[3] Petition for Alien Relative

[4] Application to Register Permanent Residence or Adjust Status

1

On March 5, 2008, the complainant received another notice rejecting his petition on February 26, 2008, because his payment was not received on time.

In April, 2008, the complainant received notice that the petition was reinstated, because the payment was received.

On May 8, 2008, the complainant's spouse received a notice for an interview on May 13, 2008 on Guam. The spouse and a friend visited the attorney at his office, and the attorney placed a call to the complainant. The complainant was in Indonesia at the time. He asked the attorney to reschedule the interview date. The complainant alleged the attorney said he would reschedule the interview date. Another friend of the complainant, a Frank Gordon, contacted the attorney after a few days. The attorney assured this individual that he had rescheduled the interview date.

On June 27, 2008, the complainant received a notice that his petition was canceled because he and his spouse missed the interview on May 13, 2008.

The complainant alleges he tried to communicate with the attorney numerous time: in late February, 2008; upon receiving the cancellation notice on May 8, 2008; and many times after that. The complainant stated he generally received no responses from the attorney. The attorney claims he would communicate with the complainant. Evidence of this is that on July 8, 2008, the attorney replied to the complainant by e-mail stating he ahd "contacted Guam, as your wife knows" and "I have not received any notice such as you describe [referring to a denial letter by Walter Haith dated June 25, 2008, cc: the attorney]" and asked the complainant to "provide [him] with a copy of the notice [referring to the June 25, 2008 letter], and apology or no, I will determine what action we can take to remedy the situation." It is not clear what the attorney did after July 8, 2008.

When the undersigned investigator initially contacted the attorney in May, 2009, the attonrey stated that as of May 31, 2009, the complainant's spouse "has her green card already."[5] Furthermore, the attorney claims he had "called Guam" and "Guam told me 'no problem' [to reschedule the interview date]." He further claimed he wrote a letter, which they instructed him to write, but that "[a]pparently Guam never got the letter, lost it, or misplaced or misfiled it -- or something."[6] Ultimately, he could not provide the investigator with a copy of the letter he claimed he sent to Guam, although he claims he did send one.

**Discussion:** The complainant alleges the attorney did a very poor job overall. He also alleges the attorney is ultimately responsible for the cancellation of the petition, because he failed to reschedule the interview on Guam as he was instructed. But the facts show that ultimately the spouse obtained her "green card"—permanent resident status.

---

[5] *See* E-mail from Stephen C. Woodruff to Janet King (May 31, 2009).

[6] *See* E-mail from Stephen C. Woodruff to Janet King (May 31, 2009).

2

The attorney's actions violated the attorney's duty of diligence and promptness (Rule 1.3). Furthermore, the complainant alleges the attorney did not communicate with him, especially after May, 2008. This is a violation of the duty to communicate with the client (Rule 1.4).

Rule 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client."[7]   Comment [1] to Rule 1.3 states: "A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf…" Comment [3] states: "Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions… Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness. A lawyer's duty to act with reasonable promptness, however, does not preclude the lawyer from agreeing to a reasonable request for a postponement that will not prejudice the lawyer's client." Here, the attorney claims he submitted all documents and the letter rescheduling the interview. However, all receipt dates show the documents were received six months after they were first given to the attorney to send out. In addition, the six-month delay caused the petitioner (the complainant herein) to provide updated financial information and the check he wrote on January 23, 2007 was returned received a year later, on January 30, 2008, and rejected.[8]

The complainant, understandably vexed, attempted to follow up with the attorney through e-mails and some calls to his office, to no avail. The failure to communicate with his client violated Rule 1.4(a). Rule 1.4(a) states: "A lawyer shall (3) keep the client reasonably informed about the status of the matter."[9] Comment [1] to Rule 1.4 states: "Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation." Here, the facts show the complainant and attorney did not communicate well.[10]

---

[7] For the terms of Rule 1.3, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_3_diligence.html.*

[8] Under the UCC, "[a] bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment thereafter in good faith." *See* § 4-404, U.C.C. Article 4.

[9] For the terms of Rule 1.4, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_4_communications.html.*

[10] Eventually, their regard for each other, especially from the time of the events in May, 2008, deteriorated significantly. There was no open communication between lawyer and client thereafter to the extent that they could work things out between them. In an e-mail to the investigator acknowledging the complainant,

The investigator notes that all original notices and letters were sent to the attorney, and copies were sent to the complainant, except the June 25, 2008 letter. This letter was addressed and mailed to the complainant, and a copy was sent to the attorney.

The attorney also challenges the disciplinary complainant herein because the complainant "does not have standing." He states: "Although I learned of the complaint from Tim Bellas, I never did get a copy of the complaint. I do not know whether his wife complained to the bar or only he. Strictly speaking, Mr. Warfle was my client only for the petition (I-130) and his wife my client for the adjustment of status (I-485). Strictly speaking, therefore, Mr. Wafle does not have standing to complain about the I-485 denial (which in any event was not my fault and only temporary to boot)."[11] This challenge is erroneous. The attorney here was retained to concurrently file Forms I-130 and I-485, and that means he represented both the complainant and his spouse in the immigration law matter. The ABA Model Rules regulate the professional conduct of attorneys in the CNMI.[12] The Rules state: "The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies."[13] Anyone can file a complaint against an attorney in the CNMI Bar -- there is no "standing" requirement.

---

the attorney stated: "Yes, I am familiar with Ken Warfle -- a complete idiot hothead (at least he is an idiot because he is a hothead and a hothead because he is an hair-trigger-shoot-from-the-hip idiot)... I would have been happy to help them solve the problem, but Mr. Warfle was too busy wanting to be a jerk (and blame me for a problem I did not create) to cooperate." *See* E-mail from Stephen C. Woodruff to Janet King (May 31, 2009). In his complaint to the DC, the complainant stated: "I e-mailed Mr. Woodruff with my complaint and told him he needed to fix it... As is his trademark he does not reply because this would be admission to incompetence... My experience with Mr. Woodruff lead me to suspect that he doesn't even have the proper credentials to practice law... Must I accept this sort of third world service in the CNMI?" *See* Complaint from Kenneth R. Warfle to the CNMI Bar Association (July 22, 2008).

[11] *See* E-mail from Stephen C. Woodruff to Janet King (May 31, 2009).

[12] The attorney filled out, signed and submitted Form G-28. Individuals appearing as attorneys are subject to the rules of Professional Conduct for Practitioners found in 8 C.F.R. § 292.3. Section 292.3(d) states: "Complaints of criminal, unethical, or unprofessional conduct, or of frivolous behavior by a practitioner before DHS must be filed with the DHS disciplinary counsel..." Any attorney filling Form G-28 has a duty to disclose disciplinary actions or other restrictions on his practice of law in the bars of courts in jurisdictions other than those in which he claims to be in good standing. There is no information in this disciplinary complaint about complaints, if any, filed with DHS disciplinary counsel.

[13] *See* "Playing By the Rules: Violations of Ethics Rules as Evidence of Legal Malpractice," Sluga, Gena L. and Douglas L. Christian (citing Scope of the Model Rules of Professional Conduct (1995)).

4

**Recommendation:** There is probable cause that the attorney engaged in ethical misconduct. The attorney exhibited a lack of diligence and promptness in violation of Rule 1.3. The attorney's failure to communicate with his client evidences a violation of Rule 1.4. The attorney's violation of the Rules caused injury or could have caused potential injury to the complainant and his spouse. The recommendation is a finding that there is probable cause to refer the matter for disciplinary proceedings against the attorney.

Submitted this 21st day of January, 2012.

_____/S/ *Janet H. King*_____
JANET H. KING



October 10, 2008

Northern Marianas Bar Association
Disciplinary Committee
Guma Husticia Building
Saipan, MP 96950

Re:    Complaint against Attorney Stephen Woodruff

Dear CNMI Bar:

On December 14, 2008, in met with Attorney Stephen Woodruff, I paid him fifty dollars ($50.00) to handle my Labor Appeal. He agreed to represent me and used my money to pay the appeal fee. But he never filed an appeal.

I would appreciate your assistance to investigate this matter. Thank you.

Sincerely yours,

Ambrocio Baing

No. 2008-12

# *Disciplinary Committee*
## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Michael W. Dotts
*Member*
Lillian A. Tenorio
*Member*
Jane Mack
*Secretary/Member*
Robert T. Torres
*Member*

Telephone: (670) 323-2115
Facsimile:   (670) 323-2116
Email: tim@bellaslaw.net

P.O. Box 502845
Saipan, MP 96950

November 21st, 2008

CONFIDENTIAL COMMUNICATION
VIA REGISTERED MAIL

Stephen C. Woodruff, Esq.
Attorney At Law
P.O. Box 500770
Saipan, MP 96950

Subject:  Complaint Filed With The Disciplinary Committee of the CNMI Bar Association.
(Case no. 2008-12)

Dear Mr. Woodruff:

This letter will serve as your initial Notice that a complaint has been filed against you with the Disciplinary Committee of the CNMI Bar Association (DC). The DC's role is to investigate such complaints and make a determination whether further action in the form of a prosecution in the CNMI Superior Court is warranted by the facts of your case.

The DC will be soon be assigning one of its members to investigate this matter and he/she will contact you directly and give you the details of the complaint against you. The investigator is also the appropriate person for you to contact in the event that you wish to submit any evidence or statements in your defense.

Sincerely,

Timothy H. Bellas
Chairman

cc: File



Stephen C. Woodruff
Attorney at Law
P.O. Box 500770
Saipan, MP 96950

CONFIDENTIAL

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Reciept Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7004 1350 0005 7941 8620
7004 1350 0005 7941 8620

Sent To _Stephen C. Woodruff_
Street, Apt. No.; or PO Box No. _P.O. Box 500770_
City, State, ZIP+4 _Saipan, MP 96950_

PS Form 3800, June 2002          See Reverse for Instructions

Disciplinary Committee
CNMI Bar Association
P.O. Box 502845
Saipan, MP 96950-2845

**DISCIPLINARY COMMITTEE REPORT**
**CASE NO. 2008-12**
**COMPLAINANT: AMBROCIO BAING**
**ATTORNEY: STEPHEN C. WOODRUFF**

**Summary:** Discussed are Rule 1.1, Rule 1.3, Rule 1.4, Rule 3.1 and Rule 3.3 of the ABA Model Rules of Professional Conduct.[1] All of these Rules were violated by the attorney.

**Facts:** On November 21, 2008, the Disciplinary Committee (DC) received a complaint against attorney Stephen C. Woodruff (attorney) by Ambrocio Baing (complainant).[2] The DC member assigned to gather facts and provide a report to the DC is Janet King (investigator).

The complainant, a non-resident worker from the Philippines, retained the attorney to represent him in an appeal of an administrative hearing order.

In September, 2007, the complainant, through an attorney[3], filed a labor case in the Department of Labor[4] (labor case) (DOL) against his employer for unpaid wages and reimbursement. The DOL ordered his former employer to pay $2,765 for unpaid wages, liquidated damages and for reimbursement, and sanctioned the complainant $778.24 plus $1,000.00. The DOL denied transfer relief and revoked his CNMI work/entry permit. The Order, dated December 3, 2007, provided appeal "within fifteen days of issuance." There is no record of an actual appeal filed. Furthermore, the filing of an appeal would have also allowed the party appealing to submit an application to the DOL for a stay or for an injunction maintaining the status quo of the parties pending the appeal. No such application was on file with the DOL.

The attorney provided a copy of the appeal fee receipt evidencing payment of the appeal fee, but he did not provide a copy of the appeal (and application) he insisted was filed on behalf of his client, the complainant herein. However, the attorney did state the appeal

---

[1] The Commonwealth Supreme Court Disciplinary Rules and Procedures Rule 2 provides that "[t]he Model Rules of Professional Conduct adopted by the American Bar Association are applicable in the Commonwealth of the Northern Mariana Islands. The ABA Model Rules of Professional Conduct are found here:
*http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct.html.*

[2] The complainant actually submitted a complaint on or around October 10, 2008 in writing addressed to the Bar Association at "Guma Husticia Building," but somehow the DC did not receive the complaint until November 21, 2008. *See* Letter (Complaint against Attorney Stephen Woodruff by Ambrocio Baing) (October 10, 2008).

[3] The complainant was formerly represented in the case by Colin Thompson, but Mr. Thompson had informed his then-client that he would not represent him in the appeal. Subsequently, the complainant retained the attorney herein.

[4] L.C. No. 07-236, *In the Matter of Ambrosio V. Baing vs. Kinship Enterprises, Inc.*

1

was handwritten due to a power outage. He also provided the appeal decision[5], which affirmed the findings of the original order.

**Discussion:** The complainant alleges the attorney failed to file an appeal in his labor case. The attorney violated the attorney's duty of diligence and promptness (Rule 1.3) and competence (Rule 1.1). Furthermore, the complainant alleges the attorney did not keep him informed about the cases. This is a violation of the duty to communicate with the client (Rule 1.4).[6] The attorney admitted that the appeal was filed simply to allow his client time to stay in the CNMI. This is a violation of Rule 3.1 and Rule 3.3.

The investigator notes three things about the appeal order. First, that the *appellant* is Kinship Enterprises, the respondent in L.C. No. 07-236, *In the Matter of Ambrosio V. Baing vs. Kinship Enterprises, Inc.*[7] Second, that the appeal order commented on the taking of "judicial notice of Appellant's note which indicated that 'full papers' would be filed the day after the appeal was filed… However, as of the date that this appeal has been decided, no such papers were filed." Third, the appeal order commented that "[i]n the absence of the filing of 'full papers' indicating the issues on appeal, the Secretary [of the Department of Labor] adopts the view that the Appellant appealed the entire order."[8]

The investigator clarified from DOL whether it erred in stating the handwritten document filed by the attorney mistakenly designated the other party, Kinship Enterprises, as the appellant. According to Cinta Kaipat, then Deputy Secretary of Labor, Kinship Enterprises was represented by Stephen C. Woodruff.[9] Consequently, DOL which believed that Kinship Enterprise's attorney of record was Mr. Woodruff, it designated the appellant to be Kinship Enterprises. This confusion was clarified by the attorney, who stated the DOL made a mistake.[10] The attorney also clarified to the investigator that he

---

[5] *See* S.A. 2007-109 APPEAL FROM L.C. 07-236, SECRETARY'S ORDER ON APPEAL, IN THE MATTER OF KINSHIP ENTERPRISE (ER) VS. AMBROSIO V. BAING (March 19, 2009).

[6] *See also Lister v. State Bar*, 800 P.2d 1232 (1990) (it is a violation of the ethical duties to fail to perform a legal service for which he has been retained and to willfully fail to communicate with a client); *Hunniecutt v. State Bar*, 748 P.2d 1161 (1988) (it is serious misconduct to willfully fail to perform services for which the attorney is retained).

[7] In the original order, Kinship Enterprises was ordered to pay $2,440.00 for unpaid wages and liquidated damages; plus $325.00 for processing fees and related costs, for a total of $2,765.00. Kinship Enterprises was also ordered to pay fines in the amount of $1,778.24 to the CNMI Treasury.

[8] *See* S.A. 2007-109 APPEAL FROM L.C. 07-236, SECRETARY'S ORDER ON APPEAL, IN THE MATTER OF KINSHIP ENTERPRISE (ER) VS. AMBROSIO V. BAING (March 19, 2009).

[9] *See* E-mail from Cinta Kaipat to Janet King, cc: Eli Golob (April 24, 2009).

[10] "Mr. Baing was my client. As has so often been the case, DoL and Cinta couldn't keep their heads screwed on straight." *See* E-mail from Stephen C. Woodruff to Janet King (January 23, 2012).

2

filed no documents in the appeal, and merely started the appeal so that his then-client would be able to remain in the CNMI.[11]

Rule 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."[12] Rule 1.1 requires a lawyer to be competent.

The first issue is that the attorney seems to admit that he filed the appeal without any intention to present legal arguments. Comment [5] to Rule 1.1 states that "[c]ompetent handling of a particular matter... includes adequate representation." Here, the attorney filed the appeal solely to delay the date of the non-resident worker's (the complainant herein) departure from the CNMI. Such conduct violates the Rules. *See discussion of Rule 3.3 infra.*

The second issue is that the attorney, although he paid the appeal fee, let the time in which his argument on the merits of an appeal run and caused the appeal decision to issue without any arguments presented. The complainant offered his explanation for this recently to the investigator. Earlier, the attorney claimed he had filed a handwritten (due to a power outage) argument. No copies of this or any document was found at DOL, nor could the attorney provide it.

Rule 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Comment [1] to Rule 1.3 states: "A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf..." Comment [3] states: "Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness. A lawyer's duty to act with reasonable promptness, however, does not preclude the lawyer from agreeing to a reasonable request for a postponement that will not prejudice the lawyer's client." Here,

---

[11] "As I recall, without checking my records, Mr. Baing's case was virtually a complete pro bono case. He paid, I think, a paltry $100. His goal was to remain in the CNMI when Labor was saying he had to go home. I filed, but did not brief (more precisely, delayed briefing), the appeal. As a result, his objective of remaining in the CNMI was achieved. The appeal was simply a means to an end, and I employed the most effective means of achieving the client's objective." *See* E-mail from Stephen C. Woodruff to Janet King (January 23, 2012).

[12] For the terms of Rule 1.1, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional _conduct/rule_1_1_competence.html.*

3

the attorney claims he submitted a handwritten appeal, which the DOL accepted. However, the appeal order indicates that "'full papers' would be filed" but "no such papers were filed." Although an appeal ensued, a handwritten document, if it was in fact submitted , was likely considered just "a note," and not an argument on the merits, or "full papers."

***"The appeal was simply a means to an end, and I employed the most effective means of achieving the client's objective."***

In his own words, the attorney seems to admit that he filed the appeal with the DOL Administrative Hearing Office for the sole purpose of delay. This is an end run around the CNMI Labor and Immigration laws. Although quasi-judicial in nature, an administrative hearing before the DOL Administrative Hearing Office constitutes a hearing before a "tribunal."[13] Furthermore, the definition of "tribunal" by the ABA Model Rules is found in Rule 1.0(m): "'Tribunal' denotes a court, an arbitrator in a binding arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter."[14] Therefore, the duties under Rule 3.1 and 3.3 are triggered.

Rule 3.1 states "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."[15]

Rule 3.3(b) states: "A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."[16] Comment [1] to Rule 3.1 states: "The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure." The appeal here was brought for delay, and thus it is a frivolous appeal. Comment [2] states, in part: "The action is

---

[13] *See* Restatement (Third) of the Law Governing Lawyers: Representing Client in Legislative and Administrative Matters 164 (1997).

[14] For the terms of Rule 1.0, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_0_terminology.html.*

[15] For the terms of Rule 3.1, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_3_1_meritorious_claims_contentions.html.*

[16] For the terms of Rule 3.3, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_3_3_candor_toward_the_tribunal.html.*

4

frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." The Commonwealth courts have defined the word "frivolous" in the context of filing an appeal. In *Pacific Amusement, Inc. v. Villanueva III*, 2006 MP 8, the Supreme Court described a "frivolous appeal [as] one 'in which no justiciable question has been presented and the appeal is readily recognizable as devoid of merit in that there is little prospect it can ever succeed.'" (citing *Commonwealth v. Kawai*, 1 N.M.I. 66, 72 n.4 (1992)[17]) In referring to *Kawai*, the Court stated that in that case the Court ordered sanctions "because it was 'clear from the record and briefs submitted that counsel had no legal or factual basis for appeal.'" (citing *Commonwealth v. Borja*, 3 N.M.I. at 72) The attorney clearly violated Rule 3.3.

The complainant believed the attorney really would file an appeal. That is, he followed up with the attorney through calls to his office, to no avail. The complainant, in a detailed log, described the numerous instances he tried to contact the attorney to get information about his case. The failure to communicate with his client violated Rule 1.4(a) and (b). Rule 1.4(a) states: "A lawyer shall (3) keep the client reasonably informed about the status of the matter." Furthermore, Rule 1.4(b) states: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." [18] The attorney did not inform his client that he had neither filed anything to appeal the labor case, except to pay the appeal fee.

**Recommendation:** There is clear and convincing evidence that the attorney engaged in serious ethical misconduct. The attorney allowed the order on the appeal of the labor case to be issued without filing any documents in support of his client's position. In other words, he failed to follow basic procedural rules. The attorney's failure to file any documents, except pay the appeal fee, evidences a lack of competence in violation of Rule 1.1, and a lack of diligence and promptness in violation of Rule 1.3. The attorney's failure to communicate with his client evidences a violation of Rule 1.4. The attorney also violated Rule 3.1 and Rule 3.3 when he brought the appeal for delay purposes.

The recommendation is to proceed with disciplinary proceedings based on violations of these Rules.

Submitted this 21st day of January, 2012.

        _____ /S/ *Janet H. King* _____
        JANET H. KING

---

[17] The Court in *Commonwealth v. Kawai* cited to Black's Law Dictionary, 601 (5th ed. 1979).

[18] For the terms of Rule 1.4, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_4_communications.html.*

5

Invictus T. Feleciano
P.O. Box 504270
Saipan., MP 96950
(670) 789-6311

January 26, 2009

Timothy H. Bellas, Chairman
COMMONWEALTH DISCIPLINARY COMMITTEE
P.O. Box 5082 CHRB
Saipan, Mariana Islands 96950

RE:    Disciplinary Complaint against attorney Stephen C. Woodruff

Dear Attorney Bellas,

I would like to file a complaint against attorney Stephen C. Woodruff and request your assistance in obtaining some relief from Mr. Woodruff under the circumstances of my case. The circumstances of my case are set out in the attached Order Dismissing Lawsuit with Prejudice from the United States District Court in Civil Action No. 08-0004. Not only did I lose my ability in to obtain relief from my former employer in that case, but I lost all of the money that I paid to Mr. Woodruff, $300,000 for the costs of the case.

Please let me know if I can be of any further assistance in your investigation of this matter. I look forward to your investigation and appropriate action on my behalf.

Sincerely,

Invictus T. Feleciano

Attachment (3 pages)



F I L E D
Clerk
District Court

OCT 27 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

INVICTUS T. FELICIANO,            )       Civil Action No. 08-0001
                                  )
            Plaintiff             )
                                  )
        v.                   ·    )       ORDER SANCTIONING
                                  )       PLAINTIFF'S COUNSEL,
EASTERN HOPE CORPORA-             )       STEPHEN C. WOODRUFF
TION,                             )
                                  )
            Defendant             )
_____    )

THIS MATTER was set for a settlement conference today, by order dated

October 9, 2008. Counsel for defendants appeared, with his clients; neither plaintiff

nor his attorney, Stephen C. Woodruff, appeared. Accordingly,

IT IS ORDERED that Stephen C. Woodruff be and hereby is sanctioned the

sum of $175.00, which sum shall be paid to defendants' counsel no later than 3:30

AO 72
(Rev. 08/82)

1

p.m., Friday, October 31, 2008.  Should plaintiff's counsel fail to make the payment by the date and time specified, further sanctions, including the ultimate sanction of dismissal, may be imposed.

DATED this 27th day of October, 2008.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

2

FILED
Clerk
District Court

DEC - 1 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| INVICTUS T. FELICIANO, | ) | Civil Action No. 08-0001 |
| Plaintiff | ) | |
| v. | ) | ORDER DISMISSING LAWSUIT WITH PREJUDICE |
| EASTERN HOPE CORPO-RATION, | ) | |
| Defendant | ) | |

Trial in this matter was set to begin this morning, Monday, December 1, 2008. At 9:00 a.m. the court called the trial. Joaquin Torres, attorney for defendant, was present with his client and affirmed his readiness to proceed. Stephen C. Woodruff, attorney for plaintiff, was not present, nor was his client.

AO 72
(Rev. 03/82)

For approximately the last week, plaintiff's counsel, Stephen C. Woodruff, has contacted the court repeatedly and informally in an attempt to have the trial date continued due to another matter which is festering (or, in his colorful phrase, "the rough equivalent of leaving a dead dog by the roadside").

At about 10:00 p.m. last night, Mr. Woodruff electronically filed a "Notice of Inability of Counsel to Appear for Trial Due to Medical Reasons." In it he cites numerous symptoms which required a trip to the hospital during the early morning hours of yesterday. Reference is made to an attached "doctor's slip," but no such slip was provided.

As in almost all of his other lawsuits in this court, Mr. Woodruff has, in this matter, missed deadlines and conferences, almost always due to "unforeseen emergencies" of a personal or professional nature. See "Case Management Scheduling Order" (Mar. 21, 2008) and "Order Sanctioning Plaintiff's Counsel, Stephen C. Woodruff" (Oct. 27, 2008). Because of this history, and because of the nature of the symptoms he describes in his filing of yesterday, Mr. Woodruff shall, within two weeks, obtain a written statement from his doctor that he is physically capable of continuing to practice law in this court. The statement shall be submitted under seal, directed to my attention.

The court is left with the unmistakable impression that Mr. Woodruff has never given his client the level of representation required to practice law in this court

and, put simply, that he was not prepared to proceed to trial today. For all the reasons contained herein, the court dismisses this lawsuit with prejudice.

Mr. Woodruff is directed to notify his client in writing, with a copy to this court, that he may have a cause of action against Mr. Woodruff for failure to meet minimum professional standards in client representation, and that Mr. Feliciano should seek the opinion of another attorney.

FOR THE REASONS GIVEN ABOVE,

IT IS ORDERED that this matter be and hereby is dismissed with prejudice, effective immediately. Each party shall bear its own attorney fees and costs

DATED this 1st day of December, 2008.

ALEX R. MUNSON
Judge

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 06 2009

MOLLY C. DWYER, CLERK OF COURT
U.S. COURT OF APPEALS

|  |  |
|---|---|
| INVICTUS T. FELICIANO,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>EASTERN HOPE CORPORATION,<br><br>Defendant - Appellee. | No.  09-15167<br>D.C. No.  1:08-cv-00001<br>District of the Northern Mariana<br>Islands<br><br>**ORDER** |

A review of the file in this case reveals that the appellant has failed to perfect the appeal as prescribed by the Federal Rules of Appellate Procedure.

Pursuant to Ninth Circuit Rule 42-1, this appeal is dismissed for failure to file the opening brief on appeal in this case.

A copy of this order sent to the district court shall constitute for the mandate of this court.

FOR THE COURT:

Molly C. Dwyer
Clerk of Court

By: Estela Urrutia
Deputy Clerk

# *Disciplinary Committee*
## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Michael W. Dotts
*Member*
Lillian A. Tenorio
*Member*
Jane Mack
*Secretary-Member*
Robert T. Torres
*Member*

Telephone: (670) 323-2115
Facsimile:  (670) 323-2116
Email: timg bellaslaw.net

P.O. Box 502845
Saipan, MP 96950

February 25th, 2009

CONFIDENTIAL COMMUNICATION
VIA REGISTERED MAIL

Stephen C. Woodruff, Esq.
Attorney At Law
P.O. Box 500770
Saipan, MP 96950

Subject:  Complaint Filed With The Disciplinary Committee of the CNMI Bar Association.

Dear Mr. Woodruff:

This letter will serve as your initial Notice that a complaint has been filed against you with the Disciplinary Committee of the CNMI Bar Association (DC). The DC's role is to investigate such complaints and make a determination whether further action in the form of a prosecution in the CNMI Superior Court is warranted by the facts of your case.

The DC will be soon be assigning one of its members to investigate this matter and he/she will contact you directly and give you the details of the complaint against you. The investigator is also the appropriate person for you to contact in the event that you wish to submit any evidence or statements in your defense.

For future reference, this matter has been assigned Case No. 2009-01.

Sincerely,

Timothy H. Bellas
Chairman

cc: File





## *Disciplinary Committee*

## CNMI Bar Association

| | |
|---|---|
| Timothy H Bellas<br>*Chair*<br>Robert T. Torres<br>*Vice Chair*<br>Sean Frink<br>*Member*<br>Janet King<br>*Member*<br>Jane Mack<br>*Secretary* | Telephone. (670) 323-2115<br>Facsimile    (670) 323-2116<br><br>Email  tmd@bellaslaw.net |

August 24, 2010

Disciplinary Committee                    CONFIDENTIAL COMMUNICATION
Members

Subject:  Investigative Report Of Complaint Filed Against Stephen Woodruff By Invictus Feliciano.
           Disc. Case No. (2009-01)

Dear Members:

*Factual and Procedural Summary*

This disciplinary matter stems from an Order entered by the Honorable Alex R. Munson, in USDC Case No. 08-0001. *Feliciano v. Eastern Hope Corporation*. The matter was scheduled for trial on December 1, 2008. The week prior to trial, Mr. Woodruff made several contacts with the court, informally attempting to get the trial date continued. Not having secured the continuance, the night before trial at 10:00 p.m., Mr. Woodruff electronically filed a pleading entitled "Notice of Inability of Counsel to Appear for Trial Due to Medical Reasons" ("Notice"). (See December 1, 2009 Order ("Order"), at p.2) The Notice was filed without the attached Exhibit which was an Illness Certification Slip ("Slip").[1]

On the date of trial, the opposing party appeared with counsel ready to proceed. Neither Mr. Woodruff, nor his client appeared for trial. Therefore, Judge Munson entered the Order dismissing Mr. Feliciano's case against the defendant with prejudice. The Order also directed Mr. Woodruff to advise his client that he may have a case of malpractice against Mr. Woodruff.

On December 15th, 2008, Mr. Woodruff filed a motion for reconsideration, essentially arguing that the sanction against his client, Mr. Feliciano was too harsh and that the matter should be reset for trial. The reconsideration motion was denied on December 19, 2008.

---

[1]     The Slip was filed on December 1, 2009, attached to a pleading entitled Notice of Errata, apparently Mr
        Woodruff read the court's order which stated that the exhibit was missing and filed it in response.

*Investigative Report, DC Case 2009-01*
August 24, 2010
Page 2

On January 19, 2009, Mr. Woodruff filed an Appeal of Judge Munson's Order of dismissal and the Denial of Reconsideration to the Ninth Circuit Court of Appeals ("Appeal").

*Investigative Findings:*

As previously mentioned there has been some difficulty locating Mr. Feliciano and his input other than his original complaint were not used at arriving at the facts stated herein. However, the inability to locate Mr. Feliciano is not determinative of whether there has been an ethical violation(s) and therefore the matter should proceed even if the complainant cannot be located.

The Order of the court cites the fact that Mr. Woodruff had on several prior occasions missed court mandated deadlines in most of the cases before the US District Court. In fact, Mr. Woodruff had just been sanctioned a little over one month prior to the trial date in this case, for similar conduct.

In addition, the Slip which Mr. Woodruff provided to the Court, indicates that his visit to the Commonwealth Health Center was at 11:30 a.m. and yet he waited until 10:00 p.m. to efile the Notice. Another anomaly with the Slip is that the doctor certifies that Mr. Woodruff's "illness" made him unfit for duty only for one day, December 1st, 2008. The Slip specifically states that he could return to duty on December 2nd.

In response to my initial contact, Mr. Woodruff provided me with several pdf documents which included the Notice of Errata, Motion for Reconsideration, Order Denying Reconsideration, Notice of Appeal and Docketing Statement. On June 21, 2010, I sent Mr. Woodruff a follow up letter asking for any documentation or other proof that Mr Feliciano had authorized him to file an appeal and the status of the Appeal. He was requested to respond by August 1, 2010. I have received no response from him, as of the writing of this report.

Initially, I tried researching the status of the Appeal on Pacer, but I was unable to locate the case. Recently, I tried again and this time I was able to download both the docket sheet and the order indicating that the Appeal was dismissed on October 6, 2009, because the opening brief was not timely filed by the Appellant.

I also contacted the attorney who was opposing counsel in the case, Joaquin DLG. Torres, regarding any information that he had about the case. Mr. Torres informed me that he recalls speaking to Mr. Woodruff the Friday immediately before trial. Mr. Torres states that Mr. Woodruff told him on that Friday, that he (woodruff) was "super busy" with other matters and that he would not be appearing for the trial on Monday. Mr. Torres further confirmed that the Appeal was dismissed due to the failure of Mr. Woodruff to pursue it.

I contacted the doctor who signed the Slip from CHC, Dr. Kotheimer, who is still here. I emailed him some specific questions regarding Mr. Woodruff's medical condition and regarding the issuance of the Slip. He did not respond. Based on something that he told my secretary when contacted for his email address, I suspect he is not answering on the basis of privilege. While we have a right to request a subpoena from the Superior Court, I think the statements from Mr. Torres and the court's own contact

*Investigative Report DC Case 2009-01*
August 24, 2010
Page 2

with Mr. Woodruff the week before trial, suggest that the alleged medical condition was contrived and used to justify the lack of preparation for going to trial on the date scheduled. Mr. Woodruff could have provided more information on this issue if it was a pre existing condition, for example. Alternatively, this may be an area of further inquiry for whoever is assigned to prosecute the matter. However, based on the recent decision within the Disc. Comm., that the function of the Disc. Comm. is to screen out complaints which lack merit and forward those which have met a probability that an ethical violation has occurred, I do not think that employing the subpoena process is necessary. Nor do I think requesting a waiver of the privilege would be productive since Mr. Woodruff has already not responded to the inquiry as to whether the client authorized the Appeal to the Ninth Circuit.

*Conclusion*

Based on the facts which are contained in the Order and those that I have received from the other sources detailed above, it would appear that Mr. Woodruff intended not to appear for trial on December 1, 2008. He indicated this not only to US District Court personnel but to opposing counsel in advance of the trial date and his sudden undefined illness becomes .

The number of times that this attorney missed prior deadlines or court appearances as well as the prior indication that he did not intend to appear for trial, indicate that the illness was contrived and as a result of not being prepared or not properly requesting a continuance of the trial date. Mr. Woodruff caused substantial damage to his client's case and did not meet minimum professional standards in order to competently and diligently represent his client.

*Recommendation:*

In my opinion, based on the facts recited above, that Mr. Woodruff has violated the following ethical rules:

1. Failure to competently represent the client due to lack of preparation (Rule 1.1)
2. Failure to diligently pursue the client's case; (Rule 1.3)
3. Failure to properly apprise the client of the status of his case; [Rule 1.4 (a)(3)]
4. Failure to expedite the litigation consistent with interests of the client. (Rule 3.2)

Therefore, it is my recommendation that this matter should be forwarded to the Presiding Judge of the Superior Court for further disciplinary action against Mr. Woodruff.

Sincerely,

Timothy H. Bellas
Investigator

cc: File
Documents referred to herein are attached. ( 7 total attachments)

Mr. Honorio G. Cambronero
C/o Mr. Invictus T. Felciano
P.O. Box 504279
Saipan, MP 96950
(670) 789-0311


27 May 2009

Mr. Timothy H. **Bellas**
Chairman
Disciplinary Committee
CNMI Bar Association


Dear Sir:

I would like to file a complaint against my lawyer, Stephen C. Woodruff and request your assistance in obtaining some relief from Mr. Woodruff based on the circumstances of my case. The facts of the dismissal of my two cases are set out in a letter from the Department of Labor in L.C. No. 08-117 and an order granting defendant's motion for summary judgment from the U.S. District Court in Civil Case No. 08-0033. I lost my ability to obtain relief from my former employer. What happened to me is a great injustice and I would appreciate if you could hear my case.

Please let me know if I can be of any further assistance in your investigation on this matter. I am looking forward to your investigation and appropriate action on my behalf.

Sincerely,

HONORIO G. CAMBRONERO


Enclosures: as stated.



Call no. 2FI 7-05

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## IN THE DIVISION OF ADMINISTRATIVE HEARINGS
## DEPARTMENT OF LABOR
## SAIPAN, NORTHERN MARIANA ISLANDS

In the Matter of                     )
                                     )
Honorio G. Cambronero,               )
                                     )
        Complainant,                 )
                                     )       L.C. No. 08-117
        vs.                          )       ORDER **DISMISSING CASE**
                                     )
RJCL Corporation,                    )
                                     )
                                     )
        Respondent.                  )
_____)


On March 13, 2009, the parties to the above-titled Labor case stipulated and agreed to allow supplemental filings. On April 3, 2009, respondent moved to dismiss the case, based on a statute of limitations argument. According to the stipulation of the parties, complainant had until April 14, 2009, to respond. However, complainant has filed no opposition to respondent's Motion to Dismiss as of the date of this Order. On April 24, 2009, respondent noted complainant's failure to oppose and again moved for dismissal.

The respondent having moved to dismiss, the complainant having failed to oppose, the respondent having presented substantial legal and factual support for its Motion to Dismiss, and the Hearing Office being fully advised in the premises, IT IS HEREBY ORDERED that complainant's case is DISMISSED WITH PREJUDICE, as untimely under the provisions of 4 CMC 9246(a).

DATED this 27th day of April 2009.


