Rexford C. Kosack
Law Offices of Rexford C. Kosack
Second Floor, Bank of Hawaii Building
P.O. Box 500410
Saipan, MP  96950
Tel:  (670) 322-8800
Fax:  (670) 322-7800

**Prosecuting Counsel**

FILED
Clerk
District Court

JUN 1 4 2016

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

IN RE THE MATTER OF

STEPHEN C. WOODRUFF,

    Respondent.

MISC. CASE NO. 13-00061

FILED UNDER SEAL

**REPLY MEMORANDUM:
DISPOSITION IN DISCIPLINARY
ACTION**

**Hearing Date:  June 15, 2016 at 3:30 p.m.**

### *Introduction*

Even though the merits trial is over, there is still a lingering question -- **why is it that Stephen Woodruff never filed the Opening Brief for his client?**  This is not a case of simply missing a deadline and then filing a brief late.  This is a case where Woodruff ignored repeated opportunities over the course of nearly five years to file the Opening Brief.  For some unknown reason, he refused to file a brief – even though it would have saved his client's appeal.  This case is not about missing a deadline, it is about client abandonment.

Look once again at the **uncontested facts**:

Woodruff missed the November 16, 2009 deadline to file the Appellant's Opening Brief.  He was reminded the very next day, on November 17, 2009, by opposing counsel that he missed the deadline.  He took no action.  On February 17, 2010, he received a Motion to Dismiss the

DISPOSITION MEMORANDUM (REPLY) - 1

Appeal filed by opposing counsel. He still did not file a brief. He did not even file a response to the motion to dismiss. The appeal was dismissed on March 4, 2010 by the Ninth Circuit.

Mr. Subbaiah, the client, ended up filing a motion for reconsideration. It worked. The Ninth Circuit on April 7, 2010 stated the appeal would be reinstated if the Opening Brief is filed in 45 days. Woodruff saw that order. He drafted a motion for reinstatement and a declaration of counsel – but for some unknown reason, he did not draft an Opening Brief.

The motion for reinstatement and declaration of counsel were filed, allegedly by Mr. Subbaiah. The Ninth Circuit on December 2, 2011 stated the Opening Brief could be filed in 28 days. Woodruff saw that order. He still did not file the Opening Brief.

Mr. Subbaiah then filed a handwritten letter. The Ninth Circuit on August 19, 2014 said the case would remain closed without a brief. But, it added: "if a renewed motion is submitted along with the opening brief, the remainder of the briefing schedule will be reset." Ex. 30. In other words, Woodruff had a third chance after his client's appeal had been dismissed to file a late brief. And, still he did not file an Opening Brief.

Was it impossible for Woodruff to put together the brief – a brief that he had not only promised, but had already been paid to write? He had nearly 5 years to right his wrong.

In the end, Mr. Subbaiah's lawsuit for unlawful employment practices under Title VII (employment discrimination) and the Americans with Disabilities Act, was never heard. It was lost on summary judgment, then challenged on appeal; but, the appeal brief was never filed.

Let's review these facts with respect to what they show about Woodruff's conduct:

**Woodruff Had 108 Days to File the Brief Before the Court Dismissed the Appeal**

Woodruff did not just miss filing the Appellant's Opening Brief on November 16, 2009 – he also failed to file it after he was reminded on *the very next day* by opposing counsel that the deadline had run, and he failed to file the brief when confronted with a motion to dismiss the appeal

DISPOSITION MEMORANDUM (REPLY) - 2

on February 7, 2010. Ex. 19. <u>It is one thing to miss a deadline</u> – perhaps, due to an oversight, a calendaring error, or the rush of other business – <u>but, it is quite different to continue to miss that deadline for the following 108 days despite repeated warnings that your brief is still due.</u> Why did Woodruff turn a blind eye and a deaf ear to his duty to file a brief for his client?

