Electronically Filed
Supreme Court
SCAD-14-0000353
15-FEB-2021
01:46 PM
Dkt. 101 MER

**SCAD-14-0000353**

**IN THE SUPREME COURT OF THE STATE OF HAWAIʻI**

---

OFFICE OF DISCIPLINARY COUNSEL, Petitioner,

vs.

STEVEN CARL WOODRUFF (Bar No. 6365), Respondent

---

ORIGINAL PROCEEDING
(ODC #13-003-9073)

**ODC'S RESPONSE RE REPORT OF APPELLATE COMMISSIONER PER ORDER OF THE HAWAIʻI SUPREME COURT [RE: DKT. #96]**

**EXHIBIT A - B**

**and**

**CERTIFICATE OF SERVICE**

BRADLEY R. TAMM,
Chief Disciplinary Counsel
OFFICE OF DISCIPLINARY COUNSEL

201 Merchant Street, Suite 1600
Honolulu, Hawaiʻi 96813
Telephone: (808) 469-4026
e-mail: bradley.r.tamm@dbhawaii.org

**SCAD-14-0000353**

**IN THE SUPREME COURT OF THE STATE OF HAWAIʻI**

---

OFFICE OF DISCIPLINARY COUNSEL, Petitioner,

vs.

STEVEN CARL WOODRUFF, Respondent

---

ORIGINAL PROCEEDING
(ODC #13-003-9073)

**ODC'S RESPONSE RE REPORT OF APPELLATE COMMISSIONER PER ORDER OF THE HAWAIʻI SUPREME COURT [RE: DKT. #96]**

In the Order entered December 15, 2020,[1] this Court directed ODC to file "a response to the information set forth in the report of the Appellate Commissioner, considered in the context of Rules 2.15(c)(1) and 2.15(c)(2), and arguments and analysis regarding whether good cause exists for this court to revisit Respondent Woodruff's reciprocal disbarment, as well as any recommendations with regard to his discipline." Dkt.[2] #96:2.

In preparation for this response, ODC first reviewed the entire Ninth Circuit reciprocal disciplinary file (9th Cir. No.

---

[1] Woodard filed a "… Motion to Vacate October 11, 2016 Order of Disbarment" on November 12, 2020. Dkt. #79. That Motion was denied as untimely. Dkt. #87. Woodruff then filed a motion to reconsider denial of the earlier motion to reconsider. Dkt. #89. In that motion he argued cause to allow suspension of the timeliness rule, and the instant order for briefing resulted.

[2] Unless preceded by a case number all citations to "dkt." refer to this SCAD case docket.

13-80077), including the October 13, 2017 Appellate Commissioner's Report (9ACR) is at issue here. 9 Cir. 13-80077, dkt. #57. ODC also has reviewed one of two related disciplinary proceedings in the U.S. District Court for the Northern Mariana Islands (D-NMI No. 13-mc-0061),[3] including a Decision and Order, dated September 4, 2018 that discussed the reciprocal proceedings arising out of the CNMI disbarment, and the persuasiveness of the 9ACR report on the resultant disciplinary sanctions. D-NMI 13-mc-0061, dkt. #55 (Exhibit A here).

RSCH Rule 2.15(c) provides:

> … the supreme court shall enter an order imposing the same or substantially equivalent discipline … it clearly appears upon the face of the other jurisdiction's record, that:
>
> > (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
> >
> > (2) there was such an infirmity of proof establishing the factual basis for the discipline, or restrictions or conditions as to give rise to the clear conviction that the supreme court could not, consistent with its duty, accept as final the other jurisdiction's conclusion on that subject; or, …

Thus, ODC looks to the record in this proceeding, as supplemented by the other relevant proceedings to opine on

---

[3] 13-mc-0061 is an independent disciplinary case that discusses the disbarment by the Commonwealth courts, and the 9th circuit's reciprocal proceeding. The other case is the actual reciprocal discipline case (arising out of the Commonwealth case) filed in the federal court but is sealed and ODC was unable to gain access. D-NMI no. 13-cv-0004. See: 13-mc-0061, dkt. #55 at 4 for discussion as to 13-cv-0004.

whether grounds exist for this court to revisit its reciprocal order of disbarment. Dkt. # 65.

**I. Commissioner's (9ACR) Report**

On October 13, 2017, Ninth Circuit Appellate Commissioner Peter L. Shaw filed a 51 page "Report and Recommendation" (9ACR) relative to the 2013 discipline imposed by the Commonwealth of the Northern Marianas Island (CNMI) upon Woodruff. Dkt. #79:8-58 (9th Cir. 13-80077, dkt. #57). Woodruff began this saga in January 2013 when a CNMI bar investigation led to an interim suspension being imposed by the CNMI Supreme Court pending resolution of multiple disciplinary matters (dkt. 79:10). As noted in the 9ACR this appeared "unprecedented" in that CNMI interim suspensions are usually limited to criminal matters or made in the face of repeated defiance of court orders (dkt. #79:10, ftn. 1). But the charges against Woodruff were limited to six cases involving lack of diligence or the failure to communicate going back to 2007.[4] Dkt. #79:11. Even more curious, the disciplinary counsel appointed to prosecute Woodruff for these cases, was at the same time representing the complainants of one case, against Woodruff in a civil malpractice action. Id.