                                    _____
                                    Linn H. Asper
                                    Administrative Hearing Officer

FILED
Clerk
District Court

MAR - 6 2009

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| HONORIO G. CAMBRONERO, | ) | Civil No. **08-0033** |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| RJCL CORPORATION, doing | ) | SUMMARY JUDGMENT AS TO |
| business as RNV CONSTRUCTION | ) | ALL CLAIMS and TAKING ALL |
| and RUEL R. VILLACRUSIS, | ) | MATTERS, INCLUDING TRIAL, |
| | ) | OFF-CALENDAR |
| Defendants | ) | |
| | ) | |

THIS MATTER was *set* to come before **the** court for **hearing** of defendants' Fed.R.Civ.P. 56 **motion** for summary judgment on Thursday, March 12, 2009. For the reasons *set* forth below, **summary judgment** is granted in favor of defendants on all claims, whether denominated federal, Commonwealth, or common law, and the hearing will come off-calendar.

AO 72
(Rev. 08/82)

On February 13,2009, defendants moved for summary judgment, properly made with supporting affidavits and documents. On February 27,2009, plaintiff filed his response to the summary judgment motion. In his response, plaintiff conceded that defendants' summary judgment motion was well-taken as to the federal claims but asked for dismissal without prejudice of his Commonwealth-law claims.

Once defendants' filed their motion pursuant to Rule 56 as to all claims made by plaintiff, those claims were at issue. Plaintiffs failure to oppose the entire motion pursuant to Rule 56 permits entry of summary judgment against him: 'When a motion for summary judgment is properly made and supported, an opposing party may not rely on allegations or denials in its own pleading; rather, it must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R Civ. P. 56(e)(2).

The court has reviewed defendants' unopposed motion for summary judgment and finds that entry of summary judgment against plaintiff is appropriate as a matter of law. Plaintiff concedes summary judgment on the first two claims for relief, which are based on federal law. As to the remaining claims for relief, plaintiff failed to raise a genuine issue of material fact to support his claim that "public policy" was somehow violated by non-renewal of his contract. Plaintiff had a written contract, and no public policy issues arose from the simple fact that his contract was not

renewed. Further, the unopposed facts alleged by defendants show that plaintiff was not terminated, his contract was simply not renewed. Defendants **are also entitled** to summary judgment as a matter of law on the claims for medical expenses because their liability to plaintiff for his medical *costs* ended 96 days after his contract was not renewed, and they had paid all medical expenses up to that date, See American *Const., Inc. V. Salgado, 1997 MP 26,* ¶¶ 3, 5 (N.M.I. 1997). Finally, plaintiffs claim for intentional infliction of emotional distress fails because there he did not show "outrageous conduct" by defendants.

FOR THE FOREGOING REASONS, the court finds that it is appropriate to grant defendants' motion for summary judgment as to all of plaintiffs claims and judgment is so granted.

Costs are awarded to defendants as allowed by 28 U.S.C. § 1920. Pursuant to Fed.R.Civ.P. 54(d)(1), the Clerk may tax costs on one day's notice. Upon motion served within five days thereafter, the court may review the Clerk's action. Judgment shall thereafter be entered.

AO 72
(Rev. 08/82)

3

Case 1:08-cv-___33    Document 18    Filed 03/06/2___9    Page 4 of 4

All remaining matters, including the trial and the hearing set for Thursday, March 12, 2009, at 9:00 am., are hereby *taken* off-calendar.

IT IS SO ORDERED, this 6th day of Match, *2009.*

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

4



## *Disciplinary Committee*
# CNMI Bar Association

| | |
|---|---|
| Timothy H. Bellas<br>*Chairman*<br>Loren A. Sutton<br>*Member*<br>Janet H. King<br>*Member*<br>Jane Mack<br>*Secretary/Member*<br>Robert *T*. Torres<br>*Member* | Telephone: (670) 323-2115<br>Facsimile:   (670) 323-2116<br>Email: tim@bellaslaw.net<br><br>P.O. Box 502845<br>Saipan, MP 96950 |

May 28th, 2009

<u>CONFIDENTIAL COMMUNICATION</u>
<u>VIA REGISTERED MAIL</u>

Stephen C. Woodruff, Esq.
Attorney At Law
P.O. Box 500770
Saipan, MP 96950

Subject:  <u>Complaint Filed With The Disciplinary Committee of the CNMI Bar Association.</u>

Dear Mr. Woodruff

This letter will serve as your initial Notice that a complaint has been filed against you with the Disciplinary Committee of the CNMI Bar Association (DC). The DC's role is to investigate such complaints and make a determination whether further action in the form of a prosecution in the CNMI Superior Court is warranted by the facts of your case.

The DC will be soon be assigning one of its members to investigate this matter and he/she will contact you directly and give you the details of the complaint against you. The investigator is also the appropriate person for you to contact in the event that you wish to submit any evidence or statements in your defense.

For future reference, this matter has been assigned Case No. 2009-05.

Sincerely,

Timothy H. Bellas
Chairman

*Disciplinary Committee*
CNMI Bar Association
P.O. Box 502845
Saipan, MP 96950-2845

**CERTIFIED MAIL**™

7004 1350 0005 7941 8613
7004 1350 0005 7941 8613

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To *Stephen C. Woodruff, Esq.*
Street, Apt No.; or PO Box No. *P.O. Box 500770*
City, State, ZIP+4 *Saipan, MP 96950*

PS Form 3800, June 2002                    See Reverse for Instructions

Stephen C. Woodruff, Esq.
Attorney at Law
P.O. Box 500770
Saipan, MP  96950

CONFIDENTIAL

**DISCIPLINARY COMMITTEE REPORT**
**CASE NO. 2009-05**
**COMPLAINANT: HONORIO G. CAMBRONERO**
**ATTORNEY: STEPHEN C. WOODRUFF**

**Summary:** Discussed are Rule 1.1, Rule 1.3 and Rule 1.4 of the ABA Model Rules of Professional Conduct.[1] The conclusion is the attorney engaged in serious ethical misconduct.

**Facts:** On May 28, 2009, the Disciplinary Committee (DC) received a complaint against attorney Stephen C. Woodruff (attorney) by Honorio G. Cambronero (complainant). The DC member assigned to continue gathering facts and provide a report to the DC is Janet King (investigator).

The complainant, a non-resident worker from the Philippines, retained the attorney to represent him against his former employer, RJCL Corporation (RJCL).

The complainant filed a labor case in the Department of Labor[2] (labor case) and in the U.S. District Court for the Northern Mariana Islands[3] (district court case) against RJCL, sometime in 2008 on claims based on the termination and/or non-renewal of the complainant's employment contract.

Despite ample opportunity to do so, to date, the attorney has provided no response to the complaint's allegations.

### Civil No. 08-0033, Honorio G. Cambronero vs. RJCL Corporation d/b/a/ RNV Construction and Ruel R. Villacrusis

In February, 2009, in the district court case, RJCL moved for summary judgment. On March 6, 2009, the district court issued an Order granting summary judgment, stating the Plaintiff (the complainant herein) failed to oppose summary judgment: "Plaintiff's failure to oppose the entire summary judgment motion pursuant to Rule 56 permits entry of summary judgment against him..." The Order noted that of the issues presented, Plaintiff "concedes summary judgment on the first two claims for relief," however, he "failed to raise a genuine issue of material fact to support his claim that 'public policy' was

---

[1] The Commonwealth Supreme Court Disciplinary Rules and Procedures Rule 2 provides that "[t]he Model Rules of Professional Conduct adopted by the American Bar Association are applicable in the Commonwealth of the Northern Mariana Islands. The ABA Model Rules of Professional Conduct are found here:
*http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct.html.*

[2] L.C. No. 08-117, *In the Matter of Honorio G. Cambronero vs. RJCL Corporation.*

[3] Civil No. 08-0033, *Honorio G. Cambronero vs. RJCL Corporation d/b/a RNV Construction and Ruel R. Villacrusis.*

1

somehow violated by non-renewal of his contract." The Court accepted the unopposed facts and regarded the contract "simply not renewed" and following that, all medical expenses after the contract's non-renewal were not a liability to RJCL. Finally, the Order stated the claim for intentional infliction of emotional distress "fails because [Plaintiff] did not show 'outrageous conduct' by defendants." Summary judgment was therefore granted in favor of RJCL as to all of Plaintiff's claims, and the Court took the matter, including the trial date, off of its calendar.[4]

### L.C. No. 08-117, In the Matter of Honorio G. Cambronero vs. RJCL Corporation

In March, 2009, in the labor case, the parties entered into a stipulation setting dates to allow supplemental filings. Earlier, on April 3, 2009, RJCL had moved to dismiss the case, based on a statute of limitations argument. According to the Order of Dismissal issued by the Administrative Hearing Officer issued on April 27, 2009, the stipulation showed the attorney had agreed to file his opposition on April 14, 2009. Nothing was filed on that date. The Order stated: "The respondent [RJCL] having moved to dismiss, the complainant [Honorio G. Cambronero] having failed to oppose, the respondent having presented substantial legal and factual support for its Motion to Dismiss," the matter was dismissed with prejudice as "untimely under the provisions of 4 CMC § 9246(a)."[5]

**Discussion:** The complainant alleges the attorney failed to file an opposition to RJCL's 1) summary judgment motion in the district court case, and 2) motion to dismiss in the labor case. These are violations of the attorney's duty of diligence and promptness (Rule 1.3) and competence (Rule 1.1). Furthermore, the complainant alleges the attorney did not keep him informed about the cases. This is a violation of the duty to communicate with the client (Rule 1.4).[6]

Rule 1.3 is titled "Diligence," and it contains just a single sentence: "A lawyer shall act with reasonable diligence and promptness in representing a client."[7] Comment [1] to Rule 1.3 states: "A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act

---

[4] *See* ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS AND TAKING ALL MATTERS, INCLUDING TRIAL, OFF-CALENDAR, Civil No. 08-0033 (March 6, 2009).

[5] *See* ORDER OF DISMISSAL, L.C. No. 08-117 (April 27, 2009).

[6] *See also Lister v. State Bar*, 800 P.2d 1232 (1990) (it is a violation of the ethical duties to fail to perform a legal service for which he has been retained and to willfully fail to communicate with a client); *Hunniecutt v. State Bar*, 748 P.2d 1161 (1988) (it is serious misconduct to willfully fail to perform services for which the attorney is retained).

[7] For the terms of Rule 1.3, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional _conduct/rule_1_3_diligence.html.*

2

with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf..." Comment [3] states: "Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness. A lawyer's duty to act with reasonable promptness, however, does not preclude the lawyer from agreeing to a reasonable request for a postponement that will not prejudice the lawyer's client."

Rule 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."[8] Although Rule 1.1 affirmatively describes the elements of competence, the Rules in general do not *specifically* prohibit neglect.[9] Instead, Rule 1.1 requires a lawyer to be competent. Comment [5] to Rule 1.1 states that "[c]ompetent handling of a particular matter... includes adequate representation."

The attorney, although having entered into a stipulation in the labor case in March, 2009 with the other party, in which to file his opposition to the motion to dismiss, let the time run without filing the opposition. This caused the matter to be dismissed with prejudice. The attorney failed to oppose the motion for summary judgment filed by the other party in the district court case as well. As a result, the unopposed summary judgment motion was granted to the detriment of attorney's client client, the complainant herein. The attorney has offered no explanation for his conduct.

Rule 1.4(a) states: "A lawyer shall (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law." Furthermore, Rule 1.4(b) states: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."[10]

---

[8] For the terms of Rule 1.1, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_1_competence.html.*

[9] New York, which adopted the ABA Model Rules of Professional Conducted on December 16, 2008, also includes a rule specifically prohibiting neglect: NY DR 6-101(A), states: "A lawyer shall not (3) [n]eglect a legal matter entrusted to the lawyer."

[10] For the terms of Rule 1.4, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_4_communications.html.*

3

The attorney did not inform his client that he had neither filed anything in response to the motion to dismiss in the labor case or the summary judgment motion in the district court case, nor did he even attend the court hearing. The failure to communicate with his client was a violation of Rule 1.4(a) and (b).

**Recommendation:** The investigator recommends action based on clear and convincing evidence that the attorney engaged in serious ethical misconduct. The attorney allowed both the labor case and the district court case to be dismissed due to his failure to follow basic procedural rules. The attorney's failure to file the opposition to the motion to dismiss in the labor case and to file anything in opposition to the summary judgment motion in the district court case, leading to the dismissal of both cases, evidences a lack of competence in violation of Rule 1.1, and a lack of diligence and promptness in violation of Rule 1.3. The attorney's failure to communicate with his client on these cases evidences a violation of Rule 1.4, all of which resulted in extreme prejudice to the complainant. The DC should find probable cause to act based on this evidence.

Submitted this 21st day of January, 2012.

_/S/ Janet H. King_

JANET H. KING

4

*Disciplinary Committee*

OF THE

## CNMI Bar Association

P.O. Box 502845
Saipan, MP 96950

---

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
Bruce Mailman
*Secretary*
Janet H. King
*Member*
Sean Frink
*Member*

Telephone: (670) 323-2115
Facsimile:   (670) 323-2116
Email: tim@bellaslaw.net

December 12, 2011                                    CONFIDENTIAL COMMUNICATION

**Stephen C. Woodruff, Esq.**
Attorney At Law
P.O. Box 500770
Saipan, MP 96950

Subject:  Complaint Filed With The Disciplinary Committee of the CNMI Bar Association.
(Case no. 2011-14)

Dear Mr. Woodruff:

I have been assigned to investigate a complaint filed against you by Ms. Esperanza Ellis. The complaint of Ms. Ellis includes allegations that:

She originally hired you in July 2008, to obtain Immediate Relative status for her, when such matters were still under the control of CNMI Immigration. She states that in order to perform this service you requested $400 in fees and an additional $50 for the cost of the Alien ID Card.

Ms. Ellis indicates that there was a lack of diligence in pursuing this matter on her behalf and a lack of communication from you to keep her advised of the status of the matter. Eventually, Ms. Ellis went to CNMI Immigration herself and was told that the $50 for the Alien ID card had never been paid and that her application was not being processed. Therefore, she paid the $50 herself and the ID Card was issued and shortly thereafter, on December 15th, 2008, her CNMI Immediate Relative status was obtained.

Ms. Ellis next retained your services on August 25, 2009, when she paid and obtained a receipt from you for the amount of $3,000. This receipt, No T-687905, states that the services to be rendered to the client

*Solicitation of Response to Complaint-S Woodruff-2011-14*
December 12, 2011
Page 2

were: a) applying for a green card and b) filing a paternity action. The receipt further indicates that the $3,000 represents fees and costs. Ms. Ellis remembers that you told her that:

  a) Your legal fees would be $900 and that the rest of the money was for costs; and

  b) The processing of her green card would take three (3) months.

She indicates that she was never asked to fill out or sign any forms at the time the money was paid to you. She returned to your office in November, 2009 to inquire as to the status of her matters. At that time, she was told that she needed to go to Pacific Medical Center for a medical examination. In order to accomplish this requirement she had to pay an additional $400, directly to PMC. Since she was again not asked to sign any forms, Ms. Ellis inquired as to how her application for her green card would be processed without any forms being signed. She recalls you stating that she should not worry because "I will take care of you.".

In January of 2010, she was finally asked to return to your office and that was when she signed I-485 and I-360 immigration forms. Apparently, you indicated that her green card would be processed on the basis of her being a battered spouse, since there were issues of her being abused by the husband.

After waiting to hear from you for quite some time, without any communication from you, Ms. Ellis began calling your office once a week for the status of her matters. She was always told that you were busy and there was never a return call. When the calls proved ineffective, she began visiting your office once a week and would wait an average of three (3) hours, without you seeing her. This went on for numerous months. Finally, on October 2, 2011, she went to your office and you threatened to call the police to have her removed, if she did not stop coming to your office. However, she indicates that this was also the time that you provided her with a receipt from the US Post Office indicating that you had mailed her green card application to the Chicago, IL office of the USCIS.

Apparently, Ms. Ellis used the tracking number from that receipt and thru use of the internet was able to determine that this receipt is for an envelope which was mailed on April 14th, 2011 and received on April 26th, 2011 by USCIS. She indicates that you have never provided her with any copies of any documents filed on her behalf. She further indicates that other persons have told her that green card applications for battered spouses are processed by the Vermont USCIS office and therefore she does not even know if this envelope contained her application or not. She has never to this day been advised of the status of her application. Nor have you ever filed any pleading in connection with the paternity of her daughter.

1. Therefore, there are allegations by the complainant which suggest a failure to diligently pursue matters on the client's behalf. (Rule 1.3[1])

2. There are allegations of a failure to keep the client informed about the status of her matters. [Rule 1.4(a)(3)]

---

[1] All references to Rules are to the 2011 ABA Model Rules.

*Solicitation of Response to Complaint-S. Woodruff-2011-14*
December 12, 2011
Page 3

3.      Finally, there allegations suggest possible misappropriation or failure to account for the client's funds from in your trust account on more than one occasion. [Rule 1.15(a)]

The Disciplinary Committee (DC), as you know, is tasked with investigating these matters. You are entitled to present any evidence which you believe might be relevant or should be considered prior to concluding this investigation. Any information provided, however, will not be privileged.

A written report of the results of the investigation will be prepared and a recommendation shall be made to the full DC as to how your case should be handled. The entire DC will vote whether to accept the report and its recommendation or not. If the DC votes that further action is warranted, your case will be forwarded to the Superior Court for further action.

In response to this letter, please submit copies of records which evidence the amount deposited into your trust account on this client's behalf and an accounting of when and for what purpose any amount was withdrawn. Also please provide copies of documents which rebut any of the allegations made by Ms. Ellis. At a minimum, you should provide a copy of a written fee agreement, if any.

If you fail to provide any response to the investigation of this matter by December 30th, 2011, the investigation may be concluded on the basis of the information available to me.

Sincerely,

Timothy H. Bellas
DC Case Investigator

cc: File

*Disciplinary Committee*

OF THE

## CNMI Bar Association

P.O. Box 502845
Saipan, MP 96950

| | |
|---|---|
| Timothy H. Bellas | Telephone: (670) 323-2115 |
| *Chairman* | Facsimile:  (670) 323-2116 |
| Robert T. Torres | Email: tim@bellaslaw.net |
| *Vice Chair* | |
| Bruce Mailman | |
| *Secretary* | |
| Janet H. King | |
| *Member* | |
| Sean Frink | |
| *Member* | |

January 27, 2012

CONFIDENTIAL COMMUNICATION

**Members of Disciplinary Committee**

Subject:  First Amended Investigative Report of Complaint Filed Against  Stephen R. Woodruff.
          (Case no. 2011-14)

*Procedural Summary*:

On November 15, 2011 Ms. Esperanza Ellis came into my office and verbally made a complaint against the above named attorney.

On December 2, 2011, Notice was sent to Mr. Woodruff ("Attorney") about the filing of the Complaint, via registered mail.

On December 12, 2011, based on the notes from my interview of Ms. Ellis, a letter was sent to Mr. Woodruff advising him of the specific factual allegations and the Rules that were implicated by those factual allegations. The letter specified that Attorney should provide any response  to the investigation by December 30th, 2011, or the investigation would be concluded based on the only information available to me.

No response or request for an extension of time was received from Attorney until the date of this Report.

On January 27, 2012, Ms. Ellis came in to see me. She indicated that she went to USCIS and the employee she spoke to advised her that Attorney had refiled her forms in mid December, 2011 but that he

*Investigation Report of Complaint-S. Woodruff-2011-14*
January 27, 2011
Page 2

had requested fee waivers for both forms. USCIS instructed to make this fact known to DC.

*Factual Basis*:

Ms Ellis originally hired Attorney in July 2008, to obtain Immediate Relative status for her, when such matters were still under the control of CNMI Immigration. She states that in order to perform this service Attorney requested $400 in fees and an additional $50 for the cost of the Alien ID Card.

Ms. Ellis stated that there was a lack of diligence in pursuing this matter on her behalf and Attorney failed to keep her advised of the status of the matter. Eventually, Ms. Ellis went to CNMI Immigration herself and was told that the $50 for the Alien ID card had never been paid and that her application was not being processed for that reason. Therefore, she paid the $50 herself in spite of already having paid that amount to Attorney for that purpose. On December 15th, 2008, her CNMI Immediate Relative status was granted and her I.D. card obtained shortly thereafter

Ms. Ellis next retained Attorney's services on August 25, 2009, when she paid and obtained a receipt from Attorney for the amount of $3,000. This receipt, No T-687905, states that the services to be rendered to the client were:

> a) applying for a green card, and
>
> b) filing a paternity action.

The receipt further indicates that the $3,000 represents fees and costs. (a copy is attached)

Ms. Ellis remembered that Attorney told her that:

> a) His legal fees would be $900 and that the rest of the money was for costs; and
>
> b) The processing of her green card would take three (3) months.

She stated that Attorney never asked her to fill out or sign any forms at the time the money was paid to him. She returned to Attorney's office in November, 2009 to inquire as to the status of her matters. At that time, she was told that she needed to go to Pacific Medical Center for a medical examination. In order to accomplish this requirement she had to pay an additional $400, directly to PMC.

Since she was again not being asked to sign any forms, Ms. Ellis inquired as to how her application for her green card would be processed without any forms being signed. She recalls Attorney telling her that she should not worry because "I will take care of you".

In January of 2010, she was finally asked to return to Attorney's office and that was when she signed both an I-485 and I-360 immigration forms. Apparently, Attorney indicated that her green card would be processed on the basis of her being a battered spouse, since there were issues of her being abused by the

*Investigation Report of Complaint-S. Woodruff-2011-14*
January 27, 2011
Page 3

husband.

After waiting to hear from Attorney for quite some time, without any communication from Attorney, Ms. Ellis began calling Attorney's office once a week for the status of her matters. She was always told that the Attorney was busy and there was never a return call. When the calls proved ineffective, she began visiting Attorney's office once a week and would wait an average of three (3) hours, without Attorney seeing her. This went on for numerous months. Finally, on October 2, 2011, she went to Attorney's office and Attorney threatened to call the police to have her removed, if she did not stop coming to Attorney's office. However, she indicates that this was also the time that Attorney first provided her with a receipt from the US Post Office indicating that Attorney had mailed her green card application to the Chicago, IL office of the USCIS.

Apparently, Ms. Ellis used the tracking number from that receipt and thru use of the internet was able to determine that this receipt is for an envelope which was mailed on April 14th, 2011 and received on April 26th, 2011 by USCIS. She indicates that Attorney has never provided her with any copies of any documents filed on her behalf. She further indicates that other persons have told her that green card applications for battered spouses are processed by the Vermont USCIS office and therefore she does not even know if this envelope contained her application or not.

She has never to this day been advised of the status of her application. Nor has Attorney ever filed any pleading in connection with the paternity of her daughter.

Apparently after receiving notice of her complaint to the DC, which pointed out that the VAWA applications were sent to the wrong service center, Attorney resubmitted the applications but failed to pay the filing fees which were already paid to him by the client and which were apparently forfeited due to his failure to diligently or competently pursue the application procedure the first time.

*Findings*:

Therefore, based on the unrefutted facts provided by the complainant, there are sufficient allegations to find probable cause that Attorney has violated:

1.      (Rule 1.3[1]) a failure to diligently pursue matters on the client's behalf.

2.      [Rule 1.4(a)(3)] a failure to keep the client informed about the status of her matters.

3.      [Rule 1.15(a)] possible misappropriation or failure to properly account for the client's funds from/in your trust account on more than one occasion.

---

1      All references to Rules are to the 2011 ABA Model Rules.

*Investigation Report of Complaint-S. Woodruff-2011-14*
January 27, 2011
Page 4

As such it is suggested that this matter be referred to Superior Court with a recommendation that further action is warranted by this complaint.

Sincerely,

/s/

Timothy H. Bellas
DC Case Investigator

cc: File

---

Marina Heights Bldg., Suite 203        P.O. Box 502845        Saipan, MP 96950



## *Disciplinary Committee*
### OF THE
## CNMI Bar Association
P.O. Box 502845
Saipan, MP 96950

---

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
Bruce Mailman
*Secretary*
Janet H. King
*Member*
Sean Frink
*Member*

Telephone: (670) 323-2115
Facsimile:   (670) 323-2116
Email: tim@bellaslaw.net

December 12, 2011                                CONFIDENTIAL COMMUNICATION

**Stephen C. Woodruff, Esq.**
Attorney At Law
P.O. Box 500770
Saipan, MP 96950

Subject: Complaint Filed With The Disciplinary Committee of the CNMI Bar Association.
         (Case no. 2011-13)

Dear Mr. Woodruff:

I have been assigned to investigate a complaint filed against you by Ms. Ana E. Reyes. The complaint of Ms. Reyes includes allegations that:

Ms. Reyes indicates that she originally retained you in late 2009, to get her CNMI Immediate Relative status reinstated. Apparently, you were successful in resolving this issue for Mrs. Reyes.

Ms. Reyes indicates that in the course of getting her CNMI status resolved she spoke to Mr. Grey, the former Chief of CNMI Immigration, who suggested that she might obtain a green card as battered spouse or widow of a U.S. citizen.

Ms. Reyes indicates that she retained you for this purpose, as well, and that she made two payments, one in cash for $1,500 and another by check in the amount of $1010. These amounts were paid to you in the last three months of 2009.

In June 2010, she was contacted by someone that she believes was your secretary at the time named,

*Solicitation of Response to Complaint-S. Woodruff-2011-13*
December 12, 2011
Page 2

"Lynn", who asked Ms. Reyes, to obtain a police clearance and references and to bring them into your office. Ms. Reyes obtained the documents and provided them to your office within two weeks from the date she was first contacted in June, 2010.

In January of 2011, after not hearing from you in the interim, she returned to your office to inquire about the status of her matter. At this time, she was provided with two receipts from U.S. Immigration for the application(s) which you sent in on her behalf.

Ms. Reyes states that this subject was obviously of great concern to her and that she called, at a minimum, more than ten (10) times to your office but she was told that you were always busy and she never spoke to you. She states that because her phone calls were not put through and there was no return call, she started going to your office in the hope of seeing you. As time wore on, she states that she would visit your office three (3) times a week. Ms. Reyes further states that there have been instances when your secretary has told her that you are with a client and she has waited from 1 p.m. until 6 p.m. in order to see you and no client has ever exited your office during the entire Five (5) hour period that she waits there but was never able to see you.

During my interview with her, Ms. Reyes stated that the matter has just gotten worse for her and that now, "If I'm not at work, I'm at his office." The last thing she told me was: "In fact, after I leave here, I'm going to his office."

Furthermore, she stated that she applied and obtained from USCIS work authorization and parole on her own "because he's not doing anything."

1.      Therefore, there are allegations by the complainant which suggest a failure to diligently pursue matters on the client's behalf. (Rule 1.3[1])

2.      There are allegations of a failure to keep the client informed about the status of her matters. [Rule 1.4(a)(3)]

3.      Finally, there allegations suggest possible failure to account for the client's funds from/in your trust account. [Rule 1.15(a)]

The Disciplinary Committee (DC), as you know, is tasked with investigating these matters. You are entitled to present any evidence which you believe might be relevant or should be considered prior to concluding this investigation. Any information provided, however, will not be privileged.

A written report of the results of the investigation will be prepared and a recommendation shall be made to the full DC as to how your case should be handled. The entire DC will vote whether to accept the report and its recommendation or not. If the DC votes that further action is warranted, your case will be forwarded to the Superior Court for further action.

---

1       All references to Rules are to the 2011 ABA Model Rules.

*Solicitation of Response to Complaint-S. Woodruff-2011-14*
December *12,2011*
Page 3

In response to this letter, please submit copies of records which evidence the amount deposited into your trust account on this client's behalf and an accounting of when and for what purpose any amount was withdrawn. Also please provide copies of documents which rebut any of the allegations made by Ms. Reyes. At a minimum, you should provide a copy of a written fee agreement, if any.

If you fail to provide any response to the investigation of this matter by December 30th, 2011, the investigation may be concluded on the basis of the information available to me.

Sincerely,

Timothy H. Bellas
DC Case Investigator

cc: File

Department of Homeland Security
U.S. Citizenship and Immigration Service

**I-797C, Notice of Action**

| RECEIPT NUMBER<br>EAC-10-051-50153 | | CASE TYPE  I485    APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS |
|---|---|---|
| RECEIVED DATE<br>December 9, 2009 | PRIORITY DATE | APPLICANT    A087 781 232<br>REYES, ANA E. |
| NOTICE DATE<br>December 15, 2009 | PAGE<br>1 of 1 | |

| | |
|---|---|
| STEPHEN C. WOODRUFF<br>P O BOX 500770<br>SAIPAN MP 96950 | Notice Type:   Receipt Notice<br><br>Amount received: $ 1010.00<br><br>Section: Other basis for adjustment |

**Receipt Notice-** This notice confirms that USCIS received your application or petition ("this case") as shown above. If any of the above information is incorrect, please immediately call 800-375-5283 to let us know. This will help avoid future problems.

This notice does not grant any immigration status or benefit. It is not even evidence that this case is still pending. It only shows that the application or petition was filed on the date shown.

**Processing time -** Processing times vary by kind of case. You can check our website at www.uscis.gov for our current "processing times" for this kind of case at the particular office to which this case is or becomes assigned. On our websites "case status online" page, you can also view status or sign up to receive free e-mail updates as we complete key processing steps on this case. During most of the time this case is pending, however, our systems will show only that the case has been received, and the processing status will not have changed, because we will be working on other cases that were filed earlier than this one. We will notify you by mail, and show in our systems, when we make a decision on this case or if we need something from you. If you do not receive an initial decision or update from us within our current processing time, check our website or call 800-375-5283. Please save this notice, and any other notice we send you about this case, and please make and keep a copy of any papers you send us by any means, along with any proof of delivery to us. Please have all these papers with you if you contact us about this case.

**If this case is an I-130 Petition -** Filing and approval of a Form I-130, Petition for Alien Relative, is only the first step in helping a relative immigrate to the United States. The beneficiaries of a petition must wait until a visa number is available before they can take the next step to apply for an immigrant visa or adjustment of status to lawful permanent residence. To best allocate resources, USCIS may wait to process forms I-130 until closer to the time when a visa number will become available, which may be years after the petition was filed. Nevertheless, USCIS processes forms I-130 in time not to delay relatives ability to take the next step toward permanent residence once a visa number does become available. If, before final action on the petition, you decide to withdraw your petition, your family relationship with the beneficiary ends, or you become a U.S. citizen, call 800-375-5283.

**Applications requiring biometrics-** In some types of cases USCIS requires biometrics. In such cases, USCIS will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must WAIT for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are: a passport or national photo identification issued by your country, a drivers license, a military photo identification, or a state-issued photo identification card. If you receive more than one ASC appointment notice, even for different cases, take them both to the first appointment.

**If your address changes-** If your mailing address changes while your case is pending, call 800-375-5283 or use the "Online Change of Address" function on our website. Otherwise, you might not receive notice of our action on this case.

**Please see the additional information on the back. You will be notified separately about any other cases you filed.**
IMMIGRATION & NATURALIZATION SERVICE
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone:  (800) 375-5283



Form I-797C (Rev.01/31/05)N

Department of Homeland Security
U.S. Citizenship and Immigration Ser...

**I-797C, Notice of Action**

## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER EAC-10-051-50146 | | CASE TYPE I360    PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
|---|---|---|
| RECEIVED DATE December 9, 2009 | PRIORITY DATE | PETITIONER A087 781 232 REYES, ANA E. |
| NOTICE DATE December 15, 2009 | PAGE 1 of 1 | BENEFICIARY A087 781 232 REYES, ANA E. |

STEPHEN C. WOODRUFF
P O BOX 500770
SAIPAN MP 96950

Notice Type:    Receipt Notice

Fee Waived

Section: Self-petitioning Spouse of
Abusive U.S.C. or LPR

**Receipt Notice-** This notice confirms that USCIS received your application or petition ("this case") as shown above. **If** any of the above information is incorrect, please immediately call 800-375-5283 to let us know. This will help avoid future problems.

This notice does not grant any immigration status or benefit... not even evidence that this case is still pending. It only shows that the application or petition was filed on the date shown.

**Processing time** - Processing times vary by kind of case. You can check our website at www.uscis.gov for our current "processing times" for this kind of case at the particular office to which this case is or becomes assigned. On our websites "case status online" page, you can also view status, or sign up to receive free e-mail updates as we complete key processing steps on this case. During most of the time this case is pending, however, our systems will show only that the case has been received, and the processing status will not have changed, because we will be working on other cases that were filed earlier than this one. We will notify you by mail, and show in our systems, when we make a decision on this case or if we need something from you. If you do not receive an initial decision or update from us within our current processing time, check our website or call 800-375-5283. Please save this notice, and any other notice we send you about this case, and please make and keep a copy of any papers you send us by any means, along with any proof of delivery to us. Please have all these papers with you if you contact us about this case.

**If this case is an I-130 Petition -** Filing and approval of a Form I-130, Petition for Alien Relative, is only the first step in helping a relative immigrate to the United States. The beneficiaries of a petition must wait until a visa number is available before they can take the next step to apply for an immigrant visa or adjustment of status to lawful permanent residence. To best allocate resources, USCIS may wait to process forms I-130 until closer to the time when a visa number will become available, which may be years after the petition was filed. Nevertheless, USCIS processes forms I-130 in time not to delay relatives ability to take the next step toward permanent residence once a visa number does become available. If, before final action on the petition, you decide to withdraw your petition, your family relationship with the beneficiary ends, or you become a U.S. citizen, call 800-375-5283.

**Applications requiring biometrics-** In some types of cases USCIS requires biometrics. In such cases, USCIS will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must WAIT for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are: a passport or national photo identification issued by your country, a drivers license, a military photo identification, or a state-issued photo identification card. If you receive more than one ASC appointment notice, even for different cases, take them both to the first appointment.

**If your address changes-** If your mailing address changes while your case is pending, call 800-375-5283 or use the "Online Change of Address" function on our website. Otherwise, you might not receive notice of our action on this case.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (800) 375-5283



Form I-797C (Rev. 01/31/05) N

# ℭ𝒾𝓈𝒸𝒾𝓅𝓁𝒾𝓃𝒶𝓇𝓎 ℭ𝑜𝓂𝓂𝒾𝓉𝓉𝑒𝑒

## OF THE

## CNMI Bar Association

P.O. Box 502845
Saipan, MP 96950

---

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
Bruce Mailman
*Secretary*
Janet H. King
*Member*
Sean Frink
*Member*

Telephone: (670) 323-2115
Facsimile: (670) 323-2116
Email: tim@bellaslaw.net

January 27, 2012

CONFIDENTIAL COMMUNICATION

**Members of Disciplinary Committee**

Subject: <u>Investigative Report of Complaint Filed Against Stephen R. Woodruff.</u>
(Case no. 2011-13)

*Procedural Summary:*

On November 15, 2011 Ms. Ana Reyes came into my office and verbally made a complaint against the above named attorney.

On December 2, 2011, Notice was sent to Mr. Woodruff ("Attorney") about the filing of the Complaint, via registered mail.

On December 12, 2011, based on the notes from my interview of Ms. Reyes, a letter was sent to Mr. Woodruff advising him of the specific factual allegations and the Rules that were implicated by those factual allegations. The letter specified that Attorney should provide any response to the investigation by December 30th, 2011, or the investigation would be concluded based on the only information available to me.

No response or request for an extension of time was received from Attorney until the date of this Report.

*Factual Basis:*

Ms. Reyes indicated that she originally retained Attorney in late 2009, to get her CNMI Immediate Relative status reinstated. Apparently, Attorney was successful in resolving this issue for Mrs. Reyes.

*Investigation Report of Complaint-S. Woodruff-2011-13*
January 27, 2011
Page 2

Ms. Reyes indicates that in the course of getting her CNMI status resolved she spoke to Mr. Grey, the former Chief of CNMI Immigration, who suggested that she might obtain a green card as battered spouse or widow of a U.S. citizen.

Ms. Reyes stated that she retained Attorney for this purpose, as well, and that she made two payments, one in cash for $1,500 and another by check in the amount of $1010. These amounts were paid to Attorney in the last three months of 2009.

In June 2010, she was contacted by someone that she believes was Attorney's secretary at the time, named "Lynn", who asked Ms. Reyes, to obtain a police clearance and references and to bring both items into your office. Ms. Reyes obtained the documents and provided them to your office within two weeks from the date she was first contacted in June, 2010.

In January of 2011, after not hearing from Attorney in the interim, she returned to Attorney's office to inquire about the status of her matter. At this time, she was provided with two receipts from U.S. Immigration for the application(s) which Attorney sent in on her behalf.