**Woodruff Had another Four Years to Make Things Right for his Client**

Even when the Ninth Circuit dismissed the Subbaiah appeal, it extended **three** more invitations for the Opening Brief to be filed late – on April 7, 2010 (Ex. 24), December 2, 2011 (Ex. 28), and August 13, 2014 (Ex. 30). Woodruff knew that his client's appeal could be reinstated only if he would file the Opening Brief. Yet, <u>for **four years** he remained deaf and blind to his client's cause.</u> To argue, as Woodruff does now, that he was "constructively discharged" on March 24, 2010 when Mr. Subbaiah filed a motion for reconsideration is clearly *ex post facto* rationalization. Respondent's Statement, p. 3, ll. 17-18. It is embarrassing to hear Woodruff suggest that his client's desperate move to save his case somehow let Woodruff off the hook. The reality is that Woodruff continued to act as counsel after the motion for reconsideration was filed. Woodruff drafted a renewed motion for reinstatement and a declaration of counsel for Mr. Subbaiah a month later (May 2010) and wrote at that time that he was "Counsel to Appellant" (Ex. 26) and "the attorney for the appellant herein, Murugesan Subbaiah" (Ex. 27).

**This Appeal was Very Important to Mr. Subbaiah**

To Murugesan Subbaiah, this appeal was very important. <u>He fought continuously for four years to have his appeal reinstated.</u> He filed a motion for reconsideration on March 24, 2010, a

DISPOSITION MEMORANDUM (REPLY) - 3

renewed motion for reinstatement and declaration of counsel on November 15, 2011,[1] and a hand-written letter to the Ninth Circuit on August 13, 2014. Exs. 23, 24, 26, 29.

It is against this background of uncontested facts and inescapable conclusions that we have to examine each of Woodruff's statements in the *Respondent's Statement Re: Mitigating Circumstances.*

## I.

## "MY ACTS OR OMISSIONS CAUSED LITTLE OR NO MATERIAL HARM TO MR. SUBBAIAH."

Woodruff begins by stating that his client was not harmed by his failure to prosecute his appeal – even though the client's appeal was dismissed and remains dismissed today. How can he argue there was no harm when Murugesan Subbaiah spent the <u>next four years</u> after the dismissal attempting to revive his appeal in the Ninth Circuit? Obviously, Mr. Subbaiah thought his appeal was very important.

Mr. Subbaiah, a man of limited means, paid Woodruff $1,850 to pursue his appeal. Yet, Woodruff not only caused the appeal to be dismissed through his negligence (or indifference), he seems to not be bothered by the fact that he is retaining money which he has not earned.

Woodruff's argument for the "absence of material harm" is that "Mr. Subbaiah had the cure to his problem in his own hands all along, rendering the entire appeal unnecessary. He merely had to find an attorney willing to take on the case and ask Judge Munson to reopen the matter." Respondent's Statement, p. 3, ll. 4-5. Is this not a classic case of the wrongdoer pointing the finger

---

[1] It is unclear who filed these documents with the Ninth Circuit. Mr. Subbaiah testified he did not file them and did not have access to electronic filing. Woodruff testified he did not file them.

DISPOSITION MEMORANDUM (REPLY) - 4

of blame at the victim? In Woodruff's world, it was all Mr. Subbaiah's fault that he was left without a remedy.

Yet, even in Woodruff's world, this version of reality does not exonerate the attorney. Why not? First, it was Woodruff's duty to adequately investigate Judge Munson's ruling before appealing it. He admittedly failed to listen to the 25 minute tape of the summary judgment motion hearing before filing a notice of appeal. Had he done so, he would have discovered that the appeal was entirely unnecessary (as he concluded). All he had to do was step in as legal counsel and ask for the summary judgment motion to be re-opened. Second, once Woodruff filed the appeal, he deprived the district court of jurisdiction. Any resolution at that point, would have to be in the Ninth Circuit. With all his client's eggs in one basket, he had to seek relief by appeal. It was too late to try to reopen the summary judgment motion. So, the reality was that the appeal had to be prosecuted. He cannot claim that the appeal was unimportant.

It is callous and cold-hearted for an attorney who has been hired and paid to pursue an appeal and who causes it to be dismissed through his own inaction to argue that his client was caused no harm. Obviously, it is for the client to choose what goals are important in a case. The client decides how to spend his money. If he determines that appealing a summary judgment ruling that dismissed his entire lawsuit is important enough to pursue and pay for, then clearly the client is harmed when his attorney drops the ball and causes the appeal to be dismissed. To argue that the client was not harmed because he could have gone in a different direction – when the attorney failed to advise the client of that option when first taking the appeal – points the finger in the wrong direction.