[4] Later increased to 9 cases after filing a first amended complaint, which led to the default in that the difference in answer due dates differs between the original complaint and an amended complaint.

Woodruff was then found in default of expedited disciplinary proceedings in the CNMI Superior Court where he was given only one day's notice of the default judgment hearing, to move to set aside default. Dkt. 79:13. In his hastily prepared motion to set aside default, Woodruff alleged "mistake, inadvertence, excusable neglect, or other good cause" but as detailed in the 9ACR, the rules of procedure for filing answers to disciplinary complaints, and amended complaints such as present in this case, were far from clear. Dkt. 79:12-13. Ultimately, the trial court, based solely upon the facts deemed admitted by reason of default, issued a disbarment order. Id., at 14.

The matter then proceeded to the CNMI Supreme Court, but there, Woodruff continued to experience difficulties in that his brief used an oversized font, which resulted in it exceeding 35 pages. Disciplinary Counsel moved to strike the brief, but the Supreme Court ruled that only the first 35 pages of the brief would be permitted. Id., at 16-18. The Supreme Court justice at this point, ordered the conflicted disciplinary counsel disqualified (due to the conflict of him having represented one of the complainants in a malpractice action against Woodruff), and also, the justice recused himself from further participation in the case, because he had acted as the trial judge in that

malpractice case.[5] Id., at 17-18. The CNMI Supreme Court then went on to review the record, and with regard to the denial of his motion to set aside default, found that Woodruff lacked a meritorious defense because he only identified defenses in three of the nine matters. Id., at 20. Finding no error of law or fact, the CNMI Supreme Court denied Woodruff's motion for reconsideration and disbarred him from the practice of law. Id. at 21.

The 9ACR then reviewed the proceedings in the Ninth Circuit, and did a fairly comprehensive review of the underlying CNMI facts – and Woodruff's contentions in defense had he been afforded an opportunity to defend – in the nine client matters that ultimately were charged and found by default. Id., at 24-34.

The 9ACR then proceeds to review the federal standards as to the imposition of reciprocal discipline. Id., at 35-36. Federal law recognizes, in language similar to RSCH Rule 2.15(c)(1) and (2), that imposition of discipline may not be appropriate where the proceedings lacked notice and opportunity to be heard, or suffer from an infirmity of proof. Id., citing

[5] With a population of approximately 1,000 people on the island of Saipan – where the courts are located, and only 57,000 in the entire CNMI, it is not surprising that there are so many connections between the bench and bar.

*In re Rosenthal*, 854 F.2d 1187, 1188 (9th Cir. 1988); *Selling v. Radford*, 243 U.S. 46, 51 (1916).

Looking to due process relative to entry of default, the 9ACR found that the CNMI deadline to respond "was not clear." Dkt. #79, at 38. As to due process in connection with the denial to set aside default, the 9ACR noted that Woodruff's conduct and notes his failure to answer was not willful, deliberate, or in bad faith. Id., at 43. More importantly the CNMI courts conclusion that he had failed to demonstrate the existence of a meritorious defense to the disciplinary action "as a whole" (id., at 44), was suspect noting that Woodruff had defenses to 3 of the 9 complaints against him, an that "[i]f Woodruff had prevailed on some of the charges against him, his discipline might have been less severe." Id. The 9ACR then took issue with the involvement of conflicted disciplinary counsel from case inception thru to ultimate disqualification before the supreme court, finding that counsel's "conflict of interest was actual and palpable and it existed from the start of his involvement in Woodruff's case" and that Woodruff was prejudiced by that conflict. Id., at 45-46. The 9ACR then discussed other conflicts by the trial and appellate court judges that sat on this disbarment case. Id., at 46-49. Looking to the sufficiency of the evidence, the 9ACR succinctly stated "[n]o evidence beyond the allegations of the [complaint]

was ever presented because the superior court held that Woodruff's default made the submission of evidence unnecessary." Id., at 49. While allegations of a complaint, may, on default be deemed admitted, there remains an open question as to whether the bare admissions suffer from an "infirmity of proof" for reciprocal discipline purposes. Id., at 50. The 9ACR reviews the authorities and notes that "[i]n many jurisdictions, the problem of default disciplinary judgments is mitigated by procedures that require or allow a subsequent proceeding to establish the basis for the disciplinary sanction."[6] Id., at 52. However, the 9ACR noted that "the superior court accepted all allegations and charges as admitted and preempted Woodruff's attempts to make any arguments in mitigation on the basis that those arguments implicated the merits, which had already been deemed admitted." Id, at 46. The 9ACR then pointed out, that even if the facts were properly admitted, many of the allegations "failed to state a violation of the disciplinary rules, or may have been insufficient to support the determination that disbarment was appropriate." Id., at 55.