Ms. Reyes states that this subject was obviously of great concern to her and that she called, at a minimum, more than ten (10) times to Attorney's office but she was told that Attorney was always busy and she never spoke to Attorney. She states that because her phone calls were not put through and there was no return call, she started going to Attorney's office in the hope of seeing Attorney. As time wore on, she states that she would visit Attorney's office three (3) times a week. Ms. Reyes further states that there have been instances when Attorney's secretary has told her that Attorney was with a client and she has waited from 1 p.m. until 6 p.m. in order to see Attorney and no client has ever exited Attorney's office during the entire Five (5) hour period that she waits there but was never able to see Attorney.

During my interview with her, Ms. Reyes stated that the matter has just gotten worse for her and that now, "If I'm not at work, I'm at his office." The last thing she stated during my interview of her was: "In fact, after I leave here, I'm going to his office."

Furthermore, she stated that she applied and obtained from USCIS work authorization and parole on her own "because he's not doing anything."

*Findings*:

Therefore, based on the unrefutted facts provided by the complainant, there are sufficient allegations to find probable cause that Attorney has violated:

1.      (Rule 1.3[1]) a failure to diligently pursue matters on the client's behalf.

2.      [Rule 1.4(a)(3)] a failure to keep the client informed about the status of her matters.

---

[1]      All references to Rules are to the 2011 ABA Model Rules.

*Investigation Report of Complaint-S. Woodruff-2011-13*
January 27, 2011
Page 3

As such it is suggested that this matter be referred to Superior Court with a recommendation that further action is warranted by this complaint.

Sincerely,

/s/

Timothy H. Bellas
DC Case Investigator

cc: File

Kim Chang Sook
P.O. Box 501850
Saipan, MP 96950

January 31, 2010

The Bar Association of CNMI
Capitol Hill
Saipan, MP 96950

RE:      COMPLAINT TO MEMBER LAWYER

Dear President:

This is to complain the inaction of one of your members, Atty. Stephen C. Woodruff for a
legal advice and design of remedy in connection with the USCIS records concerning my
natural son, Michael Kim of a possible remedy to set aside the adoption decree.

We tried to contact him and set an appointment but apparently the good attorney ignores
our effort, he does not even return our call to give us information for the services he
accepted and we have no idea of what have happened to our service agreement to give
legal advice and possible remedy for that matter.

Please, help us to collect back the money we paid him since he has not done anything for
our case.

Very truly yours,

Kim CHANG Sook

Kim Chang Sook
Mother

입양 취소명령

## Stephen C. Woodruff
**Attorney and Counselor at Law**
Suite 202, Golden Bird Plaza Bldg.
Beach Road, Susupe
P. O. Box 500770
Saipan, MP 96950

No. T-687902

## RECEIPT

RECEIVED FROM __Kim Chang Sook__ the sum of __ONE THOUSAND ONLY__ Dollars. Amount Received: __$1,000.00__ . Received as nonrefundable fixed fee payment for legal services relating to research, advice, and possible design of a remedy in connection with USCIS records concerning her natural child, Michael Kim, and possible setting aside of adoption decree entered in FCD-AD Case No. 00-0202 (Nor. Mar. I. Super. Ct.).

Balance due: - 0 -

Received by: _____

July 22, 2009.

---

234/- 1877

DATE 7-22-09    NO. 687902

RECEIVED OF Kim Chang Seek

ADDRESS Gar Antonio

One thousand only $ 1,000.00

FOR RENT ☐ FOR Attn Fee

HOW PAID   BALANCE DUE
Cash   0

BY ___

RELIT'N FORM 48820®

1st receipt

---

Tel.: (670) 235-3872          Fax: (670) 235-3873          Email: scwlaw.spn@gmail.com



## *Disciplinary Committee*
## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
**Adam Hardwicke**
*Member/Secretary*
Bruce L. Mailman
*Member*
Stephen Pixley
*Member*

Telephone: (670) 234-6503
Facsimile:   (670) 234-1009
Email:adamhardwicke@gmail.com

P.O. Box 506197
Saipan, MP 96950

June 4, 2012:                                    CONFIDENTIAL COMMUNICATION

Subject:  Complaint Filed with the Disciplinary Committee of the CNMI Bar Association

Dear Mr. Woodruff:

I have been assigned to investigate a disciplinary complaint filed against you by KIM CHANG SOOK in complaint 2012-04.  Specifically, Ms. Sook alleges that sometime in 2009 Ms. Sook retained you as her attorney and paid you $1000, 00 to help her process paper work with USCIS and to possibly set aside an adoption of her son Michael Kim in FCD-AD Case No. 00-0202 (Nor. Mar. I. Super. Ct.).

Ms. Sook alleges that you have ignored her attempts to follow up on the legal services you were retained to provide and as such, filed this complaint against you through the CNMI Bar Association Disciplinary Committee.

Attached to this letter is the letter from Ms. Sook which will serve as the complaint against you as well as what appears to be your signed receipt for the $1000 paid to you on July 22, 2009 by Ms. Sook.

Please respond to this letter within 30 days so that I may determine whether or not there is any validity to these claims and what recommendation(s) I need to make to the Disciplinary Committee regarding these allegations.

Sincerely,

Adam Hardwicke
*Member/Secretary*
cc: File

To:         **Disciplinary Committee of the CNMI Bar Association**
From:       **Adam Hardwicke**
Date:       **October 11, 2012**
RE:         **Disciplinary Complaint 2012-04 Against Stephen Woodruff by Kim Chang Sook**

## I. Background

The current matter involves a complaint against attorney Steven Woodruff by Kim Chang Sook. Specifically, Ms. Sook alleges that she retained Mr. Woodruff by paying him $1000 on or about July 22, 2009 and that Mr. Woodruff accepted such retainer and agreed to perform two tasks: (1) to help Ms. Kim process paper work with USCIS and (2) to set aside the adoption of her son Michael Kim in FCD-AD Case No. 00-0202 (NMI Super.Ct.). (See Attached "COMPLAINT TO MEMBER LAWYER).

This Investigator sent a letter to Mr. Woodruff on June 4, 2012 outlining the complaint against him including the letter from Ms. Sook to the Disciplinary Committee. (See Attached "CONFIDENTIAL COMMUNICATION"). As of the writing of this report, Mr. Woodruff has neither responded to this investigator nor acknowledged the complaint.

## II. Findings

Commonwealth attorneys are bound by the ethics rules, both in and out of court, pursuant to the Commonwealth Disciplinary Rules and Procedures. 1 CMC § 3403; NMI R. Disc.1. The Commonwealth Disciplinary Rules and Procedures adopt the American Bar Association's Model Rules of Professional Conduct ("MRPC"). Thus, any attorney in the Commonwealth may be disciplined for violating provisions of the MRPC. NMI R. Disc. 1. The purpose of a disciplinary action against an attorney is not to punish the attorney, but rather to guard the administration of justice, maintain the dignity of the court and the integrity of the profession, and to protect the public. Saipan Lau Lau Dev., Inc., v. Superior Court (San Nicolas), 2001 MP 2 ¶ 38.

This investigator finds that Mr. Woodruff accepted representation of Ms. Sook to perform the services described above and that subsequently, Mr. Woodruff took no further action in the matter. According to Ms. Sook, Mr. Woodruff has ignored her attempts at reconciling the situation or apprising Ms. Sook of the status of his representation. Mr. Woodruff similarly ignored this investigator's invitation to discuss

these allegations as well by failing to respond to my June 4, 2012 letter. The receipt given to Ms. Sook by Mr. Woodruff, which memorializes the representation agreement, says the money received is nonrefundable for legal "services relating to research, advice, and the possible design of a remedy in connection with USCIS records concerning her natural child, Michael Kim and possible setting aside of adoption decree entered in FCD-AD Case No. 00-0202 (Nor.Mar.I.Super.Ct.)." (See Attached "RECEIPT"). Presently, it appears that Mr. Woodruff accepted $1000 for the representation of Ms. Sook, retained the money, but failed to provide any representation of any kind to Ms. Sook. These acts are in direct conflict with multiple Rules of Professional Conduct.[1] Specifically:

1.      Model Rule 1: Competence, Diligence, Communication, and Fees

"A lawyer shall provide competent representation to a client." Model Rule 1.1. Further, a "lawyer shall act with reasonable diligence and promptness in representing a client." Model Rule 1.3.   Lastly, Mr. Woodruff is required to "promptly inform the client of any decision,. . . reasonably consult with the client about the means by which the client's objectives are to be accomplished,. . .keep the client reasonably informed about the status of the matter;. . . promptly comply with reasonable requests for information. . . ." Model Rule 1.4(a)(1-4).

Mr. Woodruff appears to have violated these rules in that he did not provide any representation, let alone competent representation. Mr. Woodruff has not been diligent, he has ignored Ms. Sook's attempts to communicate, and he has not kept his client reasonably informed on any matters.

Model Rule 1.5 governs fees and requires fees to be reasonable, among other things. Mr. Woodruff appears to have accepted $1,000 and in return, provided Ms. Sook with nothing. This violates Rule 1.5.

2.      Model Rule 3.2

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Model Rule 3.2. As discussed above, it appears no effort has been

---

[1]      If the allegations as presented are true and complete, multiple sections of the ABA Model Rule addressing: the lawyer/client relationship (Rule 1), the attorney as a counselor (Rule 2), the attorney as an advocate (Rule3), and the integrity of the profession (Rule 8), have been violated. As such, only a select few are highlighted herein. Additionally, as discusses herein, these acts may constitute an act of dishonest and moral turpitude thereby forming an additional basis for discipline pursuant to Disciplinary Rule 2(b) and (d).

made to litigate or otherwise resolve the matter for which he was retained and the client's interests have been entirely disregarded and ignored.

3.    Model Rule 8.4

Model Rule 8.4 states in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct. . .;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice. . . .

It appears that all of the above sections appear to have been violated. As for subsection (b), if the allegations as stated are true and complete, Mr. Woodruff's conduct may constitute a crime of Theft whereby he accepted money and then essentially never spoke to the client again.

### III. Conclusion and Recommendation

Pursuant to Rule 3 of the Disciplinary Rules this investigator can foresee discipline ranging from private reprimand to potentially disbarment and/or other sanctions deemed appropriate by the Superior Court. This investigator can further foresee the Superior Court Ordering Mr. Woodruff to return the $1000 with interest to Ms. Sook. The following facts weigh heavy on my recommendation for further action: (1) Mr. Woodruff has ignored this Committee's attempts to communicate; (2) this complaint is similar to another pending complaint; (3) Mr. Woodruff appears to have taken $1,000 from a person, made promises of service, and given them nothing in return. This is not a case where the attorney made an error in skill or judgment, rather – if the allegations are accurate and complete – this attorney simply took money and never spoke to the client again. For these reasons, I recommend this complaint be promptly forwarded to the Presiding Judge for further action.



USCIS

Jan 27th, 2012-01-27

To whom it may concern

I, JIHYUN LEE, paid partial payment of $1,500.00 with USCIS filing fees by checks to attorney Woodruff to apply for E2-C status for myself and E2-C dependent for my children, whose names are JUNYEONG PARK, JUNSEO PARK and JUNHYUN PARK, on July 07, 2011. However after 7 months that I requested Mr. Woodruff to apply my E2-C status, I have not been receiving any receipt of E2-C from Mr. Woodruff.

On November of 2011, I also paid a guy named KIM, JAEBOONG $1,000.00 as a processing fee for the CW-1 Visa and CW-2 for my children($500.00). However, KIM, JAEBOONG did not give me USICS receipt and other documents like Mr. Woodruff did. Then he suddenly emailed me on Jan 25th, 2012 that he could not process on CW-1 and CW-2 visa anymore.

Last but not least, I have made the investment of $250,000.00 under I.L.C. on September, 2008. When I made this investment, President, Yong Nam Park and Vice-President, Sung Yun Kim, advertised that investment to their company would securely get investors green card and secure status on the island Saipan. Of course, they promised me the same proposals, which are the green card and secure status. Park, Yong Nam still lives in this island but he didn't take any responsibilities and Kim, Sung Yun ran away to Malaysia.

The things I was doing were trying to live on this island with legal status and trust people. However, I don't understand why they are damaging my life. Currently I run businesses of house rental and catering. I would ask a question of what I need to do to make everything right. In this situation, what kind of visa is available to our family? Please help our family that who wants to achieve our dream on this island.

Therefore, I politely request an investigation on whether Mr. Woodruff and JAEBOONG KIM did apply my visa or they didn't start anything from beginning, and investigation on Park and Kim to find out their fault and way to get my invested money back. I would ask a way to secure status of me and my children. I put contact number and email addresses of listed people in this letter below.

*Stephen C. Woodruff
Contact number: 287-5291
Email address: scwlaw.spn@gmail.com
Mailing address: P.O.Box 500770 Saipan MP 96950

*Kim Jae Boong
Contact number(670)989-1789
Email address:u.s saipan@gmail.com

*Park, Yong Nam
Email: parkyoung75@hotmail.com, parkyoung7537@lycos.co.kr
        parkyongnamiissile@hotmail.com

*Kim, Sung Yun
Contact:82-10-2329-7791
Email address:annakim0908@yahoo.co.kr
P.O.Box 505049, Saipan MP96950
Address:Suite J-2-11,2 Jalan Solaris, Mont' Kiara 50480, Kuala Lumpur, MALAYSIA

My contact number, email address and mailing address are listed below.
This is confidential.

Thank you very much for your consideration and understanding.


Sincerely


JIHYUN LEE
P.O.Box 7931 SVRB
SAIPAN MP 96950
Email:03flower@naver.com
Contact:(670)9893663 or (670)9895552

CC: CNMI BAR ASSOCIATION

USCIS
TSL Plaza Building
Beach Road Garapan,
Saipan MP 96950


Date: January 27, 2012


This is to request your good office that I will like to ask USCIS to do investigation on this matter seen July 7, 2011. **Mr. Woodruff** did not submit any of my **E2-C Status** and **E2-C Dependent** for my children.

And also **Mr. Kim Jae Boong** did not submit any of my status for **CW-1 Visa** and my children **CW-2 Visa.**

I am asking for your kind help on this matter. I have no status for my **E2-C/ E2-C Independent** for my children and also I don't have **CW-1** and **CW-2** .

Thank you very much for your understanding on this matter.


Sincerely,

Lee, Jihyun
Contact Number: (670) 989-3663/989-5552

# Stephen C. Woodruff

**Attorney and Counselor at Law**
Second Floor, Marg's Kitchen Bldg.
Chalan Hagoi at Mt. Carmel
P. O. Box 500770
Saipan, MP 96950

December 29, 2011

Re:  Lee, Ji Hyun
     Park, Junhyun
     Park, Junyeong
     Park, Junseo

To Whom It May Concern:

Please be advised the above-referenced individuals are my clients in connection with Ms. Lee's application for E-2C investor status under U.S. immigration law as applicable to the Commonwealth of the Northern Mariana Islands (CNMI) and the application of her three sons (listed above) for E-2C dependent status.

Ms. Lee's I-129 is based on her prior investor long-term business permit status under CNMI immigration law and Title VII of the U.S. Public Law 110-229, codified at 48 U.S.C. § 1806. I was retained for the aforesaid purpose in July of this year. The pertinent applications are presently under processing, and we are awaiting confirmation from the California Service Center of USCIS with identification numbers for each of the subject individuals.

Please feel free to contact me by letter, phone, or email if you have any questions concerning this matter.

Sincerely,

Stephen C. Woodruff

Tel.: (670) 235-3872          Fax: (670) 235-3873          Email: scwlaw.spn@gmail.com

## *Disciplinary Committee*
## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
**Adam Hardwicke**
*Member/Secretary*
Bruce L. Mailman
*Member*
Stephen Pixley
*Member*

Telephone: (670) 234-6503
Facsimile:   (670) 234-1009
Email:adamhardwicke@gmail.com

P.O. Box 506197
Saipan, MP 96950

June 1, 2012:                                CONFIDENTIAL COMMUNICATION

Subject:  Complaint Filed with the Disciplinary Committee of the CNMI Bar Association

Dear Mr. Woodruff:

I have been assigned to investigate a disciplinary complaint filed against you by JIHYUN LEE as complaint 2012-01. Specifically, Mr. Lee alleges that on or about July 7, 2011 he paid you $1,500.00 in filing fees for four E2-C applications. According to Mr. Park, you were to work on applications for Mr. Lee and for his three children, Junyeong Park, Junseo Park and Junhyun Park.

Attached to this letter is a letter to UCIS from Mr. Lee dated January 27, 2012 which will serve as the complaint against you. Also attached to this letter is what appears to be a letter and E2-C application(s)s from you acknowledging that you are in fact the lawyer for the four (4) individuals named in this complaint and that you were specifically retained to help Mr. Lee and his 3 sons acquire E2-C investor status.

Please respond to this letter within 30 days so that I may determine whether or not there is any validity to these claims and what if any recommendations I need to make to the Disciplinary Committee regarding these allegations.

Sincerely,

Adam Hardwicke
*Member/Secretary*

To:        **Disciplinary Committee of the CNMI Bar Association**
From:      **Adam Hardwicke**
Date:      **October 11, 2012**
RE:        **Disciplinary Complaint 2012-01 Against Stephen Woodruff by Jihyun Lee**

## I. Background

The current matter involves a complaint against attorney Steven Woodruff by JIHYUN LEE. Specifically, Ms. Lee alleges that she retained Mr. Woodruff to apply for E2-C status for herself and her three dependant children, Junyeong Park, Junseo Park and Junhyun Park. Ms. Lee states she paid Mr. Woodruff a $1500 retainer fee along with USCIS Filing fees, all payments by check, on July 7, 2011. After waiting seven months Ms. Lee did not receive any update or confirmation of her E2-C application status from USCIS through Mr. Woodruff for herself or her three dependants. (See both Attached January 27 USCIS letters). Mr. Woodruff acknowledges such representation in his December 29, 2011 cover letter to the Department of Homeland Security. (See Attached LETTER).

This Investigator sent a letter to Mr. Woodruff on June 1, 2012 outlining the complaint against him by Ms. Lee. (See Attached "CONFIDENTIAL COMMUNICATION"). As of the writing of this report, Mr. Woodruff has neither responded to this investigator nor acknowledged the complaint.

## II. Findings

Commonwealth attorneys are bound by the ethics rules, both in and out of court, pursuant to the Commonwealth Disciplinary Rules and Procedures. 1 CMC § 3403; NMI R. Disc.1. The Commonwealth Disciplinary Rules and Procedures adopt the American Bar Association's Model Rules of Professional Conduct ("MRPC"). Thus, any attorney in the Commonwealth may be disciplined for violating provisions of the MRPC. NMI R. Disc. 1. The purpose of a disciplinary action against an attorney is not to punish the attorney, but rather to guard the administration of justice, maintain the dignity of the court and the integrity of the profession, and to protect the public. Saipan <u>Lau Lau Dev., Inc., v. Superior Court (San Nicolas)</u>, 2001 MP 2 ¶ 38.

This investigator finds that Mr. Woodruff accepted representation of Ms. Lee to perform the services described above, specifically to help Ms. Lee and her three

dependant children apply for and hopefully receive E2-C investor status through application with the Department of Homeland Security. It appears that Mr. Woodruff may have taken some steps to perform these tasks but at some point short of completion, dropped the ball and failed to complete the task for which he was retained. It also appears that Mr. Woodruff has entirely failed to communicate with Ms. Lee apprising her of the status of his representation. Mr. Woodruff similarly ignored this investigators invitation to discuss these allegations by failing respond to my June 1, 2012 letter. Additionally, the December 29, 2011 letter written by Stephen C. Woodruff "To Whom It May Concern" at the Department of Homeland Security memorializes his representation of Ms. Lee and her three dependant children. Presently, it may only be concluded that Mr. Woodruff accepted $1500 for the representation of Ms. Lee and neither satisfied his representation nor accounted for what services short of completion he did provide.

These acts are in direct conflict with multiple Rules of Professional Conduct. Specifically, if the allegations as presented are true and complete, then Mr. Woodruff has violated multiple sections of the MRPC including: the lawyer/client relationship (Rule 1), the attorney as a counselor (Rule 2), the attorney as an advocate (Rule3), and the integrity of the profession (Rule 8), have been violated. As such, only a select few are highlighted herein.

Additionally, as discussed after the MRPC violations, these acts may constitute acts of dishonesty and moral turpitude thereby forming an additional basis for discipline pursuant to NMI Rules of Discipline 2(b) and (d).

1.     Model Rule 1: Competence, Diligence, Communication, and Fees

"A lawyer shall provide competent representation to a client." Model Rule 1.1. Further, a "lawyer shall act with reasonable diligence and promptness in representing a client." Model Rule 1.3. Lastly, Mr. Woodruff is required to "promptly inform the client of any decision,. . . reasonably consult with the client about the means by which the client's objectives are to be accomplished,. . .keep the client reasonably informed about the status of the matter;. . . promptly comply with reasonable requests for information. . . ." Model Rule 1.4(a)(1-4).

Mr. Woodruff has violated these rules in that he has not provided competent representation, he has not been diligent, and he has entirely failed to keep his client reasonably informed on any matters regarding this representation.

Model Rule 1.5 governs fees and requires fees to be reasonable, among other things. Mr. Woodruff accepted $1,500 and in return, appears to have provided Ms. Lee with nothing. If true, this violates Rule 1.5.

2.    Model Rule 3.2

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Model Rule 3.2. As discussed above, it appears no effort has been made to litigate or satisfy his legal representation of this matter. The client's interests appear to have been disregarded and ignored entirely or partially.

3.    Model Rule 8.4

Model Rule 8.4 states in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct. . .;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice. . . .

It appears that some or all of the above sections appear to have been violated.

## III. Conclusion

Pursuant to Rule 3 of the Disciplinary Rules this investigator can foresee discipline ranging from private reprimand to potentially disbarment and/or other sanctions deemed appropriate by the Superior Court.[1] This investigator can further foresee the Superior Court Ordering Mr. Woodruff to return the entire amount of money with interest to Ms. Lee. The following facts weigh heavy in my recommendation for further action: (1) Mr. Woodruff has ignored this Committee's attempts to communicate; (2) this complaint is similar to another pending complaint; (3) Mr. Woodruff appears to have taken $1,500 from a person, made promises of service, and given them nothing in return. This is not a case where the attorney made an error in skill or judgment, rather – if

---

[1]    This investigator is mindful of my limited experience as a member of the Disciplinary Committee and, therefore, remains deferential to the conclusions and recommendations of the committee.

the allegations are accurate and complete – this attorney simply took money and never spoke to the client again. For these reasons, I recommend this complaint be promptly forwarded to the Presiding Judge for further action.

# Disciplinary Committee

## C N M I   B A R   A S S O C I A T I O N

| TIMOTHY H. BELLAS | ROBERT T. TORRES | ADAM HARDWICKE | BRUCE L. MAILMAN | STEPHEN PIXLEY |
|---|---|---|---|---|
| CHAIRMAN | VICE CHAIR | MEMBER/SECRETARY | MEMBER | MEMBER |

**The Honorable Alexandro C. Castro**
Chief Justice
CNMI Supreme Court
P.O. Box 502165
Saipan, MP  96950

**CONFIDENTIAL COMMUNICATION**

November 23, 2012

Re:   *Notification of Action on Complaint As Warranting Further Action*
     (Case No. 2012-01)

Dear Chief Justice Castro,

This letter is intended to advise you of the results of an investigation of the above identified complaint filed against Stephen C. Woodruff with the Disciplinary Committee of the CNMI Bar Association (DC).  On November 23, 2012, by majority vote of those members of the DC without a conflict, the DC has recommended to the Superior Court Presiding Judge that further action/prosecution is warranted in this matter.

Both the attorney and the person filing the complaint have been notified as to the recommendation of the DC.

Therefore, unless we receive some indication that you would like any further details on this matter, the case will now be deemed closed for purposes of the DC.

Sincerely,

Timothy H. Bellas
Chairman

cc. File

1 of 1

# *Disciplinary Committee*

## C N M I   B A R   A S S O C I A T I O N

| TIMOTHY H. BELLAS | ROBERT T. TORRES | ADAM HARDWICKE | BRUCE L. MAILMAN | STEPHEN PIXLEY |
|---|---|---|---|---|
| CHAIRMAN | VICE CHAIR | MEMBER/SECRETARY | MEMBER | MEMBER |

**The Honorable Robert C. Naraja**
Presiding Judge
CNMI Superior Court
P.O. Box 500307
Saipan, MP  96950                 **CONFIDENTIAL COMMUNICATION**

November 23, 2012

Re:    *Notice of Disciplinary Committee Recommendation As to Ethical Complaint Against An Attorney.*
        (Case No. 2012-01)

Dear Presiding Judge Naraja:

I write to you as Chair of the Northern Marianas Bar Association Disciplinary Committee (DC) to inform you that after assigning one of the DC members to investigate an ethical complaint against a CNMI licensed attorney, Stephen C. Woodruff.  The DC has reviewed the results of that investigation and by at least a majority vote of the un-conflicted members, the DC has concluded that the complaint is one which warrants further action/prosecution by the Court as there is cause to believe that the attorney has violated at least one of the ethical rules governing the practice of law in the CNMI.

The DC's investigative report is attached and more fully explains the basis of the DC's conclusion that further action/prosecution is warranted.

Unless we receive some inquiry from you re the investigative report, we shall consider this matter closed for purposes of the DC.  If there are any questions or should you require additional information, please feel free to contact me directly.

Sincerely,

Timothy H. Bellas
Chairman

cc. File
Attachment as stated                                       1 of 1



## CNMI   BAR   ASSOCIATION

| TIMOTHY H. BELLAS | ROBERT T. TORRES | ADAM HARDWICKE | BRUCE L. MAILMAN | STEPHEN PIXLEY |
|---|---|---|---|---|
| CHAIRMAN | VICE CHAIR | MEMBER/SECRETARY | MEMBER | MEMBER |

**Ms. Jihyun Lee**
P.O. Box 7931 SVRB
Saipan, MP 96950

**CONFIDENTIAL COMMUNICATION**
**VIA REGISTERED MAIL**

November 23, 2012

Re:   *Complaint Files With the Disciplinary Committee of the CNMI Bar Association*
       (Case No. 2012-01 )

Dear Ms. Lee,

This letter is intended to advise you of the results of an investigation of the above identified complaint filed against Stephen C. Woodruff with the Disciplinary Committee of the CNMI Bar Association (DC).  On November 23, 2012 , by majority vote of those members of the DC without a conflict, the DC has recommended to the Superior Court Presiding Judge that further action/prosecution is warranted in this matter.

The DC has, pursuant to the CNMI Disciplinary Rules, notified the Presiding Judge and Chief Justice of the results of the investigation and the recommendation of the DC.

Therefore, this completes the DC's work on this matter and your case is now closed for purposes of our records.

All further communication on this matter should be with the Presiding Judge or his designee.

Sincerely,

Timothy H. Bellas
Chairman

cc. File                                                                                                     1 of 1



## CNMI  BAR  ASSOCIATION

| TIMOTHY H. BELLAS | ROBERT T. TORRES | ADAM HARDWICKE | BRUCE L. MAILMAN | STEPHEN PIXLEY |
|---|---|---|---|---|
| CHAIRMAN | VICE CHAIR | MEMBER/SECRETARY | MEMBER | MEMBER |

**Stephen C. Woodruff, Esq.**
Attorney at Law
P.O. Box 500770
Saipan, MP 96950

**CONFIDENTIAL COMMUNICATION**
**VIA REGISTERED MAIL**

November 23, 2012

Re:   *Notification of Action on Complaint As Warranting Further Action*
      (Case No. 2012-01)

Dear Mr. Woddruff,

This letter will serve as your notice that the complaint filed against you with the Disciplinary Committee of the CNMI Bar Association (DC) has been investigated.   The results of that investigation have been presented to the full DC which voted on November 23, 2012 to accept the recommendation of the investigator that further action is warranted by the facts of your case.

The DC has notified the Presiding Judge and Acting Chief Justice of the disposition of this matter, barring their request for further information on this matter, your case is now closed within the DC and any further communication will come from the Superior Court.

Sincerely,

Timothy H. Bellas
Chairman

cc. File                                                                          1 of 1

## Timothy H. Bellas

| | |
|---|---|
| **From:** | CNMI Bar [cnmibar@pticom.com] |
| **Sent:** | Wednesday, September 14, 2011 11:41 AM |
| **To:** | BELLAS, Timothy H. |
| **Subject:** | FW: Contact Request From the cnmibar.net Website |

**From:** webmaster@cnmibar.net[mailto:webmaster@cnmibar.net]
**Sent:** Wednesday, September 14, 2011 9:28 AM
**To:** cnmibar@pticom.com
**Subject:** Contact Request From the cnmibar.net Website

The Following information was sent via the cnmibar.net Website:

**Name:** Emily Santos Garde

**Address:** PO Box 503250

**City:** Saipan

**State:** MP

**Country:** USA

**Zip:** 96950

**E-mail** bamba_emily@yahoo.com — _no longer_

**Phone:** 6702342509

**Fax:**

**Comments, Questions, Concerns:** To Whom This May Concern; This letter is written as a formal complaint against Attorney Stephen C. Woodruff. I am writing to express my dissatisfaction with my family court case filed to Atty. Woodruff office sometime on November 25, 2008. I paid $1,200 to represent me filing to divorce my husband. After spending several wasted hours, days and years trying to follow up my case, by order of the court, the divorce was granted by Judge Perry Inos during the hearing on May 26, 2011. One month after the hearing I followed up and visit his office regularly to have a copy of my final decree and throughout these many years I still did not have a copy of the Final Decree of Divorce. I am regularly calling his office to obtain a copy of the divorce decree but he told me that I have to stop calling and going to their office and just wait. He reasoned out that the Judge did not sign yet the Divorce Decree. I went to the CNMI court to obtain a copy but I was told that it was not submit by Woodruff, went to his office and he told me that he forgot already my case. It's almost 3 years and still waiting for this to resolve! I am writing to ask you to please make up the shortfall immediately. I have carefully study and suggest the following as a starting point for this complaint. Diligence. A lawyer shall act with reasonable diligence and promptness in representing a client. Expediting Litigation. A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. Thank you for your serious consideration of the foregoing. I am available at your convenience to discuss this matter at greater length. Very truly yours, Emily Santos Garde

DC # 2011-12



# *Disciplinary Committee*
## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
Bruce Mailman
*Secretary*
Janet H. King
*Member*
Sean Frink
*Member*

Telephone: (670) 323-2115
Facsimile:  (670) 323-2116
Email: tim@bellaslaw.net

P.O. Box 502845
Saipan, MP 96950

September 14, 2011

CONFIDENTIAL COMMUNICATION
VIA REGISTERED MAIL

**Ms. Emily Santos Garde**
P.O. Box 503250
Saipan, MP 96950

Subject:  Notification of Receipt of Complaint Filed With The Disciplinary Committee of the CNMI
Bar Association.

Dear Ms. Garde:

This letter will acknowledge the receipt of a complaint that you have filed against Stephen C. Woodruff with the Disciplinary Committee of the CNMI Bar Association (DC). The DC's role is to investigate such complaints and make a determination whether any further action, including possible prosecution in the CNMI Superior Court is warranted by the facts of your case.

The DC will be soon be assigning one of its members to investigate this matter and he/she will contact you directly and request any further details that the investigator may deem appropriate. The investigator is also the appropriate person for you to contact in the event that you wish to submit any further evidence or statements in support of the complaint.

For future reference, this matter has been assigned Case No. 2011-12.

Sincerely,

Timothy H. Bellas
Chairman

cc: File



## *Disciplinary Committee*
### CNMI Bar Association

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
Bruce Mailman
*Secretary*
Janet H. King
*Member*
Sean Frink
*Member*

Telephone: (670) 323-2115
Facsimile:  (670) 323-2116
Email: tim@bellaslaw.net

*P.O.* Box 502845
Saipan, MP 96950

September 14, 2011

CONFIDENTIAL COMMUNICATION
VIA REGISTERED MAIL

**Stephen C. Woodruff, Esq.**
Attorney At Law
P.O. Box 500770
Saipan, MP 96950

Subject:  Complaint Filed With The Disciplinary Committee of the CNMI Bar Association.
(Case no. 2011-12)

Dear Mr. Woodruff:

This letter will serve as your initial Notice that a complaint has been filed against you with the Disciplinary Committee of the CNMI Bar Association (DC). The DC's role is to investigate such complaints and make a determination whether further action in the form of a prosecution in the CNMI Superior Court is warranted by the facts of your case.

The DC will be soon be assigning one of its members to investigate this matter and he/she will contact you directly and give you the details of the complaint against you. The investigator is also the appropriate person for you to contact in the event that you wish to submit any evidence or statements in your defense.

Sincerely,

Timothy H. Bellas
Chairman

cc: File

# *Disciplinary Committee*
## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
Bruce Mailman
*Secretary*
Janet H. King
*Member*
Sean Frink
*Member*

Telephone: (670) 323-2115
Facsimile:   (670) 323-2116
Email: tim@bellaslaw.net

P.O. Box 502845
Saipan, MP 96950

September 14, 2011

**The Honorable Miguel S. Demapan**
Chief Justice
CNMI Supreme Court
P.O. Box 502165
Saipan, MP 96950

and

**The Honorable Robert C. Naraja**
Presiding Judge
CNMI Superior Court
P.O. Box 500307
Saipan, MP 96950

Re:    *Rule 4 Notification: Disciplinary Complaint Made Against Atty. Stephen C. Woodruff*

Dear Chief Justice Demapan and Presiding Judge Naraja:

I write you as Chair of the Northern Marianas Bar Association Disciplinary Committee (DC) to inform you that on September 13th, 2011, the DC received a complaint made against CNMI licensed attorney, Stephen C. Woodruff. As you are aware, Rule 4 of the Commonwealth Disciplinary Rules provides that upon receipt of any complaint, the DC shall notify the Chief Justice and the Presiding Judge, stating the name of the person the complaint is made against and the date of receipt of the complaint.

This matter was assigned to a member to investigate and report findings to the DC. The Committee will endeavor to report to the Court within sixty (60) days, pursuant to Com. Disc. R.6. The case number assigned by the DC to this complaint is 2011-12 and this matter will be referenced by this number henceforth.

1

3

Please feel free to contact me directly, should you have any questions or require additional information about this matter.

Sincerely,

Timothy H. Bellas
Chairman

cc:  File

**DISCIPLINARY COMMITTEE REPORT**
**CASE NO. 2011-12**
**COMPLAINANT: EMILY SANTOS GARDE**
**ATTORNEY: STEPHEN C. WOODRUFF**

**Summary:** A lawyer should conclude all matters undertaken for a client, which includes providing client's documents, before relinquishing the matter. The lawyer has a duty to act promptly in representing a client, as specified in Rule 1.3, and a duty to communicate with the client, as specified in Rule 1.4 of the ABA Model Rules of Professional Conduct.[1]

**Facts:** On September 13, 2011, the Disciplinary Committee (DC) received a complaint against attorney Stephen C. Woodruff (the attorney) by Emily Santos Garde (the complainant). The DC member assigned to gather facts and provide a report to the Disciplinary Committee is Janet King (investigator).

The complainant sought assistance of the attorney in her divorce matter. The divorce was successfully granted by Judge Inos on May 26, 2011. The complainant alleged that, among other things, she has not yet obtained a copy of the divorce decree from the attorney. She also alleges that she has spent "several wasted hours, days, and years trying to follow up my case," and that although the complainant successfully obtained a divorce in the hearing she was not able to obtain a copy of the divorce decree. The complainant alleges that she regularly called the attorney's office and made some visits there in order to obtain a copy of her divorce decree, but received no response.

**Discussion:** The investigator communicated with both the complainant and attorney. To date, the complainant, after several follow ups to the attorney through calls and visits to his office, has not received a copy of her divorce decree from the attorney. The investigator was unable to confirm with the attorney whether the attorney prepared and filed the divorce decree, or whether he could provide a timeframe in which the attorney is expected to provide a copy of the divorce decree to his client. The attorney is aware that the complainant is seeking a copy of her divorce decree, from both the complainant herself, who still actively tries to contact the attorney, and the investigator. The attorney has not communicated directly with the complainant about her divorce decree as of the date of submission of this report to the DC by the investigator, nor has he provided a copy of the divorce decree to her.

---

[1] Rule 2 of the Commonwealth Supreme Court Disciplinary Rules and Procedures provides that "[t]he Model Rules of Professional Conduct adopted by the American Bar Association are applicable in the Commonwealth of the Northern Mariana Islands." The ABA Model Rules of Professional Conduct are found here: *http://www.americanbar.org/groups/professional_responsibility/publications/model_rule s_of_professional_conduct/model_rules_of_professional_conduct_table_of_contents.htm l.*

The attorney's conduct is likely in violation of Rule 1.3 and Rule 1.4.