Mr. Subbaiah wanted to be heard on appeal. It was very important to him. He paid Woodruff to present his case. When Woodruff failed to file an Opening Brief, Mr. Subbaiah was denied his appeal. He was never heard. He desperately tried to revive his appeal, but he was

DISPOSITION MEMORANDUM (REPLY) - 5

unable to do so alone. But, Woodruff repeatedly refused to help him. For Woodruff to now argue that his conduct did not harm Mr. Subbaiah is shameless and uncaring.

## II.

## "MR. SUBBAIAH'S OWN CONDUCT AT A MINIMUM EXACERBATED THE SITUATION"

Woodruff continues in the same vein with his second point being: "After Mr. Subbaiah's appeal was dismissed, he ignored my advice and acted behind my back to make inappropriate and irregular filings in the 9th Circuit." *Respondent's Statement*, p. 3, ll. 13-14. Woodruff later characterizes his client's attempts to revive his appeal as: "Mr. Subbaiah's multiple highly unusual and repeated actions in the 9th Circuit case . . . ." *Id.* at 2, ll. 1-2.

Instead of showing remorse for his conduct, Woodruff repeatedly displays contempt for his client. He writes: "he ignored my advice," he "acted behind my back," he made "inappropriate and irregular filings" in the court, and his actions were "highly unusual." Why should Woodruff be angry at Mr. Subbaiah? Mr. Subbaiah accomplished exactly what was required at that point in time – he was able to get the Ninth Circuit to agree to reinstate his appeal. That was a second chance for Woodruff, and he should have grabbed it! If Woodruff had filed the brief, albeit late, by May 22, 2010, Mr. Subbaiah would have had his day in court.

What Woodruff fails to explain is how Mr. Subbaiah's repeated attempts to reinstate his appeal "exacerbated the situation." The appeal was dismissed for Woodruff's failure to prosecute on March 4, 2010. Ex. 22. <u>Woodruff accomplished this dismissal entirely on his own</u>. How could Mr. Subbaiah have possibly aggravated the dismissal of his appeal? Dismissal is the end of the line. <u>Nothing Mr. Subbaiah did worsened that situation</u>. For Woodruff to claim that his client "at a minimum" exacerbated the situation makes no sense. In fact, the opposite is true. Mr. Subbaiah's conduct in the Ninth Circuit on three separate occasions gave Woodruff a "second chance" to file

DISPOSITION MEMORANDUM (REPLY) - 6

the Opening Brief and continue with the appeal. Obviously, Woodruff's concern was not about getting relief for Mr. Subbaiah – his concern was only to have the appeal go away quietly.

### III.

### "PRIOR TO THE PROCEEDINGS IN COMMONWEALTH COURTS IN 2013, IN MORE THAN A DOZEN YEARS OF PRIVATE PRACTICE . . . , NO DISCIPLINARY ACTION HAD EVER BEEN TAKEN AGAINST ME"

Woodruff claims that prior to being disbarred in the Commonwealth courts, he had practiced for more than a dozen years in private practice without any disciplinary action being taken against him. His statement is drafted quite carefully, so it is quoted here fully:

> Although I am aware of two complaints that had been made, one to the CNMI Bar Association and one in this Court, in both of which I was cleared of any attorney misconduct, prior to the proceedings in Commonwealth courts against me in 2013, in more than a dozen years of private practice and nearly 20 years of law practice, no disciplinary action has ever been taken against me.

*Respondent's Statement*, p. 2, ¶ 5.

One has to appreciate this is a difficult argument for an attorney to make who has been disbarred – that he has an *otherwise* clean record. How can any disbarred attorney argue that his record of practice as an attorney is a "mitigating" factor? Obviously, Woodruff would have us overlook the elephant in the room.

That is impossible when one recognizes that Woodruff's disbarment was <u>not</u> based on a single incident in 2013 which is juxtaposed sharply against 20 years of an unblemished law practice. His disbarment was based on <u>nine different cases</u>. His conduct ranged over a six year period <u>from 2007 to 2012</u> in those nine cases. So, in asking us to ignore his 2013 disbarment, he is really asking the panel to ignore his record of practice for the last six years prior to 2013. It is like saying, "If you ignore the past six years, I had 14 years of good conduct preceding them."