The 9ACR analysis concluded with a determination as to whether a "grave injustice" was worked by the disbarment

[6] Such was recently employed here in Hawai'i, following entry of default, a hearing officer was appointed, and an evidentiary submission by motion resulted in findings, conclusions and recommendations. *ODC v. Woo*, SCAD-20-0754.

proceedings. Id. This element of the federal analysis has no direct counterpart under RSCH Rule 2.15, other than perhaps in the context of subsection (c)(4) ("conduct established warrants substantially different discipline"). The 9ACR states that the Woodruff "proceedings did not provide Woodruff with an opportunity to be heard and rested solely on 'findings' that were allegations deemed to be admitted … [and that] Woodruff had defenses to the majority of the disciplinary charges against him, and he repeatedly tried to offer those defenses. This court should not recognize a disbarment resulting from proceedings that steadfastly refused to consider those defenses. Id., at 55-56.

In sum, the 9ACR finds that the CNMI proceedings suffered from a lack of notice to Woodruff resulting in a denial of due process, and a material infirmity of proof. If the 9ACR is found to be persuasive in this proceeding, this court may hold the same.

**II. Federal District CNMI Decision**

Following the issuance of the 9ACR, the federal district court of the Northern Mariana's Islands reviewed the same CNMI disbarment proceedings, in light of the 9ACR. D. NMI 13-mc-00061, dkt. #55 (Exhibit A here). That court summarized the 9ACR "finding that the CNMI disciplinary proceedings against Woodruff did not offer Woodruff fair notice and an opportunity

to be heard, that evidence was improperly considered, an that disbarment would do a grave injustice." Exh. at 5.

In its discussion, the district court reviewed many failings of Woodruff in that court. Exh. 6-7. Failings that in many ways mirrored the failings alleged in the CNMI disciplinary proceedings. Id. The court [sitting as a panel of 3 judges] stated: "What the panel saw in the evidence was an attorney who, for whatever reasons, was taking on more than he could handle, not just for a short period of acute stress but over the course of many years." Id., at 7. The panel then concluded that the appropriate discipline was for one year of suspension, to run concurrent with its own reciprocal discipline case. Id., referring to D. NMI 13-mc-00004, dkt. #123 (sealed).

**III. Status of Pending Reinstatements**

Woodruff filed a combined petition for reinstatement in the federal district court for the Northern Mariana Islands on November 16, 2020. D.NMI 13-mc-00004 (dkt. Unk.) and 13-mc-00061, dkt. #56. That matter remains pending, and the status in the "061" proceeding indicates that hearing is presently set for February 22, 2021.[7]

Woodruff also filed a Petition for Reinstatement in the Supreme Court of the CNMI, on January 21, 2021. The current

[7] Again, it is noted that the docket to D.NMI #13-mc-00004 is sealed.

status of that case is unknown; the court's dockets are not on-line.

Woodruff has completed his discipline in the Ninth Circuit and is presently in good standing before that court. Dkt. #92.

Woodruff was reciprocally disbarred here in Hawai'i on October 11, 2016 (dkt. #65), and is therefore eligible to petition for reinstatement on October 12, 2021. The order of disbarment does not require that Woodruff be first reinstated by the disbarring court.

**IV. Recommendation**

Following review of the materials in the CNMI courts (as made available by Woodruff and placed in the 9th Cir. docket, the D-NMI docket not sealed, in this court's docket, and as supplemented by Woodruff to ODC directly), ODC is left with the firm impression that Woodruff engaged in multiple acts of misconduct, over an extended period of time, before every tribunal in which he appeared. Every judge who reviewed Woodruff's conduct, as well as the appellate commissioner, made reference to Woodruff's sloppy law practice, misconduct including lack of competence, diligence and communications. Negligence abounded; not only in the representation of clients, but in representation of himself in the disciplinary proceedings.

However, what was not evident was the intentional or knowing misconduct that generally invokes disbarment under the ABA Standards; even in the presence of factors in aggravation such as multiple offenses and pattern of conduct. Adding to that the lack of notice, absence of due process and infirmity of proof apparently present in the CNMI proceedings, leads to a possible conclusion that this Court's disbarment of Woodruff should be reconsidered.