Rule 1.3 states that "A lawyer shall act with reasonable diligence and promptness in representing a client."[2] Although, here, the Court granted a divorce in a hearing, no actual divorce decree was issued, as far as is known, and no copy was provided to his client.

Comment [4] to Rule 1.3 states that "[u]nless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client." Comment [5] to Rule 1.3 goes on to state: "If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved." The successful granting of the divorce of attorney's client did not end the attorney-client relationship, and up to this present date the complainant is still a client of the attorney, as he did not complete his work. Therefore, the attorney client relationship is likely not considered terminated. In addition, the client herself continues to believe the attorney client relationship between them had not ended. Finally, there is no evidence the attorney formally terminated the relationship.

Rule 1.4 states that communication between attorney and client is required. Rule 1.4(a) provides that "A lawyer shall (3) keep the client reasonably informed about the status of the matter [and] (4) promptly comply with reasonable requests for information."[3] Comment [4] to Rule 1.4 states that a "lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation." The comment goes on to state that "[w]hen a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected. Client telephone calls should be promptly returned or acknowledged."

---

[2] For the terms of Rule 1.3, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model _rules_of_professional_conduct/rule_1_3_diligence.html.*

[3] For the terms of Rule 1.4, ABA Model Rules of Professional Conduct, go to: *http://www.americanbar.org/groups/professional_responsibility/publications/model _rules_of_professional_conduct/rule_1_4_communications.html.*

**Recommendation:** The attorney's alleged misconduct stems from his incidents of neglectful behavior toward his client and procrastination by failing to prepare, file and provide the divorce decree to his client, regardless of the fact that the client is successfully granted a divorce. The recommendation is to find that the attorney's actions most likely violated by clear and convincing evidence the provisions of Rule 1.3 and Rule 1.4 of the ABA Model Rules of Professional Conduct, and for the DC to further act based on that recommendation.

Submitted this 21st day of January, 2012.

_____/S/ *Janet H. King*_____
JANET H. KING

致敬 律师公会：

你们好。我叫于群（YU QUN），Stephen Woodruff 是2007年公派给我的律师，我于2010年8月25日第二个案子进入射阳监狱，他又被公派作了我的律师，2011年3月我们第一个案子政府撤诉，把两千元保释金返还给我。撤消了第二个案子时叫他把给我于群大的帮我有两千元保释金作为律师费转给他。但是他还是没有给我人道主义的帮助，2011年7月就上了审判庭，直到开庭当天他还在给别的案件，对方提供的文件他从来没有看过一遍，审判庭开支对方出示的假口供、假证据他都不知道。证人在庭上前后说的都不一样，他也不知道。从2011年8月开始直到现在，每星期我通过翻译向他提出见面的请求，他和翻译说和我没活说。在此期间多次向监狱和翻译提出换律师的情况下，他就在一个半月前见了我15分钟。我向他说他才知道，我向他提出向敌朝警察联系，与他警察在庭上出示伪造证据的事，他一直置之不办。

在此我又恳请求你们帮助我换一名称负责的律师，给我于人道义的帮助。还我一个做休理公证的法律



一名犯人、帕渎的弱者。求助于狱中

03/16/2012

# Aby Leung Translation Services
P. O. Box 5782 CHRB
Saipan, MP 96950
Northern Mariana Islands
e-mail address: aby.aaii@gmail.com
Phone: 670-287-8118

To CNMI Bar Association
P.O. Box 504539
Saipan. MP 96950
Northern Mariana Islands

Date: 03,26,2010

Attn: Disciplinary Committee,

Dear Committee,

### Re: Yu. Qun

I need to declare Mr. Yu, Qun was not my Client, I only stood for interpreter Jean Shi one time during Yu, Qun's trial in the court room, I didn't give my phone number to Yu, Qun, I don't know how he got my number, but I received numerous phone calls from Mr. Yu, Qun from DOC for the past 2 months, I went to DOC to see him on 03.22.2012 and he gave me the letter and asked me to send it to you. For your convenience I translated the letter in English. Enclosed herewith the copies of the translated letter and the original Chinese letter for you to review. If you have any question please feel free to let me know.

Remarks: The letters are regarding the conduct of an attorney, please seal my name.

Thank You.

Yours faithfully,

Aby Leung
interpreter and Translator

To The Respectful Bar Association.

How are you? My name is Yu, Qun, Stephen Woodruff was the appointed attorney for me in 2007. I have been detained in the Jail of Saipan since 08.25.2010 for the second case. Again he was appointed as my attorney. Government had dismissed my first case in March 2011, the bail money $2,000.00 was exonerated back to me, I wanted to ask him to provide me the greatest help, I transferred the bail money $2,000.00 to him as the attorney fees, still he didn't give me a help of humanism. My jury trial was in July 2011, during the trial, documents were given in front of me, he never read the documents which provided by the opponent. After the jury trial, he didn't know the opponent presented the false testimonies, false evidences. He also didn't know the early part of the testimonies were not in line with the later part of the testimonies from witness. From August 2011 to present, every week through the interpreter to request to see him, he told the interpreter said "he has nothing to talk to me." During the period, over and over again to make the request the jail and the interpreter to change another attorney, under this kind of situation he came to see me one and half (1.5) months ago for 15 minutes, I told him then he knows, I asked him to contact the Federal Agents, local police presented false evidences, he delayed and didn't do it.

Here I only want to request for your help to change a responsible attorney for me, give me a help of humanism, and can let me experience the real justice.

A weak person with collapsed body and mind is asking for help in jail.

Yu Qun

03.16 2012

{ Translation end }




# SUPERIOR COURT

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, U.S.A.
Guma' Hustisia, Iimwal Aweewe, House of Justice
P.O. BOX 500307, SAIPAN, MP 96950-0307

*DAVID A. WISEMAN*
*Associate Judge*

*Phone: (670) 236-9752*
*Fax: (670) 236-9741*

November 14, 2012

Sean Frink
President
CNMI Bar Association
Flame Tree Arts Building, 2nd Fl Capitol Hill
c/o PMB 323, Box 10001
Saipan, MP 96950

RE:   DEFENDANT'S COMPLAINT LETTER OF ATTORNEY STEPHEN WOODRUFF

Dear Sean:

I have enclosed, under cover of this letter, a handwritten letter from defendant, Yu Qun, who was sentenced on July 20, 2011 to a 28 year sentence by the undersigned.

Although said letter refers to a 2007 case, that case was actually dismissed, and the said sentence is in Criminal Case No. 10-0154. I therefore, believe that defendant made a mistake with respect to the case numbers. I received confirmation from the Supreme Court that there was no appeal filed as stated in the complaint letter.

I refer this matter to you for your consideration and appropriate action that you may deem necessary. For your convenience, I have also attached said Sentence and Commitment Order referred to.

If you need any additional information please contact me.

Truly yours,

DAVID A. WISEMAN
Associate Judge

Enclosures

xc:    Robert C. Naraja, Presiding Judge
       Timothy Bellas, Chairman, Disciplinary Committee

07-0228CR

Judge, Kenneh Gorendo先生弥好.

我叫于群 (YU QUN), Stephen Wood ruff 是法庭派给我的律师. 我在2011年8月一直到2011年10月每里期都要打3.4个电话要求见律师, 最后见了我15分钟 何仍没区提出上诉. 我于2012年8月一直到现在每个星期通过翻译测犯提出把所有的文件给我, 一直到今天翻译才和我说没有上诉, 我的手里到现在没有任何文件, 我清求您帮我换一个付责的律师

在这里我表示感谢

请求一切顺利

Translated by Jean Shi

How do you do, mr. Judge, Kenneh Gorendo!

My name is Yu, Qun. STephen Woodruff is my court appointed attorney and I made phone calls three, four times to request to meet the lawyer every week from August, 2011 to October, 2011 and finally he met with fifteen minutes and told me that the case appealed already. I request to get all the documents through the interprete every week from August, 2012 until now, but the interpret just told me that the case is not appealed today. I have not had any documents with me and I appeal to replace me another responsible lawyer from you.

Yu Qun
10 / 03 / 2013

I hereby appreciate it.

Hope that you are OK for everything

07-0228 CR

NO.

Date

Judge, Kenneth Gorendo先生孙妊.

我叫于群 (YU QUN)，Stephen Woodruff是我应该派给我的律师。我在2011年8月一直到2011年10月每星期都要打3个电话要求见律师，最后见了我15分钟，何后没有把此上诉。我于2012年8月一直到现在每星期通过翻译阿珊提出把所有的文件给我，一直到今天翻译才和我说没有上诉。我现在手里到现在没有任何文件，我请求法邦我换一名付责的律师。

在这里我表示感谢。

祝张一切顺利

Yu Qun

10/03/2012



**DEPARTMENT OF CORRECTIONS**
Commonwealth of the Northern Mariana Islands
Vicente Taman Seman Building
P.O. Box 506506
Saipan, MP 96950

Official Use Only

Honorable Judge Kenneth Govendo
Superior Court

# Disciplinary Committee

## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Robert T. Torres
*Vice Chair*
Adam Hardwicke
*Member/Secretary*
Bruce L. Mailman
*Member*
Stephen Pixley
*Member*

Telephone: (670) 323-2115
Facsimile    (670) 323-2116
Email: tim@bellaslaw.net

P.O. Box 502845
Saipan, MP 96950

January 11, 2013

Stephen C. Woodruff
Attorney-at-Law
P.O. Box 500770
Saipan, MP 96950

**PERSONAL & CONFIDENTIAL**
**BY HAND**

Re:    Disciplinary Complaint No. 2012-03 (Complainant Qun Yu)

Dear Mr. Woodruff:

I am the member of the CNMI Bar Association's Disciplinary Committee to whom the above complaint against you has been assigned for investigation.

Mr. Yu made his complaint to the Bar Association by letter dated March 16, 2012, and to the Superior Court by a handwritten letter to Judge Govendo, which was forwarded to the Bar Association by Judge Wiseman, by letter dated November 14, 2012. I enclose copies of those letters.

I understand that you were appointed to defend Mr. Yu against serious criminal charges in Criminal Case No. 10-0154, at the conclusion of which he was sentenced to a jail term of 28 years.

The gist of Mr. Yu's complaint appears to be that (1) although you were appointed counsel, he paid you an additional $2,000 for attorneys fees, out of his exonerated bail

Stephen C. Woodruff, Esq.
Re: Disciplinary Complaint No. 2012-03
   Complainant Qun Yu
January 11, 2013
Page 2 of 2

money from a prior criminal case; (2) that you failed to represent him diligently or competently during the July 2011 trial; (3) that you have refused to communicate with him with the exception of one brief visit; and (4) that you told him during that visit that you had appealed the case, but that in fact the case was not appealed. As the letter from Judge Wiseman indicates, no appeal has been filed on behalf of Mr. Yu.

These complaints implicate, at a minimum, Model Rule 1.1 (competent representation); Model Rule 1.3 (diligence); Model Rule 1.4 (communication); Model Rule 1.5 (fees); Model Rule 1.16 (terminating representation); and Model Rule 8.4(c) (conduct involving dishonesty, fraud, deceit and misrepresentation).

You are entitled to provide a response to Mr. Yu's complaint and to his allegations, as part of my investigation. If you intend to provide a response, I would appreciate receiving one within 30 days from the date of this letter. If you require additional time to respond, or if you do not intend to provide a response, please let me know.

Any response may be delivered to me at my offices in Garapan, on Beach Road above Shenanigans Restaurant, by mail to PMB 238 PPP, Box 10000, Saipan, MP 96950, or by email at bmailman@pticom.com.

Very truly yours,

BRUCE L. MAILMAN

BLM/jsv

encl.

cc w/ encl:     Timothy H. Bellas, Chairman,
                CNMI Bar Association Disciplinary Committee

# MAILMAN & KARA, LLC

**ATTORNEYS AT LAW**
**PMB 238 PPP, BOX 10000**
**SAIPAN, MARIANA ISLANDS 96950-8900**

OFFICE      : 2ⁿᵈ Floor, Tan Mariklta Bldg.
              Beach Road, Garapan, Saipan
TELEPHONE   : (670) 233-0081
FACSIMILE   : (670) 233-0090

E-MAIL: lexmarianas@pticom.com

March 1, 2013

Disciplinary Committee                    **CONFIDENTIAL COMMUNICATION**
CNMI Bar Association
P.O. Box 502845
Saipan, MP 96950

Re:  Report on Investigation of Ethical Complaint filed by Qun Yu, Complaint No. 2012-03

1.      Procedural Summary

        Mr. Yu is currently serving a 28 year sentence for a conviction in Commonwealth Superior Court CR-10-0154, following a trial on July 2011. He was represented at trial by Stephen C. Woodruff, as court-appointed counsel.

        Mr. Woodruff was also appointed to prosecute an appeal. Mr. Yu made his complaint first, through translator Aby Leung, who forwarded a letter dated March 26, 2012 (mis-stated as "3,26,2010"). Later, he wrote to Judge Govendo with regard to a prior criminal case, CR-07-0228, which letter was forwarded to Bar Association President Sean Frink by Associate Judge David A. Wiseman, by cover letter dated November 24, 2012. In his letter, Judge Wiseman pointed out that the 2007 case referred to by Mr. Yu was dismissed, and that in fact he believes that Mr. Yu's letter refers to the case which was tried in July 2011. DC Chair Timothy H. Bellas advised Woodruff about the complaint, by registered mail. I was assigned to the case and, on January 11, 2013, wrote a standard investigative letter to Mr. Woodruff, inviting his response within 30 days. Mr. Woodruff has not to date responded to me directly, but the complaint by Mr. Yu was addressed to some extent in the January 25, 2013 hearing on the Commonwealth Supreme Court's Order to Show Cause resulting from the Disciplinary Committee's Motion for Interim Suspension of Mr. Woodruff.

        I enclose copies of the following:

        (a)      My January 11, 2013 letter to Mr. Woodruff, with an acknowledgement of receipt of the letter at his offices, on the same date. (At the Supreme Court hearing, in open court, Mr. Woodruff acknowledged service.)

        (b)      Judge Wiseman's November 14, 2012 letter, with attached letter addressed to Judge Govendo by Mr. Yu, with translation, and Mr. Leung's March 26, 2012 letter, with translation, with Mr. Yu's letter in Chinese. (I have the original letter from Mr. Leung, and the original letter he translated from Mr. Yu, in my file on this case.)

        (c)      July 20, 2011 Sentence and Commitment Order in CR-10-0154.

CNMI Bar Association
Disciplinary Committee
Re: Disciplinary Complaint No. 2012-03
March 1, 2013
Page 2 of 4

2.     Nature of the Complaint

I summarized Mr. Yu's complaints against Mr. Woodruff in my January 11, 2013 letter to Mr. Woodruff, as follows:

> The gist of Mr. Yu's complaint appears to be that (1) although you were appointed counsel, he paid you an additional $2,000 for attorneys fees, out of his exonerated bail money from a prior case; (2) that you failed to represent him diligently or competently during the July 2011 trial; (3) that you have refused to communicate with him with the exception of one brief visit; and (4) that you told him during that visit that you had appealed the case, but that in fact the case was not appealed. As the letter from Judge Wiseman indicates, no appeal has been filed on behalf of Mr. Yu.
>
> These complaints implicate, at a minimum, Model Rule 1.1 (competent representation); Model Rule 1.3 (diligence); Model Rule 1.4 (communication); Model Rule 1.5 (fees); Model Rule 1.16 (terminating representation); and Model Rule 8.4(c) (conduct involving dishonesty, fraud, deceit and misrepresentation).

3.     Investigation and Findings

This morning, March 1, 2013, I visited Mr. Yu at the prison in Susupe, accompanied by my Chinese-speaking paralegal, Yue Wang, as translator. Afterward, I spoke with Tiberius Mocanu, who is now employed by a private firm on Saipan as in-house counsel. Finally, I had one of my staff contact the Superior Court to see if bail from either the 2007 or 2010 cases had been, in fact, exonerated.

(a)     Payment of Bail as Attorneys Fees to Appointed Counsel. Mr. Yu told me that he did not in fact know if the $2,000 bail from the 2007 case had in fact been exonerated. He told me that he had discussed paying that money to Mr. Woodruff, and that he signed a document that he believed allowed Mr. Woodruff to obtain the bail funds, but he had not heard anything further. If true, the collection of private payment for a court-appointed case would be a serious charge, assuming double billing to the court. However, one of my staff was able to confirm with the Superior Court that neither the bail for the 2007 case nor the bail for the 2010 case has been exonerated. This part of Mr. Yu's complaint is not supported by fact.

(b)     Diligent Representation During Trial. It is difficult to assess an attorney's performance at trial without personal observation, and equally difficult to assess trial tactics and strategies. Mr. Yu complained that Mr. Woodruff missed deadlines, that he did not turn in documents as requested, that he did not seem to be in control of his documents, that he refused to let Mr. Yu explain false statements and facts presented by the prosecution, and that he failed to prevent admission of false testimony. Mr. Mocanu, however, stated that Mr. Woodruff appeared to present a competent defense, and that he properly objected to inclusion of materials, including statements from taped conversations of Mr. Yu and his co-defendant, which Mr. Yu said that Mr. Woodruff had allowed without protest. As a result of my conversation with Mr. Mocanu, I cannot say that this part of the complaint is supported by fact.

CNMI Bar Association
Disciplinary Committee
Re: Disciplinary Complaint No. 2012-03
March 1, 2013
Page 3 of 4

Mr. Yu also stated that Mr. Woodruff failed to properly prepare for trial. I have no way to assess the truth of this statement, although Mr. Mocanu's confirmation of competent performance at trial does belie the accusation.

(c)    Failure to Communicate. Mr. Yu complained in his letter and during my interview with him that since the trial he had only seen Mr. Woodruff once, or perhaps twice (it is not entirely clear), and that Mr. Woodruff otherwise failed to communicate with him. During their last communication, whether by meeting or otherwise, Mr. Woodruff admitted that he had not filed an appeal, although he had previously told Mr. Yu that he had done so. I am not able to test whether Mr. Woodruff did in fact tell Mr. Yu that he had filed the promised appeal, or that he failed to communicate. As noted in my January 11, 2013 letter, failure to communicate implicates Model Rule 1.4. Because I am unable to make a determination, I believe this issue should be explored by Disciplinary Counsel if the matter is brought before Superior Court. With regard to the appeal, see below.

(d)    Failure to File Appeal, and Misrepresentation Regarding Appeal. While I am not able to confirm whether or not Mr. Woodruff represented to Mr. Yu that the appeal had been filed, Judge Wiseman confirmed before sending the matter to the Bar Association for referral to the Disciplinary Committee, that no appeal had been filed. Mr. Woodruff himself admitted that fact in the Supreme Court OSC hearing. At that hearing he proposed a novel interpretation of the Rule of Appellate Procedure that provides a jurisdictional period of 30 days within which to file an appeal. According to Mr. Woodruff, he had a motion for JNOV pending, on which the trial judge never ruled. Therefore, because there was no direct ruling on the motion for JNOV, the appeal period remained open and Mr. Yu had not been prejudiced, and remained able to bring an appeal. The justices pointed out the obvious issue, which is that by sentencing Mr. Yu in July 2011, the trial judge implicitly ruled on the motion for judgment notwithstanding the verdict. The argument that failure to make an explicit ruling on the JNOV motion somehow left the appeals period open, despite the sentence being imposed and executed, is hypertechnical at best. In my opinion it is nonsense. I believe that failure to file the appeal represents a failure of competent representation, of diligence and of communication, and may involve dishonesty and misrepresentation, if it turns out that Mr. Woodruff did in fact originally tell Mr. Yu that the appeal had been filed.

(e)    Failure to Advise of Immigration Consequences of Criminal Conviction. In 2010 the U.S. Supreme Court in *Padilla v. Kentucky*, 559 U.S. _, 130 S.Ct.1473 (2010) held that criminal defense counsel must advise noncitizen clients about the risk of deportation resulting from a guilty plea. Mr. Yu says that he was not advised of the immigration consequences of either a plea or conviction. However, he did tell me that Mr. Woodruff advised him against making a plea. In addition, given the facts of the case, it appears that a conviction was all but certain. Although failure to advise regarding immigration consequences can provide a valid appeal argument based on ineffective assistance of counsel, in this case the failure to advise seems not to have made any particular difference in the conduct of the case.

4.    Conclusion

Based on the above, I believe there are sufficient grounds to conclude that Mr. Woodruff violated Model Rules 1.1 and 1.3 with regard to failure to file the promised appeal and, in the same regard, may also have violated Model Rules 1.4 and 8.4(c). I am unable to reach any conclusion with regard to

CNMI Bar Association
Disciplinary Committee
Re: Disciplinary Complaint No. 2012-03
March 1, 2013
Page 4 of 4

communications between Mr. Woodruff and his client, or the claim that Mr. Woodruff stated that an appeal had been filed, later admitted by him not to be true.

The charge that Mr. Woodruff improperly took a private fee with regard to an appointed client appears unfounded, as the money supposedly paid to Mr. Woodruff would have come from the refund of bail which was, in fact, not exonerated. It may be that Mr. Woodruff told Mr. Yu that he would obtain the bail funds and, if so, he would have had a duty to preserve the funds for Mr. Yu to make them available to him. I do not have sufficient information to make a finding on this point, however.

5.    Recommendation

I recommend that we forward this matter to the Presiding Judge at the Superior Court, with regard to failure to file the criminal appeal, or to file an appropriate pleading if Mr. Woodruff did not believe an appeal was warranted or merited. I do not believe the facts sustain the remainder of Mr. Yu's complaints.

Very truly yours,

BRUCE L. MAILMAN

BLM/jsv

encl.



## CNMI BAR ASSOCIATION

| TIMOTHY H. BELLAS | Bruce L. Mailman | Steve Pixley | Rex Cosack | Michael Evangelista |
|---|---|---|---|---|
| CHAIRMAN | VICE CHAIR | MEMBER/SECRETARY | MEMBER | MEMBER |

**The Honorable Robert C. Naraja**
Presiding Judge
CNMI Superior Court
P.O. Box 500307
Saipan, MP 96950

**CONFIDENTIAL COMMUNICATION**

March 18, 2013

Re:    *Notice of Disciplinary Committee Recommendation As to Ethical Complaint Against An Attorney.*
       (Case No. 2012-03)

Dear Presiding Judge Naraja:

I write to you as Chair of the Northern Marianas Bar Association Disciplinary Committee (DC) to inform you that after assigning one of the DC members to investigate an ethical complaint against a CNMI licensed attorney, Stephen C. Woodruff. The DC has reviewed the results of that investigation and by at least a majority vote of the un-conflicted members, the DC has concluded that the complaint is one which warrants further action/prosecution by the Court as there is cause to believe that the attorney has violated at least one of the ethical rules governing the practice of law in the CNMI.

The DC's investigative report is attached and more fully explains the basis of the DC's conclusion that further action/prosecution is warranted.

Unless we receive some inquiry from you re the investigative report, we shall consider this matter closed for purposes of the DC. If there are any questions or should you require additional information, please feel free to contact me directly.

Sincerely,

Timothy H. Bellas
Chairman

cc. File
Attachment as stated

1 of 1



## *Disciplinary Committee*

### C N M I   B A R   A S S O C I A T I O N

| TIMOTHY H. BELLAS | Bruce L. Mailman | Steve Pixley | Rex Cosack | Michael Evangelista |
|---|---|---|---|---|
| CHAIRMAN | VICE CHAIR | MEMBER/SECRETARY | MEMBER | MEMBER |

**Mr. Stephen C. Woodruff**
Attorney at Law
P.O. Box 500770
Saipan, MP 96950

<u>**CONFIDENTIAL COMMUNICATION**</u>
<u>**VIA REGISTERED MAIL**</u>

March 18, 2013

*Re:*   *Notification of Action on Complaint As Warranting Further Action*
(Case No. 2012-03)

Dear Attorney Stephen C. Woodruff,

This letter will serve as your notice that the complaint filed against you with the Disciplinary Committee of the CNMI Bar Association (DC) has been investigated.  The results of that investigation have been presented to the full DC which voted on March 15, 2013 to accept the recommendation of the investigator that further action is warranted by the facts of your case.

The DC has notified the Presiding Judge and Acting Chief Justice of the disposition of this matter, barring their request for further information on this matter, your case is now closed within the DC and any further communication will come from the Superior Court.

Sincerely,

Timothy H. Bellas
Chairman

cc. File

1 of 1

To The Respectful Bar Association,

How are you? My name is Yu, Qun, Stephen Woodruff was the appointed attorney for me in 2007. I have been detained in the Jail of Saipan since 08.25.2010 for the second case. Again he was appointed as my attorney. Government had dismissed my first case in March 2011, the bail money $2,000.00 was exonerated back to me, I wanted to ask him to provide me the greatest help, I transferred the bail money $2,000.00 to him as the attorney fees, still he didn't give me a help of humanism. My jury trial was in July 2011, during the trial, documents were given in front of me, he never read the documents which provided by the opponent. After the jury trial, he didn't know the opponent presented the false testimonies, false evidences. He also didn't know the early part of the testimonies were not in line with the later part of the testimonies from witness. From August 2011 to present, every week through the interpreter to request to see him, he told the interpreter said "he has nothing to talk to me." During the period, over and over again to make the request the jail and the interpreter to change another attorney, under this kind of situation he came to see me one and half (1.5) months ago for 15 minutes, I told him then he knows, I asked him to contact the Federal Agents, local police presented false evidences, he delayed and didn't do it.

Here I only want to request for your help to change a responsible attorney for me, give me a help of humanism, and can let me experience the real justice.

A weak person with collapsed body and mind is asking for help in jail.

Yu Qun

03.16.2012

{ Translation end }

TO: MR. TIM BELLAS
FR: FERNANDO C. QUITANO

Mr. Stephen C. Woodruff was my court-appointed attorney in 2 cases.
I, we went to trial for 1 of those and nothing has come of the other.
I have had doubts about the way I was represented and advised.
I don't know if this is worth complaining about but I read in the
news that Mr. Woodruff is suspended and need someone to
look into this. As I write this I worry of what people will think and
how it could effect things badly but here goes.
* I was arrested in 2007 for robbery and 4 other charges. This 07
case was pending sentencing when I was arrested again in 2009. (OCT.)
This time for armed robbery and 12 other charges including 2 counts
of A. murder. Mr. Woodruff was appointed by the court for both cases.
– Less than a month after my arrest I recieved an outlined offer from
the A.G. (to amd) through Mr. Woodruff for 15 yrs., 7.5 probation.
– I recieved discoveries for 09 case in Jan. or Feb. 2010.
– My 1st visit by Mr. Woodruff was soon after I recieved discoveries.
After reviewing discoveries I told Mr. Woodruff that I'd like to
plea to 09 case (13 counts) and go to trial for 07 case. Mr. Woodruff
told me trial was too expensive for him. I was confused by this
and said so saying I thought it was free. Mr. Woodruff said he
has been taking court-appointed cases for 10 yrs. without ever
getting paid. We then reviewed outlined deal from last Dec.. I told
Mr. Woodruff that at sentencing in 2004 Judge promised to keep
watch for me in court and would make sure I got the max
next time and that because of other reasons like the seriousness
of crimes and my history of crime Judge wouldn't accept deal or
wouldn't follow sentencing in agreement. Mr. Woodruff said that
because it was early in the case the Judge would be willing to →

PAGE
1

to follow sentencing and have case resolved than to waste money by letting case drag on. Mr. Woodruff said to think about the deal and he would be back to review footage which is part of discoveries. My 2ND visit by Mr. Woodruff was a week or two later. We reviewed footage about 5 times on his laptop. Footage only appeared on about 4"x7" and could not be enlarged. We couldn't tell much about identity only what happened. I told Mr. Woodruff I didn't care for footage because I only wanted to take 07 case to trial and take deal in 09 case. Mr. Woodruff said that he didn't think my identity could be proved in footage. I said government has a witness, a cooperating/confidential source that has taken care of I.D. and why I was in custody. Mr. Woodruff touched the file folder of discoveries and said there is no mention of this witness in here. I pointed out that it did on Dec. of Prob. Cause, paragraph 4 or 5 and reminded him of prelim. hearing of where issue of CS's identity came up. Mr. Woodruff said the government can't keep secrets. I said he is a CS. Mr. Woodruff said Yes a CS., his identity may be kept confidential but his statement must be included in discoveries. Mr. Woodruff went on to explain how it was the rules and how it worked being the government turns over ALL discoveries and defense prepares accordingly. I said if they are violating the rules what would happen. Mr. Woodruff said if case goes to trial and A.G. still has made no mention of CS, CS could not be allowed to testify at trial. I told Mr. Woodruff I didn't believe A.G. would intentionally withhold statement knowing that to be the consequence. Mr. Woodruff said there was a possibility that A.G. felt it was possible to convict me without CS and with D.P.S. officers

PAGE
2

identification of me, alone (in Dec. of Prob.C). I then showed Mr. Woodruff 2 scars: 1 by left eye and 1 on left eyebrow. I asked if we could request court to hire expert to review footage, specifically the scars. Mr. Woodruff said court doesn't have money and we would be denied. I then asked if Mr. Woodruff could review it himself on a bigger screen. He said he would and to think about the deal. I again said I want a deal for 09 case alone and 07 case a trial.

- After that visit I found out my brother was dating Mr. Woodruff's daughter. (They are now married and have a family.)

- My 3rd visit by Mr. Woodruff was on July 22, 2010. Mr. Woodruff presented me with a global plea agreement for 14 yrs., ½ probation. I was suprised and angered that he ignored my wish to take 07 case to trial. I asked if he heard anything I said in the 1st 2 visits and told him Judge would either deny deal or refuse to follow sentencing. Mr. Woodruff said the reason he believes Judge would accept deal was because my co-def. got the same deal. I reminded him that it wasn't the same because I had 2 cases and asked what would happen when my predictions came true. Mr. Woodruff said if Judge denied deal or wouldn't follow sentence in agreement to withdraw my plea and we take the case to trial. I again said I didn't want to take that case to trial. He asked Why? I said I didn't want to spend the rest of my life in prison. Mr. Woodruff says, You won't spend the rest of your life in prison, the Judge won't give you more than 15 yrs. if you lose. I told him I know Judge could give a whole lot more and ask how he could know Judge wouldn't go above 15 yrs. Mr. Woodruff said that this is not the type of crime you'd spend the rest of your life in prison for. I then asked what options→

PAGE 3

were if I lost. Mr. Woodruff said if I lost case goes to appeal. I asked what chances at appeal were. Mr. Woodruff said there is no way to tell until after trial and we review the transcript. I asked how long that would take. Mr. Woodruff said that would be a matter of $2,000. I said I don't have money and thought it was free. Mr. Woodruff said we'll talk about that later if it comes to it but won't have to if I just signed the deal. I signed the deal.

- July 26, 2010. Change of Plea. Judge refused to follow sentencing, I withdrew my plea and Mr. Woodruff requested for trial.

- July 30 2010. Mr. Woodruff called me at D.O.C. Mr. Woodruff told me he spoke with A.G. and still no mention of CS and it was as if CS didn't exist. Mr. Woodruff also said that if CS wasn't included in government witness list before pretrial deadline there would be no way CS could be called to testify.

- The 4th visit was Mr. Woodruff's preperations/notes and 5th visit the week before trial (May 2011). At both visit Mr. Woodruff assured me that CS can't be called to testify. At 5th visit Mr. Woodruff gave me copies of gov.'s witness and exhibit list. CS was not listed.

- Monday, Jury Selection, trial begins. Now Mr. Woodruff gives me a new witness list filed by government last friday after 5pm. Couple of days into trial Mr. Woodruff told me Judge could decide to allow CS to testify. I was angry and before I could question all Mr. Woodruff's assurances. Mr. Woodruff told me to calm down and hope Judge didn't allow it. Mr. Woodruff now says IF Judge allows CS to testify and trial is lost, Judge's decision would be a good issue for appeal. Also Mr. Woodruff said Supreme Court is really

PAGE
4

strict about pretrial orders and, If lost, could reverse because governments's witness list, with CS, wasn't filed in time. And towards the end Mr.Woodruff says if lost he would file a motion that gets me a new lawyer for appeal and to blame it all on him saying "bad lawyer, bad lawyer." Trial lost, 11 Guilty.
- Mr.Woodruff visits with his daughter. Don't know what for.
- June 2011. Sentencing. Mr.Woodruff said he would visit within 30 days to discuss appeal because that was the time limit to file. Now Mr.Woodruff says he guarantees a reversal on A. murder and knock off 10 mandatory years from the 42yrs., 20 mandatory I was sentenced to that day.
- 3 weeks after sentencing I became worried when Mr.Woodruff never came to see me. I called his office everyday leaving messages till his secretary told me Mr.Woodruff knows the deadline
- In mid 2012, from somewhere June to Sept., I called my brother and asked if he could do me a favor and ask Mr.Woodruff if I could call him on his cell phone. I called back a few minutes later and was told Mr.Woodruff was now expecting my call. After thanking him for accepting my call I told him there was a chinese man (Yu, Qun) claiming and telling everyone that he (MR.W) took MR.Qun's $2,000. Mr.Woodruff says I wish, and to tell Mr.Qun he has a order to deport in immigration court and just wait (Yu, 28yrs). I told Mr.Woodruff that I don't care for the china man, was just giving him a heads up and wanted to follow up on those issues he mentions during the trial. In alot of words mr.Woodruff said he didn't think its likely. I then asked about that motion he said he would file to get me another lawyer to handle appeal. →

PAGE 5

Mr. Woodruff said he didn't and (in a lot of words) ineffective counsel wasn't an issue. Mr. Woodruff went on to explain how he thought attempted murder was a promising issue

- In Oct. 2012 I found out what a notice of appeal is. I contacted Mr. Woodruff at his office and asked for a copy. He said I would recieve it by the end of the week.

- After another couple of weeks without recieving the NOTICE, I asked my brother to text him a couple of times as a reminder. And after another couple of weeks I called once a day for a week till I got a hold of him at his office. Mr. Woodruff said he would bring notice personally this week or next week. I reminded Mr. Woodruff that it was a thu. afternoon. He said next week for sure because he was coming to see another client here. I told Mr. Woodruff I know he is busy I just need the NOTICE. Mr. Woodruff said he was very busy and said he was working my appeal, Yu Qun's and Anthony Camacho (this last guy plead guilty). Next week I found out other client was the china man. I never recieved NOTICE. I gave up and verified through Clerk of Court that appeal was filed July 2011. Around this time (Nov. 2012) I saw Mr. Yu's bunkmate acting as a translator on the phone. I asked what was going on. He, the bunkmate says Mr. Woodruff said Mr. Yu's appeal can't be filed until Judge makes decision in Mr. Woodruff's motion for acquital or something.

- I'll get On Feb. 6, 2013 I read about Mr. Woodruff in the news. It said Mr. Woodruff suspended from Feb. 1 to 19.

PAGE
6

March 3. I spoke with my brother and asked how was Mr. Woodruff and told about what I read in the news. He didn't know, said Mr. Woodruf is always at the office or at court. Said Mr. Woodruff says a complaint must be filed in 60 days of incident to have effect and that you couldn't stack 2 years worth of complaints.

March 5. I called the clerk of court about my lawyer. Clerk said I should have recieved a letter from Mr. Woodruff stating an explanation and what to expect. I asked if Mr. Woodruff could handle traffic cases and was told Mr. Woodruff can't appear before court until things are resolved in Supreme Court.

And it was that answer combined with all I've read, heard and experienced with Mr. Woodruff that convinced me to write this letter. I never heard of the Disciplinary Committee until Yu Qun got a letter last year saying that complaint was recieved. I wrote a letter twice but never sent it because it was wierd writing what was said between my lawyer and I, I realized it was a 'he said' complaint, this letter doesn't even put me in a good light. Worse, I don't know how it will effect my brother's relationships. Thats all.

FERNANDO C. QUITANO

November 15, 2012

STEPHEN C. WOODRUFF
ATTORNEY AND COUNSELOR AT LAW
PO BOX 500770
SAIPAN, MP 96950

Mr. Woodruff,

I cannot begin to say how disappointed my wife and I are with your work performance. We came into your office 2 weeks ago and talked with you about all the documents that you state you have filed on our behalf. You had no proof to show us and said you did have something from the Immigration Boards of Appeals and would give us a copy of what you had received. We've waited 2 weeks and you have not contacted us with any proof or shown us any documents to verify that the Appeal or the USCIS forms have been received.

I would like to inform you that we are filing this complaint with the Disciplinary Committee. You have given us no choice since we have been very patient and it has been over a year since my wife's, Zhe Liu Cepeda, paperwork was supposedly sent out to:

- The Board of Immigration Appeals. (October 25, 2011)

    * $222.00 was provided for money orders needed to file

      Appeal. I was given a receipt for two money orders for

      $110.00 each. Only one copy payable to US Department

      of Justice was used for her Appeal.