Further, our Timeline shows that for a ten year period (December 2005 to December 2015)

DISPOSITION MEMORANDUM (REPLY) - 7

Woodruff was either sanctioned, had a case dismissed, had a disciplinary complaint filed against him, or made an obvious error <u>41 times</u>. We showed the public record of his misconduct shows <u>an incident occurred once every quarter for a ten year period</u>.

Woodruff states that he is aware of two complaints that were made prior to the proceedings in the Commonwealth courts in 2013 and in both of those cases he was cleared of misconduct. This is obviously untrue. He is aware of far more than two disciplinary complaints made against him before the 2013 discipline. <u>Before his suspension on February 1, 2013, Woodruff had been made aware of nine separate complaints filed against him</u>. It is the practice of the Disciplinary Committee to notify an attorney of any complaint which is referred for investigation at the start of the investigation. Mr. Woodruff received nine such letters prior to February of 2013 regarding: (1) Kenneth Warfle (August 1, 2008), (2) Abrocio Baing (November 21, 2008), (3) Invictus Feliciano (February 25, 2009), (4) Honorio Cambronero (May 28, 2009), (5) Esperanza Ellis (December 12, 2011), (6) Ana Reyes (December 12, 2011), (7) Kim Chang Sook (June 4, 2012), (8) Emily Garde (September 4, 2011), (9) Yu Qun (January 11, 2013). *See* Disposition Memorandum: Factors in Aggravation, May 31, 2016.

The disciplinary proceedings in the Commonwealth courts began when the CNMI Bar Disciplinary Committee determined that it had to seek an immediate suspension of Woodruff by the Commonwealth Supreme Court while awaiting for his cases to proceed through the Superior Court. This was done in order to protect the public from further harm by Woodruff practicing law. Committee Chairman Timothy H. Bellas informed the Court that 31.25% of all complaints filed against attorneys between the years 2008 to 2012 had been filed against Woodruff alone.

It is indeed odd that Woodruff would seek to argue that his past record is a factor of mitigation when it so clearly is a factor of aggravation as shown by the Timeline.

DISPOSITION MEMORANDUM (REPLY) - 8

## CONCLUSION

Woodruff has complained that the Commonwealth Superior Court disbarment was not fully litigated. That claim cannot be made in this case. Woodruff, at his request, received an extra 68 days to prepare for trial. A full merits hearing was conducted. Yet, Woodruff never offered an opening statement, a witness in his favor, or even his own testimony to explain his conduct.

As a result, the facts are not in dispute. So, in this one case we get a detailed glimpse of what has occurred in so many other cases where Woodruff has failed his clients. Despite his claim that he is "dedicated principally to serving the economically disadvantaged and politically disenfranchised," what we see is an attorney who took $1,850 from an economically disadvantaged client and then dumped him. There is no better word for it. Again and again, Woodruff chose to not help his client by doing what he had promised to do – file a brief.

Aristotle wrote: "Character is revealed through action." The corollary would be: "Character is shown through repeated inaction." Negligence turned into indifference, which grew into apathy, and then disdain and contempt. This speaks of a deeply flawed character.

Add to this the fact that Woodruff has failed to show genuine remorse, and has been willing to redirect the blame onto his client. He feels no shame for letting his client down, for failing as a professional to meet his obligations, and for turning on his client. It is apparent that he never felt a duty towards Mr. Subbaiah.

Nothing in Woodruff's Mitigation Statement refutes the fact that that he unashamedly abandoned his client's cause mid-stream and has left him without a remedy. Nothing explains it. Nowhere does he apologize for it. Nowhere does he even recognize the harm he has caused, instead he disputes it. In short, nothing Woodruff has said to date gives one the slightest confidence that this conduct will not repeat itself. Indeed, the Timeline shows that this conduct has been repeated again and again over the past 10 years and has become engrained in Woodruff's

DISPOSITION MEMORANDUM (REPLY) - 9

character as an attorney.

It is not the duty of this court to reform Woodruff. Other courts have warned him, sanctioned him, and have tried to embarrass him, but those attempts obviously have failed. The duty of this court is to protect the public from future harms and to maintain the public respect for the integrity of the justice system. This is not easily done in this case. It will require that Woodruff no longer represent clients.

Dated: June 14, 2016

Respectfully submitted,

Rexford C. Kosack

DISPOSITION MEMORANDUM (REPLY) - 10