Noting the allegations against him in the CNMI proceedings, even if they were all sustained by competent proof, and applied with proper notice and opportunity for hearing, it seems unlikely that this Hawai‘i court would have imposed the disbarment sanction upon Woodruff.[8]

Neither this court nor ODC has had any dealings with Woodruff in which to measure his competence or fitness to practice law. However, the NMI federal district court does not suffer from that lack of experience, and it concluded that the appropriate sanction for Woodruff's misconduct was a 1-year suspension. That sanction does appear to be more in line with

---

[8] ODC notes that the recent misconduct of Attorney Christopher Woo was much more egregious, willful and knowing; yet this court only imposed a 5-year suspension following default proceedings. SCAD-20-0754. Also, in the case of Attorney Earle Partington, this court imposed a 6-month reciprocal suspension for intentional misconduct in the defiance of lawful court orders. SCAD-20-0403.

the discipline that would likely have been imposed had this matter been tried here.

At the same time, while this Hawaiʻi ODC is not eager to see Woodruff be reinstated here in Hawaiʻi, as his reinstatement proceedings remain pending in the CNMI and D-NMI courts. That would leave Woodruff with admission only in Hawaiʻi – and permit him to immediately practice before the immigration courts which requires good standing in at least one state high court. Woodruff has also indicated that he might relocate to Hawaiʻi, given the circumstance in CNMI and that his children are at or near college age. Exhibit B.

Should this court not reconsider the disbarment, or should this court impose discipline of more than one year, nothing would stop Woodruff from applying for reinstatement in Hawaiʻi in the very near future. Woodruff would then be put to the burden of showing fitness and rehabilitation under RSCH Rule 2.17(b)(3), but that would be a rather anomalous proceeding given that the original misconduct did not happen here. However, if this court were to impose, on reconsideration, a suspension of one year or less, reinstatement would be relatively automatic. RSCH Rule 2.17(b)(2).

Given the foregoing, <u>ODC suggests that a period of suspension for one year, retroactive to October 11, 2016 would be the appropriate reconsidered imposition of reciprocal</u>

discipline, and that Woodruff would be immediately eligible to seek reinstatement upon compliance with RSCH Rule 2.17(b)(2).

Dated: February 15, 2021

OFFICE OF DISCIPLINARY COUNSEL

BRADLEY R. TAMM
Chief Disciplinary Counsel

FILED
Clerk
District Court

SEP - 4 2018

for the Northern Mariana Islands
By ______ (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| In Re:<br><br>STEPHEN C. WOODRUFF,<br><br>Respondent. | **DISCIPLINARY CASE: FOR PUBLICATION**<br><br>1:13-MC-00061<br><br>DECISION AND ORDER |

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

On May 23, 2016, a panel comprising the three undersigned judges held a merits hearing in the above-captioned disciplinary case involving Respondent Stephen C. Woodruff, a member of this Court's bar. Present were Prosecuting Counsel Rexford C. Kosack and Respondent, who appeared pro se. (Minute entry, ECF No. 45.) The Complaint for Ethical Violations (ECF No. 10) charged violations of Rules 1.1 and 1.3 of the Model Rules of Professional Conduct ("MPRC"), made applicable in this Court by Local Disciplinary Rule ("LDR") 2(h), for conduct during his representation of Murugesan S. Subbaiah on appeal of a civil judgment against him to the Court of Appeals for the Ninth Circuit. The Complaint alleged that Respondent missed the deadline for filing his client's opening brief without having requested an extension of time, and failed to follow up effectively on transcript requests with the district court reporter. Three

months after the filing deadline had passed, appellee filed a motion to dismiss. Respondent failed to file a response to the motion or to request an extension of time. When the Ninth Circuit dismissed for failure to prosecute, Subbaiah himself filed a motion to reinstate the case. The Ninth Circuit denied it without prejudice and gave appellant leave to refile it within 28 days along with an opening brief. Respondent, who had never withdrawn from the representation, did not refile the motion or file an opening brief. Three years later, the Circuit Clerk informed Subbaiah that the case would remain closed because of the failure to file an opening brief.

The panel took evidence and heard from witnesses, including the complainant. Subbaiah testified that he had paid Respondent a total of $1,850 to pursue the appeal – $850 in installments and a lump sum payment of $1,000 from a settlement. After hearing the arguments of Prosecuting Counsel and Respondent, the panel found that Prosecuting Counsel had proved by clear and convincing evidence the facts alleged, and that Respondent had violated his duties of competence and diligence as charged. The panel then set a separate hearing for the penalty phase of the proceeding and invited briefs from the parties.

On May 31, 2016, Prosecuting Counsel filed a Disposition Memorandum: Factors in Aggravation (ECF No. 46), and two exhibits, and Respondent filed a Statement Re: Mitigating Circumstances (ECF No. 47). Prosecuting Counsel urged the panel to consider more than a dozen other allegations of similar ethical misconduct by Respondent in cases before this and other courts, especially nine disciplinary complaints that formed the basis for Respondent's disbarment in the Commonwealth of the Northern Mariana Islands. Respondent asserted that Subbaiah suffered little or no material harm, that Subbaiah's own conduct was not beyond reproach, that during the period of the representation he was experiencing serious domestic

difficulties leading to a marital separation, and that over a long legal career in the CNMI he has generally provided competent and diligent representation to clients.