- Department of Homeland Security (October 25, 2011)

    * I-130, Petition for Alien Relative

        Personal Check #302 from Bank of Hawaii written

        for $420.00

    * I-765, Application for Employment Authorization

        Personal Check #303 from Bank of Hawaii written

        for $380.00

We have made numerous phone calls and visits to your office in the past trying to get information and your normal response has been, "you believe that you might have received some response, but needed time to check on it." We have lost faith in your abilities as a lawyer and are now questioning your work ethics. We feel that you have wasted our time and possibly put my wife's status in jeopardy.

We provided you with $3,000.00 on a scheduled payment of $500.00 for 6 months starting in March 2011 and final payment on August 2011. This was the required fees to cover the process for filing the USCIS forms and processing of her Green Card. An additional payment of $222.00 was paid in cash for the Board of Immigration Appeals. The total paid amount was $3,222.00.

We are now requesting that you turn over all files you have on our case and refund our money since you cannot provide any proof that you have filed any of this critical paperwork at all. Please let us know when we can pick up our files from your office.

Sincerely,

Frank H. Cepeda

CELL: 483-0255

CC:   CNMI Bar Association
      Attn: Disciplinary Committee
      P.O. Box 504539
      Saipan, MP 96950
      Telephone: (670) 235-4529
      Fax: (670) 235-4528

# *Disciplinary Committee*

## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Bruce Mailman
*Vice-Chair*
Stephen Pixley
*Secretary/Member*
Rexford C. Kosak
*Member*
Micheal Evangelista
*Member*

Telephone: (670) 323-2115
Facsimile:  (670) 323-2116
E-mail: timothy@bellaslawfirm.com

P.O. BOX 502845
SAIPAN, MP 96950

August 20, 2013

**CONFIDENTIAL INFORMATION**

Mr. Frank H. Cepeda
P.O. Box 6525 CHRB
Saipan, MP 96950

Re:    *Complaint Filed With The Disciplinary Committee of the CNMI Bar Association*
        (2012-08)

Dear Mr. Cepeda,

I write to you on behalf of the Northern Marianas Bar Association Disciplinary Committee ("DC") to inform you of an administrative decision relating to the above complaint which you filed against Mr. Woodruff.

As you may have heard from the media reports, Mr. Woodruff was disbarred in June, 2013 by an order of the CNMI Superior Court. Disbarment is the most severe sanction which can be imposed on an attorney. This order has been appealed by Mr. Woodruff. We are awaiting the outcome of the appeal before taking any action on your complaint.  If the final outcome of the appeal is that the CNMI Supreme Court confirms Mr. Woodruff's disbarment, then there is no reason for this Committee to further process your complaint, or the complaint of any other person, because the only power the DC has is to recommend disciplinary action – and once an attorney is disbarred, there is no further disciplinary action that can be taken. Thus, whether we investigate your complaint will depend upon whether or not the Supreme Court upholds the disbarment sanction.

1

The DC understands that you may have claims for damages or other relief from Mr. Woodruff. While such potential claims can be addressed as part of any disciplinary relief ordered by the court, they can also be addressed by you directly, by filing a Small Claims or civil action against Mr. Woodruff. Please understand that we are not advising you to take such action; rather, the DC is suggesting that you seek the assistance of another attorney to advise whether to pursue that matter.

You should be advised that there are limited time periods within which you must start a civil case, called statutes of limitation. The shortest of these time periods is two (2) years. Therefore, if you do decide to pursue this matter, you must do so before the expiration of the statute of limitations applicable to your type of claim, otherwise you could lose the right to file your claim. Again, the DC cannot give you legal advice, and we strongly suggest you consult an attorney regarding your rights and your options, if you believe you have a claim against Mr. Woodruff.

If your complaint involves a criminal matter, you should request a hearing or make a motion to the Superior Court for the appointment of another lawyer to review your case and advise you on what to do. In criminal matters, there are even shorter time limitations involved and you should act as quickly as possible.

Sincerely,

Timothy H. Bellas

cc: Chief Justice Castro
    Presiding Judge Naraja
    DC Members
    File

2

Frank H. Cepeda
PO Box 5623
Saipan, MP 96950

December 20, 2012

DISCIPLINARY COMMITTEE
CNMI BAR ASSOCIATION
PO Box 502845
Saipan, MP 96950

SUBJECT: Additional complaint to Case No. 2012-08

Counselor Bellas,

It appears that Mr. Woodruff did manage to find the I-130 Petition with the personal check written for my wife's Petition for Alien Relative. I believe that he tried to send in the I-130 to cover the fact that he never sent the petition packet out to begin with. We were never informed by Mr. Woodruff that he found or would be sending out the I-130 petition.

We received the I-797C, Notice of Action, informing us that US Citizenship and Immigration Services did received on November 21, 2012, our petition with the outdated check. Mr. Woodruff has not contacted us or returned any files he may be keeping since we notified him that we would be filing our complaint with the Disciplinary Committee.

My wife and I are concerned with his lack of communication as he attempts to file critical documents on our behalf in such an obvious flawed manner. Do we need to present Mr. Woodruff with a formal letter stating he is no longer our attorney and do not attempt to file anymore late forms? I find it hard to believe that he would think we would want him to continue representing us after filing the complaint with the committee and our verbal confrontation on the first part of November.

It is too late for Mr. Woodruff to cover his piss poor performance as a lawyer. We want action taken against him for wasting our time, our money, and possibly jeopardizing my wife's chances to obtain a green card.

Sincerely.

Frank H. Cepeda

FRANK H. CEPEDA
P.O. BOX 5623
SAIPAN, MP 96950

DISCIPLINARY COMMITTEE
CNMI BAR ASSOCIATION
ATTN: TIMOTHY H. BELLAS
P.O. BOX 502845
SAIPAN, MP 96950

TO:  COMPLAINT TO THE CNMI BAR ASSOCIATION
     DISCIPLINARY COMMITTEE

COMPLAINT AGAINST ATTORNEYS:
EDWARD C. ARRIOLA AND STEPHEN C. WOODRUFF

My name is MOHAMMAD ABUL BASHAR.

I am a native and citizen of Bangladesh. I don't know how to read or write in English.

I first arrived in the Commonwealth of the Northern Mariana Islands at midnight on March 19,1997. I am married to Jayna Lynn Taitano. We got married on March 13, 2009 in Saipan.

On or about March 30, 2011, the CNMI Government filed criminal charges against me charging me with the following crimes: Count I for Conspiracy to Commit Marriage Fraud and Count II for Marriage Fraud. I was represented in that criminal case by Attorney Edward C. Arriola.

On the advice and recommendation of Mr. Arriola, I entered a plea of nolo contendre (no contest) to Marriage Fraud under Count II of the Information. Before and at the time of entering a plea in this case, Mr. Arriola advised me that even with my nolo contendere plea, and as long as I paid the $2,000.00 fine, I would not have any immigration problems, including that of being removed from the United States.

Attorney Stephen Woodruff assisted me with the marriage fraud conviction in CNMI Superior Court and to represent me in the removal proceedings in Immigration Court.

Present during all of the Immigration Court proceedings was a Bengali speaking interpreter provided by the Immigration Court. I learned during the Immigration Court proceedings that my conviction for marriage fraud was one of the reasons that I am removable. On January 12, 2012, the Immigration Judge ordered me removed on the basis of my conviction for marriage fraud in the criminal case.

1

marriage fraud in the criminal case.

I explained to Mr. Woodruff that my criminal trial attorney, Mr. Arriola, assured me that if I pled nolo contendere, there would be no immigration consequences.

On or about January 20, 2012, Mr. Woodruff filed an appeal to the BIA. However, Mr. Woodruff failed to submit to the BIA a written brief to support my appeal from the January 12, 2012 decision of the Immigration Court, and my appeal was summarily dismissed on May 31, 2013.

I believe Mr. Woodruff also failed to do anything about my plea and conviction even after I told him what Mr. Arriola had done.

Mr. Arriola advised me that all I had to do to avoid removal is to pay the $2,000.00 fine and he assured me that the matter would be done and I would not have to worry about it anymore. I would not have entered a plea of nolo contendere in this case if I knew that Mr. Arriola's advice about the immigration consequences of my plea was incorrect. I never thought that by pleading no contest I would be subject to removal.

I am attaching supporting documents to this Complaint.

I am willing to provide any additional information.

Dated: _06/18/13_____

_____
MOHAMMAD ABUL BASHAR

2

## CERTIFICATE OF TRANSLATION

I, _Mohammad F. Ahmed_ , certify that I am fluent in the English language and the Bengali language, and that I am competent to translate and interpret from Bengali into English and English into Bengali, and I further certify that I have read this entire document (3 pages, including this Certificate of Translation) to MOHAMMAD ABUL BASHAR, and that he understands the document before he signed the Complaint to the CNMI Bar Association above.

_(signature)_

SIGNATURE


_MOHAMMAD F. AHMED_

PRINTED NAME

3

# *Disciplinary Committee*

## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Bruce Mailman
*Vice-Chair*
Stephen Pixley
*Secretary/Member*
Rexford C. Kosak
*Member*
Micheal Evangelista
*Member*

Telephone: (670) 323-2115
Facsimile:  (670) 323-2116
E-mail: timothy@bellaslawfirm.com

P.O. BOX 502845
SAIPAN, MP 96950

August 20, 2013

**CONFIDENTIAL INFORMATION**

Mr. Mohammad Abul Bashar
P.O. Box 50651
Saipan, MP 96950

Re:  *Complaint Filed With The Disciplinary Committee of the CNMI Bar Association*
     (2013-012)

Dear Mr. Bashar,

I write to you on behalf of the Northern Marianas Bar Association Disciplinary Committee ("DC") to inform you of an administrative decision relating to the above complaint which you filed against Mr. Woodruff.

As you may have heard from the media reports, Mr. Woodruff was disbarred in June, 2013 by an order of the CNMI Superior Court. Disbarment is the most severe sanction which can be imposed on an attorney. This order has been appealed by Mr. Woodruff. We are awaiting the outcome of the appeal before taking any action on your complaint.  If the final outcome of the appeal is that the CNMI Supreme Court confirms Mr. Woodruff's disbarment, then there is no reason for this Committee to further process your complaint, or the complaint of any other person, because the only power the DC has is to recommend disciplinary action – and once an attorney is disbarred, there is no further disciplinary action that can be taken.  Thus, whether we investigate your complaint will depend upon whether or not the Supreme Court upholds the disbarment sanction.

1

The DC understands that you may have claims for damages or other relief from Mr. Woodruff. While such potential claims can be addressed as part of any disciplinary relief ordered by the court, they can also be addressed by you directly, by filing a Small Claims or civil action against Mr. Woodruff. Please understand that we are not advising you to take such action; rather, the DC is suggesting that you seek the assistance of another attorney to advise whether to pursue that matter.

You should be advised that there are limited time periods within which you must start a civil case, called statutes of limitation. The shortest of these time periods is two (2) years. Therefore, if you do decide to pursue this matter, you must do so before the expiration of the statute of limitations applicable to your type of claim, otherwise you could lose the right to file your claim. Again, the DC cannot give you legal advice, and we strongly suggest you consult an attorney regarding your rights and your options, if you believe you have a claim against Mr. Woodruff.

If your complaint involves a criminal matter, you should request a hearing or make a motion to the Superior Court for the appointment of another lawyer to review your case and advise you on what to do. In criminal matters, there are even shorter time limitations involved and you should act as quickly as possible.

Sincerely,

Timothy H. Bellas

cc: Chief Justice Castro
    Presiding Judge Naraja
    DC Members
    File

2

April 1, 2014

CNMI BAR ASSOCIATION
P.O. Box 504539
Saipan, MP 96950

**DELIVERED**
DATE : *1-02-2014*

Attention: Disciplinary Committee

To whom it may concern,

I, Rumei Huang Aguon would like to file a complain about Mr. Stephen Woodruff. He represented me in my Immigration Case/Appeal and didn't file the Brief which resulted to dismissal of my appeal and had put me in a very hard situation.

I would like to ask assistance to get my money back if not all, atleast some of it .

Hoping for your prompt and immediate action on this matter.

Thank you.

Sincerely,

RUMEI HUANGAGUON
Rumei Huang Aguon

## INTERPRETER

My name is _____Fan, Chu yan_____, and I am fluent in the English

language and the _____Chinese_____ language, and am competent to

interpret the Letter of Rumei Huang Aguon to CNMI Bar Association. My contact

information (tel. nos. /email) is/are: _____989-8873_____.

_____Fan, Chu yan_____
SIGNATURE
DATE:  3/31/14

**Acknowledgement:**

_____Fan, Chu yan_____
SIGNATURE
DATE:  3/31/14

## DECLARATION OF RUMEI HUANG

I, **RUMEI HUANG**, do hereby declare and state under oath as follows:

1.    I am over eighteen (18) years of age and legally competent to testify.

2.    I make this declaration on personal knowledge, except those matters alleged upon information and belief, which I believe to be true.

3.    I am the Respondent in this case.

4.    I am a native and citizen of China. I am not a native speaker of English. I cannot read or write in English.

5.    I am the wife of George Aldan Aguon.  We got married on December 15, 2010 in Saipan, Commonwealth of the Northern Mariana Islands (CNMI).

6.    On April 10, 2011, my husband filed on my behalf an I-130, Petition for Alien Relative. On the same date, I also filed my I-485, Application to Register Permanent Residence or Adjust Status.

7.    On September 13, 2011, the Immigration Judge issued an Order to remove me from the United States to China.

8.    On or about October 6, 2011, I retained the services of Attorney Stephen C. Woodruff to assist and represent me in the appeal of the Order

1

of the Immigration Court. For his legal representation, I paid Mr. Woodruff an initial amount of about $2,750.00 to represent me. *See* Receipts (attached).

9.   On October 11, 2011, Mr. Woodruff filed a notice of appeal to the Board of Immigration Appeals ("BIA") from the September 13, 2011 Order of the Immigration Court.

10.   In the Notice of Appeal, Mr. Woodruff raised several issues and also reserved my right to supplement the grounds for the appeal.

11.   Mr. Woodruff also stated in the Notice of Appeal that he would be filing on my behalf "a separate written brief after filing the Notice of Appeal."

12.   However, Mr. Woodruff failed to submit to the BIA a written brief in support of my appeal.

13.   On February 14, 2014, the BIA dismissed my appeal with the Board specifically noting in its decision the failure of Mr. Woodruff to file the appeal brief.

14.   I believe Mr. Woodruff not only failed to file the written appeal brief, but also failed to supplement the grounds for my appeal.

15.   The BIA decision was mailed directly to me because as the Board noted, Mr. Woodruff has been suspended from practicing before the Board and the Immigration Court on March 20, 2013.

16.   The BIA also stated that because of Mr. Woodruff's suspension it has treated "[me] as proceeding pro se on appeal."

17.   I was not previously aware about Mr. Woodruff's failure to file a written brief in support of my appeal until I received the BIA decision dated February 14, 2014.

18.   It was only after I received the BIA decision that I learned for the first time about Mr. Woodruff's failure to file the BIA appeal brief.

19.   I also did not receive from the BIA any briefing schedule concerning my appeal, which I believe was issued by the Board before Mr. Woodruff's suspension on March 20, 2013.

20.   On information and belief, the BIA sent the briefing schedule to Mr. Woodruff before his suspension on March 20, 2013, which would have permitted him to prepare and file the appeal brief, but he did not.

21.   After I received the BIA decision dated February 14, 2014, I promptly retained the services of Janet H. King, Esq. to assist me in having my appeal reopened because I believe that I was prejudiced by Mr.

3

Woodruff's failure to communicate with me and to file a written brief to the BIA.

22.    On information and belief, my current counsel, Atty. King, upon being retained, promptly communicated with Mr. Woodruff and requested copies of all records and documents relevant to my case.

23.    On information and belief, Atty. King also informed Mr. Woodruff about my allegations of ineffective assistance of counsel and provided my former counsel with the opportunity to respond. Mr. Woodruff only denied that he was ineligible to practice law.

24.    On June 7, 2013, the CNMI Superior Court in Re: Stephen C. Woodruff, Civil Action 13-0017 (Disciplinary Action: Disbarment) disbarred Mr. Woodruff from the Commonwealth of the Northern Marianas Bar based on conduct that was totally inconsistent with the standard of competent and diligent representation involving his other clients.

25.    Despite Mr. Woodruff's disbarment in Civil Action 13-0017, I am still filing my own disciplinary complaint against Mr. Woodruff based on his conduct and numerous violations of his professional duties towards me, including, but not limited to, those arising from his ineffective assistance as my counsel in my BIA appeal.

26.    Meanwhile, I have learned from US Immigration officials in the CNMI that I have been scheduled to be removed from the United States on **Wednesday, April 2, 2014**.

27.    I am willing to provide any additional information regarding the facts I have stated in this declaration.

28.    I am voluntarily executing this declaration to attest to the truth of all the facts narrated herein in support of the Motion to Reopen and Motion for Stay of Removal concurrently filed in this case.

I hereby state under penalty of perjury that the foregoing is true and correct and that this Declaration was executed this 31st day of March, 2014 in Saipan, Commonwealth of the Northern Mariana Islands.

RUMEI HUANG AGUON
**RUMEI HUANG**

SUBSCRIBED AND SWORN TO BEFORE ME

THIS _1st_ DAY OF _April_, 20 _14_

BY: _Rumei Huang_

MARILOU C. LAMBAT
P.O. Box 505007 CK, Saipan, MP 96950
Notary Public Reg. No. 483A
BY AND FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
My Commission Expires _____

5

**RECEIPT**  DATE 10-06-11

RECEIVED FROM Huang, Rumei

ADDRESS

Four hundred only _____ DOLLARS $ 400 —

☐ FOR RENT
☐ FOR _____ att'y fee

| ACCOUNT | | | HOW PAID | | | |
|---|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | | | |
| AMT. PAID | 400 | — | CHECK | | ✓ | BY ___ 10/6/11 |
| BALANCE DUE | | | MONEY ORDER | | | |

---

**RECEIPT**  DATE 10/11/11

RECEIVED FROM Rumei Huang Aguon

WOODRUFF LAW OFFICE

ADDRESS

One Thousand one hundred + 0/100 DOLLARS $ 1100 -10

☐ FOR RENT
☐ FOR _____

| ACCOUNT | | | HOW PAID | | | |
|---|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | | | |
| AMT. PAID | 1100 | 00 | CHECK | | | BY Woodruff |
| BALANCE DUE | | | MONEY ORDER | | | |

---

**RECEIPT**  DATE 1/18/12          434540

RECEIVED FROM Rumei Huang

ADDRESS

Two hundred fifty only _____ DOLLARS $ 250 —

☐ FOR RENT
☐ FOR _____ att'y fee

| ACCOUNT | | | HOW PAID | | | |
|---|---|---|---|---|---|---|
| AMT. OF ACCOUNT | 100 | — | CASH | | | |
| AMT. PAID | 20 | — | CHECK | | ✓ | BY ___ 1/18 |
| BALANCE DUE | 250 | — | MONEY ORDER | | | |

**RECEIPT**   DATE 3, 9/12   434561

RECEIVED FROM _Rumen Huang Aguon_

ADDRESS _Chalan Vulan_

_two hundred fifty only_ _____ DOLLARS $ 250.00

☐ FOR RENT   Atty fee
☐ FOR _____

| ACCOUNT | | | HOW PAID | | | |
|---|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | ✓ | | |
| AMT. PAID | | | CHECK | | | BY _____ |
| BALANCE DUE | 1,000 | | MONEY ORDER | | | |

---

**RECEIPT**   . DATE 5/22/12   434598

RECEIVED FROM _Rumen Huang_

ADDRESS _____

_two hundred fifty only_ _____ DOLLARS $ 250.00
atty fee

☐ FOR RENT
☐ FOR _____

| ACCOUNT | | | HOW PAID | | | |
|---|---|---|---|---|---|---|
| AMT. OF ACCOUNT | 1,000 | | CASH | ✓ | | |
| AMT. PAID | 250 | | CHECK | | | BY _____ |
| BALANCE DUE | 750 | | MONEY ORDER | | | |

---

WOODRUFF
LAW OFFICE

**RECEIPT** DATE 7 2 12   No. 859720   $ 250.00

RECEIVED FROM _Rumen Huang Aguon_

_two hundred fifty dollars only_ _____ DOLLARS

○ FOR RENT
○ FOR _____

| ACCOUNT | 750 | ○ CASH | | |
|---|---|---|---|---|
| PAYMENT | 250 | ○ CHECK | FROM _____ | TO _____ |
| BAL. DUE | 500 | ○ MONEY ORDER | | |
| | | ○ CREDIT CARD | BY _____ | A-2701 T-46800/46802 |

WOODRUFF LAW OFFICE

# RECEIPT

DATE Nov. 14/12    No. 921211

RECEIVED FROM _Lynn Huong Agnon_    $ 250 —

_two hundred fifty dollars only_    DOLLARS

○ FOR RENT
○ FOR _attys fee_

| ACCOUNT | 5rc | | ○ CASH |
| PAYMENT | 250 — | | ○ CHECK |
| BAL. DUE | 2 J | | ○ MONEY ORDER |
| | | | ○ CREDIT CARD |

FROM _____ TO _____

BY _____

A-2701
T-46800/46802

# *Disciplinary Committee*

## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Bruce L. Mailman
*Vice Chair*
Steven P. Pixley
*Member*
Rexford C. Kosack
*Member*
Catherine Cachero
*Member*

Telephone: (670) 323-2115
Facsimile:   (670) 323-2116
Email: timothy@bellaslawfirm.com

P.O. Box 502845
Saipan, MP 96950

April 30, 2014                                                **CONFIDENTIAL COMMUNICATION**

**Ms. Rumei Huang Aguon**
**P.O. Box 10003 PMB 675**
**Saipan, MP 96950**

*Re:*   *Complaint Filed With The Disciplinary Committee of the CNMI Bar Association*
        (2014-02)

Dear Ms. Aguon,

I write to you on behalf of the Northern Marianas Bar Association Disciplinary Committee ("DC") to inform you of an administrative decision relating to the above complaint which you filed against Mr. Woodruff in 2014.

Mr. Woodruff was disbarred in June, 2013 by an order of the CNMI Superior Court. This order has been appealed by Mr. Woodruff to the CNMI Supreme Court. The DC is awaiting the outcome of the appeal before taking any action on your complaint. The DC will not take any further action on your complaint, or the complaint of any other person, if at the conclusion of the appeal Mr. Woodruff remains disbarred. Once an attorney is disbarred, there is no further disciplinary action that can be taken against him.

The DC understands that you may have claims against Mr. Woodruff for money paid or for the return of documents given to him. The DC recommends that you seek the assistance of another attorney to advise you on whether you have such claims and how to pursue them on your own or through a different attorney.

If the Supreme Court reverses the disbarment by the Superior Court, then and only then will the DC be

1

*Administrative Hold Advisement Ltr*
May 2, 2014
Page 2

contacting you about this matter again.

Sincerely,

Timothy H. Bellas

cc: Chief Justice Castro
    Presiding Judge Naraja
    DC Members
    File

2




# SUPERIOR COURT

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, U.S.A.
Guma' Hustisia, Iimwal Aweewe, House of Justice
P.O. BOX 500307, SAIPAN, MP 96950-0307

Patrick V. Diaz
Clerk of Court

(670) 236-9766 Telephone No.
(670)236-9743 Fax No.
Patrick.diaz@justice.gov.mp

March 7, 2013

Timothy H. Bellas Esq
Attorney at Law
P.O. Box 502845 CHRB
Saipan, MP

Re: Complaint

Dear Mr. Bellas:

I am forwarding a complaint filed against Mr. Stephen Woodruff. The Office of the Clerk of
Court received the said documents on March 7, 2013 by a Department of Correction Officer on
behalf of an inmate who is in their custody.

Sincerely,

Patrick V. Diaz
Clerk of Court

MARCH 06 2013

TO: DICIPLINARY COMMITTEE.   OFFICE NUMBER: 323-2115
FROM: CAMACHO ANTHONY RAYMOND MENDIOLA.
SUBJECT: COMPLAIN AGAINST ATTORNEY STEPHEN WOODRUFF

DEAR MR TIMOTHY BELLAS.

MR BELLAS I WOULD LIKE TO MAKE COMPLAIN
AGAINST MY ATTORNEY STEPHEN WOODRUFF FOR NOT
HELPING ME GOOD AND FOR NOT REPRESENTING ME
WELL IN MY CASE. NOT EVEN TO CALLED ME TO LET
ME KNOW WHAT IS MY STATUS FOR MY CASE AND TO
CALLED ME TO DISCUSS ABOUT MY CASE ON UP COMING
TRIAL. ONLY THE VERY LAST TIME WE BOTH MET ON
THE DAY THE COURT SET FOR A JURY SELECTION ON
FEBUARARY 21th OF 2012. AFTER THAT NOT EVEN
ONCE TO MEET WITH HIM TO ATLEAST KNOWING THE
CHANGE OF MY CASE FOR THE UP COMING JURY TRIAL.
THE VERY FIRST DAY WE BOTH MET AGAIN WAS ON
FEBUARARY 21th OF 2012 AT THE COURT HOUSE AND THAT
WAS WENT THE JURY SELECTION START FOR MY TRIAL.

MARCH 06 2013

I WANT YOU TO KNOW MR BELLAS THAT THE ATTORNEY GENERAL ONLY GAVE MY ATTORNEY STEPHEN WOODRUFF THAT DAY OF FEBUARARY 21th 2013 ALL THE DISCORVERY MATERIALS AND HE NOT EVEN TO ASK THE COURT OR THE JUDGE IF THE COURT CAN GIVE MONTHS TO REVIEW ALL OF IT AND TO LET ME KNOW WHAT'S GONNA BE MY CHANCES OR I'LL BE STEP DOWN AND TAKE THE OFFER DEAL FROM THE GOVERNMENTS. HE JUST TELL THE COURT OR THE JUDGE TO GIVE HIM UP TO AFTER LUNCH. THAT AFTER LUNCH, WE BOTH IN COURT FOR JURY SELECTION THE ALL DAY. I WAS INOCCENT AT THE OTHER SIDE OF HIM NOT KNOWING ANYTHING WHAT IS HE PLANS. THE FOLLOWING DAY THAT'S WENT THE TRIAL STARTS, NOT EVEN TO ADVICE ME FOR ANY THINGS GOOD ON MY CASE. HE IS VERY SLEEPY AND TIRED SOMETIMES HE FELT SLEEPING WHILE ON MY TRIAL, NOT EVEN TO OBJECT ANYTHINGS. EVERYTHING THE GOVERNMENT SAYS, NOT EVEN ONCE TO OBJECTS. ON THE THIRD DAY OF FEBUARARY 23th 2012 ON RECEGO BREAK, THAT'S WENT HE TOLD ME AND INSTRUCT TO PLEAD GUILTY BECAUSE MY CHANCES ARE NOT REALLY GOOD. LIKE WHAT I'VE SAID THAT BY NOT KNOWING MY RIGHTS REALLY CLEAR, HE TEACH ME WHAT TO ANSWER WENT THE JUDGE ASK ME FOR QUESTIONING. AFTER THE JUDGE ASK ME ALL THE QUESTION AND I FINISH ANSWERING IT COURT ALL, HE SET FOR THE SENTENCING DATE. THEN MENTION IN THE THAT I WAS GOING TO BE REMANDED TO D.O.C. I WAS SHOCK, SUPRISE FOR H WHAT HE HAD TOLD ME AND INSTRUCTED ME.

MARCH 06 2013

THEN HE TOLD ME THAT HE DOES NOT KNOWING THAT THIS THING WAS HAPPENING. SINCE THAT DAY HE NEVER SHOW UP TO D.O.C TO LET ME KNOW INFACT WHAT WAS GOING ON. ALL DA WAY BEFORE MY SENTENCE DATE COMES, I RECEIVE BAD NEWS FROM MY FAMILY THAT MY DAD PAST AWAY. I MORE TO BE UPSET FOR HIM LIEING TO ME AND FOR WHAT HE HAD DONE TO ME. ANYWAYS ON MY SENTENCING DAY ON MAY 14th 2012 I WAS SENTENCE TO TWENTY-THREE YEARS AND SIX MONTHS. THE JUDGE MENTION TO HIM IN THE COURT THAT, HE COULD FILED FOR SENTENCE REDUCTION APPEALED ONLY WE GOT GIVE BY THE JUDGE FOR ONE HUNDRED AND TWENTY DAYS ONLY. MONTHS JUST PASS GOT EXPIRED, HE NEVER FILED ANYTHING FOR ME. THIS IS THE FIRST ATTORNEY APPOINTED BY THE COURT WAS INCOPITENED. MR BELLAS IF I STILL GOT CHANCE FROM YOU GUYS TO HELP ME ON THIS MATTER, PLEASE MR BELLAS I REALLY NEEDED HELP FROM YOU GUYS. ANYWAYS I GOT NINE CHILDRENS AND THERE ALL BELOW 18 YEARS OLD AND A MOTHER THAT IS STRUGGLING AND TRYING HER BEST TO BE PATIENTS TO BE THE BEST SHE CAN TO HANDLE THEM ALL SHE COULD. HOPEFULLY BY YOU GUYS HELP, AND GOD KNOWS IF I GOT GOOD LUCK FOR YOU GUYS HELP. ONCE AGAINST PLEASE I DO REALLY NEEDED HELP. ESPECIALLY MY WIFE OUT THERE ALONG WITH MY CHILDRENS BELOW 18 YEARS OF AGES. THANK VERY MUCH FOR YOU'RE UNDERSTANDING AND SUPPORTS. I AM NOT REALLY GOOD IN WRITTING, BUT I JUST TRY MY BEST TO WRITE IT DOWN, ATLEAST SOME OF MY WORDS YOU UNDERSTAND.

# *Disciplinary Committee*

## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Bruce Mailman
*Vice-Chair*
Stephen Pixley
*Secretary/Member*
Rexford C. Kosak
*Member*
Micheal Evangelista
*Member*

Telephone: (670) 323-2115
Facsimile:   (670) 323-2116
E-mail: timothy@bellaslawfirm.com

P.O. BOX 502845
SAIPAN, MP 96950

August 20, 2013                                           **CONFIDENTIAL INFORMATION**

Mr. Anthony R. Camacho
C/O Dept. of Corrections
Saipan, MP 96950

Re:   *Complaint Filed With The Disciplinary Committee of the CNMI Bar Association*
      (2013-02)

Dear Mr. Camacho,

I write to you on behalf of the Northern Marianas Bar Association Disciplinary Committee ("DC") to inform you of an administrative decision relating to the above complaint which you filed against Mr. Woodruff.

As you may have heard from the media reports, Mr. Woodruff was disbarred in June, 2013 by an order of the CNMI Superior Court. Disbarment is the most severe sanction which can be imposed on an attorney. This order has been appealed by Mr. Woodruff. We are awaiting the outcome of the appeal before taking any action on your complaint.  If the final outcome of the appeal is that the CNMI Supreme Court confirms Mr. Woodruff's disbarment, then there is no reason for this Committee to further process your complaint, or the complaint of any other person, because the only power the DC has is to recommend disciplinary action – and once an attorney is disbarred, there is no further disciplinary action that can be taken. Thus, whether we investigate your complaint will depend upon whether or not the Supreme Court upholds the disbarment sanction.

1

The DC understands that you may have claims for damages or other relief from Mr. Woodruff. While such potential claims can be addressed as part of any disciplinary relief ordered by the court, they can also be addressed by you directly, by filing a Small Claims or civil action against Mr. Woodruff. Please understand that we are not advising you to take such action; rather, the DC is suggesting that you seek the assistance of another attorney to advise whether to pursue that matter.

You should be advised that there are limited time periods within which you must start a civil case, called statutes of limitation. The shortest of these time periods is two (2) years. Therefore, if you do decide to pursue this matter, you must do so before the expiration of the statute of limitations applicable to your type of claim, otherwise you could lose the right to file your claim. Again, the DC cannot give you legal advice, and we strongly suggest you consult an attorney regarding your rights and your options, if you believe you have a claim against Mr. Woodruff.

If your complaint involves a criminal matter, you should request a hearing or make a motion to the Superior Court for the appointment of another lawyer to review your case and advise you on what to do. In criminal matters, there are even shorter time limitations involved and you should act as quickly as possible.

Sincerely,

Timothy H. Bellas

cc: Chief Justice Castro
    Presiding Judge Naraja
    DC Members
    File

2

COMPLAINT TO CNMI DISCIPLINARY COMMITTEE

BY:        Ms. Edwina Bonifacio and Mr. Dominador Ramirez

ADDRESS:   P.O. Box 500693
           Saipan, MP 96950

AGAINST:   STEPHEN R. WOODRUFF

BASIS OF COMPLAINT:  We wish to file a complaint against Mr. Woodruff for his failure to deliver the legal services that he promised to us. He agreed to represent each of us in U.S. Immigration removal proceedings.

Mr. Woodruff indicated that he would represent both of us for a total legal fee of $3,000. We were never given a written fee agreement, however, the attached copy of our first receipt, verifies that when we first went to his office on October 24, 2012, the amount of $3,000 was written on the receipt by Mr. Woodruff as the total amount owed and we paid him $300 on that date, reducing the balance owed to $2,700.

Mr. Woodruff told us not to call the office but to come in person in order to check on the status of our case. We went to Mr. Woodruff's office and made three installment payments of $200, one on November 15, 2012, one on December 17, 2012 and one on January 18th, 2013, for a total of $900, including the 1st payment in October. Those receipts are also attached.

On December 4th, 2012, Mr. Woodruff appeared with us in the Immigration court and the result was that we were granted voluntary departure instead of removal. As a condition of granting us voluntary departure, we were required to post a bond of $500 each. The date by which we must voluntarily depart was set to February 4, 2013. Mr. Woodruff reserved the right to appeal and the appeal due date was set for January 3, 2012. Copy of the Immigration Judge's December 4, 2012 Order is attached.

I, Dominador Ramirez went to Mr. Woodruff's office at a minimum five times in the later part of December 2012 wanting to know if the appeal was done. The last time was right before Christmas. On three of those times Edwina Bonifacio was with me. On more than one occasion Mr. Woodruff told us that the appeal was done but he was on his way to court and did not have time to provide us a copy. He told us to come back another time to get the copy.

Even after the January 3rd, 2013 appeal deadline, we still did not get a copy of the appeal from Mr. Woodruff. Relying on the fact that the appeal was filed we did not voluntarily leave before February 4th. On February 5th we were called by ICE who informed us that we should come in to see them to arrange for them to book tickets for us to be removed. When we told them that our lawyer had filed an appeal they told us that we should bring them a copy of the appeal.

1

The same day, we went to see Mr. Woodruff and told him what happened with ICE; he got very mad at us and started shouting and said it was "bullshit" that ICE wanted us to give them a copy of the appeal. He still did not provide us a copy of the appeal.

On February 6th, 2013, we saw Mr. Woodruff as he was picking up his child from school and we approached him and asked what we should do because we were going to meet ICE that day. He told us again that he had filed the appeal.

When we met with ICE agents they told us that our $1,000 bond money was already forfeited and that we need to go in on Friday, February 8th, so that they can book tickets for us to be removed from Saipan.

As of the date that we file this complaint, we have not been provided a copy of the appeal.

We do not believe that Mr. Woodruff ever filed any appeal on our behalf and that he not only failed to provide the legal services that we hired him to perform, but we have now also lost the $1,000 in bond money. Also as a result of now being possibly removed instead of voluntarily departing the CNMI, instead of helping us, Mr. Woodruff has made our legal situation much worse.