On June 14, 2016, the parties filed responses: Response to Prosecuting Counsel's Disposition Memorandum (ECF No. 48), Declaration of Stephen C. Woodruff (ECF No. 49); Respondent's three volumes of exhibits (ECF Nos. 50, 51, and 52); and Prosecuting Counsel's Reply Memorandum (ECF No. 53). Respondent objected to consideration of any of the disciplinary charges that formed the basis of his CNMI disbarment, on grounds that the CNMI courts procedurally defaulted him, he did not have the opportunity to confront the evidence against him, and he was denied due process. Prosecuting Counsel disputed that the client bore any responsibility for the failure of the appeal, and stressed that the client was materially harmed at least in the loss of the $1,850 he paid Respondent to pursue the appeal.

On June 15, 2016, the panel held a sanctions hearing. The panel heard a recording of Subbaiah's testimony as to the $1,850 loss, and then heard argument from both counsel. The panel indicated that it was inclined not to consider evidence from the CNMI court cases that formed the basis of Respondent's disbarment and would restrict itself to the record from representations in this District and the Ninth Circuit. After argument from Respondent and Prosecuting Counsel, the Court took the matter under advisement.

Since then, more than two years have passed, and only now is the Court issuing its decision and order. The Court is mindful of the irony of judging one of its own lawyers for failure to attend promptly to his client's matters when it has failed to promptly tend to this one. That failure is a disservice to Respondent, Complainant, and Prosecuting Counsel, who worked long hours pro bono on the case. In the meantime, other disciplinary cases involving Respondent have made their way through the Commonwealth and federal courts. It is against

that background that this panel must decide how best to fairly bring the instant matter to a conclusion.

## II. RECIPROCAL DISCIPLINE CASES

On June 7, 2013, Respondent was disbarred by the Commonwealth Superior Court. *See* Disciplinary Action: Disbarment, *In the Matter of Woodruff,* Civil Case No. 13-0017 (Commw. Super. Ct. June 7, 2013)*, available at* https://www.cnmilaw.org/pdf/superior/13-06-07-CV13-0017.pdf. The disbarment order was affirmed by the Commonwealth Supreme Court on December 9, 2015. *In the Matter of Woodruff,* 2013-SCC-0030-CIV, 2015 MP 11, 2015 WL 8488972, 2015 N. Mar. I. LEXIS 12 (N. Mar. I. 2015). On December 24, 2015, this Court issued to Respondent a Notice of Intent to Impose Reciprocal Discipline and Order to Show Cause (Case No. 13-CV-00004, ECF No. 75 ).[1] On January 22, 2016, the Commonwealth Supreme Court denied Respondent's petition for rehearing and ordered the mandate to issue on January 26. (No. 13-CV-00004, ECF No. 87-3.) On February 10, Respondent filed an Update (ECF No. 87) notifying the Court of his intention to petition for certiorari to the United States Supreme Court.

When the Court became aware that no petition had ever been filed, it lifted its stay on reciprocal discipline proceedings (Order, Dec. 8, 2016, ECF No. 88). After a hearing, the Court found that reciprocal discipline was warranted and, under LDR 17, disbarred Respondent from the practice of law in this district (Order Imposing Reciprocal Discipline of Disbarment, Mar. 9, 2017, ECF No. 104). After an independent review of the Commonwealth record, the Court found that in the CNMI disciplinary proceedings deserved a presumption of correctness because (1) respondent was not deprived of due process, (2) there was sufficient proof of misconduct,

---

[1] The reciprocal discipline case was assigned to Hon. Frances Tydingco-Gatewood, Chief Judge, District of Guam.

and (3) no grave injustice would result from the imposition of reciprocal discipline. *See Selling v. Kramer,* 243 U.S. 46, 50–51 (1917); *In re Kramer,* 193 F.3d 1131, 1132 (9th Cir. 1999).

Also in 2017, the Ninth Circuit was considering whether to reciprocate the discipline imposed by the CNMI courts and disbar Woodruff from federal appellate practice. On October 13, 2017, the Ninth Circuit's Appellate Commissioner issued a report finding that the CNMI disciplinary proceedings against Woodruff did not offer Woodruff fair notice and an opportunity to be heard, that evidence was improperly considered, and that disbarment would do a grave injustice. (Report and Recommendation, No. 13-80077, Oct. 13, 2017, docketed in D. N. Mar. I. No. 13-MC-00004, ECF No. 116-1.) Although he found that none of the *Selling* factors had been met, the Appellate Commissioner recognized that Woodruff had a history of difficulty meeting deadlines in Ninth Circuit cases, sometimes with the result that an appeal was dismissed. He recommended 18 months' probation, allowing Woodruff to complete pending appeals but not take on new appeals during the probationary period.