Dated: _____       _____
                                    Edwina Bonifacio

Dated: _____       _____
                                    Dominador Ramirez

WOODRUFF LAW OFFICE

**RECEIPT** DATE 24 Oct. 12   No. 859798

RECEIVED FROM Edwin Bonifacio / Dominador Ramirez   $ 300.00

THREE HUNDRED ONLY _____ DOLLARS

O FOR RENT   Legal Services
O FOR _____

| ACCOUNT | 3,000 — | ⦿ CASH |
| PAYMENT | 300 — | ⦿ CHECK | FROM _____ TO _____ |
| | | ⦿ MONEY ORDER |
| BAL. DUE | 2,700 — | ⦿ CREDIT CARD | BY _____ |

A-2701
T-46800/46802

---

WOODRUFF LAW OFFICE

**RECEIPT** DATE 11/15/12   No. 921215

RECEIVED FROM Edwin Bonifacio / Dominador Ramirez   $ 200. —

two hundred dollars only _____ DOLLARS

O FOR RENT
O FOR _____   attys fees

| ACCOUNT | | ⦿ CASH |
| PAYMENT | | ⦿ CHECK | FROM _____ TO _____ |
| | | ⦿ MONEY ORDER |
| BAL. DUE | | ⦿ CREDIT CARD | BY _____ |

A-2701
T-46800/46802

---

WOODRUFF LAW OFFICE

**RECEIPT** DATE 17 Dec. 12   No. 921234

RECEIVED FROM Edwin Bonifacio   $ 100.00

ONE HUNDRED ONLY _____ DOLLARS

O FOR RENT
O FOR _____

| ACCOUNT | | ⦿ CASH |
| PAYMENT | 100 — | ⦿ CHECK | FROM _____ TO _____ |
| | | ⦿ MONEY ORDER |
| BAL. DUE | | ⦿ CREDIT CARD | BY _____ |

A-2701
T-46800/46802

WOODRUFF LAW OFFICE

**RECEIPT** DATE 17 Dec. 12 No. 921235

RECEIVED FROM Dominador Ramirez  $ 100.⁰⁰

ONE HUNDRED ONLY ——— DOLLARS

O FOR RENT
O FOR Legal fee

| ACCOUNT | | | ◉ CASH | | |
|---|---|---|---|---|---|
| PAYMENT | 100 | | ◉ CHECK | FROM | TO |
| | | | ◉ MONEY ORDER | | |
| BAL. DUE | | | ◉ CREDIT CARD | BY | A-2701 T-46800/46802 |

---

WOODRUFF LAW OFFICE

**RECEIPT** DATE Jan 10/13 No. 921263

RECEIVED FROM Edwina Bonifacio  $ 100

One hundred dollars only ——— DOLLARS

O FOR RENT
O FOR                  legal service

| ACCOUNT | | | ◉ CASH | | |
|---|---|---|---|---|---|
| PAYMENT | | | ◉ CHECK | FROM | TO |
| | | | ◉ MONEY ORDER | | |
| BAL. DUE | | | ◉ CREDIT CARD | BY | A-2701 T-46800/46802 |

---

WOODRUFF LAW OFFICE

**RECEIPT** DATE Jan 18/13 No. 921264

RECEIVED FROM Dominador Ramirez  $ 100

one hundred dollars only ——— DOLLARS

O FOR RENT
O FOR                  legal service

| ACCOUNT | | | ◉ CASH | | |
|---|---|---|---|---|---|
| PAYMENT | | | ◉ CHECK | FROM | TO |
| | | | ◉ MONEY ORDER | | |
| BAL. DUE | | | ◉ CREDIT CARD | BY | A-2701 T-46800/46802 |

# *Disciplinary Committee*

## CNMI Bar Association

| | |
|---|---|
| Timothy H. Bellas | Telephone: (670) 323-2115 |
| *Chairman* | Facsimile:  (670) 323-2116 |
| Bruce Mailman | E-mail: timothy@bellaslawfirm.com |
| *Vice-Chair* | |
| Stephen Pixley | P.O. BOX 502845 |
| *Secretary/Member* | SAIPAN, MP 96950 |
| Rexford C. Kosak | |
| *Member* | |
| Micheal Evangelista | |
| *Member* | |

August 20, 2013

**CONFIDENTIAL INFOMATION**

Mr. Dominador Ramirez
P.O. Box 500693
Saipan, MP 96950

Re:  *Complaint Filed With The Disciplinary Committee of the CNMI Bar Association*
      (2013-01)

Dear  Dear Mr. Ramirez,,

I write to you on behalf of the Northern Marianas Bar Association Disciplinary Committee ("DC") to inform you of an administrative decision relating to the above complaint which you filed against Mr. Woodruff.

As you may have heard from the media reports, Mr. Woodruff was disbarred in June, 2013 by an order of the CNMI Superior Court. Disbarment is the most severe sanction which can be imposed on an attorney. This order has been appealed by Mr. Woodruff. We are awaiting the outcome of the appeal before taking any action on your complaint. If the final outcome of the appeal is that the CNMI Supreme Court confirms Mr. Woodruff's disbarment, then there is no reason for this Committee to further process your complaint, or the complaint of any other person, because the only power the DC has is to recommend disciplinary action – and once an attorney is disbarred, there is no further disciplinary action that can be taken. Thus, whether we investigate your complaint will depend upon whether or not the Supreme Court upholds the disbarment sanction.

1

The DC understands that you may have claims for damages or other relief from Mr. Woodruff. While such potential claims can be addressed as part of any disciplinary relief ordered by the court, they can also be addressed by you directly, by filing a Small Claims or civil action against Mr. Woodruff. Please understand that we are not advising you to take such action; rather, the DC is suggesting that you seek the assistance of another attorney to advise whether to pursue that matter.

You should be advised that there are limited time periods within which you must start a civil case, called statutes of limitation. The shortest of these time periods is two (2) years. Therefore, if you do decide to pursue this matter, you must do so before the expiration of the statute of limitations applicable to your type of claim, otherwise you could lose the right to file your claim. Again, the DC cannot give you legal advice, and we strongly suggest you consult an attorney regarding your rights and your options, if you believe you have a claim against Mr. Woodruff.

If your complaint involves a criminal matter, you should request a hearing or make a motion to the Superior Court for the appointment of another lawyer to review your case and advise you on what to do. In criminal matters, there are even shorter time limitations involved and you should act as quickly as possible.

Sincerely,

Timothy H. Bellas

cc: Chief Justice Castro
    Presiding Judge Naraja
    DC Members
    File

2

# KUANG QING

PMB 701 BOX 10003 SAIPAN MP 96950

TEL: (670)989-6225

kQ618 @ hotmail . com

Date: 01/08/2015

To: CNMISupreme Court

C/O CNMI Court Bar Association

Dear Sir/madam:

I , Qing Kuang , Chinese national . on December 24,2012 . I went to Woodruft Law office at Susupe ,Saipan .when I got to his law office and asked him provide law assistance for process my Employment Authorized Document (EAD) from USCIS . Mr. Woodruft asked me to pay him total amount U.S Dollar $880.00 for Government fee and his office service fee(See Attachment) , But he did not to do it , I never get any respond or information from him . therefore , I am writing this letter to you and your great office for assistance to get back this amount from Woodruft Law Office .

Thank you for your great helping !

Kuang Qing

RECEIPT   DATE 12/24/12   No. 921243

WOODRUFF LAW OFFICE

RECEIVED FROM Ging Kuang    $ 38

three hundred eighty dollar only    DOLLARS

○ FOR RENT    E.A.D applice fee
○ FOR

| ACCOUNT | | |
|---------|--|--|
| PAYMENT | | |
| BAL. DUE | | |

⊘ CASH
○ CHECK   FROM _____ TO _____
○ MONEY ORDER
○ CREDIT CARD   BY _____

A-2701
T-46800/46802

---

RECEIPT   DATE 12/24/12   No. 921242

WOODRUFF LAW OFFICE

RECEIVED FROM Ging Kuang    $ 500

five hundred dollars only    DOLLARS

○ FOR RENT    down pymt legal surv cc
○ FOR

| ACCOUNT | | |
|---------|--|--|
| PAYMENT | | |
| BAL. DUE | | |

⊘ CASH
○ CHECK   FROM _____ TO _____
○ MONEY ORDER
○ CREDIT CARD   BY _____

A-2701
T-46800/46802

# 天津市长途电信局技校授课计划

证人 ma shu kai

我2012年12月份 463.13 来 和 同一引擎 去办公室拿了训练营 连上课15天 当时我知道我不能如愿去办 我去了 人和事求助 人和事投告我找一下律师 Woodruff

12/28/12 我去了律师那 将我的情况 给律师讲 律师也问了 我 问的行 有的3 件 去办事的 woodruff 律师回答 我问题 我没问 同日 才律师 我就支付了 所有的费用 1,100美元 过了两天 我去 问律师 他 好没有 律师 说 没问题 时间事 当时我 记 下 两天 我 又 谈了我 回 家长的时间 与此同时 我 又 去了 人和事 来他们 那 我验证一下 律师 能不能 快要他 好 我 这样的情况下 才 都 我 所谓 律师 的话 全部 文件 比较 好 去事 也 已 信中 我 不 去申 我 所 的 信息 但有到 没 他 信息 的 文件 到 底 好 好了 我 不 清楚 我 只是 知道 我 要 有 事 去 美国 。

两个月后 律师 也 没 给 我 打过 电话 所以 我 又 去 问律师 问过 多次 都是 同样 的 话 没有给我 任何信件 后来 我去 律师 那 我 发火 说 我 为什么 找 人和事 的人 这么 时 他 不 满意 还 要 怎样 我 的 材料 我 要求 给 我 一套 文件 他 在 地上 一 去 说 你 的 文件 要从 美 去 我 这儿 办 。

# 天津市长途电信局技校授课计划

法官先生 我支付了我应该的服务费和各件费用
我怎么又应该要一份复印件？ 难道我连1份的
本力都没有吗？ 这讲么讲理 请求法官·
给我一个公平的理论。

我实再 没办法的情况下 找了朋友 同⼽查看
第川回 Re 1/9/13年乙写武道的的支票 但支票的日期
我又知道 律师 是怎么故意 耽误 寄邮件份 这是我
支付 托的时间： 当我寄到 时信 已经 是 4月3号 20/3到

我是 1989年 9月25日 来到 Siopan 以后一直忘
合法身份 经历 我的 C.W 身份 有关误差 美国
己经给了 我说收的申念 但我外面至今 没有因为
身份 律师已经 因为 错误的支票年份 误了我
的身份 请求 法官 帮助我 找回公道

我没办法 手机律师 沟通 如果可能
的话 让律师 退回 我 所支付的 现金 或由
付给 美国政府的 费用 给我 开支票

April 23, 2013

Stephen C. Woodruff
P.O. Box 500770
Saipan MP 96950

Dear Sir,

This is to inquire if you have already submitted my Form I-290B together with the current check of $630 payable to the US Department of Homeland Security as required by the DHS per letter dated Jan. 15, 2013.

I would like to follow up my application or to have evidence that my Form I-290B Notice of Appeal or Motion has been submitted to the Dept. of Homeland Security.

I will appreciate if you can provide me **copies** of the receipt, check issued to DHS and the USPS mail label or **tracking number**.

Thank You,

MA, SHU KAI
CW1 Worker
WAC1204150321

Form I-290B - Date Submitted _____ unknown _____

USPS Tracking No. __ regular mail (stamps) __

Bank/Check No. __ FHB # 1627 __

Stephen C. Woodruff
P.O. Box 500770
Saipan MP 96950

0102

Date 1/4/14    101 511/1214

Pay to the order of  U.S. Department of Homeland Security   $ 630.⁰⁰

Six Hundred Thirty Only ———————————— Dollars

Bank of Guam
The Local Bank.  The People's Bank
P.O. Box 672 - Saipan MP 96950

For I-290B · GJ Co., Ltd.
WAC-12-041-50321

⑈121405115⑈ 0103⑈179779⑈ 0102

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| NOTICE TYPE | NOTICE DATE |
|---|---|
| Rejection Notice | January 15, 2013 |

| CASE TYPE | USCIS ALIEN NUMBER |
|---|---|
| I-290B, Notice of Appeal or Motion | 200160487 |

| RECEIPT NUMBER | RECEIVED DATE | DATE OF BIRTH | PAGE |
|---|---|---|---|
| WAC1390346376 | January 09, 2013 | | 1 of 1 |

APPLICANT/PETITIONER NAME AND MAILING ADDRESS

STEPHEN C. WOODRUFF
PO BOX 500770
SAIPAN, MP 96950

The I-290B Notice of Appeal or Motion you submitted has been received by our office for the following applicants

| Name | Date of Birth | Country of Birth | Class (if Applicable) |
|---|---|---|---|
| WOODRUFF, STEPHEN | | | |
| MA, SHUKAI | | | |

Your I-290B, fees, and any supporting documentation is being returned to you for the following reason(s):

The date on the check/money order you submitted is not current. The check date either occurred more than a year ago or it is in the future. Please send your application/petition with a check/money order for today's date to the address listed on the bottom of this page.

Please be sure to complete the petition fully, submit the appropriate fees, and include all required supporting documentation.

If you have questions about possible immigration benefits and services, filing information, or USCIS forms, please call the USCIS National Customer Service Center (NCSC) at 1-800-375-5283. If you are hearing impaired, please call the NCSC TDD at 1-800-767-1833. Please also refer to the USCIS website: www.uscis.gov.

If you have any questions or comments regarding this notice or the status of your case, please contact our customer service number.

You will be notified separately about any other case you may have filed.



Stephen C. Woodruff
P O. Box 500770
Saipan MP 96950

0102

Pay to the
order of    U.S. U.S. Department of Homeland Security     $ 630.⁰⁰

U.S. Department of Homeland
Citizenship and immigration Services

101-511/1214

Six Hundred Thirty Only _____ Dollars

Bank of Guam

I-290B  BJ Co., Ltd
WAC-12-041-50321

:R SERVICE NUMBER

**RECEIPT** DATE Jan 2/13    No. 921247

RECEIVED FROM Ma Shu kai    $ 1,15

one Hundred one hundred fifty _____ DOLLARS

legal service allowed

○ FOR RENT
○ FOR _____

| ACCOUNT | | ○ CASH |
| PAYMENT | | ○ CHECK |
| BAL. DUE | | ○ MONEY ORDER |
| | | ○ CREDIT CARD |

FROM _____ TO _____

BY _____

T-46800

WOODRUFF LAW OFFICE

# *Disciplinary Committee*

## CNMI Bar Association

| | |
|---|---|
| Timothy H. Bellas<br>*Chairman*<br>Bruce L. Mailman<br>*Vice Chair*<br>Steven P. Pixley<br>*Member*<br>Rexford C. Kosack<br>*Member*<br>Catherine Cachero<br>*Member* | Telephone: (670) 323-2115<br>Facsimile:   (670) 323-2116<br>Email: timothy@bellaslawfirm.com<br><br>P.O. Box 502845<br>Saipan, MP 96950 |

April 30, 2014                                   **CONFIDENTIAL COMMUNICATION**

**Mr. Ma Shu Kai**
**PMB 1136 Box 10003**
**Saipan, MP 96950**

*Re:   Complaint Filed With The Disciplinary Committee of the CNMI Bar Association*
       (2014-02)

Dear Ms. Aguon,

I write to you on behalf of the Northern Marianas Bar Association Disciplinary Committee ("DC") to inform you of an administrative decision relating to the above complaint which you filed against Mr. Woodruff in 2014.

Mr. Woodruff was disbarred in June, 2013 by an order of the CNMI Superior Court. This order has been appealed by Mr. Woodruff to the CNMI Supreme Court. The DC is awaiting the outcome of the appeal before taking any action on your complaint. The DC will not take any further action on your complaint, or the complaint of any other person, if at the conclusion of the appeal Mr. Woodruff remains disbarred. Once an attorney is disbarred, there is no further disciplinary action that can be taken against him.

The DC understands that you may have claims against Mr. Woodruff for money paid or for the return of documents given to him. The DC recommends that you seek the assistance of another attorney to advise you on whether you have such claims and how to pursue them on your own or through a different attorney.

If the Supreme Court reverses the disbarment by the Superior Court, then and only then will the DC be

1

*Administrative Hold Advisement Ltr*
May 2, 2014
Page 2

contacting you about this matter again.

Sincerely,

Timothy H. Bellas

cc: Chief Justice Castro
    Presiding Judge Naraja
    DC Members
    File

2

**From:** Esther Sound [mailto:esther.sound@gmail.com]
**Sent:** Wednesday, February 13, 2013 10:23 AM
**To:** bmailman@pticom.com
**Subject:**

Here's the letter that I submitted to Supreme Court and was receive by Mr Gene Weaver on Friday February 8th with attached documents.

Alfonis & Esther Sound
Dandan
P.O. Box 503354
Saipan, MP 96950

February 6, 2013
CNMI Bar Association
Attn: Disciplinary Committee
P.O. Box 504539
Saipan, MP 96950
Via Fax: (670) 235-4528

Dear Disciplinary Committee:
This letter is to ask the committee as to what is to happen to the clients that have already suffered the damages left behind from Attorney Stephen C. Woodruff's work?
Mr. Woodruff represented our case against C.U.C but he failed to reply to the hearing officer. From his failure to reply, he cost us utility disconnection at first, then 2 promissory notes amounting over $54,000.00, $2,000.00 or more in reconnection fee, another $2,000.00 in attorney's fee, and the hearing officer rule against us without hearing the rest of our case.
Was this a plot for lawyers to make money while the people suffer? In the end, C.U.C, the hearing officer, C.U.C's attorneys, and Mr. Woodruff were making money while we struggle as we face bankruptcy. The threat of power disconnection if we fail to comply with those outrageous promissory notes is worst of all. First 7 months we had to pay $400/month and then $701/month the remaining.
Your feedback and assistance on this will determine our survival in Saipan.
Sincerely,
Alfonis & Esther Sound

# *Disciplinary Committee*

## CNMI Bar Association

Timothy H. Bellas
*Chairman*
Bruce Mailman
*Vice-Chair*
Stephen Pixley
*Secretary/Member*
Rexford C. Kosak
*Member*
Micheal Evangelista
*Member*

Telephone: (670) 323-2115
Facsimile:  (670) 323-2116
E-mail: timothy@bellaslawfirm.com

P.O. BOX 502845
SAIPAN, MP 96950

August 20, 2013

**CONFIDENTIAL INFORMATION**

Mr. & Mrs. Alfonis Sound
P.O. Box 503354
Saipan, MP 96950

Re:   *Complaint Filed With The Disciplinary Committee of the CNMI Bar Association*
      (2013-05)

Dear Mr. & Mrs. Sound,

I write to you on behalf of the Northern Marianas Bar Association Disciplinary Committee ("DC") to inform you of an administrative decision relating to the above complaint which you filed against Mr. Woodruff.

As you may have heard from the media reports, Mr. Woodruff was disbarred in June, 2013 by an order of the CNMI Superior Court. Disbarment is the most severe sanction which can be imposed on an attorney. This order has been appealed by Mr. Woodruff. We are awaiting the outcome of the appeal before taking any action on your complaint.  If the final outcome of the appeal is that the CNMI Supreme Court confirms Mr. Woodruff's disbarment, then there is no reason for this Committee to further process your complaint, or the complaint of any other person, because the only power the DC has is to recommend disciplinary action – and once an attorney is disbarred, there is no further disciplinary action that can be taken.  Thus, whether we investigate your complaint will depend upon whether or not the Supreme Court upholds the disbarment sanction.

1

The DC understands that you may have claims for damages or other relief from Mr. Woodruff. While such potential claims can be addressed as part of any disciplinary relief ordered by the court, they can also be addressed by you directly, by filing a Small Claims or civil action against Mr. Woodruff. Please understand that we are not advising you to take such action; rather, the DC is suggesting that you seek the assistance of another attorney to advise whether to pursue that matter.

You should be advised that there are limited time periods within which you must start a civil case, called statutes of limitation. The shortest of these time periods is two (2) years. Therefore, if you do decide to pursue this matter, you must do so before the expiration of the statute of limitations applicable to your type of claim, otherwise you could lose the right to file your claim. Again, the DC cannot give you legal advice, and we strongly suggest you consult an attorney regarding your rights and your options, if you believe you have a claim against Mr. Woodruff.

If your complaint involves a criminal matter, you should request a hearing or make a motion to the Superior Court for the appointment of another lawyer to review your case and advise you on what to do. In criminal matters, there are even shorter time limitations involved and you should act as quickly as possible.

Sincerely,

Timothy H. Bellas

cc: Chief Justice Castro
    Presiding Judge Naraja
    DC Members
    File

2

F I L E D
Clerk
District Court

AUG 1 0 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

RAJASURIYA JS. PREMATILAKA, )        Civil Action No. 05-0045
                                        )
                  Plaintiff         )
                                        )        ORDER OF DISMISSAL
          v.                        )        WITH PREJUDICE
                                        )
EFRAIN F. CAMACHO, *et al.*,        )
                                        )
                  Defendants        )
_____)

The record in this matter reflects that no action has been taken by plaintiff since he filed his complaint on December 21, 2005.  Further, all named defendants are present on the island of Saipan, are conducting business or are otherwise employed at long-established and easily-found locations, and service of process should not have been difficult or time-consuming.  Finally, plaintiff's original complaint with the U.S. Equal Employment Opportunity Commission was not timely filed, which is consistent with plaintiff's pattern of inaction in the present matter.

Because the alleged events giving rise to this complaint occurred on December 11, 2003 (*see* Plaintiff's "Charge of Discrimination" (Jan. 1, 2005), and because of plaintiff's repeated failures to promptly pursue any of the remedies available to him, the court has concluded that dismissal with prejudice is warranted. Accordingly,

PURSUANT TO Fed.R.Civ.P. 41(b), and as an exercise of the discretion afforded to the court to *sua sponte* dismiss a matter for failure to prosecute,

IT IS ORDERED that this matter be and hereby is dismissed with prejudice, effective this date.

DATED this 10th day of August, 2006.

          _____

          ALEX R. MUNSON

               Judge

FOR PUBLICATION

IN THE
**SUPREME COURT**
OF THE
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

---

**CANDIDO B. AGUON,**
*Plaintiff/Appellee,*

v.

**ESTRELLA B. AGUON,**
*Defendant/Appellant.*

---

Supreme Court Appeal No. CV 06-0026-GA, 2007 MP 2
Superior Court FCD No. 06-0014

---

**ORDER OF DISMISSAL FOR FAILURE TO PROSECUTE**
**[Com.R.App.P.42(c)]**

¶1    It appears from a review of the docket in this case that the record and transcript of proceedings from the Superior Court have not been filed with the Clerk of the Supreme Court and is significantly overdue.

¶2    Appellee filed a Motion to Dismiss the appeal on August 25, 2006, based on the failure to file the record and transcript in a timely fashion.

¶3        The Clerk of the Supreme Court gave notice to counsel on November 20, 2006, that the record and transcript needed to be filed with the Clerk of the Supreme Court or the case would be referred for dismissal.  Appellant responded on December 6, 2006 that he would expeditiously cause the record to be filed or seek additional time for the record to be filed.

¶4        On December 18, 2006, the Clerk of the Supreme Court issued a second notice to counsel to cause the record and transcript to be filed with the Supreme Court on or before February 6, 2007, or the matter would be referred to the Court for dismissal.

¶5        As of the date of this Order, no record or transcript of proceedings from the Superior Court has been certified and filed with the Clerk of the Supreme Court regarding this matter, nor has Appellant sought any further extension of time to file the record or transcript of proceedings.

¶6        Under the Commonwealth Rules of Appellate Procedure, Rule 42 (c), the ultimate responsibility for ensuring that the record (including transcript) is filed on time is that of the Appellant.  One of the sanctions available under that rule for failure of the Appellant to cause the record to be filed in a timely fashion is dismissal of the appeal.  If a record or transcript cannot be completed or filed within a timely fashion, then it is the Appellant's obligation to bring this matter to the Supreme Court's attention through the filing of appropriate motions for extension of time to file the record and transcript.  It should not be the burden of the Clerk of the Supreme Court to have to remind appellate counsel of the lack of a properly and timely filed record and transcript.

¶7        Having determined that the record and transcript of proceedings have not been certified and filed with the Clerk of the Supreme Court in a timely fashion and no request for

extension of time has been made, the Court now DISMISSES this appeal for failure to prosecute in accordance with Com. R. App. P. Rule 42 (c). *Villagomez v. Sablan*, 4 N.M.I. 396 (1996).

¶8        Counsel is further advised that Com. R. App. P. 42 (c) allows for additional sanctions to be imposed for failure to prosecute an appeal and that the Court will consider those in the future against any counsel who fail to timely cause the record of an appeal to be timely filed.

SO ORDERED this___13th___day of February, 2007.


/s/ Miguel S. Demapan
MIGUEL S. DEMAPAN
Chief Justice



/s/ Alexandro C. Castro
ALEXANDRO C. CASTRO
Associate Justice

/s/ John A. Manglona
JOHN A. MANGLONA
Associate Justice

F I L E D
Clerk
District Court

SEP 19 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| JENY C. AGCAOILI, | ) | Civil No. 06-0045 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | ORDER GRANTING |
| | ) | PLAINTIFF'S COUNSEL'S |
| L&T INTERNATIONAL | ) | EX PARTE MOTION TO |
| CORPORATION, *et al.*, | ) | FILE LATE |
| | ) | |
| Defendants | ) | |
| | ) | |

THIS MATTER came before the court on Tuesday, September 18, 2007, on yet another *ex parte* motion filed by plaintiff's counsel, this time for leave to file the third amended complaint late.

In the court's last order, it noted plaintiff's counsel's ever-growing history of late filings, accompanied by unsatisfactory explanations. Once again, counsel has missed a deadline, and once again it's due to his "preoccupation" with other matters, his "inadvertence," and his failure to properly read, understand, and comply with an order of the court, which order included a specific due date and time. Compounding these failures was counsel's decision not to obey the local rules and call opposing counsel for a stipulation prior to filing this *ex parte* motion, despite the court's instruction to him in its last order that he first seek such a stipulation in situations such as this.

The court will grant the motion, with an admonition to plaintiff's counsel that the court expects its orders to be read, its local rules to be complied with, and deadlines to be observed.

DATED this 19th day of September, 2007.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

2

F I L E D
Clerk
District Court

OCT 1 0 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| MD. MASUM, *et al.*, | ) | Civil Action No. 07-0010 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | ORDER SANCTIONING |
| | ) | PLAINTIFFS' COUNSEL |
| ISLAND SECURITY SERVICES, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

By the case management scheduling order dated August 31, 2007, a settlement conference in this matter was set for today, Wednesday, October 10, 2007, at 9:00 a.m. Counsel for defendants appeared at the appointed time, with his client; counsel for plaintiffs' did not. Accordingly,

AO 72
(Rev. 08/82)

IT IS ORDERED that Stephen C. Woodruff be and hereby is sanctioned the sum of $225.00, payable to defendants' counsel, Michael W. Dotts. Said sum, representing one hour of Mr. Dotts' time at his normal billing rate, shall be paid to him no later than 3:30 p.m., Wednesday, October 17, 2007, and proof of payment shall be filed with the court; and,

IT IS FURTHER ORDERED that the settlement conference be and hereby is re-scheduled to Wednesday, October 24, 2007, at 10:00 a.m.

DATED this 10th day of October, 2007.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

2

F I L E D
Clerk
District Court

AUG 22 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

ESTINILIE ALCARAZ, *et al.*,           )          Civil Action No. 08-0003
                                        )
            Plaintiffs                  )
                                        )
       v.                               )          ORDER TO SHOW CAUSE
                                        )          WHY LAWSUIT SHOULD NOT
HANSOLL TEXTILE, LTD., *et al.*,        )          BE DISMISSED FOR FAILURE
                                        )          TO PROSECUTE
            Defendants                  )
_____)

THIS LAWSUIT was filed January 16, 2008. To date, service has not been

effected on any of the defendants. Accordingly,

IT IS ORDERED that plaintiffs shall appear at 9:00 a.m. on September 4,

2008, to show cause why this lawsuit should not be dismissed for failure to serve

within 120 days or to otherwise prosecute. Fed.R.Civ.P. 4(m).

DATED this 22nd day of August, 2008.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

F I L E D
Clerk
District Court

JAN 23 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

MARIVIC A. SORIANO,                )     Civil No. 07-0007
                                   )
                Plaintiff          )
                                   )
        v.                         )     ORDER IMPOSING
                                   )     MONETARY SANCTIONS
                                   )     ON PLAINTIFF'S COUNSEL
JUNG A ENTERPRISES, *et al.*,       )     AND DEFENDANT JUNG A
                                   )     ENTERPRISES' COUNSEL
                Defendants         )
_____)

By the case management scheduling order of November 15, 2007, a settlement conference was set in this matter for today, January 23, 2008, at 9:00 a.m. Ramon K. Quichocho appeared at the appointed time; counsel for plaintiff, Stephen C. Woodruff, failed to appear, as did counsel for Jung A Enterprises, Richard W. Pierce. Accordingly,

AO 72
(Rev. 08/82)

IT IS ORDERED that Mr. Woodruff and Mr. Pierce be and hereby are each sanctioned the sum of $50.00, representing a total of one-half hour of Mr. Quichocho's normal hourly rate. Payment to Mr. Quichocho shall be no later than Friday, January 25, 2008, at 3:30 p.m.

DATED this 23rd day of January, 2008.

_____
ALEX R. MUNSON
Judge

F I L E D
Clerk
District Court

APR - 9 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MARIVIC A. SORIANO, ) | Civil No. 07-0007 |
| ) | |
| Plaintiff ) | |
| ) | ORDER SANCTIONING |
| v. ) | PLAINTIFF'S COUNSEL FOR |
| ) | FAILURE TO APPEAR; |
| JUNG A ENTERPRISES, *et al.*, ) | GRANTING JUNG A'S COUNSEL'S |
| ) | MOTION TO WITHDRAW; and, |
| Defendants ) | OTHER MATTERS |
| _____ ) | |

THIS MATTER came before the court today for the status conference set by the order of March 31, 2008. Counsel for plaintiff failed to appear at the status conference; counsel for defendant Jung A Enterprises, Richard W. Pierce, appeared. Counsel for the other defendants was excused from appearing.

BASED UPON the information before the court, and good cause appearing therefrom; NOW, THEREFORE,

AO 72
(Rev. 08/82)

IT IS ORDERED that plaintiff's attorney Stephen C. Woodruff be and hereby is sanctioned the sum of $100.00, payable to Richard W. Pierce by Monday, April 14, 2008, at 3:30 p.m., for his failure to appear at the ordered status conference; and,

IT IS FURTHER ORDERED that Jung A Enterprises' counsel's motion to withdraw as counsel of record be and hereby is granted, effective immediately after he mails a copy of this order to Jung A Enterprises at its last known address.

PURSUANT to the court's order of March 31, 2008, a personal representative for defendant Jung A Enterprises was directed to appear at today's status conference. No such representative appeared, although Mr. Pierce had attempted to provide notice to his client. A corporation cannot appear *pro se* in federal court. *See* 28 U.S.C. § 1654; Rowland v. California Men's Colony, 113 S.Ct. 716, 721 (1993); and, United States v. High Country Broadcasting Company, Inc., 3 Fed.3d 1244, 1245 (9th Cir. 1993). Accordingly, defendant Jung A Enterprises is admonished to retain counsel to make an appearance and represent its interests. Failure to do so may result, either upon motion of plaintiff or on the court's own motion, in the sanction of having its answer stricken and default entered against it.

DATED this 9th day of April, 2008.

_____
ALEX R. MUNSON
Judge

Case 1:08-cv-00014   Document 9   Filed 08/22/08   Page 1 of 1

FILED
Clerk
District Court

AUG 2 2 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

NENITA G. AFRICA, *et al.*,                    )          Civil Action No. 08-0014
                                               )
                    Plaintiffs                 )
                                               )
          v.                                   )          ORDER TO SHOW CAUSE
                                               )          WHY LAWSUIT SHOULD NOT
COMMONWEALTH GARMENT                           )          BE DISMISSED FOR FAILURE
MANUFACTURING, INC., doing                     )          TO PROSECUTE
business as Mirage Saipan Co., Ltd.,           )
                                               )
                    Defendant                  )
_____           )

THIS LAWSUIT was filed March 11, 2008. To date, service has not been effected on defendant. Accordingly,

IT IS ORDERED that plaintiffs shall appear at 9:00 a.m. on September 4, 2008, to show cause why this lawsuit should not be dismissed for failure to serve within 120 days or to otherwise prosecute. Fed.R.Civ.P. 4(m).

DATED this 22nd day of August, 2008.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

F I L E D
Clerk
District Court

AUG 2 2 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

REYNALDO L. GARCIA,                    )        Civil Action No. 08-0017
                                       )
            Plaintiff                  )
                                       )
      v.                               )        ORDER TO SHOW CAUSE
                                       )        WHY LAWSUIT SHOULD NOT
POONG-IN SAIPAN, INC.,                 )        BE DISMISSED FOR FAILURE
                                       )        TO PROSECUTE
            Defendant                  )
                                       )
_____)

THIS LAWSUIT was filed March 19, 2008.  To date, service has not been effected on defendant.  Accordingly,

IT IS ORDERED that plaintiffs shall appear at 9:00 a.m. on September 4, 2008, to show cause why this lawsuit should not be dismissed for failure to serve within 120 days or to otherwise prosecute.  Fed.R.Civ.P. 4(m).

DATED this 22nd day of August, 2008.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

F I L E D
Clerk
District Court

AUG 22 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

AURELIO D. LACBAYO and          )          Civil Action No. 08-0013
ASUNCION P. TUDELA,             )
                                )
          Plaintiffs            )
                                )
          v.                    )          ORDER TO SHOW CAUSE
                                )          WHY LAWSUIT SHOULD NOT
WATABE WEDDING,                 )          BE DISMISSED FOR FAILURE
                                )          TO PROSECUTE
          Defendant             )
                                )

THIS LAWSUIT was filed March 6, 2008. To date, service has not been effected on defendant. Accordingly,

IT IS ORDERED that plaintiffs shall appear at 9:00 a.m. on September 4, 2008, to show cause why this lawsuit should not be dismissed for failure to serve within 120 days or to otherwise prosecute. Fed.R.Civ.P. 4(m).

DATED this 22nd day of August, 2008.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

F I L E D
Clerk
District Court

OCT - 7 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| NENITA G. AFRICA, *et al.*, ) | Civil Action No. 08-0014 |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | ORDER OF DISMISSAL |
| ) | WITH PREJUDICE |
| COMMONWEALTH GARMENT ) | |
| MANUFACTURING, INC., doing ) | |
| business as Mirage Saipan Co., Ltd., ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

THIS LAWSUIT was filed March 11, 2008. To date, service has not been effected on defendant, even though plaintiffs were given an additional thirty days to accomplish service by court order dated September 4, 2008. Accordingly,

IT IS ORDERED that this lawsuit be and hereby is dismissed, with prejudice.

DATED this 7th day of October, 2008.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

FILED
Clerk
District Court

OCT 27 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

INVICTUS T. FELICIANO,          )     Civil Action No. 08-0001
                                )
            Plaintiff           )
                                )
      v.                        )     ORDER SANCTIONING
                                )     PLAINTIFF'S COUNSEL,
EASTERN HOPE CORPORA-           )     STEPHEN C. WOODRUFF
TION,                           )
                                )
            Defendant           )
_____)

THIS MATTER was set for a settlement conference today, by order dated October 9, 2008. Counsel for defendants appeared, with his clients; neither plaintiff nor his attorney, Stephen C. Woodruff, appeared. Accordingly,

IT IS ORDERED that Stephen C. Woodruff be and hereby is sanctioned the sum of $175.00, which sum shall be paid to defendants' counsel no later than 3:30

AO 72
(Rev. 08/82)

1

p.m., Friday, October 31, 2008.  Should plaintiff's counsel fail to make the payment by the date and time specified, further sanctions, including the ultimate sanction of dismissal, may be imposed.

DATED this 27th day of October, 2008.


_____
ALEX R. MUNSON
Judge

2

F I L E D
Clerk
District Court

DEC 19 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| INVICTUS T. FELICIANO, | ) | Civil Action No. 08-0001 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | ORDER DENYING |
| | ) | MOTION FOR |
| EASTERN HOPE CORPO- | ) | RECONSIDERATION |
| RATION, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

THE COURT has before it plaintiff's motion for reconsideration. The Local Rules have not provided for motions for reconsideration for several years. No judgment has been entered, so Fed.R.Civ.P. 59(e) does not apply. Of the subsections to Fed.R.Civ.P. 60(b), the only one with possible relevance is (b)(6), which permits

AO 72
(Rev. 08/82)

1

relief from a final order for "any other reason that justifies relief." Plaintiff's counsel has submitted a statement from his physician, in accordance with the court's order.[2] The court finds it insufficient, given the history of this lawsuit. The public's interest in the expeditious resolution of litigation, the court's need to manage its docket, and the risk of prejudice to defendants, in this matter, outweigh the public policy favoring disposition of cases on the merits and the imposition of less drastic sanctions.

The order for reconsideration is denied. The hearing set for January 15, 2009, is taken off-calendar.

IT IS SO ORDERED.

DATED this 19th day of December, 2008.

_____
ALEX R. MUNSON
Judge

---

[2] Plaintiff's counsel has not complied with the court's order that he notify his client of a possible malpractice claim against him. That portion of the order is stayed for thirty days from the date of the judgment entered this date.