On October 26, Woodruff submitted the Appellate Commissioner's report as an exhibit supporting a motion for relief from this Court's judgment of reciprocal discipline. In the motion (ECF No. 116), he asked the Court to rescind his disbarment and impose the same discipline as the Ninth Circuit. While that motion was pending, on November 15, the Ninth Circuit issued an order adopting the Report and Recommendation in all respects, except for the prohibition on bringing new cases, which the Ninth Circuit declined to impose. (Order, Nov. 15, 2017, No. 13-80077, docketed D. N. Mar. I. No. 13-MC-00004, ECF No. 117.) On March 28, 2018, the Court heard the motion for relief from judgment and granted it in part, suspending Woodruff for one year (until March 28, 2019), permitting him to resume representation in cases that were pending at the time of his disbarment but forbidding him from taking new cases. (Order Modifying

Discipline, ECF No. 123.) The Court noted that it had a "firm conviction that reciprocal discipline was warranted" but deferred to the Ninth Circuit's determination that CNMI disciplinary proceedings did not comport with due process and therefore modified discipline. The Court gave Woodruff leave to apply for reinstatement after six months and one day, i.e., no earlier than September 29, 2018.

## III. DISCUSSION

In light of the Ninth Circuit's determination in its own reciprocal discipline case, the Court does not consider as aggravating factors the nine disciplinary charges on which the CNMI disbarment was based. Nor will it consider ten other complaints received by the CNMI Bar Disciplinary Committee and submitted by Prosecuting Counsel (*see* Dispo. Memo., ECF No. 46, p. 14 *et seq.*). The Court cannot ignore, however, a series of cases in this district where the previous Chief Judge issued orders taking note of Respondent's deficient performance. In *Prematilaka v. Camacho,* No. 05-CV-00045, the Court dismissed a Title VII complaint with prejudice when Respondent, representing the plaintiff, failed to prosecute the case for more than seven months. (Order, Aug. 10, 2006, ECF No. 3.) Failure to serve defendants or ask for additional time to effect service eventuated in a dismissal in *Santos v. Winner Corporation.* (Order, No. 08-CV-00023, Mar. 27, 2009, ECF No. 5.) In *Feliciano v. Eastern Hope Corporation,* No. 08-CV-00001, the Court dismissed a case with prejudice when Respondent failed to show up for trial. (Order, Dec. 1, 2008, ECF No. 17.) The Court noted a history of missed deadlines by Respondent and directed respondent "to notify his client in writing . . . that he may have a cause of action against Mr. Woodruff for failure to meet minimum professional standards in client representation . . ." (*Id.*) It is not only the former Chief Judge of this District who observed this tendency to miss deadlines and court dates. The Chief Judge of the District of

Guam, sitting here by designation, noted that Respondent had missed crucial deadlines in his own reciprocal discipline case and offered up weak excuses for doing so. She wrote, "Respondent's failure to attend to his own disciplinary cases mirrors the misconduct alleged in [the CNMI's disciplinary complaint]." (Order, No. 13-CV-00004, Mar. 9, 2017, ECF No. 104, at 8.)

The panel draws attention to this related conduct only to show why it does not give much credit to Respondent's protestations that he has a history of managing his case load competently and diligently. What the panel saw in the evidence was an attorney who, for whatever reasons, was taking on more than he could handle, not just for a short period of acute stress but over the course of many years.

## IV. DISCIPLINARY ACTION

Under LDR 3, attorney discipline in this District may consist of disbarment, suspension by a period of up to five years, public censure, or private reprimand. Were it still 2016, the Court would likely impose disbarment or a period of suspension starting 30 days from now, pursuant to LDR 17(c). Much time has passed, however. The Court recognizes that it would be unfair to make an attorney start serving a term of discipline in late 2018 that, but for the Court's inaction, might have already ended. For this reason, the Court hereby imposes on Respondent the same discipline that was imposed in Case No. 13-MC-00004: Respondent is suspended from practice in this District for a period of one year. The suspension shall run concurrently with the suspension in No. 13-MC-00004, i.e., from March 28, 2018, the date of the Order Modifying Discipline (ECF No. 123). Respondent may continue representing clients in any open cases, which the Court understands to be only the plaintiff in *Ramsey v. Muna,* No. 14-CV-00021. He is not permitted to enter appearances in new cases during the period of suspension. Pursuant to

LDR 18(b), he may apply for reinstatement after the expiration of at least one-half of the period of suspension.

SO ORDERED this 4th day of September, 2018.