F I L E D
Clerk
District Court

FEB 1 3 2009

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ESTINILIE ALCARAZ, *et al.*, | ) | Civil Action No. 08-0003 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | ORDER SANCTIONING |
| | ) | COUNSEL FOR FAILURE |
| HANSOLL TEXTILE, LTD., *et al.*, | ) | TO APPEAR AT STATUS |
| | ) | CONFERENCE and |
| Defendants | ) | RE-SETTING STATUS |
| | ) | CONFERENCE |

By case management scheduling order dated December 12, 2008, a status conference in this matter was set for today, Friday, February 13, 2009, at 10:00 a.m. Counsel for defendants was present; counsel for plaintiffs, Stephen C. Woodruff, failed to appear. Accordingly,

IT IS ORDERED that Stephen C. Woodruff shall pay to Michael W. Dotts the sum of $225.00, representing one hour at Mr. Dotts' normal billing rate for his

AO 72
(Rev. 08/82)

Case 1:08-cv-00003   Document 26   Filed 02/13/09   Page 2 of 2

preparation time, travel time, and appearance.  This sum shall be paid no later than the re-scheduled status conference, which is set for **Wednesday, February 18, 2009, at 10:00 a.m.**

DATED this 13th day of February, 2009.

_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)

2

F I L E D
Clerk
District Court

MAR 2 7 2009

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

CRISTETA L. SANTOS,                    )        Civil No. 08-0023
                                       )
                Plaintiff              )
                                       )
        v.                             )        ORDER DISMISSING
                                       )        WITHOUT PREJUDICE
WINNERS CORPORATION,                   )        FOR FAILURE TO SERVE
                                       )
                Defendant              )
_____)

THIS MATTER was filed on May 12, 2008, and summons was issued but could not be served due to failure of plaintiff to provide anything more than a post office box location for defendant. No action has taken place since that time and plaintiff has not shown good cause for failure to serve or requested additional time to effect service. Accordingly,

AO 72
(Rev. 08/82)

IT IS ORDERED that this matter be and hereby is dismissed without prejudice for failure to serve, pursuant to Fed.R.Civ.P. 4(m).

DATED this 27th day of March, 2009.

_____
ALEX R. MUNSON
Judge

FILED
Clerk
District Court

MAY 20 2011

For The Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| REYNALDO L. GARCIA, | Civil Case No. 08-00017 |
| Plaintiff, | |
| v. | **ORDER TO SHOW CAUSE** |
| POONG-IN SAIPAN, INC., | |
| Defendant. | |

"[I]f a proceeding has been pending for more than six (6) months without any action taken by the parties during that period, upon notice to the parties the court may dismiss the proceeding for lack of prosecution." LR 41.1.

This case has been pending for more than six months without any action taken by the parties during that period. Accordingly, and pursuant to this court's local civil rules, the parties are hereby **ORDERED TO SHOW CAUSE** why the court should not dismiss this case for lack of prosecution. The parties shall respond to this order in writing by close of business on May 27, 2011.

**SO ORDERED** on May 20, 2011.

_____
CONSUELO B. MARSHALL[1]
District Judge

---

[1] Judge, Central District of California, sitting by designation. *See* 48 U.S.C. § 1821(b)(2).

Case: 10-15449  05/27/2011  Page: 1 of 1  ID: 7767090  DktEntry: 20

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 27 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| PARMILA PARIYAR,<br><br>   Plaintiff - Appellant,<br><br>   v.<br><br>HONG KONG ENTERTAINMENT<br>(OVERSEAS) INVESTMENT, LTD.,<br>DBA Tinian Dynasty Hotel & Casino,<br><br>   Defendant - Appellee. | No. 10-15449<br><br>D.C. No. 1:08-cv-00026<br>U.S. District Court for the Northern<br>Mariana Islands, Saipan<br><br>**ORDER** |

A review of the file in this case reveals that counsel has failed to perfect the appeal as prescribed by the Federal Rules of Appellate Procedure.

Pursuant to Ninth Circuit Rule 42-1, this appeal is dismissed for failure to file the opening brief on appeal in this case. Counsel for appellant is directed to notify immediately his/her client in writing regarding this dismissal.

This order served on the district court shall constitute the mandate of this court.

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Estela Urrutia
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **REYNALDO L. GARCIA,** | Civil Case No. 08-00017 |
| Plaintiff, | |
| v. | **ORDER DISMISSING CASE WITHOUT PREJUDICE** |
| **POONG-IN SAIPAN, INC.,** | |
| Defendant. | |

Before the court are four items: the court's "Order to Show Cause" (*see* Docket No. 11), Plaintiff's "Response to Order to Show Cause" (*see* Docket No. 12), Plaintiff's "Notice of Errata in Response to Order to Show Cause" (*see* Docket No. 13), and the court's "Order Requiring Supplemental Response" ("the Supplemental Response Order") (*see* Docket No. 14).

The Supplemental Response Order required Plaintiff to explain why service of process should be deemed effected in this case. Plaintiff has failed to do so. As such, the court cannot deem service of process effected. This case is therefore **DISMISSED WITHOUT PREJUDICE.** *See* FED. R. CIV. P. 4(m); *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).



**SO ORDERED** on June 20, 2011.

*/s/ Frances M. Tydingco-Gatewood*
FRANCES M. TYDINGCO-GATEWOOD[1]
District Judge

---

[1] Chief Judge, District Court of Guam, sitting by designation. *See* 48 U.S.C. § 1821(b)(2).

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **JANE QUITUGUA,** | Civil Case No. 10-00011 |
| Plaintiff, | |
| v. | **ORDER TO SHOW CAUSE** |
| **MICRONESIAN RESORT, INC.,** *d/b/a* **PALMS RESORT SAIPAN,** *d/b/a* **THE PALMS,** | |
| Defendant. | |

This case has been pending for more than six months without any action taken by the parties during that period. "[I]f a proceeding has been pending for more than six (6) months without any action taken by the parties during that period, upon notice to the parties the court may dismiss the proceeding for lack of prosecution." LR 41.1.

Under Local Rule 41.1, then, Plaintiff is hereby **ORDERED TO SHOW CAUSE** why the court should not dismiss this case for lack of prosecution. Plaintiff shall respond to this order in writing by close of business on July 13, 2011.



**SO ORDERED** on July 6, 2011.

/s/ *Frances M. Tydingco-Gatewood*
FRANCES M. TYDINGCO-GATEWOOD[1]
District Judge

---

[1] Chief Judge, District Court of Guam, sitting by designation. *See* 48 U.S.C. § 1821(b)(2).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MARICHU V. LEGASPI,<br><br>                    Plaintiff,<br><br>    v.<br><br>NEO FASHION INC.,<br><br>                    Defendant. | Case No.: 1-08-CV-00053<br><br><br>ORDER TO SHOW CAUSE |

This case has been pending for three years without any action taken by the parties during that period. "[I]f a proceeding has been pending for more than six (6) months without any action taken by the parties during that period, upon notice to the parties the court may dismiss the proceeding for lack of prosecution." LR 41.1.

Plaintiff is hereby ordered to show cause why the court should not dismiss this case for lack of prosecution. Plaintiff shall respond to this order in writing by close of business on January 13, 2012.

SO ORDERED this 30th day of December, 2011.

_____
RAMONA V. MANGLONA
Chief Judge

-1-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MARICHU V. LEGASPI, | Case No.: 1-08-CV-00053 |
| Plaintiff, | |
| v. | ORDER OF DISMISSAL |
| NEO FASHION INC., | |
| Defendant. | |

On December 30, 2011, the Court issued an Order to Show Cause ("OSC," Dkt. No. 4) by close of business on January 13, 2012, why this case, which has been pending without action for three years, should not be dismissed for lack of prosecution. The Case Management/Electronic Case Filing ("CM/ECF") system indicates that notice was electronically served on Plaintiff's counsel of record the same day the OSC issued. Plaintiff has not filed a motion or other response to the OSC.

WHEREFORE, pursuant to Local Rule 41.1, the Court hereby DISMISSES this matter without prejudice for lack of prosecution.

SO ORDERED this 18th day of January, 2012.

RAMONA V. MANGLONA
Chief Judge

-1-



FILED
Clerk
District Court

DEC 21 2012

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROGELIO R. CADA, <br><br> Plaintiff, <br><br> v. <br><br> WORLD CORPORATIONdba SAIPAN WORLD RESORT, JONG TAE PARK, MIRRIAM K. SEMAN, HA SEUNG WOO, JUN HAM, and SATURNINO BANTING, <br><br> Defendants. | CASE NO. 1:12-CV-00023 <br><br> **ORDER OF DISMISSAL WITHOUT PREJUDICE** |

On November 16, 2012, Defendants moved to dismiss this matter pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* ECF No. 7, "Motion," and No. 8, "Memorandum.") Proof of service on Plaintiff on the same date of the Motion and Memorandum was filed on November 20, 2012. (*See* ECF No. 10.) Three days after the Motion and Memorandum were filed, the clerk noticed the Motion for a hearing on December 27, 2012.

Under the local rules, Plaintiff had until "the Thursday of the second full week after the week in which the motion was filed" to file and serve an opposition. LR 7.1.c.2. In this instance, that deadline was November 29, 2012. No opposition was filed by the deadline. As of the date of this order, no opposition has been filed. Moreover, Plaintiff has not filed a statement of no opposition within the time provided, as required by the same local rule if a party does not oppose a motion. The failure to file such a statement "may be deemed an admission that the motion is meritorious." *Id.*

Failure to follow a district court's local rules "is a proper ground for dismissal." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam). The court must weigh five factors before dismissing the action: "(1) the public's interest in expeditious resolution of litigation; (2) the

1

court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases o[n] their merits; and (5) the availability of less drastic sanctions." *Id.* (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).

The court finds that in this case, the public's interest in expeditious resolution of litigation and the court's need to manage its docket outweigh the risk of prejudice to the defendants and the public policy in favor of disposing of cases on their merits. In the past two years, Plaintiff's counsel of record frequently has missed deadlines or filed incomplete pleadings in cases before this court and the Ninth Circuit Court of Appeals. In so doing, he has caused the courts and opposing parties needlessly to expend resources on litigation that he initiated and then neglected. In this case in particular, the court previously granted Plaintiff's application to proceed without prepayment of fees, which means the taxpayer is bearing certain costs normally assumed by the aggrieved party. Under these circumstances, less drastic sanctions that would prolong the litigation at public expense are inappropriate.

WHEREFORE the court orders as follows:

(1)     Defendants' Motion to Dismiss (ECF No. 7) is granted without prejudice.

(2)     If Plaintiff wishes to refile his complaint, he must either (i) prepay the appropriate fees or (ii) reapply for permission to proceed without prepayment of fees. Any such reapplication must be accompanied by an affidavit of Plaintiff or Plaintiff's counsel setting forth the reasons that Plaintiff failed to file an opposition or statement of no opposition to Defendants' Motion to Dismiss.

(3)     The hearing set for December 27, 2012, is vacated.

SO ORDERED this 21st day of December, 2012.

_____
RAMONA V. MANGLONA
Chief Judge

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| JOSEPHINE SADIM, | Case No. 1:09-CV-00037 |
|---|---|
| Plaintiff, | |
| v. | ORDER TO SHOW CAUSE |
| SAM KWANG SAIPAN CORPORATION, PARK JONG SUK, and XIAN YU XIN, | |
| Defendants. | |

This case has been pending for three years without any activity on the docket. "[I]f a proceeding has been pending for more than six (6) months without any action taken by the parties during that period, upon notice to the parties the court may dismiss the proceeding for lack of prosecution." LR 41.1. "The district court has the inherent power sua sponte to dismiss a case for lack of prosecution." *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir. 1986).

Plaintiff is hereby ordered to show cause why the court should not dismiss this case for lack of prosecution. Plaintiff shall respond to this order in writing by close of business on March 13, 2013, or the matter will be dismissed with prejudice.

SO ORDERED this 26th day of February, 2013.

_____
RAMONA V. MANGLONA
Chief Judge

-1-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CHOI, BYUNG JOON,<br><br>               Plaintiff,<br><br>     v.<br><br>JUNG A ENTERPRISES, SOI-IN CORPORATION, PACIFIC SAIPAN, LLC, KIM, JUNG JA, RAMON K. QUICHOCHO, and DAN BI CHOI,<br><br>               Defendants. | Case No.: 1-08-CV-00041<br><br><br>ORDER TO SHOW CAUSE |

This case has been pending for almost four years without any activity on the docket. "[I]f a proceeding has been pending for more than six (6) months without any action taken by the parties during that period, upon notice to the parties the court may dismiss the proceeding for lack of prosecution." LR 41.1. "The district court has the inherent power sua sponte to dismiss a case for lack of prosecution." *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir. 1986).

Plaintiff is hereby ordered to show cause why the court should not dismiss this case for lack of prosecution. Plaintiff shall respond to this order in writing by close of business on March 13, 2013, or the matter will be dismissed with prejudice.

SO ORDERED this 26th day of February, 2013.

RAMONA V. MANGLONA
Chief Judge

-1-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| MARISSA V. ACUNIN, VIRGINIA Q. ALIPIO, REMEDIOS AMOR, NENITA A. ESPINOSA, ERLINDA M. REGINIO a.k.a. ERLINA CARANDANG, and NORMA D. QUEJANO,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SAM KWANG SAIPAN CORPORATION, PARK JONG SUK, WU CHENG ZI, and XIAN YU XIN YU,<br><br>                    Defendants. | Case No.: 1-08-CV-00040<br><br><br>ORDER TO SHOW CAUSE |

This case has been pending for four years without any activity on the docket since the filing of the complaint. "[I]f a proceeding has been pending for more than six (6) months without any action taken by the parties during that period, upon notice to the parties the court may dismiss the proceeding for lack of prosecution." LR 41.1. "The district court has the inherent power sua sponte to dismiss a case for lack of prosecution." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986).

Plaintiff is hereby ordered to show cause why the court should not dismiss this case for lack of prosecution. Plaintiff shall respond to this order in writing by close of business on March 13, 2013, or the matter will be dismissed with prejudice.

SO ORDERED this 27th day of February, 2013.

RAMONA V. MANGLONA
Chief Judge

-1-

FOR PUBLICATION

E-FILED
CNMI SUPERIOR COURT
E-filed: Oct 02 2013 09:00AM
Clerk Review: N/A
Filing ID: 54314790
Case Number: 13-0017-CV
N/A



### IN THE SUPERIOR COURT
### OF THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE THE MATTER OF: | CIVIL CASE NO. 13-0017 |
| | |
| STEPHEN C. WOODRUFF | ORDER<br>RE: CONTEMPT |

## I. INTRODUCTION

**THIS MATTER** came before the Court on September 27, 2013, at 1:30 p.m. in Courtroom 223A, pursuant to this Court's order to show cause filed on September 19, 2013. The order to show cause required Stephen C. Woodruff ("Respondent") to appear and show cause why he should not be held in contempt of court for failing to follow the orders set forth in this Court's June 7, 2013 Disciplinary Action: Disbarment ("Disbarment Order"). Respondent appeared *pro se*. Thomas E. Clifford appeared as Disciplinary Counsel.

The Court has reviewed its Disbarment Order, which has not been stayed, and finds Respondent has violated the order as stated below.

## II. STANDARD OF REVIEW

The proof for civil contempt must be clear and convincing. This standard is higher than preponderance of the evidence but lower than beyond a reasonable doubt. *See Commonwealth v. Aldan*, Crim No. 09-0103 (NMI Super. Ct. June 2, 2010) (Order Re: Contempt at 3) (internal citation omitted).

## III. APPLICABLE LAW

"'Contempt of court'" is an act or omission that interferes with the administration of justice, through conduct that disobeys judicial orders, shows disregard and disrespect for the authority and dignity of the law, or tends to embarrass, impede or obstruct the court in the performance of its functions." *Id.* at 4 (internal citation omitted). Upholding and ensuring the unimpeded and effective administration of justice, securing the dignity of the court, and affirming the fundamental supremacy of the law are the purposes of the law regarding contempt. *Id.* (internal citation omitted).

Judges can enforce their orders and affirm the rule of law for the benefit of the public by the sole means of the power of contempt, and it may constitute a violation of their sworn duty to fail to exercise it where appropriate. *Id.* (internal citation omitted). Courts would be mere boards of arbitration, whose judgments and decrees would be only advisory, without the power of contempt. *Id.* (citing *Gompers v Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911)). "Furthermore, without the power of contempt, courts would be rendered powerless, no other judicial power could be exercised, and our system of justice would be in continual danger of being thwarted by the lawless." *Aldan*, Crim. No. 09-0103 at 4 (citing *In re Contemnor Caron*, 110 Ohio Misc.2d 58, 71. Civil contempt flows from the Court's inherent powers and may be used by a Court to enforce compliance with its lawful orders. *Commonwealth v. Borja*, 3 N.M.I. 156, 164-65 (1992).

Contempt of court occurs when a party "violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Aldan*, Crim. No. 09-0103 at 4 (quoting *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673,678 (D.D.C. 1995)). Upon a prima facie showing that the alleged contemnor is not in compliance with the court's orders, the burden shifts to the alleged contemnor to produce evidence justifying his non-compliance. *Id.* When the burden shifts, the alleged contemnor has the burden of proving that it was impossible to comply with the court's order. *Id.* "Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *Id.* (citing *United States v. Raylander*, 460 U.S. 752, 757 (1983)).

2

Upon finding contempt, the court has the power to render an order forcing compliance; the contemnor then has the ability to purge the contempt and obtain his release by affirmatively acting, " . . . and thereby carries the keys of his prison in his own pocket." *Id.* (internal citations omitted).

## IV. DISCUSSION

Per the Court's Disbarment Order, Respondent was required to submit a list of current and pending clients to the Superior Court within thirty days of the entry of the order. The Disbarment Order was entered on June 7, 2013. As of the hearing held on September 27, 2013, no such list had been filed by Respondent.

The Disbarment Order also required Respondent to comply with all requirements set forth in Rule 15 of the Commonwealth Disciplinary Rules and Procedures ("Rule 15"). Rule 15(d) requires, within ten days after the effective date of the disbarment order, which in this case would be July 8, 2013, a disbarred attorney to file with the Superior Court an affidavit showing he has complied with the provisions of the order and the disciplinary rules, and that he has notified all other state, territorial, federal and administrative jurisdictions to which he is admitted to practice of the disbarment as may be required by the rules of such jurisdictions.

Rule 15 also requires a disbarred attorney to promptly notify by registered or certified mail, return receipt requested, all clients being represented in pending matters of the disbarment and advising such clients to seek other legal assistance. With regard to pending litigation or administrative proceedings, a disbarred attorney is required to notify the client of the disbarment, advise the clients to substitute another attorney, and to notify the attorney for any adverse party, stating the place of residence of the client for the disbarred attorney.

Compliance with the Disbarment Order also required Respondent to pay for any costs of the prosecution of this matter, to pay to any clients the sum of any unearned retainer fees, and to reimburse the

3

clients detailed in the Disbarment Order.[1]

As of the September 27, 2013 hearing and approximately eighty days after said due date of compliance, Respondent had not filed with the Superior Court the said affidavit showing compliance with any of the above mentioned mandates. Therefore the burden shifts to Respondent to show by clear and convincing evidence why he has not complied with this Court's order to do so. If Respondent fails to meet this burden, the Court may hold him in civil contempt. Thus, we turn to the Order to Show Cause hearing to see if Respondent has met his burden.

During the proceedings, Respondent was given ample opportunity to show why he had not complied with the requirements set forth in the Court's Disbarment Order, which also implicated Rule 15. The Court notes Respondent's presentation of arguments regarding his noncompliance, including that he had requested a stay from the Commonwealth Supreme Court in this matter, that he had already notified his clients of his inability to practice law when the Commonwealth Supreme Court suspended him in February 2013, that he did not have any clients when the Disbarment Order was issued, and the orders of payment were not final orders.

The Court, however, is not swayed by Respondent's arguments. There is currently no effective stay in place that could divest this Court of its jurisdiction. Respondent simply included one line in his appeal to the Commonwealth Supreme Court requesting a stay. First, there is no stay in place because the Supreme Court has not yet granted or denied Respondent's request. Further, a motion for a stay must follow the guidelines set forth in Rule 8 of the Northern Mariana Islands Supreme Court Rules, which entails specific requirements beyond that of a single sentence requesting a stay.[2] Regarding Respondent's argument that

---

[1] The cost of prosecution has been approved by the Court in the sum of $6,120.00. The reimbursement for several clients as set forth in the Disbarment Order is a total of $2,850.00. The court shall issue a judgement for this amount. Respondent is not required to show cause at this time for nonpayment of these amounts.

[2] Rule 8 of the Northern Mariana Islands Supreme Court Rules provides that a motion for a stay must include: "(i) The reasons for granting the relief requested and the facts relied on; (ii) original or copies of affidavits or other sworn statements supporting facts subject to dispute; and (iii) relevant parts of the record."

4

he had no clients to notify of his disbarment because the Supreme Court had suspended him since February 2013, the Court has no knowledge of this. The Supreme Court's suspension order of Respondent in February 2013 occurred long before the Disbarment Order and the Court fails to see a connection between that case and the current issue of disbarment and its requirements.

## V. CONCLUSION

The Court finds Respondent has not shown by clear and convincing evidence why he justifiably failed to follow the Disbarment Order of June 7, 2013, which also mandated compliance with Rule 15.

**BASED ON THE FOREGOING,**

**IT IS HEREBY ORDERED** Respondent Stephen Woodruff, be, and hereby is, adjudged in civil contempt of Court for noncompliance with this Court's Disbarment Orders issued on June 7, 2013.

**IT IS FURTHER ORDERED** that Respondent shall serve a five day jail sentence, all suspended, subject to the condition that Respondent comply with the requirements of the Disbarment Order, as detailed herein, by October 8, 2013.

**IT IS FURTHER ORDERED** Respondent is ordered to pay the costs of Disciplinary Counsel's time spent in preparing for and attending to the instant matter. Disciplinary Counsel shall submit his billing to the Court within ten (10) days of this Order.

**SO ORDERED this 2nd day of October, 2013.**

_____/ s / _____

DAVID A. WISEMAN, Associate Judge

FOR PUBLICATION

E-FILED
CNMI SUPERIOR COURT
E-filed: Dec 02 2013 03:17PM
Clerk Review: N/A
Filing ID: 54630609
Case Number: 13-0017-CV
N/A



### IN THE SUPERIOR COURT
### OF THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE MATTER OF:                    )        CIVIL CASE NO. 13-0017
                                        )
                                        )
                                        )
                                        )
STEPHEN C. WOODRUFF                     )        ORDER PARTIALLY REVOKING
                                        )        SUSPENDED SENTENCE
                                        )
                                        )
_____)

THIS MATTER came before the court on November 21, 2013, at 2:00 p.m. in Courtroom 223A pursuant to the court's order for a hearing wherein Stephen C. Woodruff ("Respondent") was called upon to explain his noncompliance with court orders regarding his disbarment. Specifically, Respondent was ordered to file an affidavit pursuant to Rule 15 of the Commonwealth Disciplinary Rules and Procedures and of the Disbarment Order entered in this matter. The Court found Respondent's affidavit to be noncompliant and set a hearing to allow Respondent to come forward and explain his noncompliance. On November 22, 2013, the court ordered that the five day suspended sentence imposed in its October contempt order would be revoked if Respondent did not submit his compliance with the Rule 15 and disbarment mandates, to be filed on or before November 26th at 9:00 am and which the court deemed satisfactory with respect to said compliance.

Although Respondent did file what is captioned as a Supplemental Rule 15 Affidavit, the court finds that this document still falls short of complying with Rule 15 and the disbarment order mandates.

Respondent has consistently throughout the proceeding in this matter refused to comply with the court orders regarding his disbarment and rule 15 mandates, by utilizing rhetorical positions and arguments that set forth frivolous arguments such as the non existent automatic stay, which he extensively argued at the October hearing and subsequent submissions.[1]

In addition, he has placed the blame for everything he is encountering with these and other ethical problems and proceedings by challenging the court's jurisdiction, blaming his clients, the Disciplinary Committee and its chairman, the Disciplinary Counsel, this court, the Supreme Court, the United States District Court for the Northern Mariana Islands, the United States Board of Immigration Appeals, and the Hawaii State Bar Association. Respondent has also accused the undersigned Judge of this court of being biased and prejudiced, although Respondent has never filed a written motion pursuant to the rules of court, nor has he ever stated any grounds for his accusations.

The court has been very patient with Respondent's reluctance and repeated attempts to avoid full compliance with said mandates to comply with the court's orders, however, the court's patience and temperance shall not prevent it from entering appropriate sanctions when warranted in order to protect and preserve the public's confidence in the administration of justice. Notwithstanding these allegations of blame there are still numerous clients who have been found to be harmed as well as those who have alleged harm as a result of Respondent's inactions and actions. At this point the court will place the events of this proceeding in chronological order.

  ▸    On June 7, 2013, the court filed an order disbarring Respondent. The order also required him

---

[1] On October 21, 2013, the Commonwealth of the Northern Mariana Islands Supreme Court denied Respondent's motion for stay pursuant to Northern Mariana Islands Supreme Court Rule 8.

2

to submit a list of clients, return unearned fees, and to comply with Rule 15 of the Commonwealth Disciplinary Rules and Procedures. Pursuant to Rule 15(d), Respondent was required to file an affidavit showing compliance within ten days of disbarment. Respondent failed to file anything.

► On September 19, 2013, far past the timetable of required submissions by Respondent the court issued an order for Respondent to show cause why he should not be held in contempt for his failure to comply with the court's disbarment order.

► On October 2, 2013, the court after a hearing, issued an order finding Respondent in contempt. The court gave Respondent a certain date to comply with its orders, including filing the Rule 15 affidavit. The court ordered a five day sentence for the contempt which it suspended on the condition that Respondent comply with its orders.

► On October 15, 2013, Respondent filed what he deemed to be an affidavit in compliance with Rule 15. The purported affidavit, however, was not in compliance with Rule 15 and additionally contained arguments previously rejected by this court.

► On November 22, 2013, the court issued an order giving Respondent until November 26, 2013, at 9:00 a.m. to comply with the court's disbarment order and Rule 15. The court also ordered Respondent to take certain actions regarding his former clients who testified at the November 21, 2013 hearing about the ongoing prejudice they were experiencing as a result of Respondent's actions or inactions.

► On November 26, 2013, Respondent filed a document labeled as a supplemental affidavit, which also fails to comply with Rule 15 and the Disbarment Order, and attempted to submit

3

an unauthorized in camera list of clients in federal matters.

In his supplemental affidavit, Respondent again argues that his original rule 15 affidavit was self explanatory and claims he is at a loss as to what more is required of him. The Disbarment Order was clear and unambiguous in ordering the following:

> [ ] Mr Woodruff shall comply with all provisions of Rule 15 of the NMI Disciplinary Rules, which includes, among other things, notices to clients and others and certifications to the court.

> [ ] Mr Woodruff shall submit a list of current and pending clients to the Commonwealth Superior Court within thirty days of the date of this order, and shall pay to any and all clients the sum of any unearned retainer fees.

*In re the Matter of Stephen C. Woodruff,* Civ. No. 13-0017 (NMI Super. Ct. June 17, 2013) (Disciplinary Action: Disbarment at 27).

Rule 15(d) requires Respondent to submit an affidavit indicating compliance with the rule:

> Within ten (10) days after the effective date of disbarment or suspension order, the disbarred or suspended attorney shall file with the Superior Court an affidavit showing:
> (1) that he or she has complied with the provisions of the order and with these rules; and
> (2) that he or she has notified all other state, territorial, federal and administrative jurisdictions to which he or she is admitted to practice of the disciplinary action as may be required by the rules of such jurisdiction(s). Such affidavit shall also set forth the residence or other addresses of the disbarred or suspended attorney where communications may thereafter be directed to him.

Rule 15 has several subparts; however, sections (a), (b), and (d) are material to this proceeding. These sections also require a disbarred attorney to notify all clients in pending matters of his disbarment and to advise them to substitute another attorney. These sections additionally prohibit a disbarred attorney from accepting any new retainers or engaging as an attorney in any new case or legal matters, giving thirty days from the order of disbarment to wind down any pending matters.

4

Respondent, in his supplemental affidavit, claimed that there are no unearned fees due to his clients. At the November 21, 2013 hearing, however, Mr. Nakamura and Mr. Cepeda testified essentially that this was untrue. Mr. Nakamura testified that he paid Respondent $200 to complete a CW-1 application for him, which was never filed with USCIS, jeopardizing his right to remain and work in the CNMI. Mr. Nakamura also testified that Respondent never notified him that he had been disbarred or suspended. Mr. Cepeda testified that he paid Respondent $3,120.00 for his wife's I-1-30. Respondent never completed the process and because Mrs. Cepeda was already in the removal process, Respondent essentially jeopardized any chance Mrs. Cepeda had for remaining in the CNMI with her family.

The supplemental affidavit also claims that Respondent had no clients as of the date of the Court's Disbarment Order because the Commonwealth Supreme Court had suspended him back in February 2013. Respondent then submitted only a list of clients which he claims are in the "federal fora." Respondent then gives excuses as to why he has not notified other courts or jurisdictions of his disbarment.

As a result of Respondent's willful noncompliance, the court finds it necessary and appropriate to partially revoke Respondent's five day suspended sentence. Because Respondent did submit something that partially complied with said orders, the court will not impose the whole five day sentence at this time. However, because what Respondent submitted was also noncompliant, and what the court finds to be significant misrepresentations to the court regarding the three former clients the court heard testimony from, as well as from an attorney who also testified of her representation of a former client of Respondent, and how the client's immigration and work status are jeopardized by Respondent's actions and inactions, the court now partially revokes suspension of three days of the five day sentence. The court finds this action to be necessary based on the testimony presented at the November 21, 2013 hearing, the refusal of

5

Respondent to accept any responsibility for the harm caused to former clients by his inactions and actions, and the record in this case. The court is very concerned about potential ongoing prejudice and injury to the rights of Respondent's former clients and finds it so disheartening that Respondent expresses no remorse or acceptance of any responsibility for the harm he has caused to many and listens to their testimony in his state of indifference.

The court will allow Respondent to report voluntarily to the Department of Corrections (DOC) at 8:00 a.m. on December 5, 2013. This option to report voluntarily to DOC shall cease to exist at 8:01 a.m. on December 5, 2013, and thereafter, Respondent shall be arrested and processed as any other person brought to DOC for detention to serve his three day sentence. Upon release, Respondent shall have five calendar days to comply with the aforementioned mandates. At the end of the five days, the court will set a hearing date to determine compliance and any other sanctions, if necessary.

Although Respondent maintains a position that this court has no jurisdiction for Rule 15 to apply with respect to clients he alleges are represented by him in the federal tribunals, the court disagrees with such position.

First, the only federal venue that Respondent is still allowed to practice in, is the U.S. District Court for the NMI.[2] Secondly, the list of nine persons that Respondent submitted to the court as being his federal clients are here in the CNMI, and if receiving advice from Respondent, are in the court's opinion, entitled to know, that their lawyer has been disbarred in the CNMI and is prohibited from practicing law in the CNMI although still allowed to practice in the U.S. District Court. Such clients should be aware of such

---

[2]Respondent, by order of March 20, 2013 was suspended from practicing before the Board of Immigration Appeals, Immigration Courts or the Department of Homeland Security.

fact, especially since his license to practice in said U.S. District Court is at the present time based solely on his license in the CNMI.

**IN VIEW OF THE FOREGOING,** the Court hereby partially revokes Respondent's suspended sentence and orders Respondent to serve three days by reporting to DOC on December 5, 2013 by 8:00 a.m., as detailed above.

**IT IS FURTHER ORDERED** Respondent shall file a certificate of compliance that he has informed those nine persons or clients pursuant to Rule 15, whose names he submitted to this court erroneously in-camera.

**IT IS FURTHER ORDERED** that upon release, Respondent shall have five calendar days to comply with the aforementioned mandates.  At the end of the five days, the court will set a hearing date to determine compliance and any other sanctions, if necessary.

**SO ORDERED this 2nd day of December, 2013.**

/ s /
_____

David A. Wiseman, Associate Judge

7



CL      CURT
S            IRT

2014 FEB 27  PM 4: 36

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE MATTER OF:              )        CIVIL ACTION No. 13-0205
                                  )        DISCIPLINARY CASE 2012-03
                                  )
                                  )        *SUBMITTED UNDER SEAL*
STEPHEN C. WOODRUFF,              )
                                  )        ORDER DENYING RESPONDENT'S
                                  )        MOTION TO DISMISS
        Respondent.              )
                                  )
_____ )

## INTRODUCTION

**THIS MATTER** came before the Court on February 5th, 2014, at 2:00 p.m. in Courtroom 223A, at which time the parties presented arguments regarding Respondent's Motion to Dismiss. At the hearing, Thomas E. Clifford ("Disciplinary Counsel") appeared as the attorney appointed to prosecute the disciplinary action, while Respondent appeared pro per.

On November 25, 2013, Respondent moved the Court to dismiss the disciplinary complaint against him pursuant to Commonwealth Rules of Civil Procedure 12(b)(1) and 12(b)(6). Respondent bases his motion on the following grounds: (1) he is already subject to an Order of Disbarment so there is no further relief that may be granted; (2) the Court lacks subject matter jurisdiction due to being unable to further discipline Respondent; (3) the Disciplinary Committee failed to follow certain procedures in filing the complaint, which violates Respondent's due process rights; and (4) multiple members of the Disciplinary Committee and the subsequent investigation have "profound" conflicts of interest and biases against Respondent. (Resp. Mot. to Dismiss, at 1-3.) Respondent also claimed the motion was based upon "the

accompanying memorandum of points and authorities in support of the motion, [and] the accompanying declaration of Stephen C. Woodruff . . ." (*Id.* at 2.) It is worth noting that these documents were never filed with the Court and no legal authority was otherwise provided in Respondent's Motion.

On December 6, 2013, Disciplinary Counsel filed his Opposition to the Respondent's Motion to Dismiss, citing the following bases: (1) relief should be granted because any discipline issued in this matter would be independently significant from the disbarment currently on appeal; (2) the Court has subject matter jurisdiction because Respondent's disbarment is not yet final and subsequent disciplinary charges accrued before the date of disbarment; and (3) unsupported allegations of bias should be summarily rejected. (Pet'r's Opp., at 2-4.)

The Court now addresses whether the complaint against Respondent should be dismissed pursuant to the Rules of Civil Procedure.

## LEGAL STANDARD

A motion to dismiss a complaint pursuant to NMI R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims within the complaint. *Camacho v. Micronesian Dev. Co.*, 2008 MP 8 ¶ 10. Generally, a complaint must satisfy the notice pleading requirements of NMI R. Civ. P. 8(a) in order to avoid dismissal under Rule 12(b)(6). *Cepeda v. Hefner*, 3 NMI 121, 126 (1992). NMI R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so that "fair notice of the nature of the action is provided." *Govendo v. Marianas Pub. Land Corp.*, 2 NMI 482, 506 (1992) (quoting *In re Adoption of Magofna*, 1 NMI 449 (1990)). A complaint fails to satisfy the pleading requirements of Rule 8(a) where it lacks a cognizable legal theory or fails to allege facts constituting a cognizable legal theory. *Bolalin v. Guam Publications, Inc.*, 4 NMI 176 (1994).

A complaint requires "more than a blanket assertion of entitlement to relief." *Sayed v. Mobil Oil Marianas, Inc.*, 2012 MP 20 ¶ 20. To be sufficient, a claim must contain "either direct allegations on every material point necessary to sustain a recovery on any legal theory . . . or contain allegations from which an inference fairly may be drawn." *In re Adoption of Magofna*, 1 NMI 449, 454 (1990). Essentially, dismissal

is improper unless the claimant can prove no set of facts in support of his claim which entitle him to relief. *Camacho*, 2008 MP ¶ 10 (quoting *Govendo*, 2 NMI at 283).

Further, in considering a motion to dismiss, a court must "review the contents of a complaint by construing it in the light most favorable to the plaintiff and accepting all well-pleaded facts as true." *Zhang Gui Juan v. Commonwealth of the N. Mariana Islands*, 2001 MP 18 ¶ 11 (citation omitted); *Cepeda v. Hefner*, 3 NMI 121, 127-28 (1992); *Govendo v. Marianas Pub. Land Corp.*, 2 NMI 482, 490 (1992). However, a court "has no duty to strain to find inferences favorable to the non-moving party." *Cepeda*, 3 NMI at 127 (citing *In re Magofna*, 1 NMI at 454). Lastly, the Court is not required to accept conclusions that are contradicted by the complaint's own exhibits or other documents of which the court properly takes notice. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 558 (9th Cir. 2008).

## DISCUSSION

### I. This Court Has Subject Matter Jurisdiction

First, the Court will address whether it has subject matter jurisdiction over the present case.