Ramona V. Manglona
Chief Judge

Roberto C. Naraja
Designated Judge

Teresa Kim-Tenorio
Designated Judge

**Bradley R. Tamm**

**From:** Stephen Woodruff <scwlaw.spn@gmail.com>
**Sent:** Wednesday, December 16, 2020 7:06 PM
**To:** Bradley R. Tamm
**Subject:** Re: SCAD-14-0000353, ODC v. Woodruff

CAUTION - EXTERNAL EMAIL: Be cautious of links/attachments!

Aloha again, Mr. Tamm.

Relocation and practice in Hawaii is a genuine possibility in the not too distant future depending on family considerations and whatever is happening in the CNMI. One of my children is graduating from high school and heading off to college in 2021. Another will graduate in 2023, leaving only one in the nest, who at that time will have just completed middle school.

More important than active practice in Hawaii is my ability to practice before the Executive Office for Immigration review and the Department of Homeland Security, which requires that I be in good standing before the highest court of a state, territory, possession or commonwealth. Many of my 9th Circuit clients have continuing need for representation in those fora. Indeed, most probably cannot obtain other counsel at all, because they don't have the necessary financial resources.

I have no way to predict with confidence a timeframe for reinstatement by the CNMI Supreme Court. That Court requires a full character and fitness review as a condition for reinstatement, and just the process of completing the application is time-consuming and burdensome (and expensive). There is also the disturbing reality of that Court's extremely unfair treatment of me. Given that, there is good reason to wonder whether I will receive fair and impartial consideration by the CNMI Supreme Court of an application for reinstatement.

That is not to say I was wholly without need of discipline. The function of discipline is to teach, and clearly I did have deficiencies in my practice. There was never any genuine question about the quality of my work or professional integrity, only timeliness. I was in fact, as one of my colleagues told me, "doing too much for too many for too little."

Yet the Disciplinary Committee (for reasons of their own and actually outside their scope of their authority) took the unprecedented action, wholly unauthorized by (and actually inconsistent with) the then existing Rules, of seeking an interim suspension. The Commonwealth Supreme Court went along with it, allowed the proceeding, and imposed interim suspension, destroying my law practice overnight. I was able to preserve my appellate practice only -- because the Ninth Circuit actually gave me due process. The remainder of the proceedings in Commonwealth Superior Court and in the Commonwealth Supreme Court more than anything else smacked of the characteristics of a kangaroo court. It pains me to have to say that, but it is the truth, and I am compelled to speak bluntly.

But again, I must emphasize that I am not pointing this out to distract from my own deficiencies and avoid responsibility for my own faults. I accept that some form of discipline was warranted. I have suffered discipline far out of proportion to the actual deficiencies in my practice. Further, all of that is behind me now. My life is in order, and in rebuilding my practice, I absolutely will not allow the situation of "too much for too many for too little" to again occur.

I respectfully suggest that it may not be necessary for you to drill down as deeply as it seems you may think your duty. This is, after all, a reciprocal discipline case. If any of the three *Selling* factors apply, the Supreme Court of Hawai'i should not be imposing reciprocal discipline. I should not be denied the ability to practice law in Hawai'i based on a CNMI decision deficient in due process.

I most certainly will keep you posted as requested.

Thank you for your thoughtful consideration of these matters.

Regards,

Stephen C. Woodruff

On Thu, Dec 17, 2020 at 12:31 PM Bradley R. Tamm <Bradley.R.Tamm@dbhawaii.org> wrote:

Mr. Woodruff;

Thank you and please keep me advised as to the progress of your reinstatement with the US Court (CNMI) and any application for reinstatement with the commonwealth courts/bar.

There is a lot of material here, and I may not be able to fully complete the tasking in 60 days … so I may need to ask for more time – especially if relevant events in CNMI render that moot. Do you have any plans to begin to practice law in Hawai'i?

Office of Disciplinary Counsel
Hawai'i Supreme Court
201 Merchant Street, Suite 1600
Honolulu, HI 96813

**Bradley R. Tamm, Chief Disciplinary Counsel**

**(808) 469-4026 (direct)** | (808) 206-1120 (cell)

www.dbhawaii.org | bradley.r.tamm@dbhawaii.org

**** * * * * CONFIDENTIALITY * * * * ****

This e-mail transmission and any accompanying attachments may contain information from the Office of Disciplinary Counsel, an an operating unit of the Disciplinary Board of the Hawaii Supreme Court, which is CONFIDENTIAL and may also be LEGALLY PRIVILEGED. The information is intended only for the use of the named recipient(s). If you are not an intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this e-mail information is STRICTLY PROHIBITED and that the documents should be returned to this office immediately. In this regard, if you have received this e-mail message in error, please notify us by telephone, or reply email, immediately. Thank you.