Respondent argues that the Court lacks subject matter jurisdiction because its disbarment order acts as the nuclear remedy for disciplining attorneys and the Court is left with no further available disciplinary action. Disciplinary Counsel refutes this argument by directing the Court's attention to Respondent's contradictory arguments in what is referred to as the "Nine Disciplinary Complaints Case,"[1] where Respondent argued that the Court cannot enforce its June 13, 2013 *Disciplinary Action: Disbarment* (the "Disbarment Order") because it is not yet final and is on appeal. As such, considering the Disbarment Order has not been finalized pending appeal, the Court retains jurisdiction to address other disciplinary complaints against Respondent.

Furthermore, the present case arises out of complaints made before the date of the Disbarment Order. There is no provision in the Disciplinary Rules and Procedures that excuses misconduct, warranting

---

[1] Disciplinary Cases Nos.: (1) 2008-008; (2) 2008-012; (3) 2009-001; (4) 2009-005; (5) 2011-012; (6) 2011-013; (7) 2011-014; (8) 2012-001; (9) 2012-004.

complaints and disciplinary action, that occurred before a Disbarment Order. This would foreclose the possibility of the Disciplinary Committee, and ultimately the Court, addressing professional misconduct independent from the acts which warranted the attorney's disbarment, and which occurred before the nuclear disciplinary action was entered.

Thus, the Court **FINDS** that subject matter jurisdiction exists in the present case.

**II.     Further Relief May Be Granted in This Case**

Next the Court responds to Respondent's argument that no further relief may be granted in this case, as the Court has already ordered his disbarment in a separate case.

First, the Court recognizes that Respondent has appealed his disbarment with the Supreme Court. *In re the Matter of Stephen C. Woodruff*, Supreme Court No. 2013-SCC-0030-CIV. The Supreme Court may choose to overturn or remand Respondent's disbarment order, in which case the Court's decision in this factually and legally distinct case would be independent from any previously issued sanctions.

Second, Disciplinary Counsel claims that the Court and the Commonwealth Bar Association have the right to recover the costs of prosecution in this matter. The Court agrees that, in the event of imposing discipline on Respondent in this case and pursuant to Rule 19 of the Commonwealth's Disciplinary Rules, Respondent will be ordered to pay costs and attorney's fees.

Thus, further relief, wholly independent from Respondent's disbarment in a separate case, may be granted against Respondent in this matter.

**III.    Allegations of Bias are Unsupported and Untenable**

Lastly, the Court addresses Respondent's allegations regarding bias and conflicts of interest.

Defendant alleges that "multiple members of the Disciplinary Committee participated in acting on Respondent's case despite having conflicts of interests and biases against Respondent." (Resp.'s Mot. to Dismiss, at 3.) Defendant supports these allegations by claiming that the Disciplinary Committee filed an original action in the Commonwealth Supreme Court without any legal authority to do so, and used the allegations of the present case to support the argument against Respondent. Respondent further claims this

is not the normal procedure contemplated by the Disciplinary Rules. The Court does not recognize these claims as rising to level of a violation of due process by the Disciplinary Committee, and holds that Respondent was properly served with notice as required by the Disciplinary Rules.

Further, Respondent claims that the "investigating attorney" referenced in paragraph 25 of the Complaint is an individual with "profound conflicts of interest and biases" against Respondent, "from whom Respondent under no circumstances could expect fair treatment." (Resp.'s Mot. to Dismiss, at 3.) The Court dismisses these allegations as unsupported, vague, and untenable in light of the surrounding circumstances of the case, and denies to give any weight to serious accusations devoid of any detail or factual support.

## CONCLUSION

In view of the foregoing, the Court hereby **DENIES** Respondent's Motion to Dismiss, holding that: (1) this Court has subject matter jurisdiction because further relief may be granted in this case, separate and independent from Respondent's disbarment in another case; and (2) Respondent's allegations of bias and conflict of interest are hereby rejected as unsupported and untenable.

**IT IS SO ORDERED** that the parties shall appear for an evidentiary hearing set for March 28, 2014 at 10:00 a.m. in Courtroom 223A.

**SO ORDERED** this 27th day of February, 2014.

/ s /
David A. Wiseman, Associate Judge

IN THE
**SUPREME COURT**
OF THE
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

**IN RE THE MATTER OF STEPHEN C. WOODRUFF,**
Respondent-Appellant.

**SUPREME COURT NO. 2013-SCC-0030-CIV**
SUPERIOR COURT NO. 13-0017

**ORDER GRANTING MOTION TO DISQUALIFY**

**Cite as: 2014 MP 9**

Decided August 26, 2014

Stephen C. Woodruff, Saipan, MP, Respondent, Pro Se
Thomas E. Clifford, Saipan, MP, for Petitioner CNMI Bar Disciplinary Committee

BEFORE: PERRY B. INOS, Associate Justice.

INOS, J.:

¶ 1          Following a default judgment in a disciplinary proceeding, Respondent-Appellant Stephen C. Woodruff ("Woodruff") was disbarred. On appeal, Woodruff filed a motion seeking, among other things, the disqualification of Disciplinary Counsel Thomas E. Clifford ("Clifford") because Clifford was simultaneously representing two of the complainants in a related small-claims suit. For the following reasons, this Court disqualifies Clifford, voids his motion to dismiss, and orders the appointment of a new disciplinary counsel to prosecute all of the disciplinary complaints.

## I.  Factual and Procedural Background

¶ 2          Kenneth and Wanlapha Warfle (collectively, "the Warfles") hired Woodruff to file Wanlapha's application for resident alien immigration status. Later, the Warfles claimed Woodruff botched the application and took two actions against Woodruff: They filed a disciplinary complaint with the CNMI Bar and a small-claim suit with the court. For the small-claims suit, the Warfles hired Clifford, who ultimately represented the couple pro bono. The small-claims suit is ongoing, though it has been taken off calendar because the parties are negotiating a settlement.

¶ 3          Following the start of the small-claims suit, Clifford was appointed as disciplinary counsel to prosecute nine disciplinary complaints against Woodruff, including the complaint filed by the Warfles.

¶ 4          Pursuant to his appointment, Clifford filed a formal disciplinary complaint and, shortly thereafter, a First Amendment Complaint ("FAC"). The FAC stated that: (1) the NMI Rules of Civil Procedure governed the timeline for answering the FAC; and (2) that under those rules, Woodruff had ten days from receipt of the FAC to file an answer. Woodruff missed the deadline, so Clifford filed a motion for default judgment, which was granted. The default judgment formed the basis for disbarring Woodruff.

¶ 5          After the disbarment, the trial court compelled Woodruff to deposit funds with the court that would sit in trust pending the resolution of additional matters, including the determination of appropriate compensation for the complainants. Later, the court issued an order of distribution dispensing the funds to the complainants. Some of that distribution went to the Warfles.

## II.  Discussion

¶ 6          Against that factual backdrop, Woodruff claims disqualification of Clifford is necessary because Clifford's representation of the Warfles in the related small-claims suit constitutes a conflict of interest. Clifford disagrees, arguing that his representation of the Warfles does not create a conflict of interest because the value of the Warfles' small-claims suit is small. Additionally, he was not compensated for representing the Warfles, and the purpose of his representation in the Warfle matter and this matter are the same: to minimize Woodruff's future harm to the public.

## A. *Disqualification*

¶ 7    This Court's cases have repeatedly held that prosecuting attorneys are "servants of the law . . . [who] must serve truth and justice first and foremost." *Commonwealth v. Jing Jin Xiao*, 2013 MP 12 ¶ 42. Consequently, "[t]heir 'job isn't just to win, but to win fairly, staying well within the rules.'" *Id.* (quoting *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993)). To meet that job description, prosecutors cannot prosecute cases in which they have a conflict of interest. *See Commonwealth v. Oden*, 3 NMI 186, 204 (1992) (evaluating whether the defendant's allegations constituted a conflict of interest that would compel the disqualification of the special prosecutor).

¶ 8    The rule against conflicts also applies to counsel appointed by the court. *See Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787, 804 (1987). In *Young*, a corporation alleged another company was illegally manufacturing counterfeit goods. *Id.* at 790. The parties agreed to a settlement that enjoined the company from reproducing the corporation's products. *Id.* Later, the corporation discovered that the other company was still making counterfeit goods. *Id.* at 791. The enjoining court then appointed the corporation's counsel as a special prosecutor to prosecute the company for criminal contempt. *Id.* at 792. The United States Supreme Court reversed the conviction because the appointment of an interested party's counsel (the corporation's counsel) to conduct the contempt proceedings was improper. *Id.* at 814. It reasoned that "a private attorney appointed to prosecute a criminal contempt . . . certainly should be as disinterested as a public prosecutor who undertakes a prosecution." *Id.* at 804.

¶ 9    Consistent with *Young*, courts generally agree that when a prosecutor's private interests and official obligations collide, the prosecutor cannot pursue both simultaneously. *See Sinclair v. Maryland*, 363 A.2d 468, 477 (Md. 1976) (collecting cases).

¶ 10    For example, in *In re Ridgely*, 106 A.2d 527 (Del. 1954), a man bought a seemingly new car from an auto dealership. *Id.* at 528. In fact, the previous owner had driven the car about 800 miles, been in an accident, and then traded it in. *Id.* The man was referred to an attorney who, similar to here, served as both a prosecutor and a private attorney. *Id.* at 529. The attorney agreed that the facts warranted criminal proceedings but "sought to dissuade [the man] from immediate prosecution because he thought such a course would delay a civil settlement." *Id.* Later, the attorney sent the man to the Attorney General's Office to reduce his statement into writing. *Id.* Following this, the attorney swore out warrants but told the clerk of court not to serve them because serving the warrants would have impeded the man's ability to receive compensation. *Id.* When the man finally settled, the attorney asked for attorney fees. *Id.* at 530. The attorney's dual representation, according to the Delaware Supreme Court, was wrong because when an attorney is both a private practitioner and a prosecutor, "[h]is private interest must yield to the public one." *Id.* at 531. Dual representation violates the spirit of that duty because it "necessarily tends to destroy the confidence of the public" in the administration of justice. *Id.* at 532. That was true even though there

was no evidence that the attorney threatened the dealership with criminal prosecution or intentionally used his powers in office to obtain money. *Id.*

¶ 11        Similarly, in *Sinclair*, 363 A.2d at 470, The Great Oak Lodge ("Lodge") bought a shipment of meat. When the meat was delivered, the seller was paid with bad checks signed by the defendant. *Id.* When the checks bounced, the prosecutor filed a criminal information. *Id.* The defendant responded with a motion to disqualify the prosecutor because of a conflict of interest flowing from the prosecutor's representation of several of the Lodge's creditors in matters involving the defendant. *Id.* at 471. The trial court denied the motion, reasoning that a consistently adverse interest did not lead to a conflict of interest. *Id.* at 472 n.3. On appeal, Maryland's highest court rejected the trial court's reasoning. Extrapolating from precedent barring public officials from participating in matters where they held "'a personal or pecuniary interest, direct or indirect, in the outcome,'" *id.* at 475 (quoting *Montgomery Cnty. v. Walker*, 180 A.2d 865, 868 (Md. 1962)), the court held that if a reasonable person would believe that the prosecutor had "any pecuniary interest or a significant personal interest[1] in a civil matter" that might affect his prosecutorial obligations, then, as a matter of public policy, the prosecutor must be disqualified. *Sinclair*, 363 A.2d at 475.

¶ 12        Like the previous courts, this Court holds that a prosecuting attorney must be disinterested. This proposition is a natural corollary to the long-settled principle that the justice system must avoid even the appearance of impropriety. Allowing prosecutors to prosecute criminal or quasi-criminal cases when they have an interest in a related civil proceeding would do the exact opposite. Such representation would trigger suspicion each time a prosecutor wielded his or her extensive discretion to investigate and prosecute. That suspicion, in turn, would undermine the public's faith in the justice system. Consequently, to maximize faith in the judicial process, prosecuting attorneys must be disinterested from the start of the appointment through the close of the representation. To disqualify a prosecutor on this ground, the party seeking disqualification must show through clear and convincing evidence[2] that the prosecuting attorney possesses any pecuniary interest or a significant personal interest in a related civil matter that might give rise to an appearance of impropriety.

¶ 13        Here, as in *Young*, *In re Ridgely*, and *Sinclair*, Clifford represented an interested party in a civil matter and served as the prosecutor in a related proceeding. The representation of the Warfles in their small-claims suit against Woodruff meant that Clifford was not, and could not, be disinterested in the concurrent disciplinary proceeding founded in part on the Warfles' disciplinary complaint. *See Ganger v.*

---

[1]    The Delaware Supreme has held that a significant personal interest includes representing a victim in a related matter. *In re Ridgely*, 106 A.2d 527, 530-31 (Del. 1954) ("[A prosecutor's] representation of the [victim] at once gives him a personal interest in the matter that disables him from the proper performance of his official duty.").

[2]    *Cf. United States v. Kahre*, 737 F.3d 554, 574 (9th Cir. 2013) (holding that "proof of a conflict must be clear and convincing to justify removal" and then discussing cases placing that burden on the defendant).

*Peyton*, 379 F.2d 709, 714 (4th Cir. 1967) (holding that a public prosecutor cannot "attempt[] at once to serve two masters," one the public, the other a client who had a particular interest in the prosecution). Because Clifford is not disinterested, disqualification is necessary.[3]

### B. *Effect of Filing Motion for Disqualification for the First Time on Appeal*

¶ 14    Because Clifford has prosecuted this disciplinary proceeding from the onset, the next question is whether his disqualification requires reversal of the entire matter.

¶ 15    That answer depends on when the motion was first filed. If a party files a motion that is denied at the trial level but granted on the appellate level, reversal is necessary. *Young*, 481 U.S. at 809-10 (stating that "some errors are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case.") (internal quotations omitted). If, on the other hand, a party files a motion to disqualify for the first time on appeal, then the defendant must show prejudice. *United States v. Lorenzo*, 995 F.2d 1448, 1453 (9th Cir. 1992) (quoting *United States v. Heldt*, 668 F.2d 1238, 1277 (D.C. Cir. 1981)). *See also United States v. Turner*, 651 F.3d 743, 747-48 (7th Cir. 2011) (applying plain-error review, which requires prejudice and more, when a party raises disqualification as an issue for the first time on appeal). The temporal distinction is grounded in sound public policy: Requiring prejudice for tardy motions encourages defendants to file motions at the beginning of the prosecution, not months or years later during the appeal. In contrast, not requiring prejudice would reward defendants for withholding their challenge because they could wait and see how their trial went before deciding whether to file a motion to disqualify. If their trial went well, they would not file a motion. If it went poorly, they would file a motion and get a new trial. In other words, not requiring prejudice would invite attorneys accused of misconduct to waste judicial resources and squander taxpayer funds by withholding a disqualification challenge until after a first conviction. That is an invitation this Court declines to extend.

¶ 16    Here, there was no prejudice. Woodruff alleged one point of potential prejudice: A statement from Clifford that he may have filed a default motion quicker than he normally might in non-disciplinary cases. This statement, however, is not prejudicial for three reasons. First, lawyers have a duty to "act with reasonable diligence and promptness." MODEL RULE OF PROF'L CONDUCT 1.3. Following this command normally is not grounds for prejudice. Second, the statement does not suggest what Woodruff claims it does—that Clifford acted quickly because of his relationship with the Warfles. Instead, the context of that statement suggests Clifford acted quickly for a different reason: To minimize the litigation costs of taxpayers (who pay half Clifford's fees) and the Bar (which pays the other half). Third, Clifford's alleged inconsistency is not the product of a conflict of interest, but rather that of the different forms of client Clifford represents in the two situations. In non-disciplinary cases, Clifford needs to consult a client

---

[3]    Although Clifford is disqualified because of a conflict of interest, the disqualification in no way implies that he acted improperly in carrying out his duties as disciplinary counsel.

before filing a default motion. That consultation can take time and, ultimately, is decided by the client. Thus, Clifford might not file a motion for default on the first day available (or even at all) depending on how quickly the client responds and what that response authorizes. By contrast, in disciplinary cases, Clifford cannot consult his client (the public) about whether to file; thus, he need not wait.

¶ 17    Because there was no prejudice, this appeal will continue forward.

### C. *Scope of the Disqualification*

¶ 18    Having determined that the matter will move forward, the next question is the scope of Clifford's disqualification. Clifford was appointed to prosecute nine complaints, only one of which was brought by the Warfles. As a result, the Court must decide whether to disqualify Clifford from prosecuting the entire case or just from prosecuting the Warfles' complaint.

¶ 19    To resolve this question, the parties did not offer, and the Court did not identify, any compelling authority. Nonetheless, prudential concerns counsel in favor of full disqualification. Specifically, there is no need (or benefit) to split representation because the appellate issues for the Warfles and the other complainants are identical. However, there is a cost. Splitting representation would create additional briefing, hearings, orders, and opinions. This additional process would expend extra time, money, and resources from all involved. It would also harm parties beyond this case by delaying the decisions in their cases. *See Commonwealth v. Guerrero*, 2014 MP 4 ¶ 11 (Slip Opinion, April 1, 2014) ("[T]ime consumed relitigating one case subtracts from the time available to litigate others.") (internal quotation omitted).

¶ 20    Because split representation would increase costs without achieving a corresponding benefit, this Court disqualifies Clifford from the entire matter.

### D. *Effect of Disqualification on DC's Other Motions*

¶ 21    That leaves one issue: the status of the motions Clifford filed following Woodruff's motion to disqualify.

¶ 22    The Sixth Circuit has decided this question under different circumstances. In *Bowers v. Ophthalmology Group*, 733 F.3d 647, 649 (6th Cir. 2013), Bowers filed a lawsuit against his former employer seeking relief for retaliation and gender discrimination. The employer filed a motion to dismiss, which was converted to a motion for summary judgment. *Id.* at 650. Bowers replied with a motion to disqualify his employer's lawyer because the lawyer's firm had previously represented Bowers in two other matters. *Id.* The trial court granted the employer summary judgment and then dismissed Bower's motion to disqualify as moot. *Id.* On appeal, the Sixth Circuit reversed. *Id.* at 649. In so doing, the Sixth Circuit held that a trial court "must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely." *Id.* at 654. If the disqualification is granted, "a court should not reach the other questions or motions presented to it through the disqualified counsel." *Id.* In such cases, a court should

not reach these unanswered issues because the disqualified attorney could have used confidential information to "infect the evidence presented to the [] court." *Id*

¶ 23        Although *Bowers* differs from this case in a key respect—there is no danger of confidential information infecting the evidence—the process followed in *Bowers* strikes this Court as appropriate for three reasons. First, the court handling the case cannot know to what extent the disqualified counsel's conflict colored the pending motions; thus, it is safest to give replacement counsel a chance to make an independent judgment.[4] Second, because the motion has not been decided, it seems equitable to permit replacement counsel the option whether to adopt the disqualified counsel's pending motions. Third, providing replacement counsel with this option preserves judicial resources by freeing the court from deciding motions the replacement counsel chooses not to pursue.

¶ 24        Therefore, courts must decide disqualification motions before dispositive motions. If the disqualification motion is granted, pending motions filed by the now-disqualified counsel are void. If, however, the voided motions likely are not infected by evidence garnered through confidential information, then later counsel may renew the motions.

¶ 25        Applying these rules here, this Court has disqualified Clifford; thus, Clifford's motion to dismiss the appeal because Woodruff's brief allegedly was not in substantial compliance with the NMI Supreme Court Rules is void.  Because, however, the motion is based on publicly available information (i.e., the brief Woodruff filed), there is little risk that the motion is infected with confidential information. Therefore, the next prosecuting attorney may renew the motion.

### III.  Conclusion

¶ 26        For the reasons above, this Court disqualifies Clifford and voids his motion to dismiss. Following this order, the Court will appoint new counsel to prosecute the appeal, which shall continue from its present point. After that appointment, the Court will also issue a new due date for the response brief.


SO ORDERED this 26th day of August 2014.


_____/s/_____
PERRY B. INOS
Associate Justice


---

[4]        This Court declines to extend this opportunity to motions already decided for two reasons. First, declining to do so encourages a party to file its motion to disqualify promptly. Second, relitigating motions already decided would waste judicial resources and slow litigation not only for the parties in the present case, but also parties in other cases waiting for the Court's attention. *Guerrero*, 2014 MP 4 ¶ 11.

*By the order of the court, Judge David A Wiseman*

**FOR PUBLICATION**



E-FILED
CNMI SUPERIOR COURT
E-filed: Mar 09 2016 03:04PM
Clerk Review: N/A
Filing ID: 58690667
Case Number: 13-0017-CV
N/A

## IN THE SUPERIOR COURT
## OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE MATTER OF:

STEPHEN C. WOODRUFF,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL CASE NO. 13-0017**
**Disciplinary Cases**
**1) 2008-008; 2) 2008-12; 3) 2009-001; 4)**
**2009-05; 5) 2011-012; 6) 2011-013; 7) 2011-**
**014; 8) 2012-001; 9) 2012-004**

**ORDER RE: DISTRIBUTION OF**
**MONIES PER DISCIPLINARY ORDERS**

**ORDER PARTIALLY GRANTING**
**RESPONDENT'S REQUESTS FOR**
**RELIEF**

## INTRODUCTION

**1. Disbarment Order**

      This disciplinary matter has been pending for over three years, first commencing in February 2013. On June 7, 2013, this Court entered a default judgment against Respondent, Stephen C. Woodruff, and ordered him be disbarred in a 28-page order. Specifically, the Court ordered the following:

        1.    Woodruff is forthwith disbarred from the Commonwealth Northern Marianas Bar.

        2.    Woodruff shall pay any costs for the prosecution of this matter. This amount shall be paid to the Court.

        3.    Woodruff shall comply with all provisions of Rule 15 of the NMI Disciplinary Rules, which includes, among other things, notices to clients and others and certifications to the Court.

        4.    Woodruff shall submit a list of current and pending clients to the Commonwealth Superior Court within thirty days of the date of this

order, and shall pay to any and all clients the sum of any unearned retainer fees.

5. The Court adopts some of the Disciplinary Counsel's recommendations as to reimbursement for the clients involved in the disciplinary cases above:

a. Action 2008-08: Kenneth and Wantapha Warfle shall be refunded $600.00 in attorney's fees.

b. Action 2008-012: Ambrosio V. Baing shall be refunded $50.00 in attorney's fees, plus $1,000.00 in liquidated damages.[1]

c. Action No. 2009-001: Invictus T. Feliciano shall be refunded $300.00 in attorney's fees.

d. Action 2009-005: Honorio G. Cambronero shall be refunded $100.00 in attorney's fees for the labor case that was dismissed with prejudice due to Mr. Woodruff's misconduct.

e. Action 2011-012: Emily Santos Garde shall be refunded $300.00 of the $1,200.00 in attorney's fees.

f. Action No. 2011-013: Ana E. Reyes shall be refunded $500.00 of the $2,510.00 in attorney's fees.

g. Action No. 2011-014: Esperanza Ellis shall not be compensated due to her signed declaration indicating she did not want to see Mr. Woodruff pursued.

h. Action No. 2012-001: Jihyun Lee shall not be compensated due to her signed declaration indicating she did not want to see Mr. Woodruff pursued.

6. Disciplinary Counsel in this matter shall submit his attorney's fees and costs of prosecution within fifteen days of this Order.

**2. Money Held by the Court Pending Resolution of the Lawsuit**

Following the issuance of the disbarment order, the Court ordered Woodruff to assign funds to the Court to satisfy his resulting payment obligations, pending resolution of the instant disciplinary action. Woodruff entered into the assignment contract with this Court. The assignment states that, on April 15, 2014, Woodruff, the assignor, irrevocably assigned $29,747 to the Commonwealth of the Northern Mariana Islands Superior Court, the assignee. No disbursements have been made from this account as of date.

---

[1] The Court reviewed the case history and finds that basis for the $1,000 in liquidated damages was unsupported. Therefore, in the Court's monies disbursement order, Ambrosio V. Bang will only be refunded $50 in attorney's fees.

2

**3. Attorney's Fees Granted to the Former Disciplinary Counsel**

To date, this Court has issued three rulings as to attorney's fees and cost awards to the former disciplinary counsel, Thomas E. Clifford. On October 15, 2013, the Court awarded $14,389 in attorney's fees and costs to Attorney Clifford for his services up to said date. On October 25, 2013, the Court further awarded $660 in attorney's fees and costs to Attorney Clifford. The last attorney's fees and costs award was granted on November 5, 2015, where the Court awarded $12,620 to Attorney Clifford. Said award was issued to Attorney Clifford on account of the termination of his services as disciplinary counsel, which came as a result of a ruling by the Supreme Court. *In re Woodruff*, 2013 MP 1. To date, the Court has awarded by court order a total of $27,669 in attorney's fees and costs to Attorney Clifford.

**4. Supreme Court Opinion and Mandate**

In an opinion issued on December 9, 2015, the Supreme Court affirmed this Court's disbarment order. *In re Woodruff*, 2015 MP 11 ¶ 1. Woodruff filed for a petition for rehearing, which was subsequently denied. A mandate was issued, and jurisdiction returned to this Court on January 29, 2016.

**5. Motions Filed and the January 30, 2016 Order**

Following the mandate, Woodruff filed three motions in this Court, later withdrawing his motion to request disposition for an earlier request for ruling. Woodruff requests the following relief: (1) to vacate the Court's November 5, 2015 judgment order, granting attorney's fees to Attorney Clifford in the amount of $12,620; (2) to amend the Court's October 13, 2015 attorney's fees and costs award from $14,389 to $6,120; and (3) to authorize distribution of funds to three of Woodruff's former clients.

On January 30, 2016, the Court ordered a expedited briefing schedule from Woodruff and disciplinary counsel, George L. Hasselback. After which, the Court stated that it would issue its ruling without a hearing.

Based on briefs filed by the parties and the applicable law, the Court hereby **PARTIALLY**

3

**GRANTS** Woodruff's requests for relief, by amending the Court's attorney's fee and costs order of November 5, 2015 from awarding $14,389, to awarding $6,120. It also **VACATES** the Court's November 5, 2015 attorney's fees and cost order. The Court also hereby **ISSUES** a monies disbursement order to satisfy court-ordered obligations to Woodruff's former clients and for Attorney Clifford's attorney's fees and costs. Finally, the Court **ISSUES** an order for attorney's fees and costs to Attorney Clifford in the amount of $12,620, subject to further review by the Court upon any objections by Woodruff or responses by the former disciplinary counsel.

## DISCUSSION

**A. The October 15, 2013 Attorney's Fees and Costs Order.**

Woodruff argues that the October 15, 2013 judgment order awarding attorney's fees and costs should be amended because Attorney Clifford's award was limited to the Court's finding in its October 2, 2013 ORDER RE: CONTEMPT. In the contempt order, the Court found that the accumulated attorney's fees and costs until October 15, 2013 was limited to what was stated in footnote 1, page 4 of said order: that "The cost of prosecution has been approved by the Court in the sum of $6,120.00."

Therefore, the Court is persuaded that the $14,389 figure is improper. The Court amends its October 15, 2013 judgment order to reflect the correct amount of $6,120.[2]

**B. The November 15, 2015 Attorney's Fees and Costs Order.**

Woodruff also argues that the November 15, 2015 attorney's fees and costs order should be vacated because he was not afforded a meaningful opportunity to contest the attorney's fees and cost award of $12,620. The $12,620 figure comprises of the combined attorney's fees and costs as billed to Invoice

---

[2] Woodruff does not state an objection to the $6,120 attorney's fees and cost award to Attorney Clifford. To the extent that Woodruff seeks a conditional court finding (to an amount he agrees with) in exchange for a waiver of any future objections to the $6,120 award, the Court is not inclined to reconsider its earlier findings with respect to this issue as stated.

4

Numbers 3057[3] and 3058[4]. In its attorney's fees and costs order, the Court found that the $12,620 award was reasonable.

The Court takes judicial notice that Woodruff has not had an opportunity to review the contested invoices pursuant to Rule 19(c) of the Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth, as effective on July 24, 1999.[5] Accordingly, the Court vacates its November 15, 2015 attorney's fees and costs order. The Court attaches Invoice Numbers 3057 and 3058 to the instant order and allows Woodruff an opportunity to raise his objections on expedited basis as to the $12,620 award, and also allows Attorney Clifford to make a special appearance in order to file a response. Allowing former Disciplinary Counsel to contest Woodruff's objections is proper under due process principles requiring notice and a meaningful opportunity to be heard before any deprivation of a property right takes place. *Premier Ins. Co., Inc. v. Commonwealth Dep't of Labor*, 2012 MP 16 ¶ 8.

Therefore, at this time, the Court orders that Attorney Clifford be awarded the combined amount of $6,780.[6] Pursuant to Rule 8(a), payment to the former disciplinary counsel shall be paid by the Court and the CNMI Bar Association in equal shares—the respective amount of $3,390.

On the remaining issue of awarding $12,620 to Attorney Clifford for his services, Woodruff and the former disciplinary counsel may be heard on this matter, but only to the extent of the $12,620 attorney's fee and costs award. The Court will not entertain any other issue outside of said attorney's fees and costs.

---

[3] Billed in the amount of $4,420 for work done between the periods of February 5, 2014–September 19, 2014 for Disciplinary Case 2012-03.

[4] Billed in the amount of $8,200 for work done between the periods of February 7, 2014–August 26, 2014 for Disciplinary Case Nos. 2008-008; 2008-012; 2009-001; 2009-005; 2011-012; 2011-013; 2011-014; 2012-001; 2012-004.

[5] The Disciplinary Rules have since been amended, effective February 14, 2015.

[6] As decided in the amended October 15, 2013 order ($6,120) and October 25, 2013 order ($660).

## C. Authorized Distribution of Monies.

The Court next turns to the issue of Woodruff's request to authorize distribution of monies to three of his former clients. Woodruff seeks disbursement of monies to Kenneth and Wanlapa Warfle[7], Emily Santos Garde,[8] and Ana E. Reyes.[9] The requested disbursement money amounts are the same as found in the disbarment order. However, if monies are to be disbursed to Woodruff's former clients, the Court must disburse the monies in accordance with the findings and rulings in this disciplinary matter.

Accordingly, the Court issues the following order disbursing monies from the $29,747 currently held by the Court. Said disbursement shall be made in accordance with the disbarment order, as to six of Woodruff's former clients, and as ordered in the Court's November 22, 2013 ORDER AFTER HEARING, authorizing disbursement of $200 through Ms. Eileen Wisor, for the account of Mr. Kazinori Nakamura.[10]

The Court also orders disbursement of $3,000 to Mr. Frank Cepeda, in accordance with the findings made subsequent to issuance of the November 22, 2013 order.[11] The Court further orders disbursement of $3,390, respectively, to both the CNMI Bar Association and to this Court, pursuant to Rule 8(a).

## D. Matters Dealing with the Merits of Woodruff's Disciplinary Case.

The Court notes that in his motion and in his reply brief, Woodruff appears to argue the merits of his disciplinary case. Woodruff is reminded that he no longer has standing to contest issues of liability. To the extent that Woodruff argues that the Court's previous factual findings are erroneous—those arguments are disregarded as immaterial. Woodruff is further reminded that the Supreme Court affirmed the Court's

---

[7] In the amount of $600.

[8] In the amount of $300.

[9] In the amount of $500.

[10] The Court has since corrected the former client's name. The November 22, 2013 order misspells Mr. Nakamura's name as Nakamura Kazinori.

[11] The Court's ruling on this matter was once made in the Order of Distribution, issued on June 26, 2014, but later vacated on July 18, 2014. The basis for vacating the order, among other reasons, was Woodruff's appeal of the Court's disbarment order that was then-pending in the Supreme Court.

6

disbarment order in full. Woodruff is hereby instructed to not raise arguments in future filings that are related to the merits of his disciplinary case, unless the Court instructs otherwise.

**E. Disbursement Order.**

Accordingly, and based on counsels' arguments in the briefs, a review of the case history, and the applicable law, the Court hereby **ORDERS** the following distribution of monies as to each Disciplinary Case initiated against Woodruff; for distribution of monies according to subsequent findings made in compliance with the disbarment order; and for court-ordered attorney's fees and costs to Attorney Clifford, excluding those attorney's fees and costs billed to Invoice Numbers 3057 and 3058:

**(a)** The Clerk of Court shall issue checks from the $29,747 held by the Court pending resolution of the lawsuit as follows:

1. In connection with Disciplinary Case No. 2008-0008, and based on this Court's June 7, 2013 disbarment order, a check in the amount Six Hundred Dollars ($600) to Kenneth and Wanlapa Warfle, 425 Neptune Ave, Encinitas, CA 92024.

2. In connection with Disciplinary Case No. 2008-012, and based on this Court's June 7, 2013 disbarment order, a check in the amount of Fifty Dollars ($50) to Ambrosio V. Baing, PMB 1634 PO Box 10005, Saipan, MP 96950.[12]

3. In connection with Disciplinary Case No. 2009-001, and based on this Court's June 7, 2013 disbarment order, a check in the amount of Three Hundred Dollars ($300) to Invictus T. Feliciano, PO Box 504279, Saipan, MP 96950.

4. In connection with Disciplinary Case No. 2009-005, and based on this Court's June 7, 2013 disbarment order, a check in the amount One Hundred Dollars ($100) to Honorio G. Cambronero, PO Box 504279, Saipan, MP 96950.

5. In connection with Disciplinary Case No. 2011-012, and based on this Court's June 7, 2013 disbarment order, a check in the amount of Three Hundred Dollars ($300) to Emily Santos Garde, PO Box 503250, Saipan, MP 96950.

---

[12] As stated in footnote 1 of this ORDER, Ambrosio V. Baing is only entitled to $50 in reimbursement for attorney's fees.

7

6. In connection with Disciplinary Case No. 2008-012, and based on this Court's June 7, 2013 disbarment order, a check in the amount of Five Hundred Dollars ($500) to Ana E. Reyes, PO Box 502286, Saipan, MP 96950.

7. In connection with the Disciplinary Complaint of Kazinori Nakamura, and based on this Court's November 22, 2013 order, a check in the amount of Two Hundred Dollars ($200) to Kazinori Nakamura c/o his counsel Eileen Escudero Wisor, PO Box 506500, Saipan, MP 96950.

8. In connection with the Disciplinary Complaint of Frank Herman Cepeda, and based on the findings made subsequent to this Court's November 22, 2013 order, a check in the amount of Three Thousand Dollars ($3,000) to Frank Herman Cepeda, PO Box 5623, Saipan, MP 96950.

9. In payment of the Commonwealth of the Northern Mariana Islands Bar Association's payment of fifty percent of the former Disciplinary Counsel's fees and costs in this case as ordered to date pursuant to Disciplinary Rule 8(a), and in accordance to the Court's orders of October 15, 2013 (as amended in this ORDER) and October 25, 2013, a check in the amount of Three Thousand and Three Hundred Ninety Dollars ($3,390) to the Commonwealth of the Northern Mariana Islands Bar Association, PO Box 504539, Saipan, MP 96950.

**(b)** The Clerk of Court shall disburse from the $29,747 held by the Court pending resolution of the lawsuit as follows:

10. In reimbursement of the Commonwealth of the Northern Mariana Islands Superior Court's payment of fifty percent of the former Disciplinary Counsel's fees and costs in this case as ordered to date pursuant to Disciplinary Rule 8(a), and in accordance to the Court's orders of October 15, 2013 (as amended in this ORDER) and October 25, 2013, a check in the amount of Three Thousand and Three Hundred Ninety Dollars ($3,390) to the Superior Court of the Commonwealth of the Northern Mariana Islands.

//

//

//

8

**F. Objections to the Final Attorney's Fees and Costs Award to Attorney Clifford.**

Attached to this order shall be Invoice Numbers 3057 and 3058 submitted by Attorney Clifford to the Court.[13] Pursuant to Rule 19(c), Woodruff shall have 7 calendar days from the issuance of this order to submit his objections to the $12,620 in attorney's fees and costs awarded to Attorney Clifford, as stated in the vacated November 5, 2010 order. If Woodruff files his objection, the Court shall schedule a hearing to determine final disposition of this matter—with the exception of current Disciplinary Counsel's attorney's fees and costs. Attorney Clifford may also file an opposition on or before 5 calendar days after Woodruff's permitted filing, if one were to be filed.

In accordance with the outcome of such hearing, if it were to occur, the Court shall find the attorney's fees and costs award in the amount of $12,620 to be the final order on this issue or shall amend the attorney's fees and costs award to reflect the appropriate amount of money to be paid to Attorney Clifford as to Invoice Numbers 3057 and 3058. If Woodruff chooses not to object to the $12,620 amount, an attorney's fees and award order shall be issued from the Court in this instant matter after Woodruff's filing deadline has passed.

**SO ORDERED** this 9th day of March, 2016.

/s/_____
David A. Wiseman, Associate Judge

---

[13] The invoices are attached as Exhibit A to this order.

9