---

**From:** Stephen Woodruff <scwlaw.spn@gmail.com>
**Sent:** Wednesday, December 16, 2020 3:23 PM
**To:** Bradley R. Tamm <Bradley.R.Tamm@dbhawaii.org>
**Subject:** Re: SCAD-14-0000353, ODC v. Woodruff

CAUTION - EXTERNAL EMAIL: Be cautious of links/attachments!

Aloha, Mr. Tamm,

The amended disciplinary order in the U.S. District Court for the Northern Mariana Islands reciprocal discipline case is attached.

There also was a separate disciplinary proceeding in that court that arose out of a third party filing in the reciprocal discipline case. The final order in that case is also attached.

There have been no subsequent proceedings in CNMI courts.

My petition for reinstatement to practice in the U.S. District Court for the Northern Mariana Islands is scheduled for hearing on Monday, December 21, 2020 (your Sunday). A copy of the petition is attached.

I am still preparing my application for reinstatement to practice before the Supreme Court of the Commonwealth of the Northern Mariana Islands.

Mahalo for your careful attention to this matter.

Regards,

Stephen C. Woodruff

On Thu, Dec 17, 2020 at 6:06 AM Bradley R. Tamm <Bradley.R.Tamm@dbhawaii.org> wrote:

> Mr. Woodruff;
>
> I am informed that after the 11/2017 commissioners report was issued, the CNMI issued an amended or modified disciplinary order … can you please provide me with that, along with any other documents that were entered in the CNMI proceeds subsequent to your filing of the "Seventh Submission of Relevant Portions of the [CNMI] proceedings (9th Cir. dkt. #51 3/23/17)

Mahalo,

Office of Disciplinary Counsel
Hawai'i Supreme Court
201 Merchant Street, Suite 1600
Honolulu, HI 96813

**Bradley R. Tamm, Chief Disciplinary Counsel**

**(808) 469-4026 (direct)** | (808) 206-1120 (cell)

www.dbhawaii.org | bradley.r.tamm@dbhawaii.org

**** * * * * CONFIDENTIALITY * * * * ****

This e-mail transmission and any accompanying attachments may contain information from the Office of Disciplinary Counsel, an an operating unit of the Disciplinary Board of the Hawaii Supreme Court, which is CONFIDENTIAL and may also be LEGALLY PRIVILEGED. The information is intended only for the use of the named recipient(s). If you are not an intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this e-mail information is STRICTLY PROHIBITED and that the documents should be returned to this office immediately. In this regard, if you have received this e-mail message in error, please notify us by telephone, or reply email, immediately. Thank you.

--

Woodruff Law Office* / Woodruff Legal Support
P.O. Box 500770
Saipan, MP 96950
Tel.: 1 (670) 989-2797
website: http://www.WoodruffLawOffice.com
Email: scwlaw.spn@gmail.com.

*Except for the Ninth Circuit Court of Appeals, we are no longer engaged in the practice of law. Instead, we are focused on research, writing, investigation, and litigation support services for licensed attorneys engaged in active practice of law.

--

Woodruff Law Office* / Woodruff Legal Support
P.O. Box 500770
Saipan, MP 96950
Tel.: 1 (670) 989-2797
website: http://www.WoodruffLawOffice.com
Email: scwlaw.spn@gmail.com.

*Except for the Ninth Circuit Court of Appeals, we are no longer engaged in the practice of law. Instead, we are focused on research, writing, investigation, and litigation support services for licensed attorneys engaged in active practice of law.

**SCAD-14-0000353**

**IN THE SUPREME COURT OF THE STATE OF HAWAI'I**

---

OFFICE OF DISCIPLINARY COUNSEL, Petitioner,

vs.

STEVEN CARL WOODRUFF, Respondent

---

ORIGINAL PROCEEDING
(ODC #13-003-9073)

**CERTIFICATE OF SERVICE**

**1. ODC'S RESPONSE RE REPORT OF APPELLATE COMMISSIONER PER ORDER OF THE HAWAI'I SUPREME COURT [RE: DKT. #96]; EXHIBITS A AND B**

I hereby certify that a true and correct copy of the above listed document was duly served on those individuals or entities identified on the below service list, as indicated by either (1) JEFS/JIMS electronic filing, (2) by personal service, or by (3) U.S. First Class mail, postage prepaid.

Dated: February 15, 2021

OFFICE OF DISCIPLINARY COUNSEL

_______________________
BRADLEY R. TAMM
Chief Disciplinary Counsel

**SERVICE LIST:**

***By JEFS/JIMS electronic filing:***

Stephen Carl Woodruff ( scwlaw.spn@gmail.com )
Bradley R. Tamm ( bradley.r.tamm@dbhawaii.org )
Philip H. Lowenthal ( p.lowenthal@dbhawaii.org )

***By personal service:***

n/a

***By U.S. First Class mail, postage prepaid:***

n/a